# EXHIBIT A

The information available on Case.net is provided as a service and is not considered an official court record.


Case.net:26SL-CC05767 - FANNIE MAE V MCG KNOLLS LLC (E-CASE) - Docket Entries

| **Respond to Selected Documents** | **Sort by date:** Descending Ascending **Display options:** All Entries

**09/09/2026**

**Motion Hearing Scheduled**
PLAINTIFF'S EMERGENCY MOTION FOR APPOINTMENT OF RECEIVER
**Scheduled For:** 09/30/2026; 9:00 AM; ELLEN HANNIGAN RIBAUDO; St Louis County

**09/02/2026**

**Notice of Hearing Filed**
Notice of Hearing.
**Filed By:** NICHOLAS JAY ZLUTICKY
**On Behalf Of:** FANNIE MAE

**08/28/2026**

**Corporation Served**
Document ID - 26-SMCC-10902; Served To - MCG KNOLLS LLC; Served Date - 08/25/2026; Served Time - 12:33:17; Service Type - SP; Reason Description - SERV; Service Text -

**Affidavit Filed**
Affidavit of Service on MCG Knolls LLC.
**Filed By:** NICHOLAS JAY ZLUTICKY
**On Behalf Of:** FANNIE MAE

**08/20/2026**

**Summons Issued-Circuit**
Document ID: 26-SMCC-10902, for MCG KNOLLS LLC Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**08/19/2026**

**Filing Info Sheet eFiling**

**Filed By:** NICHOLAS JAY ZLUTICKY

**Note to Clerk eFiling**

**Filed By:** NICHOLAS JAY ZLUTICKY

**Motion Filed**
Emergency Motion for Appointment of Receiver of MCG Knolls LLC with Supporting Suggestions; Exhibit 1; Exhibit 2; Exhibit 3.
**Filed By:** NICHOLAS JAY ZLUTICKY
**On Behalf Of:** FANNIE MAE

**Motion Special Process Server**
Request for Appointment of Process Server.
**Filed By:** NICHOLAS JAY ZLUTICKY
**On Behalf Of:** FANNIE MAE

**Confid Filing Info Sheet Filed**
Confidential Case Filing Information Sheet.
**Filed By:** NICHOLAS JAY ZLUTICKY
**On Behalf Of:** FANNIE MAE

**Pet Filed in Circuit Ct**
Verified Petition; Exhibit A; Exhibit B; Exhibit C; Exhibit D; Exhibit E; Exhibit F; Exhibit G; Exhibit H; Exhibit I; Exhibit J; Exhibit K; Exhibit L; Exhibit M.
**Filed By:** NICHOLAS JAY ZLUTICKY
**On Behalf Of:** FANNIE MAE

**Judge Assigned**
DIV 18

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>ELLEN HANNIGAN RIBAUDO | **Case Number: 26SL-CC05767** | |
| Plaintiff/Petitioner:<br>FANNIE MAE<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>NICHOLAS JAY ZLUTICKY<br>STINSON LLP<br>1201 WALNUT STREET<br>SUITE 2900<br>KANSAS CITY, MO 64106 | |
| Defendant/Respondent:<br>MCG KNOLLS LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Promissory Note | | |

**The State of Missouri to:** **MCG KNOLLS LLC**
**Alias:**
**DBO SERVICES, INC.**
**222 E. DUNKLIN ST., SUITE 102**
**JEFFERSON CITY, MO 65101**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

CIRCUIT COURT OF MISSOURI

***ST. LOUIS COUNTY***

20-AUG-2026
Date

/S/ Adam Dockery
Clerk

**Further Information:**
AD

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

__________________________________ (name) ______________________ (title).

☐ other: ______________________________________________________________.

Served at ________________________________________________________ (address)

in _________________________ (County/City of St. Louis), MO, on _______________ (date)

at ___________ (time).

______________________________ ______________________________
Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________________ (date).

*(Seal)*

My commission expires: ______________ ______________________
Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

# NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**Selecting an Alternative Dispute Resolution Procedure and a Neutral**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 Or 800-735-2966, at least three business days in advance of the court proceeding.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

| | | |
|---|---|---|
| **FANNIE MAE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **MCG KNOLLS LLC, a Missouri limited liability company,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## VERIFIED PETITION

Plaintiff Fannie Mae ("Fannie Mae"), for its petition against defendant MCG Knolls LLC (the "Borrower"), states as follows:

## NATURE OF ACTION

The Borrower is the owner of the Knolls Townhomes in St. Louis County, Missouri (the "Apartments"), which provides housing to residents of the surrounding community. Borrower has, among other things, (i) failed to make the repairs required by Fannie Mae under the Loan Documents when demanded, which constitutes an automatic event of default; (ii) failed to make repairs necessary to keep the Apartments in a safe and habitable condition; (iii) effected an unauthorized change in property management without prior approval from Fannie Mae; and (iv) permitted liens to attach to the property and failed to remove or remedy the liens. Fannie Mae brings this action pursuant to the Missouri Commercial Receivership Act and seeks the appointment of a general receiver to take control of substantially all Borrower's property and business operations. The Borrower contractually agreed to the appointment of a receiver in the loan documents. Moreover, the appointment of a receiver is necessary to protect and preserve Borrower's property, to maximize the value of Borrower's assets, and to make the repairs necessary to return Borrower's property to a safe condition.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

## PARTIES, JURISDICTION, AND VENUE

1. Fannie Mae is a corporation duly organized and existing under the Federal National Mortgage Association Charter Act, as amended, 12 U.S.C. § 1716 et seq., with its main office at 1100 15th Street NW, Washington, DC 20005. Fannie Mae is the current owner and holder of the Note and Mortgage (as such terms are defined below).

2. Congress chartered Fannie Mae to facilitate the nationwide secondary residential mortgage market. *See* 12 U.S.C. § 1716. The Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654 (codified as 12 U.S.C. § 4511 et seq.), established the Federal Housing Finance Agency ("FHFA" or "Conservator") as Fannie Mae's primary regulator.

3. On September 6, 2008, pursuant to HERA, the Director of FHFA placed Fannie Mae into conservatorship, where it remains to this day. *See* 12 U.S.C. § 4617(a). As Conservator, FHFA succeeded to all of Fannie Mae's rights, titles, powers, privileges, and assets. 12 U.S.C. § 4617(b)(2)(A)(i). FHFA, as the Conservator, is statutorily empowered to "preserve and conserve [Fannie Mae's] assets and property," to "operate" [Fannie Mae], to "perform all [of Fannie Mae's] functions in [Fannie Mae's] name," and to "collect all obligations and money due" Fannie Mae. 12 U.S.C. § 4617(b)(2)(B)(i)-(iv). Congress also mandated that "no court may take any action to restrain or affect the exercise of [FHFA's] powers or functions... as a conservator." 12 U.S.C. § 4617(f). Because the receiver derives its authority from the Court, Section 4617(f) also precludes the receiver from restraining or affecting the Conservator's exercise of its statutory powers and functions.

4. FHFA has represented to Fannie Mae that FHFA supports the appointment of a receiver on the terms set forth in the proposed Order accompanying Fannie Mae's Motion.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

However, FHFA reserved its rights as to any other or different terms for the appointment of a receiver that have not been approved explicitly by FHFA in advance.

5. HERA provides that "[n]o property of [Conservator] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [Conservator], nor shall any involuntary lien attach to the property of [Conservator]." *See* 12 U.S.C. § 4617(j)(3). Therefore, federal law prohibits any action by a third party that affects Fannie Mae's interest in the loan agreement, note or deed of trust, owned by Fannie Mae or under which Fannie Mae is the beneficiary.

6. The Borrower is a Missouri limited liability company with its principal place of business located at 150 James Street, Suite 209A, Lakewood, New Jersey 08701. Pursuant to Mo. R. Civ. P. 54.13, the Borrower may be served with process by serving its registered agent as follows: DBO Services, Inc., 222 E. Dunklin St., Suite 102, Jefferson City, MO 65101.

7. The Court has subject-matter jurisdiction over this action under article V, section 14(a) of the Missouri Constitution and Mo. Rev. Stat. § 478.070.

8. The Court has personal jurisdiction over the Borrower because the claims in this action arise from the Borrower's ownership, use, interest in, or possession of real estate and personal property in Missouri.

9. This Court is the proper venue for this action because the real estate and personal property at issue are located in St. Louis County, Missouri.

## FACTUAL BACKGROUND

10. On or about September 6, 2024, the Borrower executed a Multifamily Note in favor of Arbor Commercial Funding I, LLC, a New York limited liability company (the "Original Lender"), evidencing a loan made by Original Lender to Borrower in the original principal amount

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

of $9,314,000.00 (the "Note"). A true and correct copy of the Note is attached hereto and marked as **Exhibit A**.

11. In conjunction with the execution of the Note, the Borrower executed a Multifamily Loan and Security Agreement in favor of Original Lender (the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached hereto and marked as **Exhibit B**.

12. To secure repayment of the amounts owing under the Note, the Borrower executed a Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated September 6, 2024 (the "Deed of Trust"), granting Original Lender a first priority lien on, *inter alia*, the real property located at 3582 Pershall Road, Ferguson, Missouri 63135 (the "Real Estate") and certain personal property of the Borrower (the "Personal Property", together with the Real Estate, the "Mortgaged Property") more fully described in the Deed of Trust. A true and correct copy of the Deed of Trust is attached hereto and marked as **Exhibit C**.

13. The Deed of Trust was recorded on September 11, 2024, in the County of St. Louis, Missouri Recorder of Deeds Office as Instrument Number 2024091100151.

14. Under the Deed of Trust, upon the occurrence of an event of default, Fannie Mae has the right to apply for the appointment of a receiver. *See* Exhibit C, § 3(e).

15. The Deed of Trust was assigned by Original Lender to Fannie Mae on September 6, 2024, by virtue of an Assignment of Multifamily Security Instrument, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "DOT Assignment"). A true and correct copy of the Assignment is attached hereto and marked as **Exhibit D**.

16. The DOT Assignment was recorded on September 11, 2024, in the County of St. Louis, Missouri Recorder of Deeds Office as Instrument Number 2024091100152.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

17. On September 6, 2024, Original Lender executed an Assignment of Collateral Agreements and Other Loan Documents (the "Assignment") in favor of Fannie Mae. Pursuant to the Assignment, Original Lender assigned its interest in the Loan Agreement and other documents executed in connection with the Note to Fannie Mae. A true and correct copy of the Assignment is attached hereto and marked as **Exhibit E**.

18. Pursuant to Section 2 of the Deed of Trust, Borrower granted Fannie Mae a security interest in "any and all of that portion of the Mortgaged Property in which a security interest may be granted under the UCC and in which Borrower has any present or hereafter acquired right, title, or interest" (the "UCC Collateral").

19. Fannie Mae perfected its security interest in the UCC Collateral by causing a UCC-1 Financing Statement to be filed with the Missouri Secretary of State on September 13, 2024, file number 20240913001113067 (the "Financing Statement"). A true and correct copy of the Financing Statement is attached hereto and marked as **Exhibit F**.

20. Pursuant to Section 3 of the Deed of Trust, Borrower assigned to Fannie Mae all leases related to the Mortgaged Property and all rents, revenue, or income from the Mortgaged Property.

21. The Note, the Loan Agreement, the Deed of Trust, the DOT Assignment, the Assignment, and the Financing Statement may be collectively referred to as the "Loan Documents".

22. Under the Loan Documents, Borrower is liable to Fannie Mae for all costs, expenses, and attorneys' fees incurred by Fannie Mae in enforcing the Loan Documents and all rights and remedies thereunder.

23. Fannie Mae is the holder and owner of the Loan Documents.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

### A. Borrower's Defaults

*i. Casualty or Event of Loss*

24. Pursuant to Section 9.02(b) of the Loan Agreement, Borrower must provide "immediate written notice" to Fannie Mae of any casualty or event of loss and of Borrower's receipt of any insurance proceeds and, if requested by Fannie Mae, must deliver to Fannie Mae all such proceeds.

25. Pursuant to Section 14.01(c) of the Loan Agreement, Borrower is in default if it fails to cure a default regarding a failure to provide written notice of an event of loss and turn over insurance proceeds within thirty (30) days after written notice by Fannie Mae of such condition.

26. On April 15, 2025, Original Lender, as servicer, sent Borrower a notice of Borrower Failure to Provide Notice of a Casualty Event (the "Casualty Event Reservation of Rights" or Casualty Event ROR"), notifying Borrower that the failure to provide notice of the casualty or event of loss, failure to provide documentation related to the event of loss, and failure to remit insurance proceeds to servicer may constitute an event of default under the Loan Documents and reserving all Fannie Mae's and Original Lender's rights. A true and correct copy of the Casualty Event ROR is attached hereto and marked as **Exhibit G**.

27. As of the date hereof, Borrower has failed to provide notice of the event of loss and turn over insurance proceeds.

28. Borrower is in default of the Loan Agreement for failing to provide written notice of the event of loss or casualty event and turn over insurance proceeds within thirty (30) days after Fannie Mae made a written request (the "Casualty Default").

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

*ii. Required Repairs*

29. Pursuant to Section 6.02(b) of the Loan Agreement, Borrower is required to commence all Required Repairs, as defined in the Loan Documents, needed on the Mortgaged Property "in accordance with the timelines set forth on the Required Repair Schedule" or as soon as practical.

30. Pursuant to Section 14.01(a)(10) of the Loan Agreement, Borrower's failure "to complete any Repair related to fire, life, or safety issues" in accordance with any timeline "required by Lender in writing for such Repair" is an automatic event of default.

31. On September 17, 2025, Original Lender, as servicer, sent Borrower a notice of Evidence of Completion of Required Repairs, Replacements, or Restoration Not Received (the "Required Repairs ROR"), notifying Borrower that it had failed to provide satisfactory evidence of the completion of all or certain Required Repairs or Replacements (the "Required Repairs") within the time specified after the closing of the Loan and that this failure may constitute an event of default under the Loan Documents, and reserving all Fannie Mae's and Original Lender's rights regarding the Required Repairs. A true and correct copy of the Repairs ROR is attached hereto and marked as **Exhibit H**.

32. As of the date hereof, Borrower has not provided sufficient evidence that the Required Repairs are completed.

33. Borrower is in default of the Loan Agreement for failing to complete all or certain of the Required Repairs within the time specified after the closing of the Loan (the "Required Repairs Default").

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

*iii. Failure to Maintain and Property Management Change*

34. Pursuant to Section 6.02(b), Borrower is required to "keep the Mortgaged Property in good repair and marketable condition" and "commence all Required Repairs, Additional Lender Repairs, and Additional Lender Replacements" needed on the Mortgaged Property in accordance with the timelines set forth by Fannie Mae or as soon as practicable.

35. Pursuant to Section 14.01(a)(10), Borrower's failure "to complete any Repair related to fire, life, or safety issues" in accordance with any timeline "required by Lender in writing for such Repair" is an automatic event of default.

36. Furthermore, pursuant to Section 6.03 of the Loan Agreement, "each property manager and each property management agreement must be approved by" Fannie Mae and any "new property manager… must be approved by" Fannie Mae.

37. Pursuant to Section 14.01(c) of the Loan Agreement, Borrower is in default if it fails to cure a default regarding an unauthorized change in property management within thirty (30) days after written notice by Fannie Mae of such condition.

38. On March 5, 2026, Original Lender, as servicer, sent Borrower a notice of Borrower Failure to Maintain the Mortgaged Property and Unauthorized Change in Property Management (the "Maintenance and Management ROR"), notifying Borrower that its failure to maintain the Mortgaged Property; failure to complete Required Repairs, Additional Lender Repairs, Replacements, Additional Lender Replacements, or Restoration; and failure to obtain Fannie Mae's consent prior to effectuating a change in the property management company may constitute events of default under the Loan Documents and reserving all Fannie Mae's and Original Lender's rights. A true and correct copy of the Maintenance and Management ROR is attached hereto and marked as **Exhibit I**.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

39. As of the date hereof, Borrower has failed to correct the defaults identified in the Maintenance and Management ROR.

40. Borrower is in default of the Loan Agreement for failing to maintain the Mortgaged Property in good repair and marketable condition, failing to commence and complete certain repairs and replacements, and effecting an unauthorized change in property management without obtaining Fannie Mae's approval (the "Maintenance and Property Management Default").

*iv. PCA Demand Notice*

41. Pursuant to Sections 6.03(c) and 6.02(b), the Borrower is required to "commence all Required Repairs, Additional Lender Repairs, and Additional Lender Replacements" needed on the Mortgaged Property, as determined by Fannie Mae, in accordance "with [Fannie Mae]'s timelines" or as soon as practicable.

42. Pursuant to Section 14.01(a)(10), Borrower's failure "to complete any Repair related to fire, life, or safety issues" in accordance with any timeline "required by Lender in writing for such Repair" is an automatic event of default.

43. Further, pursuant to Section 13.02(a)(4), Fannie Mae may, upon written notice, require an additional deposit to the Replacement Reserve Account "if [Fannie Mae] determines that the amounts on deposit in any of the Reserve/Escrow Accounts are not sufficient to cover the costs for Required Repairs."

44. Under Section 14.01(a)(1), Borrower's failure to "pay or deposit when due any amount required" under the Loan Documents is an automatic event of default.

45. A Property Condition Assessment ("PCA") was conducted on the Mortgaged Property on April 9, 2026, and April 28, 2026, whereby certain deficiencies were noted and identified.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

46. On May 18, 2026, Original Lender, as servicer, sent Borrower a Notice of Demand (the "PCA Demand"), notifying Borrower of its failure to maintain the Mortgaged Property pursuant to Section 6 of the Loan Agreement and demanding that Borrower perform, within the dates listed in the PCA Demand, the Additional Lender Repairs and Additional Lender Replacements (collectively, the "Additional Repairs") listed in the PCA Demand and provide evidence of completion to Fannie Mae and Original Lender.

47. The PCA Demand also required that Borrower, within ten (10) days, deposit with Original Lender, on behalf of Fannie Mae, the amount of $585,128.00 to cover the costs of the Additional Repairs (the "Deposit").

48. A true and correct copy of the PCA Demand is attached hereto and marked as **Exhibit J**.

49. As of the date of this Complaint, the Borrower has not provided sufficient evidence that the Additional Repairs are completed nor paid the Deposit.

50. Borrower is in default of the Loan Agreement for failing to commence certain Additional Repairs and pay the Deposit (the "Repairs and Deposit Default").

51. On July 13, 2026, counsel for Fannie Mae sent Borrower a Notice of Acceleration of Indebtedness and Demand for Payment (the "Demand"), notifying Borrower that the Casualty Default, Required Repairs Default, Maintenance and Property Management Default, and Repairs and Deposit Default constituted separate Events of Default under the Loan Documents; that Borrower was in default under the Loan Documents; and that the indebtedness under the Note was accelerated and all amounts were immediately due and owing and demanded payment. A true and correct copy of the Demand is attached hereto and marked as **Exhibit K**.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

v. *Mechanic's Lien*

52. Pursuant to Section 11.02(a) of the Loan Agreement, "Borrower shall not permit the grant, creation, or existence of any Lien,[1] whether voluntary, involuntary, or by operation of law, on all or any portion of the Mortgaged Property" subject to certain exceptions enumerated therein which are inapplicable hereto. Furthermore, when a lien is created against the Mortgaged Property, Borrower is required to bond[ ] off, release[ ] of record, or otherwise remed[y] to [Fannie Mae's] satisfaction within sixty (60) days after the earlier of the date Borrower has actual notice or constructive notice of the existence of such lien" (the "Cure Period"). Ex. B, § 11.02(a)(2)(A).

53. Pursuant to the terms of the Loan Agreement, "a granting, pledging, creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary, or by operation by law)" constitutes a "Transfer". Ex. B, Schedule 1 at 17.

54. Pursuant to Section 14.01(a)(6) of the Loan Agreement, "the occurrence of any Transfer not permitted by the Loan Documents" constitutes "an automatic Event of Default."

55. On or about April 9, 2026, Puff's Property Management, Inc., d/b/a Asphalt Paving & Concrete, Inc. ("Asphalt Paving") filed a mechanic's lien in the Circuit Court of St. Louis County, Missouri under Case No. 26SL-ML00124 (the "Mechanic's Lien") in the amount of $51,372.26 against the Mortgaged Property. A true and correct copy of the Mechanic's Lien is attached hereto and marked as **Exhibit L**.

56. On or about June 26, 2026, Asphalt Paving filed its *Petition* in the Circuit Court of St. Louis County, Missouri, Case No. 26SL-CC04659, seeking to enforce its Mechanic's Lien against the Borrower, among others.

---

1 "Lien" is defined as "any claim against property for payment of a debt … or any other encumbrance." Ex. 2, Schedule 1 at 8; Ex. 3 at 4.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

57. To date, Borrower has failed to bond off, release, or otherwise remedy to Fannie Mae's satisfaction the Mechanic's Lein within the Cure Period as required by Section 11.02(a)(2)(A) of the Loan Agreement.

58. The creation of the Mechanic's Lien against the Mortgaged Property constitutes an unauthorized Transfer and an automatic Event of Default as defined in the Loan Agreement (the "Mechanic's Lien Default") and triggers full recourse against the Borrower and the Guarantors.

59. On or about August 13, 2026, following the occurrence and continuation of the Mechanic's Lien Default and the expiration of the Cure Period, counsel for Fannie Mae sent to Borrower a Notice of Additional Event of Default, Existing Acceleration of Indebtedness, and Demand for Payment (the "Mechanic's Lien Default Notice"), notifying Borrower that, *inter alia*, the creation of the Mechanic's Lien against the Mortgaged Property and Borrower's failure to remove, release, or bond off the Mechanic's Lien within the Cure Period constitutes an Event of Default as defined in the Loan Documents and the indebtedness under the Note remains accelerated and all amounts are immediately due and owing. A true and correct copy of the Mechanic's Lien Default Notice is attached hereto and marked as **Exhibit M**.

60. The Casualty Default, Required Repairs Default, Maintenance and Property Management Default, Repairs and Deposit Default, and Mechanic's Lien Default are collectively referred to as the "Defaults".

61. Additionally, Fannie Mae has become aware that additional liens have attached to the Mortgaged Property and may constitute additional Events of Default if they are not remedied during the Cure Period.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**B. Fannie Mae's Remedies Upon Borrower's Default**

62. Pursuant to Section 5(a) of the Deed of Trust, Fannie Mae, because of the foregoing Defaults, has the right to "declare the Indebtedness to be immediate due and payable without further demand" and has the right to foreclose the Deed of Trust by action.

63. Pursuant to Section 3(e) of the Deed of Trust, Fannie Mae, because of the foregoing Defaults, is entitled to the appointment of a receiver for the Mortgaged Property.

64. Pursuant to Section 2(a) of the Mortgage, Fannie Mae, because of Borrower's defaults, has the right to exercise its rights under the Uniform Commercial Code, including repossessing the UCC Collateral.

65. As of July 31, 2026, Borrower was indebted to Fannie Mae in the following amounts, plus all accruing interest, late charges, fees, costs, and attorneys' fees: $9,314,000.00 in principal, $61,055.86 in accrued interest, $391,631.44 in prepayment premium, $28,369.37 in insurance advance, plus $10,350.00 in expenses, less credits of $681,748.19, totaling $9,123,658.48, plus accruing interest thereafter (collectively, the "Indebtedness").

66. Fannie Mae has incurred and will continue to incur attorneys' fees and costs because of Borrower's default and in enforcing its remedies under the Loan Documents.

**NEED FOR CERTAIN RECEIVERSHIP ACTIONS**

67. In the Deed of Trust, Borrower expressly consented, upon an event of default, to the appointment of a receiver *ex parte* and to a shortened time consideration of a motion to appoint a receiver. Section 3(e) of the Mortgage provides:

> Notwithstanding any other right provided [Fannie Mae] under this Security Instrument or any other Loan Document, if an Event of Default has occurred and is continuing, and regardless of the adequacy of [Fannie Mae]'s security or Borrower's solvency, and without the necessity of giving prior notice (oral or written) to Borrower, [Fannie Mae] may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

> take any or all of the actions set forth in this Section 3. **If [Fannie Mae] elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte,* if permitted by applicable law. Borrower consents to shortened time consideration of a motion to appoint a receiver.**

(emphasis added). Borrower is in default under the Loan Documents due to the Events of Default and failure to pay the Indebtedness when due. Exhibit C at Section 3(e).

68. The Events of Default have put the health and safety of all residents and guests at risk, due to the uncertainty surrounding the ownership and management of the Mortgaged Property and the failure to maintain the Mortgaged Property and undertake and complete the Required Repairs and Additional Repairs.

69. Further, without completion of the Required Repairs and Additional Repairs and uncertainty as to management of the Mortgaged Property, the Mortgaged Property's value will be significantly reduced, the Mortgaged Property will be substantially less marketable to potential purchasers, and portions of the Mortgaged Property will face a risk of failing to be properly maintained.

70. Moreover, Fannie Mae's interests in the Mortgaged Property are not adequately protected, as Borrower's failure to pay its debts as they become due has resulted in liens being placed against the Mortgaged Property.

71. The appointment of a receiver is critical to ensure the Mortgaged Property remains in safe and habitable condition, taking the health and safety of all tenants and guests out of harm's way, and to protect Fannie Mae's interests in the Mortgaged Property.

## COUNT I: APPOINTMENT OF RECEIVER

72. Fannie Mae incorporates the preceding paragraphs as though fully set forth herein.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

73. The Borrower contractually agreed to the appointment of a receiver in the Deed of Trust.

74. The immediate appointment of a receiver is critical to, among other things, (a) protecting and preserving the Collateral; (b) preventing further mismanagement by the Borrower; (c) helping maximize the value of the Collateral; and (d) completing the Required Repairs and Additional Repairs.

75. Missouri law permits the appointment of a receiver as a matter of right where the parties have contractually agreed to the appointment of a receiver. *MIF Realty v. Pickett*, 963 S.W.2d 308, 311 (Mo. Ct. App. 1997).

76. Pursuant to the Missouri Commercial Receivership Act (the "Act"), the Court has the power to appoint a general receiver to take possession and control of the Borrower and all or substantially all the Borrower's property, including the Collateral, and authorize the receiver to liquidate such property.

77. Pursuant to the Act, the Court has the power to appoint a receiver in several instances, including:

> (2) In an action in which the person seeking appointment of a receiver has a lien on or interest in property or its revenue-producing potential, and . . . (a) The appointment of a receiver with respect to the property or its revenue-producing potential is necessary to keep and preserve the property or its revenue-producing potential or to protect any business or business interest concerning the property or its revenue-producing potential[.]
>
> ***
>
> (12) Pursuant to the terms of a valid and enforceable contract or contract provision providing for the appointment of a receiver, other than pursuant to a contract or contract provision providing for the appointment of a receiver with respect to the primary residence of a debtor who is a natural person.

Mo. Rev. Stat. § 515.510.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

78. Fannie Mae is contractually entitled to the emergency appointment of a receiver because the Borrower expressly consented, in the Deed of Trust, to the appointment of a receiver *ex parte* and to shortened time consideration of a motion to appoint a receiver upon an event of default. Exhibit C at Section 3(e).

79. Fannie Mae has a valid and perfected lien on the Collateral.

80. The Borrower's inability to complete the Required Repairs and Additional Repairs has caused the Apartments to fall further into a state of disrepair, putting the safety of residents and guests at risk and reducing the value and marketability of the Apartments.

81. Further, Fannie Mae's interests in the Mortgaged Property are not adequately protected as Borrower's inability to pay its debts as they become due has resulted in liens being attached to the Mortgaged Property.

82. It is imperative that a receiver be immediately appointed to ensure that the Apartments are properly maintained and Fannie Mae's interests are adequately protected.

83. A receiver is necessary to keep and preserve the Apartments.

84. Contemporaneously herewith, Fannie Mae has filed an Emergency Motion for Appointment of Receiver for MCG Knolls LLC with Supporting Suggestions (the "Motion") and a proposed receivership order (the "Receivership Order"), requesting, among other things, the immediate appointment of Tarantino Properties, Inc. as general receiver.

85. Fannie Mae further requests that, in addition to the authority and powers of a general receiver pursuant to the Act, the appointed receiver has the authority and power to:

a. establish and adopt bidding and auction sale procedures for the sale of the Collateral, as the receiver deems advisable or necessary, subject to Fannie Mae's prior written agreement and consent, without further order of this Court;

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

b. borrow and incur secured debt in the ordinary course of preserving and liquidating the Real Estate, with liens attaching to sale proceeds of the Real Estate on a superpriority basis, without further order of this Court, provided (i) such secured debt may only be advanced by Fannie Mae, in Fannie Mae's sole discretion, and such amounts incurred may, among other things, consist of over advances by Fannie Mae under the Loan Documents; and (ii) to the extent such secured debt is incurred, the receiver shall provide an account on a monthly basis of amounts incurred; and

c. employ professionals as the receiver deems advisable or necessary, including accountants, attorneys, investment bankers, and similar professionals ("Professionals"). Provided, however, employment of any Professionals is subject to Fannie Mae's prior written agreement and consent and all the terms and conditions set forth in the Receivership Order.

WHEREFORE, Fannie Mae asks the Court to enter an order (1) appointing Tarantino Properties, Inc. as general receiver pursuant to the terms and conditions set forth in the Motion, proposed Receivership Order, and under applicable law; (2) entering the proposed Receivership Order; (3) awarding the reasonable attorneys' fees and expenses Fannie Mae has incurred and will incur to protect its rights under the Loan Documents; and (4) for any other relief that the Court deems just and proper.

STINSON LLP

By: /s/ Nicholas Zluticky
Nicholas J. Zluticky MO # 61203
Zachary H. Hemenway MO #59670
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Telephone: (816) 691-3278
Facsimile: (816) 691-3495
nicholas.zluticky@stinson.com
zachary.hemenway@stinson.com

ATTORNEYS FOR PLAINTIFF

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**VERIFICATION**

STATE OF Texas )
) ss:
COUNTY OF Dallas )

I, Craig Cauthen being of lawful age and duly affirmed upon oath and as Senior Director for Trimont, asset manager for Fannie Mae for the loan at issue in this action, state that I have read the factual allegations contained in the Verified Petition and that they are true and correct to the best of my knowledge and belief and the records attached to it are true and correct copies of the originals.

FANNIE MAE

By: Craig Cauthen
Senior Director for Trimont,
Authorized Representative

SUBSCRIBED and AFFIRMED to before me, a Notary Public, in and for the aforesaid province and county this 19th day of August, 2026.

Notary Public

JOSH KJOELEN
NOTARY PUBLIC
STATE OF TEXAS
ID 13421051
EXP. FEBRUARY 21, 2027



CORE/0772514.0084/246561364.4

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT A

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

PAY TO THE ORDER OF FANNIE MAE, WITHOUT RECOURSE.

ARBOR COMMERCIAL FUNDING I, LLC,
a New York limited liability company

By: ______________________
Name: Kenneth Dowling
Title: Senior Vice President, Capital Markets

Dated: September 6, 2024

Fannie Mae Commitment Number: 973586

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# MULTIFAMILY NOTE

US $9,314,000.00 September 6, 2024

**FOR VALUE RECEIVED**, the undersigned ("**Borrower**") promises to pay to the order of **ARBOR COMMERCIAL FUNDING I, LLC**, a New York limited liability company ("**Lender**"), the principal amount of NINE MILLION THREE HUNDRED FOURTEEN THOUSAND AND 00/100 Dollars (US $9,314,000.00) (the "**Mortgage Loan**"), together with interest thereon accruing at the Interest Rate on the unpaid principal balance from the date the Mortgage Loan proceeds are disbursed until fully paid in accordance with the terms hereof and of that certain Multifamily Loan and Security Agreement dated as of the date hereof, by and between Borrower and Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**").

## 1. Defined Terms.

Capitalized terms used and not specifically defined in this Multifamily Note (this "**Note**") have the meanings given to such terms in the Loan Agreement.

## 2. Repayment.

Borrower agrees to pay the principal amount of the Mortgage Loan and interest on the principal amount of the Mortgage Loan from time to time outstanding at the Interest Rate or such other rate or rates and at the times specified in the Loan Agreement, together with all other amounts due to Lender under the Loan Documents. The outstanding balance of the Mortgage Loan and all accrued and unpaid interest thereon shall be due and payable on the Maturity Date, together with all other amounts due to Lender under the Loan Documents.

## 3. Security.

The Mortgage Loan evidenced by this Note, together with all other Indebtedness is secured by, among other things, the Security Instrument, the Loan Agreement and the other Loan Documents. All of the terms, covenants and conditions contained in the Loan Agreement, the Security Instrument and the other Loan Documents are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein. In the event of a conflict or inconsistency between the terms of this Note and the Loan Agreement, the terms and provisions of the Loan Agreement shall govern.

## 4. Acceleration.

In accordance with the Loan Agreement, if an Event of Default has occurred and is continuing, the entire unpaid principal balance of the Mortgage Loan, any accrued and unpaid interest, including interest accruing at the Default Rate, the Prepayment Premium (if applicable), and all other amounts payable under this Note, the Loan Agreement and any other Loan Document shall at once become due and payable, at the option of Lender, without any prior notice to

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Borrower, unless applicable law requires otherwise (and in such case, after satisfactory notice has been given).

**5. Personal Liability.**

The provisions of Article 3 (Personal Liability) of the Loan Agreement are hereby incorporated by reference into this Note to the same extent and with the same force as if fully set forth herein.

**6. Governing Law.**

This Note shall be governed in accordance with the terms and provisions of Section 15.01 (Governing Law; Consent to Jurisdiction and Venue) of the Loan Agreement.

**7. Waivers.**

Presentment, demand for payment, notice of nonpayment and dishonor, protest and notice of protest, notice of acceleration, notice of intent to demand or accelerate payment or maturity, presentment for payment, notice of nonpayment, and grace and diligence in collecting the Indebtedness are waived by Borrower, for and on behalf of itself, Guarantor and Key Principal, and all endorsers and guarantors of this Note and all other third party obligors or others who may become liable for the payment of all or any part of the Indebtedness.

**8. Commercial Purpose.**

Borrower represents that the Indebtedness is being incurred by Borrower solely for the purpose of carrying on a business or commercial enterprise or activity, and not for agricultural, personal, family or household purposes.

**9. Construction; Joint and Several (or Solidary, as applicable) Liability.**

(a) Section 15.08 (Construction) of the Loan Agreement is hereby incorporated herein as if fully set forth in the body of this Note.

(b) If more than one Person executes this Note as Borrower, the obligations of each such Person executing this Note shall be joint and several (solidary instead for purposes of Louisiana law).

**10. Notices.**

All Notices required or permitted to be given by Lender to Borrower pursuant to this Note shall be given in accordance with Section 15.02 (Notice) of the Loan Agreement.

**11. Time is of the Essence.**

Borrower agrees that, with respect to each and every obligation and covenant contained in this Note, time is of the essence.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

## 12. Loan Charges Savings Clause.

Borrower agrees to pay an effective rate of interest equal to the sum of the Interest Rate and any additional rate of interest resulting from any other charges of interest or in the nature of interest paid or to be paid in connection with the Mortgage Loan and any other fees or amounts to be paid by Borrower pursuant to any of the other Loan Documents. Neither this Note, the Loan Agreement nor any of the other Loan Documents shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law. It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with all applicable laws governing the maximum rate or amount of interest payable on the Indebtedness evidenced by this Note and the other Loan Documents. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any interest or other charge or amount provided for in any Loan Document, whether considered separately or together with other charges or amounts provided for in any other Loan Document, or otherwise charged, taken, reserved or received in connection with the Mortgage Loan, or on acceleration of the maturity of the Mortgage Loan or as a result of any prepayment by Borrower or otherwise, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate any such violation. Amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of the Mortgage Loan without the payment of any prepayment premium (or, if the Mortgage Loan has been or would thereby be paid in full, shall be refunded to Borrower), and the provisions of the Loan Agreement and any other Loan Documents immediately shall be deemed reformed and the amounts thereafter collectible under the Loan Agreement and any other Loan Documents reduced, without the necessity of the execution of any new documents, so as to comply with any applicable law, but so as to permit the recovery of the fullest amount otherwise payable under the Loan Documents. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the Indebtedness that constitute interest, and any amount paid or agreed to be paid to Lender for the use, forbearance or detention of the Indebtedness, shall be deemed to be allocated and spread ratably over the stated term of the Mortgage Loan. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Mortgage Loan.

## 13. WAIVER OF TRIAL BY JURY.

**TO THE MAXIMUM EXTENT PERMITTED BY LAW, EACH OF BORROWER AND LENDER (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS NOTE OR THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER AND BORROWER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY,**


**© 2020 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

**14. Receipt of Loan Documents.**

Borrower acknowledges receipt of a copy of each of the Loan Documents.

**15. Incorporation of Schedules.**

The schedules, if any, attached to this Note are incorporated fully into this Note by this reference and each constitutes a substantive part of this Note.

**ATTACHED SCHEDULE.** The following Schedule is attached to this Note:

☐ Schedule 1 Modifications to Note

**(Remainder of Page Intentionally Blank)**


**© 2020 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**IN WITNESS WHEREOF**, Borrower has signed and delivered this Note under seal (where applicable) or has caused this Note to be signed and delivered under seal (where applicable) by its duly authorized representative. Where applicable law so provides, Borrower intends that this Note shall be deemed to be signed and delivered as a sealed instrument.

**BORROWER:**

**MCG KNOLLS LLC**, a Missouri limited liability company

By: ______________________________(SEAL)
Name: Moshe Mermelstein
Title: Manager


**© 2020 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT B

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# MULTIFAMILY LOAN AND SECURITY AGREEMENT

**(NON-RECOURSE)**

**BY AND BETWEEN**

**MCG KNOLLS LLC,**
a Missouri limited liability company

**AND**

**ARBOR COMMERCIAL FUNDING I, LLC,**
**a New York limited liability company**

**DATED AS OF**

September 6, 2024

Fannie Mae

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# TABLE OF CONTENTS


**ARTICLE 1 - DEFINITIONS; SUMMARY OF MORTGAGE LOAN TERMS ..... 1**

SECTION 1.01 DEFINED TERMS. ..... 1
SECTION 1.02 SCHEDULES, EXHIBITS, AND ATTACHMENTS INCORPORATED. ..... 1

**ARTICLE 2 - GENERAL MORTGAGE LOAN TERMS ..... 2**

SECTION 2.01 MORTGAGE LOAN ORIGINATION AND SECURITY. ..... 2
(a) Making of Mortgage Loan. ..... 2
(b) Security for Mortgage Loan. ..... 2
(c) Protective Advances. ..... 2
SECTION 2.02 PAYMENTS ON MORTGAGE LOAN. ..... 2
(a) Debt Service Payments. ..... 2
(b) Capitalization of Accrued But Unpaid Interest. ..... 3
(c) Late Charges. ..... 3
(d) Default Rate. ..... 4
(e) Address for Payments. ..... 5
(f) Application of Payments. ..... 5
SECTION 2.03 LOCKOUT/PREPAYMENT. ..... 6
(a) Prepayment; Prepayment Lockout; Prepayment Premium. ..... 6
(b) Voluntary Prepayment in Full. ..... 6
(c) Acceleration of Mortgage Loan. ..... 7
(d) Application of Collateral. ..... 7
(e) Casualty and Condemnation. ..... 7
(f) No Effect on Payment Obligations. ..... 8
(g) Loss Resulting from Prepayment. ..... 8

**ARTICLE 3 - PERSONAL LIABILITY ..... 8**

SECTION 3.01 NON-RECOURSE MORTGAGE LOAN; EXCEPTIONS. ..... 8
SECTION 3.02 PERSONAL LIABILITY OF BORROWER (EXCEPTIONS TO NON-RECOURSE PROVISION). ..... 9
(a) Personal Liability Based on Lender's Loss. ..... 9
(b) Full Personal Liability for Mortgage Loan. ..... 10
SECTION 3.03 PERSONAL LIABILITY FOR INDEMNITY OBLIGATIONS. ..... 11
SECTION 3.04 LENDER'S RIGHT TO FOREGO RIGHTS AGAINST MORTGAGED PROPERTY. ..... 11

**ARTICLE 4 - BORROWER STATUS ..... 11**

SECTION 4.01 REPRESENTATIONS AND WARRANTIES. ..... 11
(a) Due Organization and Qualification; Organizational Agreements. ..... 11
(b) Location. ..... 12
(c) Power and Authority. ..... 12
(d) Due Authorization. ..... 12
(e) Valid and Binding Obligations. ..... 13
(f) Effect of Mortgage Loan on Borrower's Financial Condition. ..... 13
(g) Economic Sanctions, Anti-Money Laundering, and Anti-Corruption. ..... 13
(h) Borrower Single Asset Status. ..... 14
(i) No Bankruptcies or Judgments. ..... 15
(j) No Actions or Litigation. ..... 16



**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(k) Payment of Taxes, Assessments, and Other Charges. ..... 16
(l) Not a Foreign Person. ..... 17
(m) ERISA. ..... 17
(n) Default Under Other Obligations. ..... 17
(o) Prohibited Person. ..... 17
(p) No Contravention. ..... 17
(q) Lockbox Arrangement. ..... 18
SECTION 4.02 COVENANTS. ..... 18
(a) Maintenance of Existence; Organizational Documents. ..... 18
(b) Economic Sanctions, Anti-Money Laundering, and Anti-Corruption. ..... 18
(c) Payment of Taxes, Assessments, and Other Charges. ..... 19
(d) Borrower Single Asset Status. ..... 19
(e) ERISA. ..... 21
(f) Notice of Litigation or Insolvency. ..... 21
(g) Payment of Costs, Fees, and Expenses. ..... 21
(h) Restrictions on Distributions. ..... 22
(i) Lockbox Arrangement. ..... 22

**ARTICLE 5 - THE MORTGAGE LOAN ..... 22**

SECTION 5.01 REPRESENTATIONS AND WARRANTIES. ..... 22
(a) Receipt and Review of Loan Documents. ..... 23
(b) No Default. ..... 23
(c) No Defenses. ..... 23
(d) Loan Document Taxes. ..... 23
SECTION 5.02 COVENANTS. ..... 23
(a) Ratification of Covenants; Estoppels; Certifications. ..... 23
(b) Further Assurances. ..... 24
(c) Sale of Mortgage Loan. ..... 25
(d) Limitations on Further Acts of Borrower. ..... 25
(e) Financing Statements; Record Searches. ..... 26
(f) Loan Document Taxes. ..... 26

**ARTICLE 6 - PROPERTY USE, PRESERVATION, AND MAINTENANCE ..... 26**

SECTION 6.01 REPRESENTATIONS AND WARRANTIES. ..... 26
(a) Compliance with Law; Permits and Licenses. ..... 26
(b) Property Characteristics. ..... 27
(c) Property Ownership. ..... 28
(d) Condition of the Mortgaged Property. ..... 28
(e) Personal Property. ..... 28
SECTION 6.02 COVENANTS. ..... 28
(a) Use of Property. ..... 28
(b) Property Maintenance. ..... 29
(c) Property Preservation. ..... 30
(d) Property Inspections. ..... 31
(e) Compliance with Laws. ..... 32
SECTION 6.03 MORTGAGE LOAN ADMINISTRATION MATTERS REGARDING THE PROPERTY. ..... 33
(a) Property Management. ..... 33
(b) Subordination of Fees to Affiliated Property Managers. ..... 33


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(c) Property Condition Assessment. .......... 33

**ARTICLE 7 - LEASES AND RENTS .......... 33**

SECTION 7.01 REPRESENTATIONS AND WARRANTIES. .......... 33
(a) Prior Assignment of Rents. .......... 34
(b) Prepaid Rents. .......... 34
SECTION 7.02 COVENANTS. .......... 34
(a) Leases. .......... 34
(b) Commercial Leases. .......... 35
(c) Payment of Rents. .......... 36
(d) Assignment of Rents. .......... 36
(e) Further Assignments of Leases and Rents. .......... 36
(f) Options to Purchase by Tenants. .......... 36
SECTION 7.03 MORTGAGE LOAN ADMINISTRATION REGARDING LEASES AND RENTS. .......... 37
(a) Material Commercial Lease Requirements. .......... 37
(b) Residential Lease Form. .......... 37

**ARTICLE 8 - BOOKS AND RECORDS; FINANCIAL REPORTING .......... 37**

SECTION 8.01 REPRESENTATIONS AND WARRANTIES. .......... 37
(a) Financial Information. .......... 37
(b) No Change in Facts or Circumstances. .......... 38
SECTION 8.02 COVENANTS. .......... 38
(a) Obligation to Maintain Accurate Books and Records. .......... 38
(b) Items to Furnish to Lender. .......... 38
(c) Audited Financials. .......... 41
(d) Delivery of Books and Records. .......... 42
SECTION 8.03 MORTGAGE LOAN ADMINISTRATION MATTERS REGARDING BOOKS AND RECORDS AND FINANCIAL REPORTING. .......... 42
(a) Lender's Right to Obtain Audited Books and Records. .......... 42
(b) Credit Reports; Credit Score. .......... 42

**ARTICLE 9 - INSURANCE .......... 43**

SECTION 9.01 REPRESENTATIONS AND WARRANTIES. .......... 43
(a) Compliance with Insurance Requirements. .......... 43
(b) Property Condition. .......... 43
SECTION 9.02 COVENANTS. .......... 43
(a) Insurance Requirements. .......... 43
(b) Delivery of Policies, Renewals, Notices, and Proceeds. .......... 44
SECTION 9.03 MORTGAGE LOAN ADMINISTRATION MATTERS REGARDING INSURANCE. .......... 44
(a) Lender's Ongoing Insurance Requirements. .......... 44
(b) Application of Proceeds on Event of Loss. .......... 45
(c) Payment Obligations Unaffected. .......... 47
(d) Foreclosure Sale. .......... 48
(e) Appointment of Lender as Attorney-In-Fact. .......... 48

**ARTICLE 10 - CONDEMNATION .......... 48**

SECTION 10.01 REPRESENTATIONS AND WARRANTIES. .......... 48
(a) Prior Condemnation Action. .......... 48


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM


(b) Pending Condemnation Actions. ..... 48
SECTION 10.02 COVENANTS. ..... 48
(a) Notice of Condemnation. ..... 48
(b) Condemnation Proceeds. ..... 49
SECTION 10.03 MORTGAGE LOAN ADMINISTRATION MATTERS REGARDING CONDEMNATION. ..... 49
(a) Application of Condemnation Awards. ..... 49
(b) Payment Obligations Unaffected. ..... 49
(c) Appointment of Lender as Attorney-In-Fact. ..... 49
(d) Preservation of Mortgaged Property. ..... 49

**ARTICLE 11 - LIENS, TRANSFERS, AND ASSUMPTIONS ..... 50**

SECTION 11.01 REPRESENTATIONS AND WARRANTIES. ..... 50
(a) No Labor or Materialmen's Claims. ..... 50
(b) No Other Interests. ..... 50
SECTION 11.02 COVENANTS. ..... 50
(a) Liens; Encumbrances. ..... 50
(b) Transfers. ..... 51
(c) No Other Indebtedness. ..... 55
(d) No Mezzanine Financing or Preferred Equity. ..... 55
SECTION 11.03 MORTGAGE LOAN ADMINISTRATION MATTERS REGARDING LIENS, TRANSFERS, AND ASSUMPTIONS. ..... 55
(a) Assumption of Mortgage Loan. ..... 55
(b) Transfers to Key Principal-Owned Affiliates or Guarantor-Owned Affiliates. ..... 57
(c) Estate Planning. ..... 58
(d) Termination or Revocation of Trust. ..... 58
(e) Death of Key Principal or Guarantor; Transfer Due to Death. ..... 59
(f) Bankruptcy of Guarantor. ..... 60
(g) Further Conditions to Transfers and Assumption. ..... 61

**ARTICLE 12 - IMPOSITIONS ..... 62**

SECTION 12.01 REPRESENTATIONS AND WARRANTIES. ..... 62
(a) Payment of Taxes, Assessments, and Other Charges. ..... 62
SECTION 12.02 COVENANTS. ..... 63
(a) Imposition Deposits, Taxes, and Other Charges. ..... 63
SECTION 12.03 MORTGAGE LOAN ADMINISTRATION MATTERS REGARDING IMPOSITIONS. ..... 63
(a) Maintenance of Records by Lender. ..... 63
(b) Imposition Accounts. ..... 64
(c) Payment of Impositions; Sufficiency of Imposition Deposits. ..... 64
(d) Imposition Deposits Upon Event of Default. ..... 64
(e) Contesting Impositions. ..... 65
(f) Release to Borrower. ..... 65

**ARTICLE 13 – REPLACEMENTS, REPAIRS, AND RESTORATION ..... 65**

SECTION 13.01 COVENANTS. ..... 65
(a) Initial Deposits to Replacement Reserve Account, Repairs Escrow Account, and Restoration Reserve Account. ..... 65
(b) Monthly Replacement Reserve Deposits. ..... 66
(c) Payment and Deliverables for Replacements, Repairs, and Restoration. ..... 66



**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM


(d) Assignment of Contracts for Replacements, Repairs, and Restoration. .......... 66
(e) Indemnification. .......... 66
(f) Amendments to Loan Documents. .......... 67
(g) Administrative Fees and Expenses. .......... 67
SECTION 13.02 MORTGAGE LOAN ADMINISTRATION MATTERS REGARDING RESERVES. .......... 67
(a) Accounts, Deposits, and Disbursements. .......... 67
(b) Approvals of Contracts; Assignment of Claims. .......... 75
(c) Delays and Workmanship. .......... 75
(d) Appointment of Lender as Attorney-In-Fact. .......... 76
(e) No Lender Obligation. .......... 76
(f) No Lender Warranty. .......... 76

**ARTICLE 14 - DEFAULTS/REMEDIES .......... 76**

SECTION 14.01 EVENTS OF DEFAULT. .......... 76
(a) Automatic Events of Default. .......... 77
(b) Events of Default Subject to a Specified Period. .......... 78
(c) Events of Default Subject to Extended Cure Period. .......... 78
SECTION 14.02 REMEDIES. .......... 79
(a) Acceleration; Foreclosure. .......... 79
(b) Loss of Right to Disbursements from Collateral Accounts. .......... 79
(c) Remedies Cumulative. .......... 80
SECTION 14.03 ADDITIONAL LENDER RIGHTS; FORBEARANCE. .......... 80
(a) No Effect Upon Obligations. .......... 80
(b) No Waiver of Rights or Remedies. .......... 81
(c) Appointment of Lender as Attorney-In-Fact. .......... 81
(d) Borrower Waivers. .......... 83
SECTION 14.04 WAIVER OF MARSHALING. .......... 83

**ARTICLE 15 - MISCELLANEOUS .......... 84**

SECTION 15.01 GOVERNING LAW; CONSENT TO JURISDICTION AND VENUE. .......... 84
(a) Governing Law. .......... 84
(b) Venue. .......... 84
SECTION 15.02 NOTICE. .......... 84
(a) Process of Serving Notice. .......... 84
(b) Change of Address. .......... 85
(c) Default Method of Notice. .......... 85
(d) Receipt of Notices. .......... 85
SECTION 15.03 SUCCESSORS AND ASSIGNS BOUND; SALE OF MORTGAGE LOAN. .......... 85
(a) Binding Agreement. .......... 85
(b) Sale of Mortgage Loan; Change of Servicer. .......... 85
SECTION 15.04 COUNTERPARTS. .......... 86
SECTION 15.05 JOINT AND SEVERAL (OR SOLIDARY) LIABILITY. .......... 86
SECTION 15.06 RELATIONSHIP OF PARTIES; NO THIRD PARTY BENEFICIARY. .......... 86
(a) Solely Creditor and Debtor. .......... 86
(b) No Third Party Beneficiaries. .......... 86



**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM


| | | |
|---|---|---|
| SECTION 15.07 | SEVERABILITY; ENTIRE AGREEMENT; AMENDMENTS. | 87 |
| SECTION 15.08 | CONSTRUCTION. | 87 |
| SECTION 15.09 | MORTGAGE LOAN SERVICING. | 88 |
| SECTION 15.10 | DISCLOSURE OF INFORMATION. | 88 |
| SECTION 15.11 | WAIVER; CONFLICT. | 88 |
| SECTION 15.12 | NO RELIANCE. | 88 |
| SECTION 15.13 | SUBROGATION. | 89 |
| SECTION 15.14 | COUNTING OF DAYS. | 89 |
| SECTION 15.15 | REVIVAL AND REINSTATEMENT OF INDEBTEDNESS. | 89 |
| SECTION 15.16 | TIME IS OF THE ESSENCE. | 89 |
| SECTION 15.17 | FINAL AGREEMENT. | 90 |
| SECTION 15.18 | WAIVER OF TRIAL BY JURY. | 90 |
| SECTION 15.19 | TAX SAVINGS CLAUSE. | 90 |



**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# MULTIFAMILY LOAN AND SECURITY AGREEMENT (Non-Recourse)

This MULTIFAMILY LOAN AND SECURITY AGREEMENT (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Loan Agreement**") is made as of the Effective Date (as hereinafter defined) by and between **MCG KNOLLS LLC**, a Missouri limited liability company ("**Borrower**"), and **ARBOR COMMERCIAL FUNDING I, LLC**, a New York limited liability company ("**Lender**").

## RECITALS:

WHEREAS, Borrower desires to obtain the Mortgage Loan (as hereinafter defined) from Lender to be secured by the Mortgaged Property (as hereinafter defined); and

WHEREAS, Lender is willing to make the Mortgage Loan on the terms and conditions contained in this Loan Agreement and in the other Loan Documents (as hereinafter defined);

NOW, THEREFORE, in consideration of the making of the Mortgage Loan by Lender and other good and valuable consideration, the receipt and adequacy of which are hereby conclusively acknowledged, the parties hereby covenant, agree, represent, and warrant as follows:

## AGREEMENTS:

## ARTICLE 1 - DEFINITIONS; SUMMARY OF MORTGAGE LOAN TERMS

### Section 1.01 Defined Terms.

Capitalized terms not otherwise defined in the body of this Loan Agreement shall have the meanings set forth in the Definitions Schedule attached as Schedule 1 to this Loan Agreement.

### Section 1.02 Schedules, Exhibits, and Attachments Incorporated.

The schedules, exhibits, and any other addenda or attachments are incorporated fully into this Loan Agreement by this reference and each constitutes a substantive part of this Loan Agreement.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# ARTICLE 2 - GENERAL MORTGAGE LOAN TERMS

**Section 2.01 Mortgage Loan Origination and Security.**

**(a) Making of Mortgage Loan.**

Subject to the terms and conditions of this Loan Agreement and the other Loan Documents, Lender hereby makes the Mortgage Loan to Borrower, and Borrower hereby accepts the Mortgage Loan from Lender. Borrower covenants and agrees that it shall:

(1) pay the Indebtedness, including the Prepayment Premium, if any (whether in connection with any voluntary prepayment or in connection with an acceleration by Lender of the Indebtedness), in accordance with the terms of this Loan Agreement and the other Loan Documents; and

(2) perform, observe, and comply with this Loan Agreement and all other provisions of the other Loan Documents.

**(b) Security for Mortgage Loan.**

The Mortgage Loan is made pursuant to this Loan Agreement, is evidenced by the Note, and is secured by the Security Instrument, this Loan Agreement, and the other Loan Documents that are expressly stated to be security for the Mortgage Loan.

**(c) Protective Advances.**

As provided in the Security Instrument, Lender may take such actions or disburse such funds as Lender reasonably deems necessary to perform the obligations of Borrower under this Loan Agreement and the other Loan Documents and to protect Lender's interest in the Mortgaged Property.

**Section 2.02 Payments on Mortgage Loan.**

**(a) Debt Service Payments.**

**(1) Short Month Interest.**

If the date the Mortgage Loan proceeds are disbursed is any day other than the first day of the month, interest for the period beginning on the disbursement date and ending on and including the last day of the month in which the disbursement occurs shall be payable by Borrower on the date the Mortgage Loan proceeds are disbursed. In the event that the disbursement date is not the same as the Effective Date, then:

(A) the disbursement date and the Effective Date must be in the same month, and


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(B) the Effective Date shall not be the first day of the month.

**(2) Interest Accrual and Computation.**

Except as provided in Section 2.02(a)(1), interest shall be paid in arrears. Interest shall accrue as provided in the Schedule of Interest Rate Type Provisions and shall be computed in accordance with the Interest Accrual Method. If the Interest Accrual Method is "Actual/360," Borrower acknowledges and agrees that the amount allocated to interest for each month will vary depending on the actual number of calendar days during such month.

**(3) Monthly Debt Service Payments.**

Consecutive monthly debt service installments (comprised of either interest only or principal and interest, depending on the Amortization Type), each in the amount of the applicable Monthly Debt Service Payment, shall be due and payable on the First Payment Date, and on each Payment Date thereafter until the Maturity Date, at which time all Indebtedness shall be due. Any regularly scheduled Monthly Debt Service Payment that is received by Lender before the applicable Payment Date shall be deemed to have been received on such Payment Date solely for the purpose of calculating interest due. All payments made by Borrower under this Loan Agreement shall be made without set-off, counterclaim, or other defense.

**(4) Payment at Maturity.**

The unpaid principal balance of the Mortgage Loan, any Accrued Interest thereon and all other Indebtedness shall be due and payable on the Maturity Date.

**(5) Interest Rate Type.**

See the Schedule of Interest Rate Type Provisions for additional provisions, if any, specific to the Interest Rate Type.

**(b) Capitalization of Accrued But Unpaid Interest.**

Any accrued and unpaid interest on the Mortgage Loan remaining past due for thirty (30) days or more may, at Lender's election, be added to and become part of the unpaid principal balance of the Mortgage Loan.

**(c) Late Charges.**

(1) If any Monthly Debt Service Payment due hereunder is not received by Lender within ten (10) days (or fifteen (15) days for any Mortgaged Property located in Mississippi or North Carolina to comply with applicable law) after the applicable Payment Date, or any amount payable under this Loan Agreement (other than the payment due on


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

the Maturity Date for repayment of the Mortgage Loan in full) or any other Loan Document is not received by Lender within ten (10) days (or fifteen (15) days for any Mortgaged Property located in Mississippi or North Carolina to comply with applicable law) after the date such amount is due, inclusive of the date on which such amount is due, Borrower shall pay to Lender, immediately without demand by Lender, the Late Charge.

The Late Charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate pursuant to Section 2.02(d).

(2) Borrower acknowledges and agrees that:

(A) its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Mortgage Loan;

(B) it is extremely difficult and impractical to determine those additional expenses;

(C) Lender is entitled to be compensated for such additional expenses; and

(D) the Late Charge represents a fair and reasonable estimate, taking into account all circumstances existing on the date hereof, of the additional expenses Lender will incur by reason of any such late payment.

**(d) Default Rate.**

(1) Default interest shall be paid as follows:

(A) If any amount due in respect of the Mortgage Loan (other than amounts due on the Maturity Date) remains past due for thirty (30) days or more, interest on such unpaid amount(s) shall accrue from the date payment is due at the Default Rate and shall be payable upon demand by Lender.

(B) If any Indebtedness due is not paid in full on the Maturity Date, then interest shall accrue at the Default Rate on all such unpaid amounts from the Maturity Date until fully paid and shall be payable upon demand by Lender.

Absent a demand by Lender, any such amounts shall be payable by Borrower in the same manner as provided for the payment of Monthly Debt Service Payments. To the extent permitted by applicable law, interest shall also accrue at the Default Rate on any judgment obtained by Lender against Borrower in connection with the Mortgage Loan. To the extent Borrower or any other Person is vested with a right of redemption, interest shall continue to accrue at the Default Rate during any redemption period until such time as the Mortgaged Property has been redeemed.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(2) Borrower acknowledges and agrees that:

(A) its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Mortgage Loan; and

(B) in connection with any failure to timely pay all amounts due in respect of the Mortgage Loan on the Maturity Date, or during the time that any amount due in respect of the Mortgage Loan is delinquent for more than thirty (30) days:

(i) Lender's risk of nonpayment of the Mortgage Loan will be materially increased;

(ii) Lender's ability to meet its other obligations and to take advantage of other investment opportunities will be adversely impacted;

(iii) Lender will incur additional costs and expenses arising from its loss of the use of the amounts due;

(iv) it is extremely difficult and impractical to determine such additional costs and expenses;

(v) Lender is entitled to be compensated for such additional risks, costs, and expenses; and

(vi) the increase from the Interest Rate to the Default Rate represents a fair and reasonable estimate of the additional risks, costs, and expenses Lender will incur by reason of Borrower's delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquency on the Mortgage Loan (taking into account all circumstances existing on the Effective Date).

**(e) Address for Payments.**

All payments due pursuant to the Loan Documents shall be payable at Lender's Payment Address, or such other place and in such manner as may be designated from time to time by written notice to Borrower by Lender.

**(f) Application of Payments.**

If at any time Lender receives, from Borrower or otherwise, any payment in respect of the Indebtedness that is less than all amounts due and payable at such time, then Lender may apply such payment to amounts then due and payable in any manner and in any order determined by Lender or hold in suspense and not apply such payment at Lender's election. Neither Lender's


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

acceptance of a payment that is less than all amounts then due and payable, nor Lender's application of, or suspension of the application of, such payment, shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such payment to the Indebtedness, Borrower's obligations under this Loan Agreement and the other Loan Documents shall remain unchanged.

**Section 2.03 Lockout/Prepayment.**

**(a) Prepayment; Prepayment Lockout; Prepayment Premium.**

(1) Borrower shall not make a voluntary partial prepayment on the Mortgage Loan at any time during the Loan Term, or a voluntary full prepayment on the Mortgage Loan at any time during any Prepayment Lockout Period. Except as expressly provided in this Loan Agreement (including as provided in the Prepayment Premium Schedule), a Prepayment Premium calculated in accordance with the Prepayment Premium Schedule shall be payable in connection with any prepayment of the Mortgage Loan.

(2) If a Prepayment Lockout Period applies to the Mortgage Loan, and during such Prepayment Lockout Period Lender accelerates the unpaid principal balance of the Mortgage Loan or otherwise applies collateral held by Lender to the repayment of any portion of the unpaid principal balance of the Mortgage Loan, the Prepayment Premium shall be due and payable and equal to the amount obtained by multiplying the percentage indicated (if at all) in the Prepayment Premium Schedule by the amount of principal being prepaid at the time of such acceleration or application.

**(b) Voluntary Prepayment in Full.**

At any time after the expiration of any Prepayment Lockout Period, Borrower may voluntarily prepay the Mortgage Loan in full on a Permitted Prepayment Date so long as:

(1) Borrower delivers to Lender a Prepayment Notice specifying the Intended Prepayment Date not more than sixty (60) days, but not less than thirty (30) days (if given via U.S. Postal Service) or twenty (20) days (if given via facsimile, e-mail, or overnight courier) prior to such Intended Prepayment Date; and

(2) Borrower pays to Lender an amount equal to the sum of:

(A) the entire unpaid principal balance of the Mortgage Loan; plus

(B) all Accrued Interest (calculated through the last day of the month in which the prepayment occurs); plus

(C) the Prepayment Premium; plus

(D) all other Indebtedness.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

In connection with any such voluntary prepayment, Borrower acknowledges and agrees that interest shall always be calculated and paid through the last day of the month in which the prepayment occurs (even if the Permitted Prepayment Date for such month is not the last day of such month, or if Lender approves prepayment on an Intended Prepayment Date that is not a Permitted Prepayment Date). Borrower further acknowledges that Lender is not required to accept a voluntary prepayment of the Mortgage Loan on any day other than a Permitted Prepayment Date. However, if Lender does approve an Intended Prepayment Date that is not a Permitted Prepayment Date and accepts a prepayment on such Intended Prepayment Date, such prepayment shall be deemed to be received on the immediately following Permitted Prepayment Date. If Borrower fails to prepay the Mortgage Loan on the Intended Prepayment Date for any reason (including on any Intended Prepayment Date that is approved by Lender) and such failure either continues for five (5) Business Days, or into the following month, Lender shall have the right to recalculate the payoff amount. If Borrower prepays the Mortgage Loan either in the following month or more than five (5) Business Days after the Intended Prepayment Date that was approved by Lender, Lender shall also have the right to recalculate the payoff amount based upon the amount of such payment and the date such payment was received by Lender. Borrower shall immediately pay to Lender any additional amounts required by any such recalculation.

**(c) Acceleration of Mortgage Loan.**

Upon acceleration of the Mortgage Loan, Borrower shall pay to Lender:

(1) the entire unpaid principal balance of the Mortgage Loan;

(2) all Accrued Interest (calculated through the last day of the month in which the acceleration occurs);

(3) the Prepayment Premium; and

(4) all other Indebtedness.

**(d) Application of Collateral.**

Any application by Lender of any collateral or other security to the repayment of all or any portion of the unpaid principal balance of the Mortgage Loan prior to the Maturity Date in accordance with the Loan Documents shall be deemed to be a prepayment by Borrower. Any such prepayment shall require the payment to Lender by Borrower of the Prepayment Premium calculated on the amount being prepaid in accordance with this Loan Agreement.

**(e) Casualty and Condemnation.**

Notwithstanding any provision of this Loan Agreement to the contrary, no Prepayment Premium shall be payable with respect to any prepayment occurring as a result of the application of (1) any insurance proceeds received in connection with a casualty or (2) any amounts received in connection with a Condemnation Action in accordance with this Loan Agreement.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(f) No Effect on Payment Obligations.**

Unless otherwise expressly provided in this Loan Agreement, any prepayment required by any Loan Document of less than the entire unpaid principal balance of the Mortgage Loan shall not extend or postpone the due date of any subsequent Monthly Debt Service Payments, Monthly Replacement Reserve Deposit, or other payment, or change the amount of any such payments or deposits.

**(g) Loss Resulting from Prepayment.**

In any circumstance in which a Prepayment Premium is due under this Loan Agreement, Borrower acknowledges that:

(1) any prepayment of the unpaid principal balance of the Mortgage Loan, whether voluntary or involuntary, or following the occurrence of an Event of Default by Borrower, will result in Lender's incurring loss, including reinvestment loss, additional risk, expense, and frustration or impairment of Lender's ability to meet its commitments to third parties;

(2) it is extremely difficult and impractical to ascertain the extent of such losses, risks, and damages;

(3) the formula for calculating the Prepayment Premium represents a reasonable estimate of the losses, risks, and damages Lender will incur as a result of a prepayment; and

(4) the provisions regarding the Prepayment Premium contained in this Loan Agreement are a material part of the consideration for the Mortgage Loan, and that the terms of the Mortgage Loan are in other respects more favorable to Borrower as a result of Borrower's voluntary agreement to such prepayment provisions.

## ARTICLE 3 - PERSONAL LIABILITY

**Section 3.01 Non-Recourse Mortgage Loan; Exceptions.**

Except as otherwise provided in this Article 3 or in any other Loan Document, none of Borrower, or any director, officer, manager, member, partner, shareholder, trustee, trust beneficiary, or employee of Borrower, shall have personal liability under this Loan Agreement or any other Loan Document for the repayment of the Indebtedness or for the performance of any other obligations of Borrower under the Loan Documents, and Lender's only recourse for the satisfaction of such Indebtedness and the performance of such obligations shall be Lender's exercise of its rights and remedies with respect to the Mortgaged Property and any other collateral held by Lender as security for the Indebtedness. This limitation on Borrower's liability shall not limit or impair Lender's enforcement of its rights against Guarantor under any Loan Document.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**Section 3.02 Personal Liability of Borrower (Exceptions to Non-Recourse Provision).**

**(a) Personal Liability Based on Lender's Loss.**

Borrower shall be personally liable to Lender for the repayment of the portion of the Indebtedness equal to any loss or damage suffered by Lender as a result of, subject to any notice and cure period, if any:

(1) failure to pay as directed by Lender upon demand after an Event of Default (to the extent actually received by Borrower):

(A) all Rents to which Lender is entitled under the Loan Documents; and

(B) the amount of all security deposits then held or thereafter collected by Borrower from tenants and not properly applied pursuant to the applicable Leases;

(2) failure to maintain all insurance policies required by the Loan Documents, except to the extent Lender has the obligation to pay the premiums pursuant to Section 12.03(c);

(3) failure to apply all insurance proceeds received by Borrower or any amounts received by Borrower in connection with a Condemnation Action, as required by the Loan Documents;

(4) failure to comply with any provision of this Loan Agreement or any other Loan Document relating to the delivery of books and records, statements, schedules, and reports;

(5) except to the extent directed otherwise by Lender pursuant to Section 3.02(a)(1), failure to apply Rents to the ordinary and necessary expenses of owning and operating the Mortgaged Property and Debt Service Amounts, as and when each is due and payable, except that Borrower will not be personally liable with respect to Rents that are distributed by Borrower in any calendar year if Borrower has paid all ordinary and necessary expenses of owning and operating the Mortgaged Property and Debt Service Amounts for such calendar year;

(6) waste or abandonment of the Mortgaged Property;

(7) grossly negligent or reckless unintentional material misrepresentation or omission by Borrower, Guarantor, Key Principal, or any officer, director, partner, manager, member, shareholder, or trustee of Borrower, Guarantor, or Key Principal in connection with ongoing financial or other reporting required by the Loan Documents, or any request for action or consent by Lender; or


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(8) any claims, actions, suits or proceedings arising from any tenant opportunity to purchase act applicable to and affecting the Mortgaged Property, including costs, attorneys' fees, and expenses incurred in connection with such claims, actions, suits or proceedings.

Notwithstanding the foregoing, Borrower shall not have personal liability under clauses (1), (3), or (5) above to the extent that Borrower lacks the legal right to direct the disbursement of the applicable funds due to an involuntary Bankruptcy Event that occurs without the consent, encouragement, or active participation of Borrower, Guarantor, Key Principal, or any Borrower Affiliate.

**(b) Full Personal Liability for Mortgage Loan.**

Borrower shall be personally liable to Lender for the repayment of all of the Indebtedness, and the Mortgage Loan shall be fully recourse to Borrower, upon the occurrence of any of the following:

(1) failure by Borrower to comply with the single-asset entity requirements of Section 4.02(d) of this Loan Agreement;

(2) a Transfer (other than a conveyance of the Mortgaged Property at a Foreclosure Event pursuant to the Security Instrument and this Loan Agreement) that is not permitted under this Loan Agreement or any other Loan Document;

(3) the occurrence of any Bankruptcy Event (other than an acknowledgement in writing as described in clause (b) of the definition of "Bankruptcy Event"); provided, however, in the event of an involuntary Bankruptcy Event, Borrower shall only be personally liable if such involuntary Bankruptcy Event occurs with the consent, encouragement, or active participation of Borrower, Guarantor, Key Principal, or any Borrower Affiliate;

(4) fraud, written material misrepresentation, or material omission by Borrower, Guarantor, Key Principal, or any officer, director, partner, manager, member, shareholder, or trustee of Borrower, Guarantor, or Key Principal in connection with any application for or creation of the Indebtedness;

(5) fraud, written intentional material misrepresentation, or intentional material omission by Borrower, Guarantor, Key Principal, or any officer, director, partner, manager, member, shareholder, or trustee of Borrower, Guarantor, or Key Principal in connection with ongoing financial or other reporting required by the Loan Documents, or any request for action or consent by Lender; or

(6) a Division that is not permitted under this Loan Agreement or any other Loan Document.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**Section 3.03 Personal Liability for Indemnity Obligations.**

Borrower shall be personally and fully liable to Lender for Borrower's indemnity obligations under Section 13.01(e) of this Loan Agreement, the Environmental Indemnity Agreement, and any other express indemnity obligations provided by Borrower under any Loan Document. Borrower's liability for such indemnity obligations shall not be limited by the amount of the Indebtedness, the repayment of the Indebtedness, or otherwise, provided that Borrower's liability for such indemnities shall not include any loss caused by the gross negligence or willful misconduct of Lender as determined by a court of competent jurisdiction pursuant to a final non-appealable court order.

**Section 3.04 Lender's Right to Forego Rights Against Mortgaged Property.**

To the extent that Borrower has personal liability under this Loan Agreement or any other Loan Document, Lender may exercise its rights against Borrower personally to the fullest extent permitted by applicable law without regard to whether Lender has exercised any rights against the Mortgaged Property, the UCC Collateral, or any other security, or pursued any rights against Guarantor, or pursued any other rights available to Lender under this Loan Agreement, any other Loan Document, or applicable law. For purposes of this Section 3.04 only, the term "Mortgaged Property" shall not include any funds that have been applied by Borrower as required or permitted by this Loan Agreement prior to the occurrence of an Event of Default, or that Borrower was unable to apply as required or permitted by this Loan Agreement because of a Bankruptcy Event. To the fullest extent permitted by applicable law, in any action to enforce Borrower's personal liability under this Article 3, Borrower waives any right to set off the value of the Mortgaged Property against such personal liability.

## ARTICLE 4 - BORROWER STATUS

**Section 4.01 Representations and Warranties.**

The representations and warranties made by Borrower to Lender in this Section 4.01 are made as of the Effective Date and are true and correct except as disclosed on the Exceptions to Representations and Warranties Schedule.

**(a) Due Organization and Qualification; Organizational Agreements.**

(1) Borrower is validly existing and qualified to transact business, and in good standing in:

(A) the state in which it is formed or organized;

(B) the state in which the Mortgaged Property is located; and

(C) each other jurisdiction that qualification or good standing is required according to applicable law to conduct its business with respect to the Mortgaged


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Property and where the failure to be so qualified or in good standing would adversely affect Borrower's operation of the Mortgaged Property or the validity, enforceability or the ability of Borrower to perform its obligations under this Loan Agreement or any other Loan Document.

(2) True, correct and complete organizational documents of Borrower, Guarantor and Key Principal have been delivered to Lender prior to the Effective Date. The Ownership Interests Schedule attached hereto as Schedule 8 to this Loan Agreement sets forth:

(A) the direct owners of Borrower and their respective interests;

(B) the indirect owners (and any non-member managers) of Borrower that Control Borrower and their respective interests (excluding any Publicly-Held Corporations or Publicly-Held Trusts); and

(C) the indirect owners of Borrower that hold twenty-five percent (25%) or more of the ownership interests in Borrower and their respective interests (excluding any Publicly-Held Corporations or Publicly-Held Trusts).

**(b) Location.**

Borrower's General Business Address is Borrower's principal place of business and principal office.

**(c) Power and Authority.**

Borrower has the requisite power and authority:

(1) to own the Mortgaged Property and to carry on its business as now conducted and as contemplated to be conducted in connection with the performance of its obligations under this Loan Agreement and under the other Loan Documents to which it is a party; and

(2) to execute and deliver this Loan Agreement and the other Loan Documents to which it is a party, and to carry out the transactions contemplated by this Loan Agreement and the other Loan Documents to which it is a party.

**(d) Due Authorization.**

The execution, delivery, and performance of this Loan Agreement and the other Loan Documents to which it is a party have been duly authorized by all necessary action and proceedings by or on behalf of Borrower, and no further approvals or filings of any kind, including any approval of or filing with any Governmental Authority, are required by or on behalf of Borrower as a condition to the valid execution, delivery, and performance by Borrower of this Loan Agreement

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

or any of the other Loan Documents to which it is a party, except filings required to perfect and maintain the liens to be granted under the Loan Documents and routine filings to maintain good standing and its existence.

**(e) Valid and Binding Obligations.**

This Loan Agreement and the other Loan Documents to which it is a party have been duly executed and delivered by Borrower and constitute the legal, valid, and binding obligations of Borrower, enforceable against Borrower in accordance with their respective terms, except as such enforceability may be limited by applicable Insolvency Laws or by the exercise of discretion by any court.

**(f) Effect of Mortgage Loan on Borrower's Financial Condition.**

The Mortgage Loan will not render Borrower Insolvent. Borrower has sufficient working capital, including proceeds from the Mortgage Loan, cash flow from the Mortgaged Property, or other sources, not only to adequately maintain the Mortgaged Property, but also to pay all of Borrower's outstanding debts as they come due, including all Debt Service Amounts, exclusive of Borrower's ability to refinance or pay in full the Mortgage Loan on the Maturity Date. In connection with the execution and delivery of this Loan Agreement and the other Loan Documents (and the delivery to, or for the benefit of, Lender of any collateral contemplated thereunder), and the incurrence by Borrower of the obligations under this Loan Agreement and the other Loan Documents, Borrower did not receive less than reasonably equivalent value in exchange for the incurrence of the obligations of Borrower under this Loan Agreement and the other Loan Documents.

**(g) Economic Sanctions, Anti-Money Laundering, and Anti-Corruption.**

(1) None of Borrower, Guarantor, or Key Principal, or to Borrower's knowledge, any Person Controlling Borrower, Guarantor, or Key Principal, or any Person Controlled by Borrower, Guarantor, or Key Principal that also has a direct or indirect ownership interest in Borrower, Guarantor, or Key Principal, is in violation of any applicable civil or criminal laws or regulations, including those requiring internal controls, intended to prohibit, prevent, or regulate money laundering, drug trafficking, terrorism, or corruption, of the United States and the jurisdiction where the Mortgaged Property is located or where the Person resides, is domiciled, or has its principal place of business.

(2) None of Borrower, Guarantor, or Key Principal, or to Borrower's knowledge, any Person Controlling Borrower, Guarantor, or Key Principal, or any Person Controlled by Borrower, Guarantor, or Key Principal that also has a direct or indirect ownership interest in Borrower, Guarantor, or Key Principal, is a Person:

(A) against whom proceedings are pending for any alleged violation of any laws described in Section 4.01(g)(1);


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(B) that has been convicted of any violation of, has been subject to civil penalties or Economic Sanctions pursuant to, or had any of its property seized or forfeited under, any laws described in Section 4.01(g)(1);

(C) with whom any United States Person, any entity organized under the laws of the United States or its constituent states or territories, or any entity, regardless of where organized, having its principal place of business within the United States or any of its territories, is prohibited from transacting business of the type contemplated by this Loan Agreement and the other Loan Documents under any other applicable law; or

(D) that is deemed a Sanctioned Person.

(3) Borrower, Guarantor, and Key Principal are in compliance with all applicable Economic Sanctions laws and regulations.

**(h) Borrower Single Asset Status.**

Borrower:

(1) does not own or lease any real property, personal property, or assets other than the Mortgaged Property;

(2) does not own, operate, or participate in any business other than the leasing, ownership, management, operation, and maintenance of the Mortgaged Property;

(3) has no material financial obligation under or secured by any indenture, mortgage, deed of trust, deed to secure debt, loan agreement, or other agreement or instrument to which Borrower is a party, or by which Borrower is otherwise bound, or to which the Mortgaged Property is subject or by which it is otherwise encumbered, other than:

(A) Permitted Equipment Financing and unsecured trade payables incurred in the ordinary course of the operation of the Mortgaged Property (exclusive of amounts for rehabilitation, restoration, repairs, or replacements of the Mortgaged Property) that (i) are not evidenced by a promissory note, (ii) are payable within sixty (60) days of the date incurred, and (iii) as of the Effective Date, do not exceed, in the aggregate, four percent (4%) of the original principal balance of the Mortgage Loan;

(B) if the Security Instrument grants a lien on a leasehold estate, Borrower's obligations as lessee under the ground lease creating such leasehold estate;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(C) obligations under the Loan Documents and obligations secured by the Mortgaged Property to the extent permitted by the Loan Documents; and

(D) obligations under the Permitted Encumbrances;

(4) has maintained its financial statements, accounting records, and other partnership, real estate investment trust, limited liability company, or corporate documents, as the case may be, separate from those of any other Person (unless Borrower's assets have been included in a consolidated financial statement prepared in accordance with generally accepted accounting principles);

(5) has not commingled its assets or funds with those of any other Person, unless such assets or funds can easily be segregated and identified in the ordinary course of business from those of any other Person;

(6) has been adequately capitalized in light of its contemplated business operations;

(7) has not assumed, guaranteed, or pledged its assets to secure the liabilities or obligations of any other Person (except in connection with the Mortgage Loan or other mortgage loans that have been paid in full or collaterally assigned to Lender, including in connection with any Consolidation, Extension and Modification Agreement or similar instrument), or held out its credit as being available to satisfy the obligations of any other Person;

(8) has not made loans or advances to any other Person;

(9) has not entered into, and is not a party to, any transaction with any Borrower Affiliate, except in the ordinary course of business and on terms which are no more favorable to any such Borrower Affiliate than would be obtained in a comparable arm's-length transaction with an unrelated third party; and

(10) has not sought and has no plans to Divide at any time during the Loan Term.

**(i) No Bankruptcies or Judgments.**

None of Borrower, Guarantor, or Key Principal, or to Borrower's knowledge, any Person Controlling Borrower, Guarantor, or Key Principal, or any Person Controlled by Borrower, Guarantor, or Key Principal that also has a direct or indirect ownership interest in Borrower, Guarantor, or Key Principal, is currently:

(1) the subject of or a party to any completed or pending bankruptcy, reorganization, including any receivership or other insolvency proceeding;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(2) preparing or intending to be the subject of a Bankruptcy Event or a Guarantor Bankruptcy Event;

(3) the subject of any judgment unsatisfied of record or docketed in any court; or

(4) Insolvent.

**(j) No Actions or Litigation.**

(1) Other than residential eviction actions in the ordinary course of business, there are no claims, actions, suits, or proceedings at law or in equity by or before any Governmental Authority now pending against or, to Borrower's knowledge, threatened against or affecting Borrower or the Mortgaged Property not otherwise covered by insurance (except claims, actions, suits, or proceedings regarding fair housing, anti-discrimination, equal opportunity, or any tenant opportunity to purchase act applicable to and affecting the Mortgaged Property, which shall always be disclosed); and

(2) there are no claims, actions, suits, or proceedings at law or in equity by or before any Governmental Authority now pending or, to Borrower's knowledge, threatened against or affecting Guarantor or Key Principal, which claims, actions, suits, or proceedings, if adversely determined (individually or in the aggregate) reasonably would be expected to materially adversely affect the financial condition or business of Borrower, Guarantor, or Key Principal or the condition, operation, or ownership of the Mortgaged Property (except claims, actions, suits, or proceedings regarding fair housing, anti-discrimination, or equal opportunity, which shall always be deemed material).

**(k) Payment of Taxes, Assessments, and Other Charges.**

Borrower confirms that:

(1) it has filed all federal, state, county, and municipal tax returns and reports required to have been filed by Borrower;

(2) it has paid, before any fine, penalty interest, lien, or costs may be added thereto, all taxes, governmental charges, and assessments due and payable with respect to such returns and reports;

(3) there is no controversy or objection pending, or to the knowledge of Borrower, threatened in respect of any tax returns of Borrower; and

(4) it has made adequate reserves on its books and records for all taxes that have accrued but which are not yet due and payable.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(l) Not a Foreign Person.**

Borrower is not a "foreign person" within the meaning of Section 1445(f)(3) of the Internal Revenue Code.

**(m) ERISA.**

Borrower represents and warrants that:

(1) Borrower is not an Employee Benefit Plan;

(2) no asset of Borrower constitutes "plan assets" (within the meaning of Section 3(42) of ERISA and Department of Labor Regulation Section 2510.3-101) of an Employee Benefit Plan;

(3) no asset of Borrower is subject to any laws of any Governmental Authority governing the assets of an Employee Benefit Plan; and

(4) neither Borrower nor any ERISA Affiliate is subject to any obligation or liability with respect to any ERISA Plan.

**(n) Default Under Other Obligations.**

(1) The execution, delivery, and performance of the obligations imposed on Borrower under this Loan Agreement and the Loan Documents to which it is a party will not cause Borrower to be in default under the provisions of any agreement, judgment, or order to which Borrower is a party or by which Borrower is bound.

(2) None of Borrower, Guarantor, or Key Principal is in default under any obligation to Lender.

**(o) Prohibited Person.**

None of Borrower, Guarantor, or Key Principal is a Prohibited Person. To Borrower's knowledge, none of the following is a Prohibited Person:

(1) Any Person Controlling Borrower, Guarantor, or Key Principal; or

(2) Any Person Controlled by and having a direct or indirect ownership interest in Borrower, Guarantor, or Key Principal.

**(p) No Contravention.**

None of the (1) execution and delivery of this Loan Agreement and the other Loan Documents to which Borrower is a party, (2) fulfillment of or compliance with the terms and conditions of this Loan Agreement and the other Loan Documents to which Borrower is a party,


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

or (3) performance of the obligations of Borrower under this Loan Agreement and the other Loan Documents does or will conflict with or result in any breach or violation of, or constitute a default under, any of the terms, conditions, or provisions of Borrower's organizational documents, or any indenture, existing agreement, or other instrument to which Borrower is a party or to which Borrower, the Mortgaged Property, or other assets of Borrower are subject.

**(q) Lockbox Arrangement.**

Borrower is not party to any type of lockbox agreement or similar cash management arrangement that has not been approved by Lender in writing, and no direct or indirect owner of Borrower is party to any type of lockbox agreement or similar cash management arrangement with respect to Rents or other income from the Mortgaged Property that has not been approved by Lender in writing.

**Section 4.02 Covenants.**

**(a) Maintenance of Existence; Organizational Documents.**

Borrower shall maintain its existence, its entity status, franchises, rights, and privileges under the laws of the state of its formation or organization (as applicable). Borrower shall continue to be duly qualified and in good standing to transact business in each state in which qualification or standing is required according to applicable law to conduct its business with respect to the Mortgaged Property and where the failure to do so would adversely affect Borrower's operation of the Mortgaged Property or the validity, enforceability, or the ability of Borrower to perform its obligations under this Loan Agreement or any other Loan Document. Neither Borrower nor any partner, member, manager, officer, or director of Borrower shall:

(1) make or allow any material change to the organizational documents or organizational structure of Borrower, including changes relating to the Control of Borrower, or

(2) file any action, complaint, petition, or other claim to:

(A) divide, partition, or otherwise compel the sale of the Mortgaged Property, or

(B) otherwise change the Control of Borrower.

**(b) Economic Sanctions, Anti-Money Laundering, and Anti-Corruption.**

(1) Borrower, Guarantor, Key Principal, and any Person Controlling Borrower, Guarantor, or Key Principal, or any Person Controlled by Borrower, Guarantor, or Key Principal that also has a direct or indirect ownership interest in Borrower, Guarantor, or Key Principal shall remain in compliance with any applicable civil or criminal laws or regulations (including those requiring internal controls) intended to prohibit, prevent, or


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

regulate money laundering, drug trafficking, terrorism, or corruption, of the United States and the jurisdiction where the Mortgaged Property is located or where the Person resides, is domiciled, or has its principal place of business.

(2) At no time shall Borrower, Guarantor, or Key Principal, or any Person Controlling Borrower, Guarantor, or Key Principal, or any Person Controlled by Borrower, Guarantor, or Key Principal that also has a direct or indirect ownership interest in Borrower, Guarantor, or Key Principal, be a Person:

(A) against whom proceedings are pending for any alleged violation of any laws described in Section 4.02(b)(1);

(B) that has been convicted of any violation of, has been subject to civil penalties or Economic Sanctions pursuant to, or had any of its property seized or forfeited under, any laws described in Section 4.02(b)(1);

(C) with whom any United States Person, any entity organized under the laws of the United States or its constituent states or territories, or any entity, regardless of where organized, having its principal place of business within the United States or any of its territories, is prohibited from transacting business of the type contemplated by this Loan Agreement and the other Loan Documents under any other applicable law; or

(D) that is deemed a Sanctioned Person.

(3) Borrower, Guarantor, and Key Principal shall at all times remain in compliance with any applicable Economic Sanctions laws and regulations.

**(c) Payment of Taxes, Assessments, and Other Charges.**

Borrower shall file all federal, state, county, and municipal tax returns and reports required to be filed by Borrower and shall pay, before any fine, penalty interest, or cost may be added thereto, all taxes payable with respect to such returns and reports.

**(d) Borrower Single Asset Status.**

Until the Indebtedness is fully paid, Borrower:

(1) shall not acquire or lease any real property, personal property, or assets other than the Mortgaged Property;

(2) shall not acquire, own, operate, or participate in any business other than the leasing, ownership, management, operation, and maintenance of the Mortgaged Property;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(3) shall not commingle its assets or funds with those of any other Person, unless such assets or funds can easily be segregated and identified in the ordinary course of business from those of any other Person;

(4) shall maintain its financial statements, accounting records, and other partnership, real estate investment trust, limited liability company, or corporate documents, as the case may be, separate from those of any other Person (unless Borrower's assets are included in a consolidated financial statement prepared in accordance with generally accepted accounting principles);

(5) shall have no material financial obligation under any indenture, mortgage, deed of trust, deed to secure debt, loan agreement, other agreement or instrument to which Borrower is a party or by which Borrower is otherwise bound, or to which the Mortgaged Property is subject or by which it is otherwise encumbered, other than:

(A) Permitted Equipment Financing or unsecured trade payables incurred in the ordinary course of the operation of the Mortgaged Property (exclusive of amounts (i) to be paid out of the Replacement Reserve Account or Repairs Escrow Account, or (ii) for rehabilitation, restoration, repairs, or replacements of the Mortgaged Property or otherwise approved by Lender) so long as such trade payables (1) are not evidenced by a promissory note, (2) are payable within sixty (60) days of the date incurred, and (3) as of any date, do not exceed, in the aggregate, two percent (2%) of the original principal balance of the Mortgage Loan; provided, however, that otherwise compliant outstanding trade payables may exceed two percent (2%) up to an aggregate amount of four percent (4%) of the original principal balance of the Mortgage Loan for a period (beginning on or after the Effective Date) not to exceed ninety (90) consecutive days;

(B) if the Security Instrument grants a lien on a leasehold estate, Borrower's obligations as lessee under the ground lease creating such leasehold estate;

(C) obligations under the Loan Documents and obligations secured by the Mortgaged Property to the extent permitted by the Loan Documents; and

(D) obligations under the Permitted Encumbrances;

(6) shall not assume, guaranty, or pledge its assets to secure the liabilities or obligations of any other Person (except in connection with the Mortgage Loan or other mortgage loans that have been paid in full or collaterally assigned to Lender, including in connection with any Consolidation, Extension and Modification Agreement or similar instrument) or hold out its credit as being available to satisfy the obligations of any other Person;

(7) shall not make loans or advances to any other Person;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(8) shall not enter into, or become a party to, any transaction with any Borrower Affiliate, except in the ordinary course of business and on terms which are no more favorable to any such Borrower Affiliate than would be obtained in a comparable arm's-length transaction with an unrelated third party; or

(9) shall not Divide.

**(e) ERISA.**

Borrower covenants that:

(1) no asset of Borrower shall constitute "plan assets" (within the meaning of Section 3(42) of ERISA and Department of Labor Regulation Section 2510.3-101) of an Employee Benefit Plan;

(2) no asset of Borrower shall be subject to the laws of any Governmental Authority governing the assets of an Employee Benefit Plan; and

(3) neither Borrower nor any ERISA Affiliate shall incur any obligation or liability with respect to any ERISA Plan.

**(f) Notice of Litigation or Insolvency.**

Borrower shall give immediate written notice to Lender of any claims, actions, suits, or proceedings at law or in equity (including any insolvency, bankruptcy, or receivership proceeding) by or before any Governmental Authority pending or, to Borrower's knowledge, threatened against or affecting Borrower, Guarantor, Key Principal, or the Mortgaged Property, which claims, actions, suits, or proceedings, if adversely determined reasonably would be expected to materially adversely affect the financial condition or business of Borrower, Guarantor, or Key Principal, or the condition, operation, or ownership of the Mortgaged Property (including any claims, actions, suits, or proceedings regarding fair housing, anti-discrimination, equal opportunity, or any tenant opportunity to purchase act applicable to and affecting the Mortgaged Property, which shall always be deemed material).

**(g) Payment of Costs, Fees, and Expenses.**

In addition to the payments specified in this Loan Agreement, Borrower shall pay, on demand, all of Lender's out-of-pocket fees, costs, charges, or expenses (including the reasonable fees and expenses of attorneys, accountants, and other experts) incurred by Lender in connection with:

(1) any amendment to, or consent, or waiver required under, this Loan Agreement or any of the Loan Documents (whether or not any such amendment, consent, or waiver is entered into);


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(2) defending or participating in any litigation arising from actions by third parties and brought against or involving Lender with respect to:

(A) the Mortgaged Property;

(B) any event, act, condition, or circumstance in connection with the Mortgaged Property; or

(C) the relationship between or among Lender, Borrower, Key Principal, and Guarantor in connection with this Loan Agreement or any of the transactions contemplated by this Loan Agreement;

(3) the administration or enforcement of, or preservation of rights or remedies under, this Loan Agreement or any other Loan Documents including or in connection with any litigation or appeals, any Foreclosure Event or other disposition of any collateral granted pursuant to the Loan Documents; and

(4) any Bankruptcy Event or Guarantor Bankruptcy Event.

**(h) Restrictions on Distributions.**

No distributions or dividends of any nature with respect to Rents or other income from the Mortgaged Property shall be made to any Person having a direct ownership interest in Borrower if an Event of Default has occurred and is continuing.

**(i) Lockbox Arrangement.**

Borrower shall not enter into any type of lockbox agreement or similar cash management arrangement that has not been approved by Lender in writing, and no direct or indirect owner of Borrower shall enter into any type of lockbox agreement or similar cash management arrangement with respect to Rents or other income from the Mortgaged Property that has not been approved by Lender in writing. Lender's approval of any such cash management arrangement may be conditioned upon requiring Borrower to enter into a lockbox agreement or similar cash management arrangement with Lender in form and substance acceptable to Lender with regard to Rents and other income from the Mortgaged Property.

## ARTICLE 5 - THE MORTGAGE LOAN

### Section 5.01 Representations and Warranties.

The representations and warranties made by Borrower to Lender in this Section 5.01 are made as of the Effective Date and are true and correct except as disclosed on the Exceptions to Representations and Warranties Schedule.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(a) Receipt and Review of Loan Documents.**

Borrower has received and reviewed this Loan Agreement and all of the other Loan Documents.

**(b) No Default.**

No default exists under any of the Loan Documents.

**(c) No Defenses.**

The Loan Documents are not currently subject to any right of rescission, set-off, counterclaim, or defense by either Borrower or Guarantor, including the defense of usury, and neither Borrower nor Guarantor has asserted any right of rescission, set-off, counterclaim, or defense with respect thereto.

**(d) Loan Document Taxes.**

All mortgage, mortgage recording, stamp, intangible, or any other similar taxes required to be paid by any Person under applicable law currently in effect in connection with the execution, delivery, recordation, filing, registration, perfection, or enforcement of any of the Loan Documents, including the Security Instrument, have been paid or will be paid in the ordinary course of the closing of the Mortgage Loan.

**Section 5.02 Covenants.**

**(a) Ratification of Covenants; Estoppels; Certifications.**

Borrower shall:

(1) promptly notify Lender in writing upon any violation of any covenant set forth in any Loan Document of which Borrower has notice or knowledge; provided, however, any such written notice by Borrower to Lender shall not relieve Borrower of, or result in a waiver of, any obligation under this Loan Agreement or any other Loan Document; and

(2) within ten (10) days after a request from Lender, provide a written statement, signed and acknowledged by Borrower, certifying to Lender or any person designated by Lender, as of the date of such statement:

(A) that the Loan Documents are unmodified and in full force and effect (or, if there have been modifications, that the Loan Documents are in full force and effect as modified and setting forth such modifications);

(B) the unpaid principal balance of the Mortgage Loan;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(C) the date to which interest on the Mortgage Loan has been paid;

(D) that Borrower is not in default in paying the Indebtedness or in performing or observing any of the covenants or agreements contained in this Loan Agreement or any of the other Loan Documents (or, if Borrower is in default, describing such default in reasonable detail);

(E) whether or not there are then-existing any setoffs or defenses known to Borrower against the enforcement of any right or remedy of Lender under the Loan Documents; and

(F) any additional facts reasonably requested in writing by Lender.

**(b) Further Assurances.**

**(1) Other Documents As Lender May Require.**

Within ten (10) days after request by Lender, Borrower shall, subject to Section 5.02(d) below, execute, acknowledge, deliver, and, if necessary, file or record, at its cost and expense, all further acts, deeds, conveyances, assignments, financing statements, transfers, documents, agreements, assurances, and such other instruments as Lender may reasonably require from time to time in order to better assure, grant, and convey to Lender the rights intended to be granted, now or in the future, to Lender under this Loan Agreement and the other Loan Documents.

**(2) Corrective Actions.**

Within ten (10) days after request by Lender, Borrower shall provide, or cause to be provided, to Lender, at Borrower's cost and expense, such further documentation or information reasonably deemed necessary or appropriate by Lender in the exercise of its rights under the related commitment letter between Borrower and Lender or to correct patent mistakes in the Loan Documents, the Title Policy, or the funding of the Mortgage Loan.

**(3) Compliance with Investor Requirements.**

Without limiting the generality of subsections (1) and (2) above, Borrower shall, subject to Section 5.02(d) below, take all reasonable actions necessary to comply with the requirements of Lender to enable Lender to sell any MBS backed by the Mortgage Loan or create or maintain the expected federal income tax treatment of any MBS trust that directly or indirectly holds the Mortgage Loan and issues MBS as a Fixed Investment Trust or REMIC, as the case may be, within the meaning of the Treasury Regulations.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(c) Sale of Mortgage Loan.**

Borrower shall, subject to Section 5.02(d) below:

(1) comply with the reasonable requirements of Lender or any Investor of the Mortgage Loan or provide, or cause to be provided, to Lender or any Investor of the Mortgage Loan within ten (10) days after the request, at Borrower's cost and expense, such further documentation or information as Lender or Investor may reasonably require, in order to:

(A) enable Lender to sell the Mortgage Loan or participation interests therein to such Investor;

(B) enable Lender to obtain a refund of any commitment fee from any such Investor;

(C) enable any such Investor to further sell or securitize the Mortgage Loan; or

(D) create or maintain the expected federal income tax treatment of any MBS trust that directly or indirectly holds the Mortgage Loan and issues MBS as a Fixed Investment Trust or REMIC, as the case may be, within the meaning of the Treasury Regulations;

(2) ratify and affirm in writing the representations and warranties set forth in any Loan Document as of such date specified by Lender modified as necessary to reflect changes that have occurred subsequent to the Effective Date;

(3) confirm that Borrower is not in default in paying the Indebtedness or in performing or observing any of the covenants or agreements contained in this Loan Agreement or any of the other Loan Documents (or, if Borrower is in default, describing such default in reasonable detail); and

(4) execute and deliver to Lender and/or any Investor such other documentation, including any amendments, corrections, deletions, or additions to this Loan Agreement or other Loan Document(s) as is reasonably required by Lender or such Investor.

**(d) Limitations on Further Acts of Borrower.**

Nothing in Section 5.02(b) and Section 5.02(c) shall require Borrower to do any further act that has the effect of:

(1) changing the economic terms of the Mortgage Loan set forth in the related commitment letter between Borrower and Lender;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(2) imposing on Borrower or Guarantor greater personal liability under the Loan Documents than that set forth in the related commitment letter between Borrower and Lender; or

(3) materially changing the rights and obligations of Borrower or Guarantor under the commitment letter.

**(e) Financing Statements; Record Searches.**

(1) Borrower shall pay all costs and expenses associated with:

(A) any filing or recording of any financing statements, including all continuation statements, termination statements, and amendments or any other filings related to security interests in or liens on collateral; and

(B) any record searches for financing statements that Lender may require.

(2) Borrower hereby authorizes Lender to file any financing statements, continuation statements, termination statements, and amendments (including an "all assets" or "all personal property" collateral description or words of similar import) in form and substance as Lender may require in order to protect and preserve Lender's lien priority and security interest in the Mortgaged Property (and to the extent Lender has filed any such financing statements, continuation statements, or amendments prior to the Effective Date, such filings by Lender are hereby authorized and ratified by Borrower).

**(f) Loan Document Taxes.**

Borrower shall pay, on demand, any transfer taxes, documentary taxes, assessments, or charges made by any Governmental Authority in connection with the execution, delivery, recordation, filing, registration, perfection, or enforcement of any of the Loan Documents or the Mortgage Loan.

## ARTICLE 6 - PROPERTY USE, PRESERVATION, AND MAINTENANCE

### Section 6.01 Representations and Warranties.

The representations and warranties made by Borrower to Lender in this Section 6.01 are made as of the Effective Date and are true and correct except as disclosed on the Exceptions to Representations and Warranties Schedule.

**(a) Compliance with Law; Permits and Licenses.**

(1) To Borrower's knowledge, all improvements to the Land and the use of the Mortgaged Property comply with all applicable laws, ordinances, statutes, rules, and


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

regulations, including all applicable statutes, rules, and regulations pertaining to requirements for equal opportunity, anti-discrimination, fair housing (including all applicable source of income laws, ordinances, statutes, rules and regulations), and rent control, and Borrower has no knowledge of any action or proceeding (or threatened action or proceeding) regarding noncompliance or nonconformity with any of the foregoing.

(2) To Borrower's knowledge, there is no evidence of any illegal activities on the Mortgaged Property.

(3) To Borrower's knowledge, no permits or approvals from any Governmental Authority, other than those previously obtained and furnished to Lender, are necessary for the commencement and completion of the Repairs or Replacements, as applicable, other than those permits or approvals which will be timely obtained in the ordinary course of business.

(4) All required permits, licenses, and certificates to comply with all zoning and land use statutes, laws, ordinances, rules, and regulations, and all applicable health, fire, safety, and building codes, and for the lawful use and operation of the Mortgaged Property, including certificates of occupancy, apartment licenses, or the equivalent, have been obtained and are in full force and effect.

(5) No portion of the Mortgaged Property has been purchased with the proceeds of any illegal activity.

(6) All required rights, permissions, consents, and express waivers from each tenant necessary to comply with all applicable privacy laws, to provide such tenant's personal data (including similar terms under applicable law) to Lender, sufficient to permit Lender to lawfully use and process such personal data for the purposes of servicing, enforcement, evaluation, reporting, auditing, loan selling or purchasing, securitization, compliance and risk analysis and assessments, and any other purpose identified in the Lender's privacy notice have been obtained and are in full force and effect.

**(b) Property Characteristics.**

(1) The Mortgaged Property contains at least:

(A) the Property Square Footage;

(B) the Total Parking Spaces; and

(C) the Total Residential Units.

(2) No part of the Land is included or assessed under or as part of another tax lot or parcel, and no part of any other property is included or assessed under or as part of the tax lot or parcels for the Land.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(c) Property Ownership.**

Borrower is sole owner or ground lessee of the Mortgaged Property.

**(d) Condition of the Mortgaged Property.**

(1) Borrower has not made any claims, and to Borrower's knowledge, no claims have been made, against any contractor, engineer, architect, or other party with respect to the construction or condition of the Mortgaged Property or the existence of any structural or other material defect therein; and

(2) neither the Land nor the Improvements have sustained any damage other than damage which has been fully repaired, or is fully insured and is being repaired in the ordinary course of business.

**(e) Personal Property.**

Borrower owns (or, to the extent disclosed on the Exceptions to Representations and Warranties Schedule, leases) all of the Personal Property and all of the Personalty (as defined in the Security Instrument) that is material to and is used in connection with the management, ownership, and operation of the Mortgaged Property.

**Section 6.02 Covenants.**

**(a) Use of Property.**

From and after the Effective Date, Borrower shall not, unless required by applicable law or Governmental Authority:

(1) change the use of all or any part of the Mortgaged Property;

(2) convert any individual dwelling units or common areas to commercial use, or convert any common area or commercial use to individual dwelling units;

(3) initiate or acquiesce in a change in the zoning classification of the Land;

(4) establish any condominium or cooperative regime with respect to the Mortgaged Property;

(5) subdivide the Land; or

(6) suffer, permit, or initiate the joint assessment of the Mortgaged Property with any other real property constituting a tax lot separate from the Mortgaged Property which could cause the part of the Land to be included or assessed under or as part of another tax lot or parcel, or any part of any other property to be included or assessed under or as part of the tax lot or parcels for the Land.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(b) Property Maintenance.**

Borrower shall:

(1) pay the expenses of operating, managing, maintaining, and repairing the Mortgaged Property (including insurance premiums, utilities, Repairs, and Replacements) before the last date upon which each such payment may be made without any penalty or interest charge being added;

(2) keep the Mortgaged Property in good repair and marketable condition (ordinary wear and tear excepted) (including the replacement of Personalty and Fixtures with items of equal or better function and quality unless such items are no longer required in connection with operation of the Mortgaged Property) and subject to Section 9.03(b)(3) and Section 10.03(d) restore or repair promptly, in a good and workmanlike manner, any damaged part of the Mortgaged Property to the equivalent of its original condition or condition immediately prior to the damage (if improved after the Effective Date), whether or not any insurance proceeds received upon an event of loss or any amounts received in connection with a Condemnation Action are available to cover any costs of such restoration or repair;

(3) commence all Required Repairs, Additional Lender Repairs, and Additional Lender Replacements as follows:

(A) with respect to any Required Repairs, promptly following the Effective Date (subject to Force Majeure, if applicable), in accordance with the timelines set forth on the Required Repair Schedule, or if no timelines are provided, as soon as practical following the Effective Date;

(B) with respect to Additional Lender Repairs, in the event that Lender determines that Additional Lender Repairs are necessary from time to time or pursuant to Section 6.03(c), promptly following Lender's written notice of such Additional Lender Repairs (subject to Force Majeure, if applicable), commence any such Additional Lender Repairs in accordance with Lender's timelines, or if no timelines are provided, as soon as practical; and

(C) with respect to Additional Lender Replacements, in the event that Lender determines that Additional Lender Replacements are necessary from time to time or pursuant to Section 6.03(c), promptly following Lender's written notice of such Additional Lender Replacements (subject to Force Majeure, if applicable), commence any such Additional Lender Replacements in accordance with Lender's timelines, or if no timelines are provided, as soon as practical;

(4) make, construct, install, diligently perform, and complete all Replacements, Repairs, Restoration, and any other work permitted under the Loan Documents:


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(A) in a good and workmanlike manner as soon as practicable following the commencement thereof, free and clear of any Liens, including mechanics' or materialmen's liens and encumbrances (except Permitted Encumbrances and mechanics' or materialmen's liens which attach automatically under the laws of any Governmental Authority upon the commencement of any work upon, or delivery of any materials to, the Mortgaged Property and for which Borrower is not delinquent in the payment for any such work or materials);

(B) in accordance with all applicable laws, ordinances, rules, and regulations of any Governmental Authority, including applicable building codes, special use permits, and environmental regulations;

(C) in accordance with all applicable insurance and bonding requirements; and

(D) within all timeframes required by Lender, and Borrower acknowledges that it shall be an Event of Default if Borrower abandons or ceases work on any Repair at any time prior to the completion of the Repairs for a period of longer than twenty (20) days (except when Force Majeure exists and Borrower is diligently pursuing the reinstitution of such work, provided, however, any such abandonment or cessation shall not in any event allow the Repair to be completed after the Completion Period, subject to Force Majeure);

(5) subject to the terms of Section 6.03(a), provide for professional management of the Mortgaged Property by a residential rental property manager satisfactory to Lender under a contract approved by Lender in writing;

(6) give written notice to Lender of, and, unless otherwise directed in writing by Lender, appear in and defend any action or proceeding purporting to affect the Mortgaged Property, Lender's security for the Mortgage Loan, or Lender's rights under this Loan Agreement; and

(7) upon Lender's written request, submit to Lender any contracts or work orders described in Section 13.02(b).

**(c) Property Preservation.**

Borrower shall:

(1) not commit waste or abandon or (ordinary wear and tear excepted) permit impairment or deterioration of the Mortgaged Property;

(2) not (or otherwise permit any other Person to) demolish, make any change in the unit mix, otherwise alter the Mortgaged Property or any part of the Mortgaged Property, or remove any Personalty or Fixtures from the Mortgaged Property, except for:


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(A) alterations required in connection with Repairs, Replacements, or Restoration; or (B) the replacement of tangible Personalty or Fixtures, provided (i) such Personalty or Fixtures are replaced with items of equal or better function and quality unless such items are no longer required in connection with operation of the Mortgaged Property, and (ii) such replacement does not result in any disruption in occupancy (other than in connection with the routine re-leasing of units);

(3) not engage in or knowingly permit, and shall take appropriate measures to prevent and abate or cease and desist, any illegal activities at the Mortgaged Property that could endanger tenants or visitors, result in damage to the Mortgaged Property, result in forfeiture of the Land or otherwise materially impair the lien created by the Security Instrument or Lender's interest in the Mortgaged Property;

(4) not permit any condition to exist on the Mortgaged Property that would invalidate any part of any insurance coverage required by this Loan Agreement; or

(5) not subject the Mortgaged Property to any voluntary, elective, or non-compulsory tax lien or assessment (or opt in to any voluntary, elective, or non-compulsory special tax district or similar regime).

**(d) Property Inspections.**

Borrower shall:

(1) permit Lender, its agents, representatives, and designees to enter upon and inspect the Mortgaged Property (including in connection with any Replacement, Repair, or Restoration, or to conduct any Environmental Inspection pursuant to the Environmental Indemnity Agreement), and shall cooperate and provide access to all areas of the Mortgaged Property (subject to the rights of tenants under the Leases):

(A) during normal business hours;

(B) at such other reasonable time upon reasonable notice of not less than one (1) Business Day;

(C) at any time when exigent circumstances exist; or

(D) at any time after an Event of Default has occurred and is continuing; and

(2) pay for reasonable costs or expenses incurred by Lender or its agents in connection with any such inspections.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(e) Compliance with Laws.**

Borrower shall:

(1) comply with all laws, ordinances, statutes, rules, and regulations of any Governmental Authority and all recorded lawful covenants and agreements relating to or affecting the Mortgaged Property, including all laws, ordinances, statutes, rules and regulations, and covenants pertaining to construction of improvements on the Land, fair housing (including all applicable source of income laws, ordinances, statutes, rules and regulations), and requirements for equal opportunity, anti-discrimination, and Leases;

(2) procure and maintain all required permits, licenses, charters, registrations, and certificates necessary to comply with all zoning and land use statutes, laws, ordinances, rules and regulations, and all applicable health, fire, safety, and building codes and for the lawful use and operation of the Mortgaged Property, including certificates of occupancy, apartment licenses, or the equivalent;

(3) comply with all applicable laws that pertain to the maintenance and disposition of tenant security deposits;

(4) at all times maintain records sufficient to demonstrate compliance with the provisions of this Section 6.02(e);

(5) promptly after receipt or notification thereof, provide Lender copies of any building code or zoning violation from any Governmental Authority with respect to the Mortgaged Property;

(6) cooperate fully with Lender with respect to any proceedings before any court, board, or other Governmental Authority which may in any way affect the rights of Lender hereunder or any rights obtained by Lender under any of the other Loan Documents and, in connection therewith, permit Lender, at its election, to participate in any such proceedings; and

(7) procure and maintain all required rights, permissions, consents, and express waivers from each tenant necessary to comply with all applicable privacy laws, to provide such tenant's personal data (including similar terms under applicable law) to Lender, sufficient to permit Lender to lawfully use and process such personal data for the purposes of servicing, enforcement, evaluation, reporting, auditing, loan selling or purchasing, securitization, compliance and risk analysis and assessments, and any other purpose identified in the Lender's privacy notice as amended from time to time.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**Section 6.03 Mortgage Loan Administration Matters Regarding the Property.**

**(a) Property Management.**

From and after the Effective Date, each property manager and each property management agreement must be approved by Lender. If, in connection with the making of the Mortgage Loan, or at any later date, Lender waives in writing the requirement that Borrower enter into a written contract for management of the Mortgaged Property, and Borrower later elects to enter into a written contract or change the management of the Mortgaged Property, such new property manager or the property management agreement must be approved by Lender. As a condition to any approval by Lender, Lender may require that Borrower and such new property manager enter into a collateral assignment of the property management agreement on a form approved by Lender.

**(b) Subordination of Fees to Affiliated Property Managers.**

Any property manager that is a Borrower Affiliate to whom fees are payable for the management of the Mortgaged Property must enter into an assignment of management agreement or other agreement with Lender, in a form approved by Lender, providing for subordination of those fees and such other provisions as Lender may require.

**(c) Property Condition Assessment.**

If, in connection with any inspection of the Mortgaged Property, Lender determines that the condition of the Mortgaged Property has deteriorated (ordinary wear and tear excepted) since the Effective Date, Lender may obtain, at Borrower's expense, a property condition assessment of the Mortgaged Property. Lender's right to obtain a property condition assessment pursuant to this Section 6.03(c) shall be in addition to any other rights available to Lender under this Loan Agreement in connection with any such deterioration. Any such inspection or property condition assessment may result in Lender requiring Additional Lender Repairs or Additional Lender Replacements as further described in Section 13.02(a)(9)(B).

## ARTICLE 7 - LEASES AND RENTS

**Section 7.01 Representations and Warranties.**

The representations and warranties made by Borrower to Lender in this Section 7.01 are made as of the Effective Date and are true and correct except as disclosed on the Exceptions to Representations and Warranties Schedule.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(a) Prior Assignment of Rents.**

Borrower has not executed any:

(1) prior assignment of Rents (other than an assignment of Rents securing prior indebtedness that has been paid off and discharged or will be paid off and discharged with the proceeds of the Mortgage Loan); or

(2) instrument which would prevent Lender from exercising its rights under this Loan Agreement, the Security Instrument, or any other Loan Document.

**(b) Prepaid Rents.**

Borrower has not accepted, and does not expect to receive prepayment of, any Rents for more than two (2) months prior to the due dates of such Rents.

**Section 7.02 Covenants.**

**(a) Leases.**

Borrower shall:

(1) comply with and observe Borrower's obligations under all Leases, including Borrower's obligations pertaining to the maintenance and disposition of tenant security deposits;

(2) surrender possession of the Mortgaged Property, including all Leases and all security deposits and prepaid Rents, immediately upon appointment of a receiver or Lender's entry upon and taking of possession and control of the Mortgaged Property, as applicable;

(3) require that all Residential Leases have initial terms of not less than six (6) months and not more than twenty-four (24) months (however, if customary in the applicable market for properties comparable to the Mortgaged Property, Residential Leases with terms of less than six (6) months (but in no case less than one (1) month) may be permitted with Lender's prior written consent), provided however, Short-Term Rentals (regardless of the duration of the term) shall not be permitted unless otherwise expressly approved by Lender in writing; and

(4) promptly provide Lender a copy of any non-Residential Lease at the time such Lease is executed (subject to Lender's consent rights for Material Commercial Leases in Section 7.02(b)) and, upon Lender's written request, promptly provide Lender a copy of any Residential Lease then in effect.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(b) Commercial Leases.**

(1) With respect to Material Commercial Leases, Borrower shall not:

(A) enter into any Material Commercial Lease except with the prior written consent of Lender; or

(B) modify the terms of, extend, or terminate any Material Commercial Lease (including any Material Commercial Lease in existence on the Effective Date) without the prior written consent of Lender.

(2) With respect to any non-Material Commercial Lease, Borrower shall not:

(A) enter into any non-Material Commercial Lease that materially alters the use and type of operation of the premises subject to the Lease in effect as of the Effective Date or reduces the number or size of residential units at the Mortgaged Property; or

(B) modify the terms of any non-Material Commercial Lease (including any non-Material Commercial Lease in existence on the Effective Date) in any way that materially alters the use and type of operation of the premises subject to such non-Material Commercial Lease in effect as of the Effective Date, reduces the number or size of residential units at the Mortgaged Property, or results in such non-Material Commercial Lease being deemed a Material Commercial Lease.

(3) With respect to any Material Commercial Lease or non-Material Commercial Lease, Borrower shall cause the applicable tenant to provide within ten (10) days after a request by Borrower, a certificate of estoppel, or if not provided by tenant within such ten (10) day period, Borrower shall provide such certificate of estoppel, certifying:

(A) that such Material Commercial Lease or non-Material Commercial Lease is unmodified and in full force and effect (or if there have been modifications, that such Material Commercial Lease or non-Material Commercial Lease is in full force and effect as modified and stating the modifications);

(B) the term of the Lease including any extensions thereto;

(C) the dates to which the Rent and any other charges hereunder have been paid by tenant;

(D) the amount of any security deposit delivered to Borrower as landlord;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(E) whether or not Borrower is in default (or whether any event or condition exists which, with the passage of time, would constitute an event of default) under such Lease;

(F) the address to which notices to tenant should be sent; and

(G) any other information as may be reasonably required by Lender.

**(c) Payment of Rents.**

Borrower shall:

(1) pay to Lender upon demand all Rents after an Event of Default has occurred and is continuing;

(2) cooperate with Lender's efforts in connection with the assignment of Rents set forth in the Security Instrument; and

(3) not accept Rent under any Lease (whether a Residential Lease or a non-Residential Lease) for more than two (2) months in advance.

**(d) Assignment of Rents.**

Borrower shall not:

(1) perform any acts or execute any instrument that would prevent Lender from exercising its rights under the assignment of Rents granted in the Security Instrument or in any other Loan Document; or

(2) interfere with Lender's collection of such Rents.

**(e) Further Assignments of Leases and Rents.**

Borrower shall execute and deliver any further assignments of Leases and Rents as Lender may reasonably require.

**(f) Options to Purchase by Tenants.**

No Lease (whether a Residential Lease or a non-Residential Lease) shall contain an option to purchase, right of first refusal to purchase or right of first offer to purchase, except as required by applicable law.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**Section 7.03 Mortgage Loan Administration Regarding Leases and Rents.**

**(a) Material Commercial Lease Requirements.**

Each Material Commercial Lease, including any renewal or extension of any Material Commercial Lease in existence as of the Effective Date, shall provide, directly or pursuant to a subordination, non-disturbance and attornment agreement approved by Lender, that:

(1) the tenant shall, upon written notice from Lender after the occurrence of an Event of Default, pay all Rents payable under such Lease to Lender;

(2) such Lease and all rights of the tenant thereunder are expressly subordinate to the lien of the Security Instrument;

(3) the tenant shall attorn to Lender and any purchaser at a Foreclosure Event (such attornment to be self-executing and effective upon acquisition of title to the Mortgaged Property by any purchaser at a Foreclosure Event or by Lender in any manner);

(4) the tenant agrees to execute such further evidences of attornment as Lender or any purchaser at a Foreclosure Event may from time to time request; and

(5) such Lease shall not terminate as a result of a Foreclosure Event unless Lender or any other purchaser at such Foreclosure Event affirmatively elects to terminate such Lease pursuant to the terms of the subordination, non-disturbance and attornment agreement.

**(b) Residential Lease Form.**

All Residential Leases entered into from and after the Effective Date shall be on forms substantially in the form approved by Lender.

## ARTICLE 8 - BOOKS AND RECORDS; FINANCIAL REPORTING

**Section 8.01 Representations and Warranties.**

The representations and warranties made by Borrower to Lender in this Section 8.01 are made as of the Effective Date and are true and correct except as disclosed on the Exceptions to Representations and Warranties Schedule.

**(a) Financial Information.**

All financial statements and data, including statements of cash flow and income and operating expenses, that have been delivered to Lender in respect of the Mortgaged Property:

(1) are true, complete, and correct in all material respects; and


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(2) accurately represent the financial condition of the Mortgaged Property as of such date.

**(b) No Change in Facts or Circumstances.**

All information in the Loan Application and in all financial statements, rent rolls, reports, certificates, and other documents submitted in connection with the Loan Application are complete and accurate in all material respects. There has been no material adverse change in any fact or circumstance that would make any such information incomplete or inaccurate.

**Section 8.02 Covenants.**

**(a) Obligation to Maintain Accurate Books and Records.**

Borrower shall keep and maintain at all times at the Mortgaged Property or the property management agent's offices or Borrower's General Business Address and, upon Lender's written request, shall make available to Lender:

(1) complete and accurate books of account and records (including copies of supporting bills and invoices) adequate to reflect correctly the operation of the Mortgaged Property; and

(2) copies of all written contracts, Leases, and other instruments that affect Borrower or the Mortgaged Property.

**(b) Items to Furnish to Lender.**

Borrower shall furnish to Lender the following, which shall be deemed certified by Borrower, as true, complete, and accurate, in all material respects as of the time of delivery and binding upon Borrower (or Guarantor, as applicable) and in such form and with such detail as Lender reasonably requires:

(1) within forty-five (45) days after the end of each first, second, and third calendar quarter, a statement of income and expenses for Borrower on a year-to-date basis as of the end of each calendar quarter;

(2) within one hundred twenty (120) days after the end of each calendar year:

(A) for any Borrower that is an entity, a statement of income and expenses and a statement of cash flows for such calendar year;

(B) for any Borrower that is an individual or a trust established for estate-planning purposes, a personal financial statement for such calendar year;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(C) when requested in writing by Lender, balance sheet(s) showing all assets and liabilities of Borrower and a statement of all contingent liabilities as of the end of such calendar year;

(D) if an energy consumption metric for the Mortgaged Property is required to be reported to any Governmental Authority, the Fannie Mae Energy Performance Metrics report, as generated by ENERGY STAR® Portfolio Manager, for the Mortgaged Property for such calendar year, which report must include the ENERGY STAR score, the Source Energy Use Intensity (EUI), the month and year ending period for such ENERGY STAR score and such Source Energy Use Intensity, and the ENERGY STAR Portfolio Manager Property Identification Number; provided that, if the Governmental Authority does not require the use of ENERGY STAR Portfolio Manager for the reporting of the energy consumption metric and Borrower does not use ENERGY STAR Portfolio Manager, then Borrower shall furnish to Lender the Source Energy Use Intensity for the Mortgaged Property for such calendar year;

(E) a written certification ratifying and affirming that:

(i) Borrower has taken no action in violation of Section 4.02(d) regarding its single asset status;

(ii) Borrower has received no notice of any building code violation, or if Borrower has received such notice, evidence of remediation;

(iii) Borrower has made no application for rezoning or received any notice that the Mortgaged Property has been or is being rezoned; and

(iv) Borrower has taken no action and has no knowledge of any action that would violate the provisions of Section 11.02(b)(1)(F) regarding liens encumbering the Mortgaged Property;

(F) an accounting of all security deposits held pursuant to all Leases, including the name of the institution (if any) and the names and identification numbers of the accounts (if any) in which such security deposits are held and the name of the person to contact at such financial institution, along with any authority or release necessary for Lender to access information regarding such accounts;

(G) written confirmation of:

(i) any changes occurring since the Effective Date (or that no such changes have occurred since the Effective Date) in (1) the direct owners of Borrower, (2) the indirect owners (and any non-member managers) of Borrower that Control Borrower (excluding any Publicly-Held Corporations or Publicly-Held Trusts), or (3) the indirect owners of

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Borrower that hold twenty-five percent (25%) or more of the ownership interests in Borrower (excluding any Publicly-Held Corporations or Publicly-Held Trusts), and their respective interests;

(ii) the names of all officers and directors of (1) any Borrower which is a corporation, (2) any corporation which is a general partner of any Borrower which is a partnership, or (3) any corporation which is the managing member or non-member manager of any Borrower which is a limited liability company; and

(iii) the names of all managers who are not members of (1) any Borrower which is a limited liability company, (2) any limited liability company which is a general partner of any Borrower which is a partnership, or (3) any limited liability company which is the managing member or non-member manager of any Borrower which is a limited liability company; and

(H) if not already provided pursuant to Section 8.02(b)(2)(A) above, a statement of income and expenses for Borrower's operation of the Mortgaged Property on a year-to-date basis as of the end of each calendar year;

(3) within forty-five (45) days after the end of each first, second, and third calendar quarter and within one hundred twenty (120) days after the end of each calendar year, and at any other time upon Lender's written request, a rent schedule for the Mortgaged Property showing the name of each tenant and for each tenant, the space occupied, the lease expiration date, the rent payable for the current month, the date through which rent has been paid, and any related information requested by Lender;

(4) upon Lender's written request, thereafter furnish to Lender within ten (10) Business Days after the end of each month, until the end of the Loan Term, complete and accurate rent schedule data for the Mortgaged Property;

(5) within thirty (30) days after Lender's written request (but, absent an Event of Default, no more frequently than once in any six (6) month period):

(A) any item described in Section 8.02(b)(1) or Section 8.02(b)(2);

(B) a property management or leasing report for the Mortgaged Property, showing the number of rental applications received from tenants or prospective tenants and deposits received from tenants or prospective tenants, and any other information requested by Lender for such period as requested by Lender;

(C) a statement of income and expenses for Borrower's operation of the Mortgaged Property on a year-to-date basis as of the end of each month for such period as requested by Lender;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(D) a statement of real estate owned directly or indirectly by Borrower and Guarantor for such period as requested by Lender;

(E) for any Guarantor:

(i) that is an entity, a statement of income and expenses and a statement of cash flows for the most recent available calendar year and any calendar quarters ending between the available year and the date of the request;

(ii) that is an individual, or a trust established for estate-planning purposes, a personal financial statement for the most recent available calendar year and any calendar quarters ending between the available year and the date of the request; and

(iii) balance sheet(s) showing all assets and liabilities of Guarantor and a statement of all contingent liabilities as of the end of the most recent available calendar year; and

(F) a statement that identifies the following for such period as requested by Lender:

(i) direct owners of Borrower and their respective interests;

(ii) indirect owners (and any non-member managers) of Borrower that Control Borrower (excluding any Publicly-Held Corporations or Publicly-Held Trusts) and their respective interests;

(iii) indirect owners of Borrower that hold twenty-five percent (25%) or more of the ownership interests in Borrower (excluding any Publicly-Held Corporations or Publicly-Held Trusts) and their respective interests; and

(iv) to the extent that the Persons identified in (i)-(iii) above do not own, in the aggregate, at least fifty percent (50%) of the indirect ownership interests in Borrower, additional indirect owners of Borrower sufficient to show an aggregate ownership interest of at least fifty percent (50%).

**(c) Audited Financials.**

In the event Borrower or Guarantor receives or obtains any audited financial statements and such financial statements are required to be delivered to Lender under Section 8.02(b), Borrower shall deliver or cause to be delivered to Lender the audited versions of such financial statements.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(d) Delivery of Books and Records.**

If an Event of Default has occurred and is continuing, Borrower shall deliver to Lender, upon written demand, all books and records relating to the Mortgaged Property or its operation.

**Section 8.03 Mortgage Loan Administration Matters Regarding Books and Records and Financial Reporting.**

**(a) Lender's Right to Obtain Audited Books and Records.**

Lender may require that Borrower's or Guarantor's books and records be audited, at Borrower's expense, by an independent certified public accountant selected by Lender in order to produce or audit any statements, schedules, and reports of Borrower, Guarantor, or the Mortgaged Property required by Section 8.02, if:

(1) Borrower or Guarantor fails to provide in a timely manner the statements, schedules, and reports required by Section 8.02 and, thereafter, Borrower or Guarantor fails to provide such statements, schedules, and reports within the cure period provided in Section 14.01(c);

(2) the statements, schedules, and reports submitted to Lender pursuant to Section 8.02 are not full, complete, and accurate in all material respects as determined by Lender and, thereafter, Borrower or Guarantor fails to provide such statements, schedules, and reports within the cure period provided in Section 14.01(c); or

(3) an Event of Default has occurred and is continuing.

Notwithstanding the foregoing, the ability of Lender to require the delivery of audited financial statements shall be limited to not more than once per Borrower's fiscal year so long as no Event of Default has occurred during such fiscal year (or any event which, with the giving of written notice or the passage of time, or both, would constitute an Event of Default has occurred and is continuing). Borrower shall cooperate with Lender in order to satisfy the provisions of this Section 8.03(a). All related costs and expenses of Lender shall become due and payable by Borrower within ten (10) Business Days after demand therefor.

**(b) Credit Reports; Credit Score.**

No more often than once in any twelve (12) month period, Lender is authorized to obtain a credit report (if applicable) on Borrower or Guarantor, the cost of which report shall be paid by Borrower. Lender is authorized to obtain a Credit Score (if applicable) for Borrower or Guarantor at any time at Lender's expense.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# ARTICLE 9 - INSURANCE

**Section 9.01 Representations and Warranties.**

The representations and warranties made by Borrower to Lender in this Section 9.01 are made as of the Effective Date and are true and correct except as disclosed on the Exceptions to Representations and Warranties Schedule.

**(a) Compliance with Insurance Requirements.**

Borrower is in compliance with Lender's insurance requirements (or has obtained a written waiver from Lender for any non-compliant coverage) and has timely paid all premiums on all required insurance policies.

**(b) Property Condition.**

(1) The Mortgaged Property has not been damaged by fire, water, wind, or other cause of loss; or

(2) if previously damaged, any previous damage to the Mortgaged Property has been repaired and the Mortgaged Property has been fully restored.

**Section 9.02 Covenants.**

**(a) Insurance Requirements.**

(1) As required by Lender and applicable law, and as may be modified from time to time, Borrower shall:

(A) keep the Improvements insured at all times against any hazards, which insurance shall include coverage against loss by fire and all other perils insured by the "special causes of loss" coverage form, general boiler and machinery coverage, business income coverage, and flood (if any of the Improvements are located in an area identified by the Federal Emergency Management Agency (or any successor) as an area having special flood hazards and to the extent flood insurance is available in that area), and may include sinkhole insurance, mine subsidence insurance, earthquake insurance, terrorism insurance, windstorm insurance and, if the Mortgaged Property does not conform to applicable building, zoning, or land use laws, ordinance and law coverage;

(B) maintain at all times commercial general liability insurance, workmen's compensation insurance, and such other liability, errors and omissions, and fidelity insurance coverage; and


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(C) maintain builder's risk and public liability insurance, and other insurance in connection with completing the Repairs or Replacements, as applicable.

**(b) Delivery of Policies, Renewals, Notices, and Proceeds.**

Borrower shall:

(1) cause all insurance policies (including any policies not otherwise required by Lender) which can be endorsed with standard non-contributing, non-reporting mortgagee clauses making loss payable to Lender (or Lender's assigns) to be so endorsed;

(2) promptly deliver to Lender a copy of all renewal and other notices received by Borrower with respect to the policies and all receipts for paid premiums;

(3) deliver evidence, in form and content acceptable to Lender, that each required insurance policy under this Article 9 has been renewed not less than fifteen (15) days prior to the applicable expiration date, and (if such evidence is other than an original or duplicate original of a renewal policy) deliver the original or duplicate original of each renewal policy (or such other evidence of insurance as may be required by or acceptable to Lender) in form and content acceptable to Lender within ninety (90) days after the applicable expiration date of the original insurance policy;

(4) provide immediate written notice to the insurance company and to Lender of any event of loss;

(5) execute such further evidence of assignment of any insurance proceeds as Lender may require; and

(6) provide immediate written notice to Lender of Borrower's receipt of any insurance proceeds under any insurance policy required by Section 9.02(a)(1) above and, if requested by Lender, deliver to Lender all of such proceeds received by Borrower to be applied by Lender in accordance with this Article 9.

**Section 9.03 Mortgage Loan Administration Matters Regarding Insurance.**

**(a) Lender's Ongoing Insurance Requirements.**

Borrower acknowledges that Lender's insurance requirements may change from time to time. All insurance policies and renewals of insurance policies required by this Loan Agreement shall be:

(1) in the form and with the terms required by Lender;

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(2) in such amounts, with such maximum deductibles and for such periods required by Lender; and

(3) issued by insurance companies satisfactory to Lender.

BORROWER ACKNOWLEDGES THAT ANY FAILURE OF BORROWER TO COMPLY WITH THE REQUIREMENTS SET FORTH IN SECTION 9.02(a) OR SECTION 9.02(b)(3) ABOVE SHALL PERMIT LENDER TO PURCHASE THE APPLICABLE INSURANCE AT BORROWER'S COST. SUCH INSURANCE MAY, BUT NEED NOT, PROTECT BORROWER'S INTERESTS. THE COVERAGE THAT LENDER PURCHASES MAY NOT PAY ANY CLAIM THAT BORROWER MAKES OR ANY CLAIM THAT IS MADE AGAINST BORROWER IN CONNECTION WITH THE MORTGAGED PROPERTY. IF LENDER PURCHASES INSURANCE FOR THE MORTGAGED PROPERTY AS PERMITTED HEREUNDER, BORROWER WILL BE RESPONSIBLE FOR THE COSTS OF THAT INSURANCE, INCLUDING INTEREST AT THE DEFAULT RATE AND ANY OTHER CHARGES LENDER MAY IMPOSE IN CONNECTION WITH THE PLACEMENT OF THE INSURANCE UNTIL THE EFFECTIVE DATE OF THE CANCELLATION OR THE EXPIRATION OF THE INSURANCE. THE COSTS OF THE INSURANCE SHALL BE ADDED TO BORROWER'S TOTAL OUTSTANDING BALANCE OR OBLIGATION AND SHALL CONSTITUTE ADDITIONAL INDEBTEDNESS. THE COSTS OF THE INSURANCE MAY BE MORE THAN THE COST OF INSURANCE BORROWER MAY BE ABLE TO OBTAIN ON ITS OWN. BORROWER MAY LATER CANCEL ANY INSURANCE PURCHASED BY LENDER, BUT ONLY AFTER PROVIDING EVIDENCE THAT BORROWER HAS OBTAINED INSURANCE AS REQUIRED BY THIS LOAN AGREEMENT AND THE OTHER LOAN DOCUMENTS.

**(b) Application of Proceeds on Event of Loss.**

(1) Upon an event of loss, Lender may, at Lender's option:

(A) hold such proceeds in the Restoration Reserve Account to be applied to reimburse Borrower for the cost of Restoration in accordance with Article 13 and Lender's then-current policies relating to the restoration of casualty damage on similar multifamily residential properties; or

(B) apply such proceeds to the payment of the Indebtedness, whether or not then due; provided, however, Lender shall not apply insurance proceeds to the payment of the Indebtedness and shall permit Restoration pursuant to Section 9.03(b)(1)(A) if all of the following conditions are met:

(i) no Event of Default has occurred and is continuing (or any event which, with the giving of written notice or the passage of time, or both, would constitute an Event of Default has occurred and is continuing);


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(ii) Lender determines that the combination of insurance proceeds and amounts provided by Borrower will be sufficient funds to complete the Restoration;

(iii) Lender determines that the Net Cash Flow generated by the Mortgaged Property after completion of the Restoration will be sufficient to support a debt service coverage ratio not less than the debt service coverage ratio immediately prior to the event of loss, but in no event less than 1.0x (the debt service coverage ratio shall be calculated on a thirty (30) year amortizing basis (if applicable, on a *proforma* basis approved by Lender) in all events and shall include all operating costs and other expenses, Imposition Deposits, deposits to Collateral Accounts, and Mortgage Loan repayment obligations);

(iv) Lender determines that the Restoration will be completed before the earlier of (1) one (1) year before the stated Maturity Date, or (2) one (1) year after the date of the loss or casualty; and

(v) Borrower provides Lender, upon written request, evidence of the availability during and after the Restoration of the insurance required to be maintained pursuant to this Loan Agreement.

(2) Notwithstanding the foregoing, if any loss is estimated to be in an amount equal to or less than $75,000, Lender shall not exercise its rights and remedies as power-of-attorney herein and shall allow Borrower to make proof of loss, to adjust and compromise any claims under policies of property damage insurance, to appear in and prosecute any action arising from such policies of property damage insurance, and to collect and receive the proceeds of property damage insurance; provided that each of the following conditions shall be satisfied:

(A) Borrower shall immediately notify Lender of the casualty giving rise to the claim;

(B) no Event of Default has occurred and is continuing (or any event which, with the giving of written notice or the passage of time, or both, would constitute an Event of Default has occurred and is continuing);

(C) the Restoration will be completed before the earlier of (i) one (1) year before the stated Maturity Date, or (ii) one (1) year after the date of the loss or casualty;

(D) Lender determines that the combination of insurance proceeds and amounts provided by Borrower will be sufficient funds to complete the Restoration;

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(E) all proceeds of property damage insurance shall be issued in the form of joint checks to Borrower and Lender;

(F) all proceeds of property damage insurance shall be applied to the Restoration;

(G) Borrower shall deliver to Lender evidence satisfactory to Lender of completion of the Restoration and obtainment of all lien releases;

(H) Borrower shall have complied to Lender's satisfaction with the foregoing requirements on any prior claims subject to this provision, if any; and

(I) Lender shall have the right to inspect the Mortgaged Property (subject to the rights of tenants under the Leases).

(3) If Lender elects to apply insurance proceeds to the Indebtedness in accordance with the terms of this Loan Agreement, Borrower shall not be obligated to restore or repair the Mortgaged Property. Rather, Borrower shall restrict access to the damaged portion of the Mortgaged Property and, at its expense and regardless of whether such costs are covered by insurance, clean up any debris resulting from the casualty event, and, if required or otherwise permitted by Lender, demolish or raze any remaining part of the damaged Mortgaged Property to the extent necessary to keep and maintain the Mortgaged Property in a safe, habitable, and marketable condition. Nothing in this Section 9.03(b) shall affect any of Lender's remedial rights against Borrower in connection with a breach by Borrower of any of its obligations under this Loan Agreement or under any Loan Document, including any failure to timely pay Monthly Debt Service Payments or maintain the insurance coverage(s) required by this Loan Agreement.

**(c) Payment Obligations Unaffected.**

The application of any insurance proceeds to the Indebtedness shall not extend or postpone the Maturity Date, or the due date or the full payment of any Monthly Debt Service Payment, Monthly Replacement Reserve Deposit, or any other installments referred to in this Loan Agreement or in any other Loan Document. Notwithstanding the foregoing, if Lender applies insurance proceeds to the Indebtedness in connection with a casualty of less than the entire Mortgaged Property, and after such application of proceeds the debt service coverage ratio (as determined by Lender) is less than 1.25x based on the then-applicable Monthly Debt Service Payment and the anticipated ongoing Net Cash Flow of the Mortgaged Property after such casualty event, then Lender may, at its discretion, permit an adjustment to the Monthly Debt Service Payments that become due and owing thereafter, based on Lender's then-current underwriting requirements. In no event shall the preceding sentence obligate Lender to make any adjustment to the Monthly Debt Service Payments.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(d) Foreclosure Sale.**

If the Mortgaged Property is transferred pursuant to a Foreclosure Event or Lender otherwise acquires title to the Mortgaged Property, Borrower acknowledges that Lender shall automatically succeed to all rights of Borrower in and to any insurance policies and unearned insurance premiums applicable to the Mortgaged Property and in and to the proceeds resulting from any damage to the Mortgaged Property prior to such Foreclosure Event or such acquisition.

**(e) Appointment of Lender as Attorney-In-Fact.**

Borrower hereby authorizes and appoints Lender as attorney-in-fact pursuant to Section 14.03(c).

## ARTICLE 10 - CONDEMNATION

**Section 10.01 Representations and Warranties.**

The representations and warranties made by Borrower to Lender in this Section 10.01 are made as of the Effective Date and are true and correct except as disclosed on the Exceptions to Representations and Warranties Schedule.

**(a) Prior Condemnation Action.**

No part of the Mortgaged Property has been taken in connection with a Condemnation Action.

**(b) Pending Condemnation Actions.**

No Condemnation Action is pending or, to Borrower's knowledge, is threatened for the partial or total condemnation or taking of the Mortgaged Property.

**Section 10.02 Covenants.**

**(a) Notice of Condemnation.**

Borrower shall:

(1) promptly notify Lender of any Condemnation Action of which Borrower has knowledge;

(2) appear in and prosecute or defend, at its own cost and expense, any action or proceeding relating to any Condemnation Action, including any defense of Lender's interest in the Mortgaged Property tendered to Borrower by Lender, unless otherwise directed by Lender in writing; and


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(3) execute such further evidence of assignment of any condemnation award in connection with a Condemnation Action as Lender may require.

**(b) Condemnation Proceeds.**

Borrower shall pay to Lender all awards or proceeds of a Condemnation Action promptly upon receipt.

**Section 10.03 Mortgage Loan Administration Matters Regarding Condemnation.**

**(a) Application of Condemnation Awards.**

Lender may apply any awards or proceeds of a Condemnation Action, after the deduction of Lender's expenses incurred in the collection of such amounts, to:

(1) the restoration or repair of the Mortgaged Property, if applicable;

(2) the payment of the Indebtedness, with the balance, if any, paid to Borrower; or

(3) Borrower.

**(b) Payment Obligations Unaffected.**

The application of any awards or proceeds of a Condemnation Action to the Indebtedness shall not extend or postpone the Maturity Date, or the due date or the full payment of any Monthly Debt Service Payment, Monthly Replacement Reserve Deposit, or any other installments referred to in this Loan Agreement or in any other Loan Document.

**(c) Appointment of Lender as Attorney-In-Fact.**

Borrower hereby authorizes and appoints Lender as attorney-in-fact pursuant to Section 14.03(c).

**(d) Preservation of Mortgaged Property.**

If a Condemnation Action results in or from damage to the Mortgaged Property and Lender elects to apply the proceeds or awards from such Condemnation Action to the Indebtedness in accordance with the terms of this Loan Agreement, Borrower shall not be obligated to restore or repair the Mortgaged Property. Rather, Borrower shall restrict access to any portion of the Mortgaged Property which has been damaged or destroyed in connection with such Condemnation Action and, at Borrower's expense and regardless of whether such costs are covered by insurance, clean up any debris resulting in or from the Condemnation Action, and, if required by any Governmental Authority or otherwise permitted by Lender, demolish or raze any remaining part of the damaged Mortgaged Property to the extent necessary to keep and maintain the Mortgaged Property in a safe, habitable, and marketable condition. Nothing in this Section 10.03(d) shall


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

affect any of Lender's remedial rights against Borrower in connection with a breach by Borrower of any of its obligations under this Loan Agreement or under any Loan Document, including any failure to timely pay Monthly Debt Service Payments or maintain the insurance coverage(s) required by this Loan Agreement.

## ARTICLE 11 - LIENS, TRANSFERS, AND ASSUMPTIONS

**Section 11.01 Representations and Warranties.**

The representations and warranties made by Borrower to Lender in this Section 11.01 are made as of the Effective Date and are true and correct except as disclosed on the Exceptions to Representations and Warranties Schedule.

**(a) No Labor or Materialmen's Claims.**

All parties furnishing labor and materials on behalf of Borrower have been paid in full. There are no mechanics' or materialmen's liens (whether filed or unfiled) outstanding for work, labor, or materials (and no claims or work outstanding that under applicable law could give rise to any such mechanics' or materialmen's liens) affecting the Mortgaged Property, whether prior to, equal with, or subordinate to the lien of the Security Instrument.

**(b) No Other Interests.**

No Person:

(1) other than Borrower has any possessory ownership or interest in the Mortgaged Property or right to occupy the same except under and pursuant to the provisions of existing Leases, the material terms of all such Leases having been previously disclosed in writing to Lender; or

(2) has an option, right of first refusal, or right of first offer (except as required by applicable law) to purchase the Mortgaged Property, or any interest in the Mortgaged Property.

**Section 11.02 Covenants.**

**(a) Liens; Encumbrances.**

Borrower shall not permit the grant, creation, or existence of any Lien, whether voluntary, involuntary, or by operation of law, on all or any portion of the Mortgaged Property (including any voluntary, elective, or non-compulsory tax lien or assessment pursuant to a voluntary, elective, or non-compulsory special tax district or similar regime) other than:

(1) Permitted Encumbrances;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(2) the creation of:

(A) any tax lien, municipal lien, utility lien, mechanics' lien, materialmen's lien, or judgment lien against the Mortgaged Property if bonded off, released of record, or otherwise remedied to Lender's satisfaction within sixty (60) days after the earlier of the date Borrower has actual notice or constructive notice of the existence of such lien; or

(B) any mechanics' or materialmen's liens which attach automatically under the laws of any Governmental Authority upon the commencement of any work upon, or delivery of any materials to, the Mortgaged Property and for which Borrower is not delinquent in the payment for any such work or materials; and

(3) the lien created by, or (in connection with Permitted Equipment Financing) permitted under, the Loan Documents.

**(b) Transfers.**

**(1) Mortgaged Property.**

Borrower shall not Transfer, or cause or permit a Transfer of, all or any part of the Mortgaged Property (including any interest in the Mortgaged Property) other than:

(A) a Transfer to which Lender has consented in writing;

(B) Leases permitted pursuant to the Loan Documents;

(C) [reserved];

(D) a Transfer of obsolete or worn out Personalty or Fixtures that are contemporaneously replaced by items of equal or better function and quality (unless such items are no longer required in connection with operation of the Mortgaged Property) which are free of Liens (other than those created by the Loan Documents);

(E) the grant of an easement, servitude, or restrictive covenant to which Lender has consented, and Borrower has paid to Lender, upon demand, all costs and expenses incurred by Lender in connection with reviewing Borrower's request (including reasonable attorneys' fees and a $5,000 review fee, which shall be in lieu of any other Review Fee or Transfer Fee);

(F) a lien permitted pursuant to Section 11.02(a) of this Loan Agreement; or


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(G) the conveyance of the Mortgaged Property following a Foreclosure Event.

**(2) Interests in Borrower, Key Principal, or Guarantor.**

Other than a Transfer to which Lender has consented in writing, Borrower shall not Transfer, or cause or permit to be Transferred:

(A) any direct or indirect ownership interest in Borrower, Key Principal, or Guarantor (if applicable) if such Transfer would cause a change in Control;

(B) a direct or indirect Restricted Ownership Interest in Borrower, Key Principal, or Guarantor (if applicable);

(C) fifty percent (50%) or more of Key Principal's or Guarantor's direct or indirect ownership interests in Borrower that existed on the Effective Date (individually or on an aggregate basis);

(D) any direct or indirect ownership interest in Borrower, Key Principal, or Guarantor (if applicable) if such Transfer would result in a violation of Section 4.02(b); or

(E) the economic benefits or rights to cash flows attributable to any ownership interest in Borrower, Key Principal, or Guarantor (if applicable) separate from the Transfer of the underlying ownership interest if the Transfer of the underlying ownership interest is prohibited by this Loan Agreement.

Notwithstanding the foregoing, if a Publicly-Held Corporation or a Publicly-Held Trust Controls Borrower, Key Principal, or Guarantor, or owns a direct or indirect Restricted Ownership Interest in Borrower, Key Principal, or Guarantor, a Transfer of any ownership interest in such Publicly-Held Corporation or Publicly-Held Trust shall not be prohibited under this Loan Agreement as long as (i) such Transfer does not result in a conversion of such Publicly-Held Corporation or Publicly-Held Trust to a privately held entity, and (ii) Borrower provides written notice to Lender not later than thirty (30) days thereafter of any such Transfer that results in any Person owning ten percent (10%) or more of the ownership interests in such Publicly-Held Corporation or Publicly-Held Trust.

**(3) Transfers of Non-Controlling Interests.**

Transfers of direct or indirect limited partnership or non-managing member interests in Borrower that result in a Transfer of fifty percent (50%) or more of the limited partnership or non-managing membership interests shall be consented to by Lender if such Transfer satisfies the following conditions:


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(A) Key Principal or Guarantor (as applicable) Controls Borrower with the same rights and abilities as Key Principal or Guarantor (as applicable) Controls Borrower immediately prior to the date of such Transfer;

(B) such Transfer does not violate the requirements of Section 11.02(b)(2)(C) or Section 11.02(b)(2)(D);

(C) Borrower shall provide Lender not less than thirty (30) days prior written notice of the proposed Transfer and obtain Lender's approval;

(D) Borrower shall provide with its notice to Lender an organizational chart reflecting, and all organizational documents relevant to, the proposed Transfer;

(E) Borrower shall provide with its notice to Lender a certification that no change of Control of Borrower, Key Principal, or Guarantor (as applicable) shall occur as a result of such Transfer;

(F) if any Person will own twenty-five percent (25%) or more of the direct or indirect ownership interests in Borrower that did not own twenty-five percent (25%) or more before the Transfer, such Person shall not, as of the date of the Transfer, be a Prohibited Person;

(G) Borrower shall pay to Lender:

(i) concurrently with its notice to Lender, the Review Fee plus a transfer fee of $25,000, which shall be in lieu of any other Transfer Fee; and

(ii) upon demand, any out-of-pocket costs and expenses, including reasonable attorneys' fees and expenses, incurred by Lender in connection with its review of the Transfer request; and

(H) Borrower shall execute upon demand such documents or certifications as Lender reasonably requires in order to confirm the post-transfer ownership structure, compliance with the stated conditions, and any other relevant factual matter.

**(4) Name Change or Entity Conversion.**

Lender shall consent to Borrower changing its name, changing its jurisdiction of organization, or converting from one type of legal entity into another type of legal entity for any lawful purpose, provided that:


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(A) Lender receives written notice at least thirty (30) days prior to such change or conversion, which notice shall include organizational charts that reflect the structure of Borrower both prior to and subsequent to such name change or entity conversion;

(B) such Transfer is not otherwise prohibited under the provisions of Section 11.02(b)(2);

(C) Borrower executes an amendment to this Loan Agreement and any other Loan Documents required by Lender documenting the name change or entity conversion;

(D) Borrower agrees and acknowledges, at Borrower's expense, that (i) Borrower will execute and record in the land records any instrument required by the Property Jurisdiction to be recorded to evidence such name change or entity conversion (or provide Lender with written confirmation from the title company (via electronic mail or letter) that no such instrument is required), (ii) Borrower will execute any additional documents required by Lender, including the amendment to this Loan Agreement, and allow such documents to be recorded or filed in the land records of the Property Jurisdiction, (iii) Lender will obtain a "date down" endorsement to the Lender's Title Policy (or obtain a new Title Policy if a "date down" endorsement is not available in the Property Jurisdiction), evidencing title to the Mortgaged Property being in the name of the successor entity and the Lien of the Security Instrument against the Mortgaged Property, and (iv) Lender will file any required UCC-3 financing statement and make any other filing deemed necessary to maintain the priority of its Liens on the Mortgaged Property; and

(E) no later than ten (10) days subsequent to such name change or entity conversion, Borrower shall provide Lender (i) the documentation filed with the appropriate office in Borrower's state of formation evidencing such name change or entity conversion, (ii) copies of the organizational documents of Borrower, including any amendments, filed with the appropriate office in Borrower's state of formation reflecting the post-conversion Borrower name, form of organization, and structure, and (iii) if available, new certificates of good standing or valid formation for Borrower.

**(5) No Delaware Statutory Trust or Series LLC Conversion.**

Notwithstanding any provisions herein to the contrary, no Borrower, Guarantor, or Key Principal shall convert to a Delaware Statutory Trust or a series limited liability company.

**(6) Plans of Division.**

Borrower shall not Divide. Lender shall consent to a Division by Guarantor or Key


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Principal provided that:

(A) Lender receives written notice at least thirty (30) days prior to the effective date of such Division, which notice shall include (i) a certification acceptable to Lender that such Division is not otherwise prohibited under the provisions of Article 11, (ii) a copy of the plan of division, and (iii) organizational charts that reflect the organizational structure of Borrower, Guarantor, and Key Principal both prior to and subsequent to such Division;

(B) no later than ten (10) days subsequent to such Division, Borrower shall provide Lender (i) the certificate of division or such other documentation filed with the appropriate office evidencing such Division, (ii) copies of the organizational documents of Borrower (if amended), Guarantor, and Key Principal, including any amendments thereto, that reflect the post-Division organizational structure, and (iii) new certificates of good standing or valid formation for Borrower (if amended), Guarantor, and Key Principal; and

(C) Borrower has paid to Lender, upon demand, all costs and expenses incurred by Lender in connection with reviewing Borrower's request (including reasonable attorneys' fees and a $25,000 review fee, which shall be in lieu of any other Review Fee or Transfer Fee).

**(c) No Other Indebtedness.**

Other than the Mortgage Loan, Borrower shall not incur or be obligated at any time with respect to any loan or other indebtedness (except Permitted Equipment Financing and trade payables as otherwise permitted in this Loan Agreement), including any indebtedness secured by a Lien on, or the cash flows from, the Mortgaged Property.

**(d) No Mezzanine Financing or Preferred Equity.**

Neither Borrower nor any direct or indirect owner of Borrower shall: (1) incur any Mezzanine Debt other than Permitted Mezzanine Debt; (2) issue any Preferred Equity other than Permitted Preferred Equity; or (3) incur any similar indebtedness or issue any similar equity.

**Section 11.03 Mortgage Loan Administration Matters Regarding Liens, Transfers, and Assumptions.**

**(a) Assumption of Mortgage Loan.**

Lender shall consent to a Transfer of the Mortgaged Property to and an assumption of the Mortgage Loan by a new borrower if each of the following conditions is satisfied prior to the Transfer:


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(1) Borrower has submitted to Lender all information required by Lender to make the determination required by this Section 11.03(a);

(2) no Event of Default has occurred and is continuing, and no event which, with the giving of written notice or the passage of time, or both, would constitute an Event of Default has occurred and is continuing;

(3) Lender determines that:

(A) the proposed new borrower, new key principal, and any other new guarantor fully satisfy all of Lender's then-applicable borrower, key principal, or guarantor eligibility, credit, management, and other loan underwriting standards, which shall include an analysis of (i) the previous relationships between Lender and the proposed new borrower, new key principal, new guarantor, and any Person in Control of them, and the organization of the new borrower, new key principal, and new guarantor (if applicable), and (ii) the operating and financial performance of the Mortgaged Property, including physical condition and occupancy;

(B) none of the proposed new borrower, new key principal, and any new guarantor, or any owners of the proposed new borrower, new key principal, and any new guarantor, are a Prohibited Person, and such Transfer would not result in a violation of the requirements of Section 11.02(b)(2)(D); and

(C) none of the proposed new borrower, new key principal, and any new guarantor (if any of such are entities) shall have an organizational existence termination date that ends before the Maturity Date;

(4) [reserved];

(5) the proposed new borrower has:

(A) executed an assumption agreement acceptable to Lender that, among other things, requires the proposed new borrower to assume and perform all obligations of Borrower (or any other transferor), and that may require that the new borrower comply with any provisions of any Loan Document which previously may have been waived by Lender for Borrower, subject to the terms of Section 11.03(g);

(B) if required by Lender, delivered to the title company for filing and/or recording in all applicable jurisdictions, all applicable Loan Documents including the assumption agreement to correctly evidence the assumption and the confirmation, continuation, perfection, and priority of the Liens created hereunder and under the other Loan Documents; and


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(C) delivered to Lender a "date-down" endorsement to the Title Policy acceptable to Lender (or a new title insurance policy if a "date-down" endorsement is not available);

(6) one or more individuals or entities acceptable to Lender as new guarantors have executed and delivered to Lender:

(A) an assumption agreement acceptable to Lender that requires the new guarantor to assume and perform all obligations of Guarantor under any Guaranty given in connection with the Mortgage Loan; or

(B) a substitute Non-Recourse Guaranty and other substitute guaranty in a form acceptable to Lender;

(7) Lender has reviewed and approved the Transfer documents;

(8) Lender has received the fees described in Section 11.03(g); and

(9) with respect to any MBS trust that directly or indirectly holds the Mortgage Loan and issues MBS that are outstanding, the Transfer shall not result in an Adverse Tax Event.

**(b) Transfers to Key Principal-Owned Affiliates or Guarantor-Owned Affiliates.**

(1) Except as otherwise covered in Section 11.03(b)(2) below, Transfers of direct or indirect ownership interests in Borrower to Key Principal or Guarantor, or to a transferee through which Key Principal or Guarantor (as applicable) Controls Borrower with the same rights and abilities as Key Principal or Guarantor (as applicable) Controls Borrower immediately prior to the date of such Transfer, shall be consented to by Lender if such Transfer satisfies the applicable requirements of Section 11.03(a) as they would relate to such transferee, other than Section 11.03(a)(5).

(2) Transfers of direct or indirect interests in Borrower held by a Key Principal or Guarantor to other Key Principals or Guarantors, as applicable, shall be consented to by Lender if such Transfer satisfies the following conditions:

(A) the Transfer does not cause a change in the Control of Borrower; and

(B) the transferor Key Principal or Guarantor maintains the same right and ability to Control Borrower as existed prior to the Transfer.

If the conditions set forth in this Section 11.03(b) are satisfied, the Transfer Fee shall be waived provided Borrower shall pay the Review Fee and out-of-pocket costs set forth in Section 11.03(g).

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(c) Estate Planning.**

Notwithstanding the provisions of Section 11.02(b)(2), so long as (1) the Transfer does not cause a change in the Control of Borrower, and (2) Key Principal and Guarantor, as applicable, maintain the same right and ability to Control Borrower as existed prior to the Transfer, Lender shall consent to Transfers of direct or indirect ownership interests in Borrower and Transfers of direct or indirect ownership interests in an entity Key Principal or entity Guarantor to:

(A) Immediate Family Members of such transferor, each of whom must have obtained the legal age of majority;

(B) United States domiciled trusts established for the benefit of the transferor or Immediate Family Members of the transferor; or

(C) partnerships or limited liability companies of which the partners or members, respectively, are comprised entirely of (i) such transferor and Immediate Family Members (each of whom must have obtained the legal age of majority) of such transferor, (ii) Immediate Family Members (each of whom must have obtained the legal age of majority) of such transferor, or (iii) United States domiciled trusts established for the benefit of the transferor or Immediate Family Members of the transferor.

If the conditions set forth in this Section 11.03(c) are satisfied, the Transfer Fee shall be waived provided Borrower shall pay the Review Fee and out-of-pocket costs set forth in Section 11.03(g).

**(d) Termination or Revocation of Trust.**

If any of Borrower, Guarantor, or Key Principal is a trust, or if Control of Borrower, Guarantor, or Key Principal is Transferred or if a Restricted Ownership Interest in Borrower, Guarantor, or Key Principal would be Transferred due to the termination or revocation of a trust, the termination or revocation of such trust is an unpermitted Transfer; provided that the termination or revocation of the trust due to the death of an individual trustor shall not be considered an unpermitted Transfer so long as:

(1) Lender is notified within thirty (30) days of the death; and

(2) such Borrower, Guarantor, Key Principal, or other Person, as applicable, is replaced with an individual or entity acceptable to Lender, in accordance with the provisions of Section 11.03(a) within ninety (90) days of the date of the death causing the termination or revocation.

If the conditions set forth in this Section 11.03(d) are satisfied, the Transfer Fee shall be waived; provided Borrower shall pay the Review Fee and out-of-pocket costs set forth in Section 11.03(g).


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(e) Death of Key Principal or Guarantor; Transfer Due to Death.**

(1) If a Key Principal or Guarantor that is a natural person dies, or if Control of Borrower, Guarantor, or Key Principal is Transferred, or if a Restricted Ownership Interest in Borrower, Guarantor, or Key Principal would be Transferred as a result of the death of a Person (except in the case of trusts which is addressed in Section 11.03(d)), Borrower must notify Lender in writing within ninety (90) days in the event of such death. Unless waived in writing by Lender, the deceased shall be replaced by an individual or entity within one hundred eighty (180) days, subject to Borrower's satisfaction of the following conditions:

(A) Borrower has submitted to Lender all information required by Lender to make the determination required by this Section 11.03(e);

(B) Lender determines that, if applicable:

(i) any proposed new key principal and any other new guarantor (or Person Controlling such new key principal or new guarantor) fully satisfies all of Lender's then-applicable key principal or guarantor eligibility, credit, management, and other loan underwriting standards (including any standards with respect to previous relationships between Lender and the proposed new key principal and new guarantor (or Person Controlling such new key principal or new guarantor) and the organization of the new key principal and new guarantor);

(ii) none of any proposed new key principal or any new guarantor, or any owners of the proposed new key principal or any new guarantor, is a Prohibited Person, and such Transfer would not result in a violation of the requirements of Section 11.02(b)(2)(D); and

(iii) none of any proposed new key principal or any new guarantor (if any of such are entities) shall have an organizational existence termination date that ends before the Maturity Date; and

(C) if applicable, one or more individuals or entities acceptable to Lender as new guarantors have executed and delivered to Lender:

(i) an assumption agreement acceptable to Lender that requires the new guarantor to assume and perform all obligations of Guarantor under any Guaranty given in connection with the Mortgage Loan; or

(ii) a substitute Non-Recourse Guaranty and other substitute guaranty in a form acceptable to Lender.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(2) In the event a replacement Key Principal, Guarantor, or other Person is required by Lender due to the death described in this Section 11.03(e), and such replacement has not occurred within such period, the period for replacement may be extended by Lender to a date not more than one (1) year from the date of such death; however, Lender may require as a condition to any such extension that:

(A) the then-current property manager be replaced with a property manager reasonably acceptable to Lender (or if a property manager has not been previously engaged, a property manager reasonably acceptable to Lender be engaged); or

(B) a lockbox agreement or similar cash management arrangement (with the property manager) reasonably acceptable to Lender during such extended replacement period be instituted.

If the conditions set forth in this Section 11.03(e) are satisfied, the Transfer Fee shall be waived, provided Borrower shall pay the Review Fee and out-of-pocket costs set forth in Section 11.03(g).

**(f) Bankruptcy of Guarantor.**

(1) Upon the occurrence of any Guarantor Bankruptcy Event, unless waived in writing by Lender, the applicable Guarantor shall be replaced by an individual or entity within ninety (90) days of such Guarantor Bankruptcy Event, subject to Borrower's satisfaction of the following conditions:

(A) Borrower has submitted to Lender all information required by Lender to make the determination required by this Section 11.03(f);

(B) Lender determines that:

(i) the proposed new guarantor fully satisfies all of Lender's then-applicable guarantor eligibility, credit, management, and other loan underwriting standards (including any standards with respect to previous relationships between Lender and the proposed new guarantor and the organization of the new guarantor (if applicable));

(ii) no new guarantor is a Prohibited Person, and such Transfer would not result in a violation of the requirements of Section 11.02(b)(2)(D); and

(iii) no new guarantor (if any of such are entities) shall have an organizational existence termination date that ends before the Maturity Date; and


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(C) one or more individuals or entities acceptable to Lender as new guarantors have executed and delivered to Lender:

(i) an assumption agreement acceptable to Lender that requires the new guarantor to assume and perform all obligations of Guarantor under any Guaranty given in connection with the Mortgage Loan; or

(ii) a substitute Non-Recourse Guaranty and other substitute guaranty in a form acceptable to Lender.

(2) In the event a replacement Guarantor is required by Lender due to the Guarantor Bankruptcy Event described in this Section 11.03(f), and such replacement has not occurred within such period, the period for replacement may be extended by Lender in its discretion; however, Lender may require as a condition to any such extension that:

(A) the then-current property manager be replaced with a property manager reasonably acceptable to Lender (or if a property manager has not been previously engaged, a property manager reasonably acceptable to Lender be engaged); or

(B) a lockbox agreement or similar cash management arrangement (with the property manager) reasonably acceptable to Lender during such extended replacement period be instituted.

If the conditions set forth in this Section 11.03(f) are satisfied, the Transfer Fee shall be waived, provided Borrower shall pay the Review Fee and out-of-pocket costs set forth in Section 11.03(g).

**(g) Further Conditions to Transfers and Assumption.**

(1) In connection with any Transfer of the Mortgaged Property, or an ownership interest in Borrower, Key Principal, or Guarantor for which Lender's approval is required under this Loan Agreement (including Section 11.03(a)), Lender may, as a condition to any such approval, require:

(A) additional collateral, guaranties, or other credit support to mitigate any risks concerning the proposed transferee or the performance or condition of the Mortgaged Property;

(B) amendment of the Loan Documents to delete or modify any specially negotiated terms or provisions previously granted for the exclusive benefit of original Borrower, Key Principal, or Guarantor and to restore the original provisions of the standard Fannie Mae form multifamily loan documents, to the extent such provisions were previously modified or to avoid the occurrence of an Adverse Tax Event;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(C) a modification to the amounts required to be deposited into the Reserve/Escrow Account pursuant to the terms of Section 13.02(a)(3)(B);

(D) with respect to any MBS trust that directly or indirectly holds the Mortgage Loan and issues MBS that are outstanding, the Transfer shall not result in an Adverse Tax Event; or

(E) the Transfer would not violate the requirements of Section 11.02(b)(2)(D).

(2) In connection with any request by Borrower for consent to a Transfer, Borrower shall pay to Lender upon demand:

(A) the Transfer Fee (to the extent charged by Lender);

(B) the Review Fee (regardless of whether Lender approves or denies such request); and

(C) all of Lender's out-of-pocket costs (including reasonable attorneys' fees) incurred in reviewing the Transfer request, regardless of whether Lender approves or denies such request.

## ARTICLE 12 - IMPOSITIONS

### Section 12.01 Representations and Warranties.

The representations and warranties made by Borrower to Lender in this Section 12.01 are made as of the Effective Date and are true and correct except as disclosed on the Exceptions to Representations and Warranties Schedule.

**(a) Payment of Taxes, Assessments, and Other Charges.**

Borrower has:

(1) paid (or with the approval of Lender, established an escrow fund sufficient to pay when due and payable) all amounts and charges relating to the Mortgaged Property that have become due and payable before any fine, penalty interest, lien, or costs may be added thereto, including Impositions, leasehold payments, and ground rents;

(2) paid all Taxes for the Mortgaged Property that have become due before any fine, penalty interest, lien, or costs may be added thereto pursuant to any notice of assessment received by Borrower and any and all taxes that have become due against Borrower before any fine, penalty interest, lien, or costs may be added thereto;

(3) no knowledge of any basis for any additional assessments;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(2) accurately represent the financial condition of the Mortgaged Property as of such date.

**(b) No Change in Facts or Circumstances.**

All information in the Loan Application and in all financial statements, rent rolls, reports, certificates, and other documents submitted in connection with the Loan Application are complete and accurate in all material respects. There has been no material adverse change in any fact or circumstance that would make any such information incomplete or inaccurate.

**Section 8.02 Covenants.**

**(a) Obligation to Maintain Accurate Books and Records.**

Borrower shall keep and maintain at all times at the Mortgaged Property or the property management agent's offices or Borrower's General Business Address and, upon Lender's written request, shall make available to Lender:

(1) complete and accurate books of account and records (including copies of supporting bills and invoices) adequate to reflect correctly the operation of the Mortgaged Property; and

(2) copies of all written contracts, Leases, and other instruments that affect Borrower or the Mortgaged Property.

**(b) Items to Furnish to Lender.**

Borrower shall furnish to Lender the following, which shall be deemed certified by Borrower, as true, complete, and accurate, in all material respects as of the time of delivery and binding upon Borrower (or Guarantor, as applicable) and in such form and with such detail as Lender reasonably requires:

(1) within forty-five (45) days after the end of each first, second, and third calendar quarter, a statement of income and expenses for Borrower on a year-to-date basis as of the end of each calendar quarter;

(2) within one hundred twenty (120) days after the end of each calendar year:

(A) for any Borrower that is an entity, a statement of income and expenses and a statement of cash flows for such calendar year;

(B) for any Borrower that is an individual or a trust established for estate-planning purposes, a personal financial statement for such calendar year;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(C) when requested in writing by Lender, balance sheet(s) showing all assets and liabilities of Borrower and a statement of all contingent liabilities as of the end of such calendar year;

(D) if an energy consumption metric for the Mortgaged Property is required to be reported to any Governmental Authority, the Fannie Mae Energy Performance Metrics report, as generated by ENERGY STAR® Portfolio Manager, for the Mortgaged Property for such calendar year, which report must include the ENERGY STAR score, the Source Energy Use Intensity (EUI), the month and year ending period for such ENERGY STAR score and such Source Energy Use Intensity, and the ENERGY STAR Portfolio Manager Property Identification Number; provided that, if the Governmental Authority does not require the use of ENERGY STAR Portfolio Manager for the reporting of the energy consumption metric and Borrower does not use ENERGY STAR Portfolio Manager, then Borrower shall furnish to Lender the Source Energy Use Intensity for the Mortgaged Property for such calendar year;

(E) a written certification ratifying and affirming that:

(i) Borrower has taken no action in violation of Section 4.02(d) regarding its single asset status;

(ii) Borrower has received no notice of any building code violation, or if Borrower has received such notice, evidence of remediation;

(iii) Borrower has made no application for rezoning or received any notice that the Mortgaged Property has been or is being rezoned; and

(iv) Borrower has taken no action and has no knowledge of any action that would violate the provisions of Section 11.02(b)(1)(F) regarding liens encumbering the Mortgaged Property;

(F) an accounting of all security deposits held pursuant to all Leases, including the name of the institution (if any) and the names and identification numbers of the accounts (if any) in which such security deposits are held and the name of the person to contact at such financial institution, along with any authority or release necessary for Lender to access information regarding such accounts;

(G) written confirmation of:

(i) any changes occurring since the Effective Date (or that no such changes have occurred since the Effective Date) in (1) the direct owners of Borrower, (2) the indirect owners (and any non-member managers) of Borrower that Control Borrower (excluding any Publicly-Held Corporations or Publicly-Held Trusts), or (3) the indirect owners of


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Borrower that hold twenty-five percent (25%) or more of the ownership interests in Borrower (excluding any Publicly-Held Corporations or Publicly-Held Trusts), and their respective interests;

(ii) the names of all officers and directors of (1) any Borrower which is a corporation, (2) any corporation which is a general partner of any Borrower which is a partnership, or (3) any corporation which is the managing member or non-member manager of any Borrower which is a limited liability company; and

(iii) the names of all managers who are not members of (1) any Borrower which is a limited liability company, (2) any limited liability company which is a general partner of any Borrower which is a partnership, or (3) any limited liability company which is the managing member or non-member manager of any Borrower which is a limited liability company; and

(H) if not already provided pursuant to Section 8.02(b)(2)(A) above, a statement of income and expenses for Borrower's operation of the Mortgaged Property on a year-to-date basis as of the end of each calendar year;

(3) within forty-five (45) days after the end of each first, second, and third calendar quarter and within one hundred twenty (120) days after the end of each calendar year, and at any other time upon Lender's written request, a rent schedule for the Mortgaged Property showing the name of each tenant and for each tenant, the space occupied, the lease expiration date, the rent payable for the current month, the date through which rent has been paid, and any related information requested by Lender;

(4) upon Lender's written request, thereafter furnish to Lender within ten (10) Business Days after the end of each month, until the end of the Loan Term, complete and accurate rent schedule data for the Mortgaged Property;

(5) within thirty (30) days after Lender's written request (but, absent an Event of Default, no more frequently than once in any six (6) month period):

(A) any item described in Section 8.02(b)(1) or Section 8.02(b)(2);

(B) a property management or leasing report for the Mortgaged Property, showing the number of rental applications received from tenants or prospective tenants and deposits received from tenants or prospective tenants, and any other information requested by Lender for such period as requested by Lender;

(C) a statement of income and expenses for Borrower's operation of the Mortgaged Property on a year-to-date basis as of the end of each month for such period as requested by Lender;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(D) a statement of real estate owned directly or indirectly by Borrower and Guarantor for such period as requested by Lender;

(E) for any Guarantor:

(i) that is an entity, a statement of income and expenses and a statement of cash flows for the most recent available calendar year and any calendar quarters ending between the available year and the date of the request;

(ii) that is an individual, or a trust established for estate-planning purposes, a personal financial statement for the most recent available calendar year and any calendar quarters ending between the available year and the date of the request; and

(iii) balance sheet(s) showing all assets and liabilities of Guarantor and a statement of all contingent liabilities as of the end of the most recent available calendar year; and

(F) a statement that identifies the following for such period as requested by Lender:

(i) direct owners of Borrower and their respective interests;

(ii) indirect owners (and any non-member managers) of Borrower that Control Borrower (excluding any Publicly-Held Corporations or Publicly-Held Trusts) and their respective interests;

(iii) indirect owners of Borrower that hold twenty-five percent (25%) or more of the ownership interests in Borrower (excluding any Publicly-Held Corporations or Publicly-Held Trusts) and their respective interests; and

(iv) to the extent that the Persons identified in (i)-(iii) above do not own, in the aggregate, at least fifty percent (50%) of the indirect ownership interests in Borrower, additional indirect owners of Borrower sufficient to show an aggregate ownership interest of at least fifty percent (50%).

**(c) Audited Financials.**

In the event Borrower or Guarantor receives or obtains any audited financial statements and such financial statements are required to be delivered to Lender under Section 8.02(b), Borrower shall deliver or cause to be delivered to Lender the audited versions of such financial statements.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(d) **Delivery of Books and Records.**

If an Event of Default has occurred and is continuing, Borrower shall deliver to Lender, upon written demand, all books and records relating to the Mortgaged Property or its operation.

**Section 8.03 Mortgage Loan Administration Matters Regarding Books and Records and Financial Reporting.**

(a) **Lender's Right to Obtain Audited Books and Records.**

Lender may require that Borrower's or Guarantor's books and records be audited, at Borrower's expense, by an independent certified public accountant selected by Lender in order to produce or audit any statements, schedules, and reports of Borrower, Guarantor, or the Mortgaged Property required by Section 8.02, if:

(1) Borrower or Guarantor fails to provide in a timely manner the statements, schedules, and reports required by Section 8.02 and, thereafter, Borrower or Guarantor fails to provide such statements, schedules, and reports within the cure period provided in Section 14.01(c);

(2) the statements, schedules, and reports submitted to Lender pursuant to Section 8.02 are not full, complete, and accurate in all material respects as determined by Lender and, thereafter, Borrower or Guarantor fails to provide such statements, schedules, and reports within the cure period provided in Section 14.01(c); or

(3) an Event of Default has occurred and is continuing.

Notwithstanding the foregoing, the ability of Lender to require the delivery of audited financial statements shall be limited to not more than once per Borrower's fiscal year so long as no Event of Default has occurred during such fiscal year (or any event which, with the giving of written notice or the passage of time, or both, would constitute an Event of Default has occurred and is continuing). Borrower shall cooperate with Lender in order to satisfy the provisions of this Section 8.03(a). All related costs and expenses of Lender shall become due and payable by Borrower within ten (10) Business Days after demand therefor.

(b) **Credit Reports; Credit Score.**

No more often than once in any twelve (12) month period, Lender is authorized to obtain a credit report (if applicable) on Borrower or Guarantor, the cost of which report shall be paid by Borrower. Lender is authorized to obtain a Credit Score (if applicable) for Borrower or Guarantor at any time at Lender's expense.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# ARTICLE 9 - INSURANCE

**Section 9.01 Representations and Warranties.**

The representations and warranties made by Borrower to Lender in this Section 9.01 are made as of the Effective Date and are true and correct except as disclosed on the Exceptions to Representations and Warranties Schedule.

**(a) Compliance with Insurance Requirements.**

Borrower is in compliance with Lender's insurance requirements (or has obtained a written waiver from Lender for any non-compliant coverage) and has timely paid all premiums on all required insurance policies.

**(b) Property Condition.**

(1) The Mortgaged Property has not been damaged by fire, water, wind, or other cause of loss; or

(2) if previously damaged, any previous damage to the Mortgaged Property has been repaired and the Mortgaged Property has been fully restored.

**Section 9.02 Covenants.**

**(a) Insurance Requirements.**

(1) As required by Lender and applicable law, and as may be modified from time to time, Borrower shall:

(A) keep the Improvements insured at all times against any hazards, which insurance shall include coverage against loss by fire and all other perils insured by the "special causes of loss" coverage form, general boiler and machinery coverage, business income coverage, and flood (if any of the Improvements are located in an area identified by the Federal Emergency Management Agency (or any successor) as an area having special flood hazards and to the extent flood insurance is available in that area), and may include sinkhole insurance, mine subsidence insurance, earthquake insurance, terrorism insurance, windstorm insurance and, if the Mortgaged Property does not conform to applicable building, zoning, or land use laws, ordinance and law coverage;

(B) maintain at all times commercial general liability insurance, workmen's compensation insurance, and such other liability, errors and omissions, and fidelity insurance coverage; and

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(C) maintain builder's risk and public liability insurance, and other insurance in connection with completing the Repairs or Replacements, as applicable.

**(b) Delivery of Policies, Renewals, Notices, and Proceeds.**

Borrower shall:

(1) cause all insurance policies (including any policies not otherwise required by Lender) which can be endorsed with standard non-contributing, non-reporting mortgagee clauses making loss payable to Lender (or Lender's assigns) to be so endorsed;

(2) promptly deliver to Lender a copy of all renewal and other notices received by Borrower with respect to the policies and all receipts for paid premiums;

(3) deliver evidence, in form and content acceptable to Lender, that each required insurance policy under this Article 9 has been renewed not less than fifteen (15) days prior to the applicable expiration date, and (if such evidence is other than an original or duplicate original of a renewal policy) deliver the original or duplicate original of each renewal policy (or such other evidence of insurance as may be required by or acceptable to Lender) in form and content acceptable to Lender within ninety (90) days after the applicable expiration date of the original insurance policy;

(4) provide immediate written notice to the insurance company and to Lender of any event of loss;

(5) execute such further evidence of assignment of any insurance proceeds as Lender may require; and

(6) provide immediate written notice to Lender of Borrower's receipt of any insurance proceeds under any insurance policy required by Section 9.02(a)(1) above and, if requested by Lender, deliver to Lender all of such proceeds received by Borrower to be applied by Lender in accordance with this Article 9.

**Section 9.03 Mortgage Loan Administration Matters Regarding Insurance.**

**(a) Lender's Ongoing Insurance Requirements.**

Borrower acknowledges that Lender's insurance requirements may change from time to time. All insurance policies and renewals of insurance policies required by this Loan Agreement shall be:

(1) in the form and with the terms required by Lender;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(2) in such amounts, with such maximum deductibles and for such periods required by Lender; and

(3) issued by insurance companies satisfactory to Lender.

BORROWER ACKNOWLEDGES THAT ANY FAILURE OF BORROWER TO COMPLY WITH THE REQUIREMENTS SET FORTH IN SECTION 9.02(a) OR SECTION 9.02(b)(3) ABOVE SHALL PERMIT LENDER TO PURCHASE THE APPLICABLE INSURANCE AT BORROWER'S COST. SUCH INSURANCE MAY, BUT NEED NOT, PROTECT BORROWER'S INTERESTS. THE COVERAGE THAT LENDER PURCHASES MAY NOT PAY ANY CLAIM THAT BORROWER MAKES OR ANY CLAIM THAT IS MADE AGAINST BORROWER IN CONNECTION WITH THE MORTGAGED PROPERTY. IF LENDER PURCHASES INSURANCE FOR THE MORTGAGED PROPERTY AS PERMITTED HEREUNDER, BORROWER WILL BE RESPONSIBLE FOR THE COSTS OF THAT INSURANCE, INCLUDING INTEREST AT THE DEFAULT RATE AND ANY OTHER CHARGES LENDER MAY IMPOSE IN CONNECTION WITH THE PLACEMENT OF THE INSURANCE UNTIL THE EFFECTIVE DATE OF THE CANCELLATION OR THE EXPIRATION OF THE INSURANCE. THE COSTS OF THE INSURANCE SHALL BE ADDED TO BORROWER'S TOTAL OUTSTANDING BALANCE OR OBLIGATION AND SHALL CONSTITUTE ADDITIONAL INDEBTEDNESS. THE COSTS OF THE INSURANCE MAY BE MORE THAN THE COST OF INSURANCE BORROWER MAY BE ABLE TO OBTAIN ON ITS OWN. BORROWER MAY LATER CANCEL ANY INSURANCE PURCHASED BY LENDER, BUT ONLY AFTER PROVIDING EVIDENCE THAT BORROWER HAS OBTAINED INSURANCE AS REQUIRED BY THIS LOAN AGREEMENT AND THE OTHER LOAN DOCUMENTS.

**(b) Application of Proceeds on Event of Loss.**

(1) Upon an event of loss, Lender may, at Lender's option:

(A) hold such proceeds in the Restoration Reserve Account to be applied to reimburse Borrower for the cost of Restoration in accordance with Article 13 and Lender's then-current policies relating to the restoration of casualty damage on similar multifamily residential properties; or

(B) apply such proceeds to the payment of the Indebtedness, whether or not then due; provided, however, Lender shall not apply insurance proceeds to the payment of the Indebtedness and shall permit Restoration pursuant to Section 9.03(b)(1)(A) if all of the following conditions are met:

(i) no Event of Default has occurred and is continuing (or any event which, with the giving of written notice or the passage of time, or both, would constitute an Event of Default has occurred and is continuing);


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(ii) Lender determines that the combination of insurance proceeds and amounts provided by Borrower will be sufficient funds to complete the Restoration;

(iii) Lender determines that the Net Cash Flow generated by the Mortgaged Property after completion of the Restoration will be sufficient to support a debt service coverage ratio not less than the debt service coverage ratio immediately prior to the event of loss, but in no event less than 1.0x (the debt service coverage ratio shall be calculated on a thirty (30) year amortizing basis (if applicable, on a *proforma* basis approved by Lender) in all events and shall include all operating costs and other expenses, Imposition Deposits, deposits to Collateral Accounts, and Mortgage Loan repayment obligations);

(iv) Lender determines that the Restoration will be completed before the earlier of (1) one (1) year before the stated Maturity Date, or (2) one (1) year after the date of the loss or casualty; and

(v) Borrower provides Lender, upon written request, evidence of the availability during and after the Restoration of the insurance required to be maintained pursuant to this Loan Agreement.

(2) Notwithstanding the foregoing, if any loss is estimated to be in an amount equal to or less than $75,000, Lender shall not exercise its rights and remedies as power-of-attorney herein and shall allow Borrower to make proof of loss, to adjust and compromise any claims under policies of property damage insurance, to appear in and prosecute any action arising from such policies of property damage insurance, and to collect and receive the proceeds of property damage insurance; provided that each of the following conditions shall be satisfied:

(A) Borrower shall immediately notify Lender of the casualty giving rise to the claim;

(B) no Event of Default has occurred and is continuing (or any event which, with the giving of written notice or the passage of time, or both, would constitute an Event of Default has occurred and is continuing);

(C) the Restoration will be completed before the earlier of (i) one (1) year before the stated Maturity Date, or (ii) one (1) year after the date of the loss or casualty;

(D) Lender determines that the combination of insurance proceeds and amounts provided by Borrower will be sufficient funds to complete the Restoration;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(E) all proceeds of property damage insurance shall be issued in the form of joint checks to Borrower and Lender;

(F) all proceeds of property damage insurance shall be applied to the Restoration;

(G) Borrower shall deliver to Lender evidence satisfactory to Lender of completion of the Restoration and obtainment of all lien releases;

(H) Borrower shall have complied to Lender's satisfaction with the foregoing requirements on any prior claims subject to this provision, if any; and

(I) Lender shall have the right to inspect the Mortgaged Property (subject to the rights of tenants under the Leases).

(3) If Lender elects to apply insurance proceeds to the Indebtedness in accordance with the terms of this Loan Agreement, Borrower shall not be obligated to restore or repair the Mortgaged Property. Rather, Borrower shall restrict access to the damaged portion of the Mortgaged Property and, at its expense and regardless of whether such costs are covered by insurance, clean up any debris resulting from the casualty event, and, if required or otherwise permitted by Lender, demolish or raze any remaining part of the damaged Mortgaged Property to the extent necessary to keep and maintain the Mortgaged Property in a safe, habitable, and marketable condition. Nothing in this Section 9.03(b) shall affect any of Lender's remedial rights against Borrower in connection with a breach by Borrower of any of its obligations under this Loan Agreement or under any Loan Document, including any failure to timely pay Monthly Debt Service Payments or maintain the insurance coverage(s) required by this Loan Agreement.

**(c) Payment Obligations Unaffected.**

The application of any insurance proceeds to the Indebtedness shall not extend or postpone the Maturity Date, or the due date or the full payment of any Monthly Debt Service Payment, Monthly Replacement Reserve Deposit, or any other installments referred to in this Loan Agreement or in any other Loan Document. Notwithstanding the foregoing, if Lender applies insurance proceeds to the Indebtedness in connection with a casualty of less than the entire Mortgaged Property, and after such application of proceeds the debt service coverage ratio (as determined by Lender) is less than 1.25x based on the then-applicable Monthly Debt Service Payment and the anticipated ongoing Net Cash Flow of the Mortgaged Property after such casualty event, then Lender may, at its discretion, permit an adjustment to the Monthly Debt Service Payments that become due and owing thereafter, based on Lender's then-current underwriting requirements. In no event shall the preceding sentence obligate Lender to make any adjustment to the Monthly Debt Service Payments.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(d) Foreclosure Sale.**

If the Mortgaged Property is transferred pursuant to a Foreclosure Event or Lender otherwise acquires title to the Mortgaged Property, Borrower acknowledges that Lender shall automatically succeed to all rights of Borrower in and to any insurance policies and unearned insurance premiums applicable to the Mortgaged Property and in and to the proceeds resulting from any damage to the Mortgaged Property prior to such Foreclosure Event or such acquisition.

**(e) Appointment of Lender as Attorney-In-Fact.**

Borrower hereby authorizes and appoints Lender as attorney-in-fact pursuant to Section 14.03(c).

## ARTICLE 10 - CONDEMNATION

**Section 10.01 Representations and Warranties.**

The representations and warranties made by Borrower to Lender in this Section 10.01 are made as of the Effective Date and are true and correct except as disclosed on the Exceptions to Representations and Warranties Schedule.

**(a) Prior Condemnation Action.**

No part of the Mortgaged Property has been taken in connection with a Condemnation Action.

**(b) Pending Condemnation Actions.**

No Condemnation Action is pending or, to Borrower's knowledge, is threatened for the partial or total condemnation or taking of the Mortgaged Property.

**Section 10.02 Covenants.**

**(a) Notice of Condemnation.**

Borrower shall:

(1) promptly notify Lender of any Condemnation Action of which Borrower has knowledge;

(2) appear in and prosecute or defend, at its own cost and expense, any action or proceeding relating to any Condemnation Action, including any defense of Lender's interest in the Mortgaged Property tendered to Borrower by Lender, unless otherwise directed by Lender in writing; and


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(3) execute such further evidence of assignment of any condemnation award in connection with a Condemnation Action as Lender may require.

**(b) Condemnation Proceeds.**

Borrower shall pay to Lender all awards or proceeds of a Condemnation Action promptly upon receipt.

**Section 10.03 Mortgage Loan Administration Matters Regarding Condemnation.**

**(a) Application of Condemnation Awards.**

Lender may apply any awards or proceeds of a Condemnation Action, after the deduction of Lender's expenses incurred in the collection of such amounts, to:

(1) the restoration or repair of the Mortgaged Property, if applicable;

(2) the payment of the Indebtedness, with the balance, if any, paid to Borrower; or

(3) Borrower.

**(b) Payment Obligations Unaffected.**

The application of any awards or proceeds of a Condemnation Action to the Indebtedness shall not extend or postpone the Maturity Date, or the due date or the full payment of any Monthly Debt Service Payment, Monthly Replacement Reserve Deposit, or any other installments referred to in this Loan Agreement or in any other Loan Document.

**(c) Appointment of Lender as Attorney-In-Fact.**

Borrower hereby authorizes and appoints Lender as attorney-in-fact pursuant to Section 14.03(c).

**(d) Preservation of Mortgaged Property.**

If a Condemnation Action results in or from damage to the Mortgaged Property and Lender elects to apply the proceeds or awards from such Condemnation Action to the Indebtedness in accordance with the terms of this Loan Agreement, Borrower shall not be obligated to restore or repair the Mortgaged Property. Rather, Borrower shall restrict access to any portion of the Mortgaged Property which has been damaged or destroyed in connection with such Condemnation Action and, at Borrower's expense and regardless of whether such costs are covered by insurance, clean up any debris resulting in or from the Condemnation Action, and, if required by any Governmental Authority or otherwise permitted by Lender, demolish or raze any remaining part of the damaged Mortgaged Property to the extent necessary to keep and maintain the Mortgaged Property in a safe, habitable, and marketable condition. Nothing in this Section 10.03(d) shall


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

affect any of Lender's remedial rights against Borrower in connection with a breach by Borrower of any of its obligations under this Loan Agreement or under any Loan Document, including any failure to timely pay Monthly Debt Service Payments or maintain the insurance coverage(s) required by this Loan Agreement.

## ARTICLE 11 - LIENS, TRANSFERS, AND ASSUMPTIONS

**Section 11.01 Representations and Warranties.**

The representations and warranties made by Borrower to Lender in this Section 11.01 are made as of the Effective Date and are true and correct except as disclosed on the Exceptions to Representations and Warranties Schedule.

**(a) No Labor or Materialmen's Claims.**

All parties furnishing labor and materials on behalf of Borrower have been paid in full. There are no mechanics' or materialmen's liens (whether filed or unfiled) outstanding for work, labor, or materials (and no claims or work outstanding that under applicable law could give rise to any such mechanics' or materialmen's liens) affecting the Mortgaged Property, whether prior to, equal with, or subordinate to the lien of the Security Instrument.

**(b) No Other Interests.**

No Person:

(1) other than Borrower has any possessory ownership or interest in the Mortgaged Property or right to occupy the same except under and pursuant to the provisions of existing Leases, the material terms of all such Leases having been previously disclosed in writing to Lender; or

(2) has an option, right of first refusal, or right of first offer (except as required by applicable law) to purchase the Mortgaged Property, or any interest in the Mortgaged Property.

**Section 11.02 Covenants.**

**(a) Liens; Encumbrances.**

Borrower shall not permit the grant, creation, or existence of any Lien, whether voluntary, involuntary, or by operation of law, on all or any portion of the Mortgaged Property (including any voluntary, elective, or non-compulsory tax lien or assessment pursuant to a voluntary, elective, or non-compulsory special tax district or similar regime) other than:

(1) Permitted Encumbrances;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(2) the creation of:

(A) any tax lien, municipal lien, utility lien, mechanics' lien, materialmen's lien, or judgment lien against the Mortgaged Property if bonded off, released of record, or otherwise remedied to Lender's satisfaction within sixty (60) days after the earlier of the date Borrower has actual notice or constructive notice of the existence of such lien; or

(B) any mechanics' or materialmen's liens which attach automatically under the laws of any Governmental Authority upon the commencement of any work upon, or delivery of any materials to, the Mortgaged Property and for which Borrower is not delinquent in the payment for any such work or materials; and

(3) the lien created by, or (in connection with Permitted Equipment Financing) permitted under, the Loan Documents.

**(b) Transfers.**

**(1) Mortgaged Property.**

Borrower shall not Transfer, or cause or permit a Transfer of, all or any part of the Mortgaged Property (including any interest in the Mortgaged Property) other than:

(A) a Transfer to which Lender has consented in writing;

(B) Leases permitted pursuant to the Loan Documents;

(C) [reserved];

(D) a Transfer of obsolete or worn out Personalty or Fixtures that are contemporaneously replaced by items of equal or better function and quality (unless such items are no longer required in connection with operation of the Mortgaged Property) which are free of Liens (other than those created by the Loan Documents);

(E) the grant of an easement, servitude, or restrictive covenant to which Lender has consented, and Borrower has paid to Lender, upon demand, all costs and expenses incurred by Lender in connection with reviewing Borrower's request (including reasonable attorneys' fees and a $5,000 review fee, which shall be in lieu of any other Review Fee or Transfer Fee);

(F) a lien permitted pursuant to Section 11.02(a) of this Loan Agreement; or


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(G) the conveyance of the Mortgaged Property following a Foreclosure Event.

**(2) Interests in Borrower, Key Principal, or Guarantor.**

Other than a Transfer to which Lender has consented in writing, Borrower shall not Transfer, or cause or permit to be Transferred:

(A) any direct or indirect ownership interest in Borrower, Key Principal, or Guarantor (if applicable) if such Transfer would cause a change in Control;

(B) a direct or indirect Restricted Ownership Interest in Borrower, Key Principal, or Guarantor (if applicable);

(C) fifty percent (50%) or more of Key Principal's or Guarantor's direct or indirect ownership interests in Borrower that existed on the Effective Date (individually or on an aggregate basis);

(D) any direct or indirect ownership interest in Borrower, Key Principal, or Guarantor (if applicable) if such Transfer would result in a violation of Section 4.02(b); or

(E) the economic benefits or rights to cash flows attributable to any ownership interest in Borrower, Key Principal, or Guarantor (if applicable) separate from the Transfer of the underlying ownership interest if the Transfer of the underlying ownership interest is prohibited by this Loan Agreement.

Notwithstanding the foregoing, if a Publicly-Held Corporation or a Publicly-Held Trust Controls Borrower, Key Principal, or Guarantor, or owns a direct or indirect Restricted Ownership Interest in Borrower, Key Principal, or Guarantor, a Transfer of any ownership interest in such Publicly-Held Corporation or Publicly-Held Trust shall not be prohibited under this Loan Agreement as long as (i) such Transfer does not result in a conversion of such Publicly-Held Corporation or Publicly-Held Trust to a privately held entity, and (ii) Borrower provides written notice to Lender not later than thirty (30) days thereafter of any such Transfer that results in any Person owning ten percent (10%) or more of the ownership interests in such Publicly-Held Corporation or Publicly-Held Trust.

**(3) Transfers of Non-Controlling Interests.**

Transfers of direct or indirect limited partnership or non-managing member interests in Borrower that result in a Transfer of fifty percent (50%) or more of the limited partnership or non-managing membership interests shall be consented to by Lender if such Transfer satisfies the following conditions:


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(A) Key Principal or Guarantor (as applicable) Controls Borrower with the same rights and abilities as Key Principal or Guarantor (as applicable) Controls Borrower immediately prior to the date of such Transfer;

(B) such Transfer does not violate the requirements of Section 11.02(b)(2)(C) or Section 11.02(b)(2)(D);

(C) Borrower shall provide Lender not less than thirty (30) days prior written notice of the proposed Transfer and obtain Lender's approval;

(D) Borrower shall provide with its notice to Lender an organizational chart reflecting, and all organizational documents relevant to, the proposed Transfer;

(E) Borrower shall provide with its notice to Lender a certification that no change of Control of Borrower, Key Principal, or Guarantor (as applicable) shall occur as a result of such Transfer;

(F) if any Person will own twenty-five percent (25%) or more of the direct or indirect ownership interests in Borrower that did not own twenty-five percent (25%) or more before the Transfer, such Person shall not, as of the date of the Transfer, be a Prohibited Person;

(G) Borrower shall pay to Lender:

(i) concurrently with its notice to Lender, the Review Fee plus a transfer fee of $25,000, which shall be in lieu of any other Transfer Fee; and

(ii) upon demand, any out-of-pocket costs and expenses, including reasonable attorneys' fees and expenses, incurred by Lender in connection with its review of the Transfer request; and

(H) Borrower shall execute upon demand such documents or certifications as Lender reasonably requires in order to confirm the post-transfer ownership structure, compliance with the stated conditions, and any other relevant factual matter.

**(4) Name Change or Entity Conversion.**

Lender shall consent to Borrower changing its name, changing its jurisdiction of organization, or converting from one type of legal entity into another type of legal entity for any lawful purpose, provided that:


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(A) Lender receives written notice at least thirty (30) days prior to such change or conversion, which notice shall include organizational charts that reflect the structure of Borrower both prior to and subsequent to such name change or entity conversion;

(B) such Transfer is not otherwise prohibited under the provisions of Section 11.02(b)(2);

(C) Borrower executes an amendment to this Loan Agreement and any other Loan Documents required by Lender documenting the name change or entity conversion;

(D) Borrower agrees and acknowledges, at Borrower's expense, that (i) Borrower will execute and record in the land records any instrument required by the Property Jurisdiction to be recorded to evidence such name change or entity conversion (or provide Lender with written confirmation from the title company (via electronic mail or letter) that no such instrument is required), (ii) Borrower will execute any additional documents required by Lender, including the amendment to this Loan Agreement, and allow such documents to be recorded or filed in the land records of the Property Jurisdiction, (iii) Lender will obtain a "date down" endorsement to the Lender's Title Policy (or obtain a new Title Policy if a "date down" endorsement is not available in the Property Jurisdiction), evidencing title to the Mortgaged Property being in the name of the successor entity and the Lien of the Security Instrument against the Mortgaged Property, and (iv) Lender will file any required UCC-3 financing statement and make any other filing deemed necessary to maintain the priority of its Liens on the Mortgaged Property; and

(E) no later than ten (10) days subsequent to such name change or entity conversion, Borrower shall provide Lender (i) the documentation filed with the appropriate office in Borrower's state of formation evidencing such name change or entity conversion, (ii) copies of the organizational documents of Borrower, including any amendments, filed with the appropriate office in Borrower's state of formation reflecting the post-conversion Borrower name, form of organization, and structure, and (iii) if available, new certificates of good standing or valid formation for Borrower.

**(5) No Delaware Statutory Trust or Series LLC Conversion.**

Notwithstanding any provisions herein to the contrary, no Borrower, Guarantor, or Key Principal shall convert to a Delaware Statutory Trust or a series limited liability company.

**(6) Plans of Division.**

Borrower shall not Divide. Lender shall consent to a Division by Guarantor or Key


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Principal provided that:

(A) Lender receives written notice at least thirty (30) days prior to the effective date of such Division, which notice shall include (i) a certification acceptable to Lender that such Division is not otherwise prohibited under the provisions of Article 11, (ii) a copy of the plan of division, and (iii) organizational charts that reflect the organizational structure of Borrower, Guarantor, and Key Principal both prior to and subsequent to such Division;

(B) no later than ten (10) days subsequent to such Division, Borrower shall provide Lender (i) the certificate of division or such other documentation filed with the appropriate office evidencing such Division, (ii) copies of the organizational documents of Borrower (if amended), Guarantor, and Key Principal, including any amendments thereto, that reflect the post-Division organizational structure, and (iii) new certificates of good standing or valid formation for Borrower (if amended), Guarantor, and Key Principal; and

(C) Borrower has paid to Lender, upon demand, all costs and expenses incurred by Lender in connection with reviewing Borrower's request (including reasonable attorneys' fees and a $25,000 review fee, which shall be in lieu of any other Review Fee or Transfer Fee).

**(c) No Other Indebtedness.**

Other than the Mortgage Loan, Borrower shall not incur or be obligated at any time with respect to any loan or other indebtedness (except Permitted Equipment Financing and trade payables as otherwise permitted in this Loan Agreement), including any indebtedness secured by a Lien on, or the cash flows from, the Mortgaged Property.

**(d) No Mezzanine Financing or Preferred Equity.**

Neither Borrower nor any direct or indirect owner of Borrower shall: (1) incur any Mezzanine Debt other than Permitted Mezzanine Debt; (2) issue any Preferred Equity other than Permitted Preferred Equity; or (3) incur any similar indebtedness or issue any similar equity.

**Section 11.03 Mortgage Loan Administration Matters Regarding Liens, Transfers, and Assumptions.**

**(a) Assumption of Mortgage Loan.**

Lender shall consent to a Transfer of the Mortgaged Property to and an assumption of the Mortgage Loan by a new borrower if each of the following conditions is satisfied prior to the Transfer:

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(1) Borrower has submitted to Lender all information required by Lender to make the determination required by this Section 11.03(a);

(2) no Event of Default has occurred and is continuing, and no event which, with the giving of written notice or the passage of time, or both, would constitute an Event of Default has occurred and is continuing;

(3) Lender determines that:

(A) the proposed new borrower, new key principal, and any other new guarantor fully satisfy all of Lender's then-applicable borrower, key principal, or guarantor eligibility, credit, management, and other loan underwriting standards, which shall include an analysis of (i) the previous relationships between Lender and the proposed new borrower, new key principal, new guarantor, and any Person in Control of them, and the organization of the new borrower, new key principal, and new guarantor (if applicable), and (ii) the operating and financial performance of the Mortgaged Property, including physical condition and occupancy;

(B) none of the proposed new borrower, new key principal, and any new guarantor, or any owners of the proposed new borrower, new key principal, and any new guarantor, are a Prohibited Person, and such Transfer would not result in a violation of the requirements of Section 11.02(b)(2)(D); and

(C) none of the proposed new borrower, new key principal, and any new guarantor (if any of such are entities) shall have an organizational existence termination date that ends before the Maturity Date;

(4) [reserved];

(5) the proposed new borrower has:

(A) executed an assumption agreement acceptable to Lender that, among other things, requires the proposed new borrower to assume and perform all obligations of Borrower (or any other transferor), and that may require that the new borrower comply with any provisions of any Loan Document which previously may have been waived by Lender for Borrower, subject to the terms of Section 11.03(g);

(B) if required by Lender, delivered to the title company for filing and/or recording in all applicable jurisdictions, all applicable Loan Documents including the assumption agreement to correctly evidence the assumption and the confirmation, continuation, perfection, and priority of the Liens created hereunder and under the other Loan Documents; and


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(C) delivered to Lender a "date-down" endorsement to the Title Policy acceptable to Lender (or a new title insurance policy if a "date-down" endorsement is not available);

(6) one or more individuals or entities acceptable to Lender as new guarantors have executed and delivered to Lender:

(A) an assumption agreement acceptable to Lender that requires the new guarantor to assume and perform all obligations of Guarantor under any Guaranty given in connection with the Mortgage Loan; or

(B) a substitute Non-Recourse Guaranty and other substitute guaranty in a form acceptable to Lender;

(7) Lender has reviewed and approved the Transfer documents;

(8) Lender has received the fees described in Section 11.03(g); and

(9) with respect to any MBS trust that directly or indirectly holds the Mortgage Loan and issues MBS that are outstanding, the Transfer shall not result in an Adverse Tax Event.

**(b) Transfers to Key Principal-Owned Affiliates or Guarantor-Owned Affiliates.**

(1) Except as otherwise covered in Section 11.03(b)(2) below, Transfers of direct or indirect ownership interests in Borrower to Key Principal or Guarantor, or to a transferee through which Key Principal or Guarantor (as applicable) Controls Borrower with the same rights and abilities as Key Principal or Guarantor (as applicable) Controls Borrower immediately prior to the date of such Transfer, shall be consented to by Lender if such Transfer satisfies the applicable requirements of Section 11.03(a) as they would relate to such transferee, other than Section 11.03(a)(5).

(2) Transfers of direct or indirect interests in Borrower held by a Key Principal or Guarantor to other Key Principals or Guarantors, as applicable, shall be consented to by Lender if such Transfer satisfies the following conditions:

(A) the Transfer does not cause a change in the Control of Borrower; and

(B) the transferor Key Principal or Guarantor maintains the same right and ability to Control Borrower as existed prior to the Transfer.

If the conditions set forth in this Section 11.03(b) are satisfied, the Transfer Fee shall be waived provided Borrower shall pay the Review Fee and out-of-pocket costs set forth in Section 11.03(g).

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(c) Estate Planning.**

Notwithstanding the provisions of Section 11.02(b)(2), so long as (1) the Transfer does not cause a change in the Control of Borrower, and (2) Key Principal and Guarantor, as applicable, maintain the same right and ability to Control Borrower as existed prior to the Transfer, Lender shall consent to Transfers of direct or indirect ownership interests in Borrower and Transfers of direct or indirect ownership interests in an entity Key Principal or entity Guarantor to:

(A) Immediate Family Members of such transferor, each of whom must have obtained the legal age of majority;

(B) United States domiciled trusts established for the benefit of the transferor or Immediate Family Members of the transferor; or

(C) partnerships or limited liability companies of which the partners or members, respectively, are comprised entirely of (i) such transferor and Immediate Family Members (each of whom must have obtained the legal age of majority) of such transferor, (ii) Immediate Family Members (each of whom must have obtained the legal age of majority) of such transferor, or (iii) United States domiciled trusts established for the benefit of the transferor or Immediate Family Members of the transferor.

If the conditions set forth in this Section 11.03(c) are satisfied, the Transfer Fee shall be waived provided Borrower shall pay the Review Fee and out-of-pocket costs set forth in Section 11.03(g).

**(d) Termination or Revocation of Trust.**

If any of Borrower, Guarantor, or Key Principal is a trust, or if Control of Borrower, Guarantor, or Key Principal is Transferred or if a Restricted Ownership Interest in Borrower, Guarantor, or Key Principal would be Transferred due to the termination or revocation of a trust, the termination or revocation of such trust is an unpermitted Transfer; provided that the termination or revocation of the trust due to the death of an individual trustor shall not be considered an unpermitted Transfer so long as:

(1) Lender is notified within thirty (30) days of the death; and

(2) such Borrower, Guarantor, Key Principal, or other Person, as applicable, is replaced with an individual or entity acceptable to Lender, in accordance with the provisions of Section 11.03(a) within ninety (90) days of the date of the death causing the termination or revocation.

If the conditions set forth in this Section 11.03(d) are satisfied, the Transfer Fee shall be waived; provided Borrower shall pay the Review Fee and out-of-pocket costs set forth in Section 11.03(g).

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(e) Death of Key Principal or Guarantor; Transfer Due to Death.**

(1) If a Key Principal or Guarantor that is a natural person dies, or if Control of Borrower, Guarantor, or Key Principal is Transferred, or if a Restricted Ownership Interest in Borrower, Guarantor, or Key Principal would be Transferred as a result of the death of a Person (except in the case of trusts which is addressed in Section 11.03(d)), Borrower must notify Lender in writing within ninety (90) days in the event of such death. Unless waived in writing by Lender, the deceased shall be replaced by an individual or entity within one hundred eighty (180) days, subject to Borrower's satisfaction of the following conditions:

(A) Borrower has submitted to Lender all information required by Lender to make the determination required by this Section 11.03(e);

(B) Lender determines that, if applicable:

(i) any proposed new key principal and any other new guarantor (or Person Controlling such new key principal or new guarantor) fully satisfies all of Lender's then-applicable key principal or guarantor eligibility, credit, management, and other loan underwriting standards (including any standards with respect to previous relationships between Lender and the proposed new key principal and new guarantor (or Person Controlling such new key principal or new guarantor) and the organization of the new key principal and new guarantor);

(ii) none of any proposed new key principal or any new guarantor, or any owners of the proposed new key principal or any new guarantor, is a Prohibited Person, and such Transfer would not result in a violation of the requirements of Section 11.02(b)(2)(D); and

(iii) none of any proposed new key principal or any new guarantor (if any of such are entities) shall have an organizational existence termination date that ends before the Maturity Date; and

(C) if applicable, one or more individuals or entities acceptable to Lender as new guarantors have executed and delivered to Lender:

(i) an assumption agreement acceptable to Lender that requires the new guarantor to assume and perform all obligations of Guarantor under any Guaranty given in connection with the Mortgage Loan; or

(ii) a substitute Non-Recourse Guaranty and other substitute guaranty in a form acceptable to Lender.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(2) In the event a replacement Key Principal, Guarantor, or other Person is required by Lender due to the death described in this Section 11.03(e), and such replacement has not occurred within such period, the period for replacement may be extended by Lender to a date not more than one (1) year from the date of such death; however, Lender may require as a condition to any such extension that:

(A) the then-current property manager be replaced with a property manager reasonably acceptable to Lender (or if a property manager has not been previously engaged, a property manager reasonably acceptable to Lender be engaged); or

(B) a lockbox agreement or similar cash management arrangement (with the property manager) reasonably acceptable to Lender during such extended replacement period be instituted.

If the conditions set forth in this Section 11.03(e) are satisfied, the Transfer Fee shall be waived, provided Borrower shall pay the Review Fee and out-of-pocket costs set forth in Section 11.03(g).

**(f) Bankruptcy of Guarantor.**

(1) Upon the occurrence of any Guarantor Bankruptcy Event, unless waived in writing by Lender, the applicable Guarantor shall be replaced by an individual or entity within ninety (90) days of such Guarantor Bankruptcy Event, subject to Borrower's satisfaction of the following conditions:

(A) Borrower has submitted to Lender all information required by Lender to make the determination required by this Section 11.03(f);

(B) Lender determines that:

(i) the proposed new guarantor fully satisfies all of Lender's then-applicable guarantor eligibility, credit, management, and other loan underwriting standards (including any standards with respect to previous relationships between Lender and the proposed new guarantor and the organization of the new guarantor (if applicable));

(ii) no new guarantor is a Prohibited Person, and such Transfer would not result in a violation of the requirements of Section 11.02(b)(2)(D); and

(iii) no new guarantor (if any of such are entities) shall have an organizational existence termination date that ends before the Maturity Date; and


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(C) one or more individuals or entities acceptable to Lender as new guarantors have executed and delivered to Lender:

(i) an assumption agreement acceptable to Lender that requires the new guarantor to assume and perform all obligations of Guarantor under any Guaranty given in connection with the Mortgage Loan; or

(ii) a substitute Non-Recourse Guaranty and other substitute guaranty in a form acceptable to Lender.

(2) In the event a replacement Guarantor is required by Lender due to the Guarantor Bankruptcy Event described in this Section 11.03(f), and such replacement has not occurred within such period, the period for replacement may be extended by Lender in its discretion; however, Lender may require as a condition to any such extension that:

(A) the then-current property manager be replaced with a property manager reasonably acceptable to Lender (or if a property manager has not been previously engaged, a property manager reasonably acceptable to Lender be engaged); or

(B) a lockbox agreement or similar cash management arrangement (with the property manager) reasonably acceptable to Lender during such extended replacement period be instituted.

If the conditions set forth in this Section 11.03(f) are satisfied, the Transfer Fee shall be waived, provided Borrower shall pay the Review Fee and out-of-pocket costs set forth in Section 11.03(g).

**(g) Further Conditions to Transfers and Assumption.**

(1) In connection with any Transfer of the Mortgaged Property, or an ownership interest in Borrower, Key Principal, or Guarantor for which Lender's approval is required under this Loan Agreement (including Section 11.03(a)), Lender may, as a condition to any such approval, require:

(A) additional collateral, guaranties, or other credit support to mitigate any risks concerning the proposed transferee or the performance or condition of the Mortgaged Property;

(B) amendment of the Loan Documents to delete or modify any specially negotiated terms or provisions previously granted for the exclusive benefit of original Borrower, Key Principal, or Guarantor and to restore the original provisions of the standard Fannie Mae form multifamily loan documents, to the extent such provisions were previously modified or to avoid the occurrence of an Adverse Tax Event;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(C) a modification to the amounts required to be deposited into the Reserve/Escrow Account pursuant to the terms of Section 13.02(a)(3)(B);

(D) with respect to any MBS trust that directly or indirectly holds the Mortgage Loan and issues MBS that are outstanding, the Transfer shall not result in an Adverse Tax Event; or

(E) the Transfer would not violate the requirements of Section 11.02(b)(2)(D).

(2) In connection with any request by Borrower for consent to a Transfer, Borrower shall pay to Lender upon demand:

(A) the Transfer Fee (to the extent charged by Lender);

(B) the Review Fee (regardless of whether Lender approves or denies such request); and

(C) all of Lender's out-of-pocket costs (including reasonable attorneys' fees) incurred in reviewing the Transfer request, regardless of whether Lender approves or denies such request.

## ARTICLE 12 - IMPOSITIONS

**Section 12.01 Representations and Warranties.**

The representations and warranties made by Borrower to Lender in this Section 12.01 are made as of the Effective Date and are true and correct except as disclosed on the Exceptions to Representations and Warranties Schedule.

**(a) Payment of Taxes, Assessments, and Other Charges.**

Borrower has:

(1) paid (or with the approval of Lender, established an escrow fund sufficient to pay when due and payable) all amounts and charges relating to the Mortgaged Property that have become due and payable before any fine, penalty interest, lien, or costs may be added thereto, including Impositions, leasehold payments, and ground rents;

(2) paid all Taxes for the Mortgaged Property that have become due before any fine, penalty interest, lien, or costs may be added thereto pursuant to any notice of assessment received by Borrower and any and all taxes that have become due against Borrower before any fine, penalty interest, lien, or costs may be added thereto;

(3) no knowledge of any basis for any additional assessments;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(4) no knowledge of any presently pending special assessments against all or any part of the Mortgaged Property, or any presently pending special assessments against Borrower; and

(5) not received any written notice of any contemplated special assessment against the Mortgaged Property, or any contemplated special assessment against Borrower.

**Section 12.02 Covenants.**

**(a) Imposition Deposits, Taxes, and Other Charges.**

Borrower shall:

(1) deposit the Imposition Deposits with Lender on each Payment Date (or on another day designated in writing by Lender) in amount sufficient, in Lender's discretion, to enable Lender to pay each Imposition before the last date upon which such payment may be made without any penalty or interest charge being added, plus an amount equal to no more than one-sixth (or the amount permitted by applicable law) of the Impositions for the trailing twelve (12) months (calculated based on the aggregate annual Imposition costs divided by twelve (12) and multiplied by two (2));

(2) deposit with Lender, within ten (10) days after written notice from Lender (subject to applicable law), such additional amounts estimated by Lender to be reasonably necessary to cure any deficiency in the amount of the Imposition Deposits held for payment of a specific Imposition;

(3) except as set forth in Section 12.03(c) below, pay all Impositions, leasehold payments, ground rents, and Taxes when due and before any fine, penalty interest, lien, or costs may be added thereto;

(4) promptly deliver to Lender a copy of all notices of, and invoices for, Impositions, and, if Borrower pays any Imposition directly, Borrower shall promptly furnish to Lender receipts evidencing such payments; and

(5) promptly deliver to Lender a copy of all notices of any special assessments and contemplated special assessments against the Mortgaged Property or Borrower.

**Section 12.03 Mortgage Loan Administration Matters Regarding Impositions.**

**(a) Maintenance of Records by Lender.**

Lender shall maintain records of the monthly and aggregate Imposition Deposits held by Lender for the purpose of paying Taxes, insurance premiums, and each other obligation of Borrower for which Imposition Deposits are required.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(b) Imposition Accounts.**

All Imposition Deposits shall be held in an institution (which may be Lender, if Lender is such an institution) whose deposits or accounts are insured or guaranteed by a federal agency and which accounts meet the standards for custodial accounts as required by Lender from time to time. Lender shall not be obligated to open additional accounts, or deposit Imposition Deposits in additional institutions, when the amount of the Imposition Deposits exceeds the maximum amount of the federal deposit insurance or guaranty. No interest, earnings, or profits on the Imposition Deposits shall be paid to Borrower unless applicable law so requires. Imposition Deposits shall not be trust funds or operate to reduce the Indebtedness, unless applied by Lender for that purpose in accordance with this Loan Agreement. For the purposes of 9-104(a)(3) of the UCC, Lender is the owner of the Imposition Deposits and shall be deemed a "customer" with sole control of the account holding the Imposition Deposits.

**(c) Payment of Impositions; Sufficiency of Imposition Deposits.**

Lender may pay an Imposition according to any bill, statement, or estimate from the appropriate public office or insurance company without inquiring into the accuracy of the bill, statement, or estimate or into the validity of the Imposition. Imposition Deposits shall be required to be used by Lender to pay Taxes, insurance premiums and any other individual Imposition only if:

(1) no Event of Default exists;

(2) Borrower has timely delivered to Lender all applicable bills or premium notices that it has received; and

(3) sufficient Imposition Deposits are held by Lender for each Imposition at the time such Imposition becomes due and payable.

Lender shall have no liability to Borrower or any other Person for failing to pay any Imposition if any of the conditions are not satisfied. If at any time the amount of the Imposition Deposits held for payment of a specific Imposition exceeds the amount reasonably deemed necessary by Lender to be held in connection with such Imposition, the excess may be credited against future installments of Imposition Deposits for such Imposition.

**(d) Imposition Deposits Upon Event of Default.**

If an Event of Default has occurred and is continuing, Lender may apply any Imposition Deposits, in such amount and in such order as Lender determines, to pay any Impositions or as a credit against the Indebtedness.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(e) Contesting Impositions.**

Other than insurance premiums, Borrower may contest, at its expense, by appropriate legal proceedings, the amount or validity of any Imposition if:

(1) Borrower notifies Lender of the commencement or expected commencement of such proceedings;

(2) Lender determines that the Mortgaged Property is not in danger of being sold or forfeited;

(3) Borrower deposits with Lender (or the applicable Governmental Authority if required by applicable law) reserves sufficient to pay the contested Imposition, if required by Lender (or the applicable Governmental Authority);

(4) Borrower furnishes whatever additional security is required in the proceedings or is reasonably requested in writing by Lender; and

(5) Borrower commences, and at all times thereafter diligently prosecutes, such contest in good faith until a final determination is made by the applicable Governmental Authority.

**(f) Release to Borrower.**

Upon payment in full of all sums secured by the Security Instrument and this Loan Agreement and release by Lender of the lien of the Security Instrument, Lender shall disburse to Borrower the balance of any Imposition Deposits then on deposit with Lender.

## ARTICLE 13 – REPLACEMENTS, REPAIRS, AND RESTORATION

**Section 13.01 Covenants.**

**(a) Initial Deposits to Replacement Reserve Account, Repairs Escrow Account, and Restoration Reserve Account.**

(1) On the Effective Date, Borrower shall pay to Lender:

(A) the Initial Replacement Reserve Deposit for deposit into the Replacement Reserve Account; and

(B) the Repairs Escrow Deposit for deposit into the Repairs Escrow Account.

(2) After an event of loss (except as set forth in Section 9.03(b)(2)), Borrower shall deliver or cause to be delivered to Lender any insurance proceeds received under any insurance policy required to be maintained in accordance with Article 9.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(b) Monthly Replacement Reserve Deposits.**

Borrower shall deposit the applicable Monthly Replacement Reserve Deposit into the Replacement Reserve Account on each Payment Date.

**(c) Payment and Deliverables for Replacements, Repairs, and Restoration.**

Borrower shall:

(1) pay all invoices for Replacements, Repairs, and Restoration, regardless of whether funds on deposit in the applicable Reserve/Escrow Account are sufficient to pay the full amount of such invoices, prior to any request for disbursement from such Reserve/Escrow Account (unless Lender has agreed to issue joint checks in connection with a particular Replacement, Repair, or Restoration);

(2) pay all applicable fees and charges of any Governmental Authority on account of the Replacements, Repairs, and Restoration, as applicable;

(3) provide evidence satisfactory to Lender of completion of the Replacements, Restoration (within the period required under Section 9.03(b)(1)(B)(iv) or such other period required by Lender), and any Required Repairs (within the Completion Period or within such other period or by such other date set forth in the Required Repair Schedule and any Borrower Requested Repairs and Additional Lender Repairs (by the date specified by Lender for any such Borrower Requested Repairs or Additional Lender Repairs)); and

(4) prior to commencement of any Restoration, Borrower shall deliver to Lender, for Lender's review and approval:

(A) a copy of the plans and specifications for the Restoration; and

(B) a copy of all building and other permits and authorizations required by any law, ordinance, statute, rule or regulation of the Governmental Authority to carry out the Restoration.

**(d) Assignment of Contracts for Replacements, Repairs, and Restoration.**

Borrower shall collaterally assign to Lender as additional security any contract or subcontract for Replacements, Repairs, or Restoration, upon Lender's written request, on a form of assignment approved by Lender.

**(e) Indemnification.**

If Lender elects to exercise its rights under Section 14.03 due to Borrower's failure to timely commence or complete any Replacements, Repairs, or Restoration, Borrower shall indemnify and hold Lender harmless for, from and against any and all actions, suits, claims,


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

demands, liabilities, losses, damages, obligations, and costs or expenses, including litigation costs and reasonable attorneys' fees, arising from or in any way connected with the performance by Lender of the Replacements, Repairs, or Restoration or the investment of the Reserve/Escrow Account Funds; provided that Borrower shall have no indemnity obligation if such actions, suits, claims, demands, liabilities, losses, damages, obligations, and costs or expenses, including litigation costs and reasonable attorneys' fees, arise as a result of the willful misconduct or gross negligence of Lender, Lender's agents, employees, or representatives as determined by a court of competent jurisdiction pursuant to a final non-appealable court order.

**(f) Amendments to Loan Documents.**

Subject to Section 5.02, Borrower shall execute and deliver to Lender, upon written request, an amendment to this Loan Agreement, the Security Instrument, and any other Loan Document deemed necessary or desirable to perfect Lender's lien upon any portion of the Mortgaged Property for which Reserve/Escrow Account Funds were expended.

**(g) Administrative Fees and Expenses.**

Borrower shall pay to Lender:

(1) by the date specified in the applicable invoice, the Repairs Escrow Account Administration Fee, the Replacement Reserve Account Administration Fee, and the Restoration Reserve Account Administration Fee for Lender's services in administering the Reserve/Escrow Accounts and investing the Reserve/Escrow Account Funds;

(2) upon demand, a reasonable inspection fee, not exceeding the Maximum Inspection Fee, for each inspection of the Mortgaged Property by Lender in connection with a Repair, Replacement, or Restoration item, plus all other reasonable costs and out-of-pocket expenses relating to such inspections; and

(3) upon demand, all reasonable fees charged by any engineer, architect, inspector or other person inspecting the Mortgaged Property on behalf of Lender for each inspection of the Mortgaged Property in connection with a Repair, Replacement, or Restoration item, plus all other reasonable costs and out-of-pocket expenses relating to such inspections.

**Section 13.02 Mortgage Loan Administration Matters Regarding Reserves.**

**(a) Accounts, Deposits, and Disbursements.**

**(1) Custodial Accounts.**

(A) The Replacement Reserve Account shall be an interest-bearing account that meets the standards for custodial accounts as required by Lender from time to time. Lender shall not be responsible for any losses resulting from the


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

investment of the Replacement Reserve Deposits or for obtaining any specific level or percentage of earnings on such investment. All interest, if any, earned on the Replacement Reserve Deposits shall be added to and become part of the Replacement Reserve Account; provided, however, if applicable law requires, and so long as no Event of Default has occurred and is continuing under any of the Loan Documents, Lender shall pay to Borrower the interest earned on the Replacement Reserve Account not less frequently than the Replacement Reserve Account Interest Disbursement Frequency.

(B) Lender shall not be obligated to deposit the Repairs Escrow Deposits or any funds held in the Restoration Reserve Account into an interest-bearing account.

(C) In no event shall Lender be obligated to disburse funds from any Reserve/Escrow Account if an Event of Default has occurred and is continuing.

**(2) Disbursements by Lender Only.**

Only Lender or a designated representative of Lender may make disbursements from the Reserve/Escrow Accounts. Disbursements shall only be made upon Borrower request and after satisfaction of all conditions for disbursement.

**(3) Adjustment to Deposits.**

**(A) Mortgage Loan Terms Exceeding Ten (10) Years.**

If the Loan Term exceeds ten (10) years (or five (5) years in the case of any Mortgaged Property that is an "affordable housing property" as indicated on the Summary of Loan Terms), a property condition assessment shall be ordered by Lender for the Mortgaged Property at the expense of Borrower (which expense may be paid out of the Replacement Reserve Account if excess funds are available). The property condition assessment shall be performed no earlier than the sixth (6th) month and no later than the ninth month of the tenth Loan Year and every tenth Loan Year thereafter if the Loan Term exceeds twenty (20) years (or the fifth Loan Year in the case of any Mortgaged Property that is an "affordable housing property" as indicated on the Summary of Loan Terms and every fifth Loan Year thereafter if the Loan Term exceeds ten (10) years). After review of the property condition assessment, the amount of the Monthly Replacement Reserve Deposit may be adjusted by Lender for the remaining Loan Term by written notice to Borrower so that the Monthly Replacement Reserve Deposits are sufficient to fund the Replacements as and when required and/or the amount to be held in the Repairs Escrow Account may be adjusted by Lender so that the Repairs Escrow Deposit is sufficient to fund the Repairs as and when required.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(B) Transfers.**

In connection with any Transfer of the Mortgaged Property, or any Transfer of an ownership interest in Borrower, Guarantor, or Key Principal that requires Lender's consent, Lender may review the amounts on deposit, if any, in the Reserve/Escrow Accounts, the amount of the Monthly Replacement Reserve Deposit and the likely repairs and replacements required by the Mortgaged Property, and the related contingencies which may arise during the remaining Loan Term. Based upon that review, Lender may require an additional deposit to the Replacement Reserve Account, the Repairs Escrow Account, or the Restoration Reserve Account, or an increase in the amount of the Monthly Replacement Reserve Deposit as a condition to Lender's consent to such Transfer.

**(4) Insufficient Funds.**

Lender may, upon ten (10) days' prior written notice to Borrower, require an additional deposit(s) to the Replacement Reserve Account, the Repairs Escrow Account, or the Restoration Reserve Account, or an increase in the amount of the Monthly Replacement Reserve Deposit, if Lender determines that the amounts on deposit in any of the Reserve/Escrow Accounts are not sufficient to cover the costs for Required Repairs, Required Replacements, or the Restoration or, pursuant to the terms of Section 13.02(a)(9), not sufficient to cover the costs for Borrower Requested Repairs, Additional Lender Repairs, Borrower Requested Replacements, or Additional Lender Replacements. Borrower's agreement to complete the Replacements, the Repairs, or the Restoration as required by this Loan Agreement shall not be affected by the insufficiency of any balance in the Reserve/Escrow Accounts.

**(5) Disbursements for Replacements, Repairs, and Restoration.**

(A) With respect to Replacements, disbursement requests may only be made after completion of the applicable Replacements and only to reimburse Borrower for the actual approved costs of the Replacements. Lender shall not disburse from the Replacement Reserve Account the costs of routine maintenance to the Mortgaged Property or for costs which are to be reimbursed from any other Reserve/Escrow Account. Disbursement from the Replacement Reserve Account shall not be made more frequently than the Maximum Replacement Reserve Disbursement Interval. Other than in connection with a final request for disbursement, disbursements from the Replacement Reserve Account shall not be less than the Minimum Replacement Reserve Disbursement Amount.

(B) With respect to Repairs, disbursement requests may only be made after completion of the applicable Repairs and only to reimburse Borrower for the actual cost of the Repairs, up to the Maximum Repair Cost. Lender shall not disburse any amounts which would cause the funds remaining in the Repairs Escrow Account after any disbursement (other than with respect to the final


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

disbursement) to be less than the Maximum Repair Cost of the then-current estimated cost of completing all remaining Repairs. Lender shall not disburse from the Repairs Escrow Account the costs of routine maintenance to the Mortgaged Property or for costs which are to be reimbursed from any other Reserve/Escrow Account. Disbursement from the Repairs Escrow Account shall not be made more frequently than the Maximum Repair Disbursement Interval. Other than in connection with a final request for disbursement, disbursements from the Repairs Escrow Account shall not be less than the Minimum Repairs Disbursement Amount.

(C) With respect to Restoration, disbursement requests may only be made after completion of the applicable Restoration and only to pay for or reimburse Borrower for the actual approved costs of the Restoration. Each disbursement shall be equal to the amount of the actual approved costs of the Restoration items covered by the disbursement request. In addition, Lender shall not disburse any amounts which would cause the funds remaining in the Restoration Reserve Account after any disbursement (other than with respect to the final disbursement) to be less than the then-current estimated cost of completing all remaining Restoration. Lender shall not disburse from the Restoration Reserve Account the costs of routine maintenance to the Mortgaged Property or for costs which are to be reimbursed from any other Reserve/Escrow Account. Disbursement from the Restoration Reserve Account shall not be made more frequently than the Maximum Restoration Reserve Disbursement Interval. Other than in connection with a final request for disbursement, disbursements from the Restoration Reserve Account shall not be less than the Minimum Restoration Reserve Disbursement Amount.

**(6) Disbursement Requests.**

Borrower must submit a disbursement request in writing for each disbursement from a Reserve/Escrow Account, which disbursement request must specify the items of Replacement, Repairs, or Restoration for which reimbursement is requested (provided that for any Borrower Requested Replacements, Borrower Requested Repairs, Additional Lender Replacements, and Additional Lender Repairs, Lender shall have approved the use of the Reserve/Escrow Account Funds for such replacements or repairs pursuant to the terms of Section 13.02(a)(9)), and must:

(A) if applicable, specify the quantity and price of the items or materials purchased, grouped by type or category;

(B) if applicable, specify the cost of all contracted labor or other services, including architectural services, involved in the Replacement, Repair, or Restoration for which such request for disbursement is made;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(C) if applicable, include copies of invoices for all items or materials purchased and all contracted labor or services provided;

(D) include evidence of payment of such Replacement, Repair, or Restoration satisfactory to Lender (unless Lender has agreed to issue joint checks in connection with a particular Repair, Replacement, or Restoration item as provided in this Loan Agreement);

(E) if applicable, contain a certification by Borrower that the Repair, Replacement, or Restoration has been completed lien free and in a good and workmanlike manner, in accordance with any plans and specifications previously approved by Lender (if applicable) and in compliance with all applicable laws, ordinances, rules, and regulations of any Governmental Authority having jurisdiction over the Mortgaged Property, and otherwise in accordance with the provisions of this Loan Agreement; and

(F) if applicable, include evidence that any certificates of occupancy required by applicable laws or any Governmental Authority have been issued.

**(7) Conditions to Disbursement.**

In addition to each disbursement request and information required in connection with such disbursement request, Lender may require any or all of the following at the expense of Borrower as a condition to disbursement of Reserve/Escrow Account Funds (provided that for any Borrower Requested Replacements, Borrower Requested Repairs, Additional Lender Replacements, and Additional Lender Repairs, Lender shall have approved the use of the Reserve/Escrow Account Funds for such replacements or repairs pursuant to the terms of Section 13.02(a)(9)):

(A) an inspection by Lender of the Mortgaged Property and the applicable Replacement, Repair, or Restoration item;

(B) an inspection or certificate of completion by an appropriate independent qualified professional (such as an architect, engineer or property inspector, depending on the nature of the Repair, Replacement, or Restoration) selected by Lender;

(C) either:

(i) a search of title to the Mortgaged Property effective to the date of disbursement; or

(ii) a "date-down" endorsement to Lender's Title Policy (or a new Lender's Title Policy if a "date-down" is not available) extending the effective date of such policy to the date of disbursement, and showing no


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Liens other than (1) Permitted Encumbrances, (2) liens which Borrower is diligently contesting in good faith that have been bonded off to the satisfaction of Lender, or (3) mechanics' or materialmen's liens which attach automatically under the laws of any Governmental Authority upon the commencement of any work upon, or delivery of any materials to, the Mortgaged Property and for which Borrower is not delinquent in the payment for any such work or materials; and

(D) an acknowledgement of payment, waiver of claims, and release of lien for work performed and materials supplied from each contractor, subcontractor or materialman in accordance with the requirements of applicable law and covering all work performed and materials supplied (including equipment and fixtures) for the Mortgaged Property by that contractor, subcontractor, or materialman through the date covered by the disbursement request (or, in the event that payment to such contractor, subcontractor, or materialman is to be made by a joint check, the release of lien shall be effective through the date covered by the previous disbursement).

**(8) Joint Checks for Periodic Disbursements.**

Lender may, upon Borrower's written request, issue joint checks, payable to Borrower and the applicable supplier, materialman, mechanic, contractor, subcontractor, or other similar party, if:

(A) the cost of the Replacement, Repair, or Restoration item exceeds the Replacement Threshold, the Repair Threshold, or the Restoration Threshold, as applicable, and the contractor performing such Replacement, Repair, or Restoration requires periodic payments pursuant to the terms of the applicable written contract;

(B) the contract for such Replacement, Repair, or Restoration item requires payment upon completion of the applicable portion of the work;

(C) Borrower makes the disbursement request after completion of the applicable portion of the work required to be completed under such contract;

(D) the materials for which the request for disbursement has been made are on site at the Mortgaged Property and are properly secured or installed;

(E) Lender determines that the remaining funds in the Reserve/Escrow Account are sufficient to pay the cost of the Replacement, Repair, or Restoration item, as applicable, and the then-current estimated cost of completing all remaining Required Replacements, Restoration, or Required Repairs (at the Maximum Repair Cost), as applicable, and any other Borrower Requested Replacements, Borrower Requested Repairs, Additional Lender Replacements, or Additional Lender Repairs that have been previously approved by Lender;

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(F) each supplier, materialman, mechanic, contractor, subcontractor, or other similar party receiving payments shall have provided, if requested in writing by Lender, a waiver of liens with respect to amounts which have been previously paid to them; and

(G) all other conditions for disbursement have been satisfied.

**(9) Replacements and Repairs Other than Required Replacements or Required Repairs.**

**(A) Borrower Requested Replacements and Borrower Requested Repairs.**

Borrower may submit a disbursement request from the Replacement Reserve Account or the Repairs Escrow Account to reimburse Borrower for any Borrower Requested Replacement or Borrower Requested Repair. The disbursement request must be in writing and include an explanation for such request. Lender shall make disbursements for Borrower Requested Replacements or Borrower Requested Repairs if:

(i) they are of the type intended to be covered by the Replacement Reserve Account or the Repairs Escrow Account, as applicable;

(ii) the costs are commercially reasonable;

(iii) the amount of funds in the Replacement Reserve Account or Repairs Escrow Account, as applicable, is sufficient to pay such costs and the then-current estimated cost of completing all remaining Required Replacements or Required Repairs (at the Maximum Repair Cost), as applicable, and any other Borrower Requested Replacements, Borrower Requested Repairs, Additional Lender Replacements or Additional Lender Repairs that have been previously approved by Lender; and

(iv) all conditions for disbursement from the Replacement Reserve Account or Repairs Escrow Account, as applicable, have been satisfied.

Nothing in this Loan Agreement shall limit Lender's right to require an additional deposit to the Replacement Reserve Account or an increase to the Monthly Replacement Reserve Deposit in connection with any such Borrower Requested Replacements, or an additional deposit to the Repairs Escrow Account for any such Borrower Requested Repairs.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(B) Additional Lender Replacements and Additional Lender Repairs.**

Lender may require, as set forth in Section 6.02(b), Section 6.03(c), or otherwise from time to time, upon written notice to Borrower, that Borrower make Additional Lender Replacements or Additional Lender Repairs. Lender shall make disbursements from the Replacement Reserve Account for Additional Lender Replacements or from the Repairs Escrow Account for Additional Lender Repairs, as applicable, if:

(i) the costs are commercially reasonable;

(ii) the amount of funds in the Replacement Reserve Account or the Repairs Escrow Account, as applicable, is sufficient to pay such costs and the then-current estimated cost of completing all remaining Required Replacements or Required Repairs (at the Maximum Repair Cost), as applicable, and any other Borrower Requested Replacements, Borrower Requested Repairs, Additional Lender Replacements, or Additional Lender Repairs that have been previously approved by Lender; and

(iii) all conditions for disbursement from the Replacement Reserve Account or Repairs Escrow Account, as applicable, have been satisfied.

Nothing in this Loan Agreement shall limit Lender's right to require an additional deposit to the Replacement Reserve Account or an increase to the Monthly Replacement Reserve Deposit for any such Additional Lender Replacements or an additional deposit to the Repairs Escrow Account for any such Additional Lender Repair.

**(10) Excess Costs.**

In the event any Replacement or Repair exceeds the approved cost set forth on the Required Replacement Schedule for Replacements, or the Maximum Repair Cost for Repairs, as applicable, or any Restoration item exceeds the initial cost approved by Lender for Restoration, Borrower may submit a disbursement request to reimburse Borrower for such excess cost. The disbursement request must be in writing and include an explanation for such request. Lender shall make disbursements from the applicable Reserve/Escrow Account, if:

(A) the excess cost is commercially reasonable;

(B) the amount of funds in the applicable Reserve/Escrow Account is sufficient to pay such excess costs and the then-current estimated cost of completing all remaining Required Replacements, Restoration, or Required Repairs


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(at the Maximum Repair Cost), as applicable, and any other Borrower Requested Replacements, Borrower Requested Repairs, Additional Lender Replacements, or Additional Lender Repairs that have been previously approved by Lender; and

(C) all conditions for disbursement from the applicable Reserve/Escrow Account have been satisfied.

**(11) Final Disbursements.**

Upon completion and satisfaction of all conditions for disbursements for any Repairs and Restoration, and further provided no Event of Default has occurred and is continuing, Lender shall disburse to Borrower any amounts then remaining in the Repairs Escrow Account or the Restoration Reserve Account, as applicable. Upon payment in full of the Indebtedness and release by Lender of the lien of the Security Instrument, Lender shall disburse to Borrower any and all amounts then remaining in the Reserve/Escrow Accounts (if not previously released).

**(b) Approvals of Contracts; Assignment of Claims.**

Lender retains the right to approve all contracts or work orders with materialmen, mechanics, suppliers, subcontractors, contractors, or other parties providing labor or materials in connection with the Replacements, Repairs, or Restoration. Notwithstanding Borrower's assignment (in the Security Instrument) of its rights and claims against all Persons supplying labor or materials in connection with the Replacements, Repairs, or Restoration, Lender will not pursue any such right or claim unless an Event of Default has occurred and is continuing or as otherwise provided in Section 14.03(c).

**(c) Delays and Workmanship.**

If any work for any Replacement, Repair, or Restoration item has not timely commenced, has not been timely performed in a workmanlike manner, or has not been timely completed in a workmanlike manner, Lender may, without notice to Borrower:

(1) withhold disbursements from the applicable Reserve/Escrow Account;

(2) proceed under existing contracts or contract with third parties to make or complete such Replacements, Repairs, or Restoration item;

(3) apply the funds in the applicable Reserve/Escrow Account toward the labor and materials necessary to make or complete such Replacements, Repairs, or Restoration items, as applicable; or

(4) exercise any and all other remedies available to Lender under this Loan Agreement or any other Loan Document, including any remedies otherwise available upon an Event of Default pursuant to the terms of Section 14.02.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

To facilitate Lender's completion and performance of such Replacements, Repairs, or Restoration items, Lender shall have the right to enter onto the Mortgaged Property and perform any and all work and labor necessary to make or complete the Replacements, Repairs, or Restoration and employ watchmen to protect the Mortgaged Property from damage. All funds so expended by Lender shall be deemed to have been advanced to Borrower, and included as part of the Indebtedness and secured by the Security Instrument and this Loan Agreement.

**(d) Appointment of Lender as Attorney-In-Fact.**

Borrower hereby authorizes and appoints Lender as attorney-in-fact pursuant to Section 14.03(c).

**(e) No Lender Obligation.**

Nothing in this Loan Agreement shall:

(1) make Lender responsible for making or completing the Replacements, Repairs, or Restoration;

(2) require Lender to expend funds, whether from any Reserve/Escrow Account, or otherwise, to make or complete any Replacement, Repair, or Restoration item;

(3) obligate Lender to proceed with the Replacements, Repairs, or Restoration; or

(4) obligate Lender to demand from Borrower additional sums to make or complete any Replacement, Repair, or Restoration item.

**(f) No Lender Warranty.**

Lender's approval of any plans for any Replacement, Repair, or Restoration, release of funds from any Reserve/Escrow Account, inspection of the Mortgaged Property by Lender or its agents, representatives, or designees, or other acknowledgment of completion of any Replacement, Repair, or Restoration in a manner satisfactory to Lender shall not be deemed an acknowledgment or warranty to any Person that the Replacement, Repair, or Restoration has been completed in accordance with applicable building, zoning, or other codes, ordinances, statutes, laws, regulations, or requirements of any Governmental Authority, such responsibility being at all times exclusively that of Borrower.

## ARTICLE 14 - DEFAULTS/REMEDIES

### Section 14.01 Events of Default.

The occurrence of any one or more of the following in this Section 14.01 shall constitute an Event of Default under this Loan Agreement.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**(a) Automatic Events of Default.**

Any of the following shall constitute an automatic Event of Default:

(1) any failure by Borrower to pay or deposit when due any amount required by the Note, this Loan Agreement or any other Loan Document;

(2) any failure by Borrower to maintain the insurance coverage required by any Loan Document;

(3) any failure by Borrower to comply with the provisions of Section 4.02(d) relating to its single asset status;

(4) if any warranty, representation, certification, or statement of Borrower or Guarantor in this Loan Agreement or any of the other Loan Documents is false, inaccurate, or misleading in any material respect when made;

(5) fraud, gross negligence, willful misconduct, or material misrepresentation or material omission by or on behalf of Borrower, Guarantor, or Key Principal or any of their officers, directors, trustees, partners, members, or managers in connection with:

(A) the application for, or creation of, the Indebtedness;

(B) any financial statement, rent roll, or other report or information provided to Lender during the term of the Mortgage Loan; or

(C) any request for Lender's consent to any proposed action, including a request for disbursement of Reserve/Escrow Account Funds or Collateral Account Funds;

(6) the occurrence of any Transfer not permitted by the Loan Documents;

(7) the occurrence of a Bankruptcy Event;

(8) the commencement of a forfeiture action or other similar proceeding, whether civil or criminal, which, in Lender's reasonable judgment, could result in a forfeiture of the Mortgaged Property or otherwise materially impair the lien created by this Loan Agreement or the Security Instrument or Lender's interest in the Mortgaged Property;

(9) if Borrower, Guarantor, or Key Principal is a trust, or if Control of Borrower, Guarantor, or Key Principal is Transferred or if a Restricted Ownership Interest in Borrower, Guarantor, or Key Principal would be Transferred due to the termination or revocation of a trust, the termination or revocation of such trust, except as set forth in Section 11.03(d);

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(10) any failure by Borrower to complete any Repair related to fire, life, or safety issues in accordance with the terms of this Loan Agreement within the Completion Period (or such other date set forth on the Required Repair Schedule or otherwise required by Lender in writing for such Repair);

(11) any exercise by the holder of any other debt instrument secured by a mortgage, deed of trust, or deed to secure debt on the Mortgaged Property of a right to declare all amounts due under that debt instrument immediately due and payable; or

(12) any failure by Borrower, Key Principal, or Guarantor to comply with the provisions of Section 5.02(b) and Section 5.02(c) within the timeframes specified in such Sections.

**(b) Events of Default Subject to a Specified Period.**

Any of the following defaults shall constitute an Event of Default if not cured within the timeframes specified in the Loan Documents:

(1) if Key Principal or Guarantor is a natural person, the death of such individual, unless all requirements of Section 11.03(e) to cure such default are met within the timeframes set forth in such Section;

(2) the occurrence of a Guarantor Bankruptcy Event, unless requirements of Section 11.03(f) to cure such default are met within the timeframes set forth in such Section; or

(3) any failure by Borrower, Guarantor, Key Principal, or any Borrower Affiliate to perform any obligation under this Loan Agreement (other than those specifically set forth in Section 14.01(a) or Section 14.01(b)) or under any other Loan Document that is subject to compliance within a specified period, which failure continues beyond such specified period as set forth herein or in the applicable Loan Document.

**(c) Events of Default Subject to Extended Cure Period.**

The following shall constitute an Event of Default if the existence of such condition or event, or such failure to perform or default in performance continues for a period of thirty (30) days after written notice by Lender to Borrower of the existence of such condition or event, or of such failure to perform or default in performance, provided, however, such period may be extended for up to an additional thirty (30) days if Borrower, in the discretion of Lender, is diligently pursuing a cure of such; provided, further, however, no such written notice, grace period, or extension shall apply if, in Lender's discretion, immediate exercise by Lender of a right or remedy under this Loan Agreement or any Loan Document is required to avoid harm to Lender or impairment of the Mortgage Loan (including the Loan Documents), the Mortgaged Property or any other security given for the Mortgage Loan:


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(1) any failure by Borrower, Guarantor, Key Principal, or any Borrower Affiliate to perform any of its obligations under this Loan Agreement or any Loan Document (other than those specified in Section 14.01(a) or Section 14.01(b) above) as and when required; or

(2) if Lender incurs any costs or expenses or suffers any loss or damage as a result of any claims, actions, suits or proceedings arising from any tenant opportunity to purchase act applicable to and affecting the Mortgaged Property.

**Section 14.02 Remedies.**

**(a) Acceleration; Foreclosure.**

If an Event of Default has occurred and is continuing, the entire unpaid principal balance of the Mortgage Loan, any Accrued Interest, interest accruing at the Default Rate, the Prepayment Premium (if applicable), and all other Indebtedness, at the option of Lender, shall immediately become due and payable, without any prior written notice to Borrower, unless applicable law requires otherwise (and in such case, after any required written notice has been given). Lender may exercise this option to accelerate regardless of any prior forbearance. In addition, Lender shall have all rights and remedies afforded to Lender hereunder and under the other Loan Documents, including, foreclosure on and/or the power of sale of the Mortgaged Property, as provided in the Security Instrument, and any rights and remedies available to Lender at law or in equity (subject to Borrower's statutory rights of reinstatement, if any). Any proceeds of a Foreclosure Event may be held and applied by Lender as additional collateral for the Indebtedness pursuant to this Loan Agreement. Notwithstanding the foregoing, the occurrence of any Bankruptcy Event shall automatically accelerate the Mortgage Loan and all obligations and Indebtedness shall be immediately due and payable without written notice or further action by Lender.

**(b) Loss of Right to Disbursements from Collateral Accounts.**

If an Event of Default has occurred and is continuing, Borrower shall immediately lose all of its rights to receive disbursements from the Reserve/Escrow Accounts and any Collateral Accounts. During the continuance of any such Event of Default, Lender may use the Reserve/Escrow Account Funds and any Collateral Account Funds (or any portion thereof) for any purpose, including:

(1) repayment of the Indebtedness, including principal prepayments and the Prepayment Premium applicable to such full or partial prepayment, as applicable (however, such application of funds shall not cure or be deemed to cure any Event of Default);

(2) reimbursement of Lender for all losses and expenses (including reasonable legal fees) suffered or incurred by Lender as a result of such Event of Default;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(3) completion of the Replacement, Repair, Restoration, or for any other replacement or repair to the Mortgaged Property; and

(4) payment of any amount expended in exercising (and the exercise of) all rights and remedies available to Lender at law or in equity or under this Loan Agreement or under any of the other Loan Documents.

Nothing in this Loan Agreement shall obligate Lender to apply all or any portion of the Reserve/Escrow Account Funds or Collateral Account Funds on account of any Event of Default by Borrower or to repayment of the Indebtedness or in any specific order of priority.

**(c) Remedies Cumulative.**

Each right and remedy provided in this Loan Agreement is distinct from all other rights or remedies under this Loan Agreement or any other Loan Document or afforded by applicable law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order. Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of additional default by Borrower in order to exercise any of its remedies with respect to an Event of Default.

**Section 14.03 Additional Lender Rights; Forbearance.**

**(a) No Effect Upon Obligations.**

Lender may, but shall not be obligated to, agree with Borrower, from time to time, and without giving notice to, or obtaining the consent of, or having any effect upon the obligations of, Guarantor, Key Principal, or other third party obligor, to take any of the following actions:

(1) the time for payment of the principal of or interest on the Indebtedness may be extended, or the Indebtedness may be renewed in whole or in part;

(2) the rate of interest on or period of amortization of the Mortgage Loan or the amount of the Monthly Debt Service Payments payable under the Loan Documents may be modified;

(3) the time for Borrower's performance of or compliance with any covenant or agreement contained in any Loan Document, whether presently existing or hereinafter entered into, may be extended or such performance or compliance may be waived;

(4) any or all payments due under this Loan Agreement or any other Loan Document may be reduced;

(5) any Loan Document may be modified or amended by Lender and Borrower in any respect, including an increase in the principal amount of the Mortgage Loan;

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(6) any amounts under this Loan Agreement or any other Loan Document may be released;

(7) any security for the Indebtedness may be modified, exchanged, released, surrendered, or otherwise dealt with, or additional security may be pledged or mortgaged for the Indebtedness;

(8) the payment of the Indebtedness or any security for the Indebtedness, or both, may be subordinated to the right to payment or the security, or both, of any other present or future creditor of Borrower; or

(9) any other terms of the Loan Documents may be modified.

**(b) No Waiver of Rights or Remedies.**

Any waiver of an Event of Default or forbearance by Lender in exercising any right or remedy under this Loan Agreement or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of any other Event of Default or preclude the exercise or failure to exercise of any other right or remedy. The acceptance by Lender of payment of all or any part of the Indebtedness after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments on account of the Indebtedness or to exercise any remedies for any failure to make prompt payment. Enforcement by Lender of any security for the Indebtedness shall not constitute an election by Lender of remedies so as to preclude the exercise or failure to exercise of any other right available to Lender. Lender's receipt of any insurance proceeds or amounts in connection with a Condemnation Action shall not operate to cure or waive any Event of Default.

**(c) Appointment of Lender as Attorney-In-Fact.**

Borrower hereby irrevocably makes, constitutes, and appoints Lender (and any officer of Lender or any Person designated by Lender for that purpose) as Borrower's true and lawful proxy and attorney-in-fact (and agent-in-fact) in Borrower's name, place, and stead, with full power of substitution, to:

(1) use any Reserve/Escrow Account Funds for the purpose of making or completing the Replacements, Repairs, or Restoration;

(2) make such additions, changes, and corrections to the Replacements, Repairs, or Restoration as shall be necessary or desirable to complete the Replacements, Repairs, or Restoration;

(3) employ such contractors, subcontractors, agents, architects, and inspectors as shall be required for such purposes;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(4) pay, settle, or compromise all bills and claims for materials and work performed in connection with the Replacements, Repairs, or Restoration, or as may be necessary or desirable for the completion of the Replacements, Repairs, or Restoration, or for clearance of title;

(5) adjust and compromise any claims under any and all policies of insurance required pursuant to this Loan Agreement and any other Loan Document, subject only to Borrower's rights under this Loan Agreement;

(6) appear in and prosecute any action arising from any insurance policies;

(7) collect and receive the proceeds of insurance, and to deduct from such proceeds Lender's expenses incurred in the collection of such proceeds;

(8) commence, appear in, and prosecute, in Lender's or Borrower's name, any Condemnation Action;

(9) settle or compromise any claim in connection with any Condemnation Action;

(10) execute all applications and certificates in the name of Borrower which may be required by any of the contract documents;

(11) prosecute and defend all actions or proceedings in connection with the Mortgaged Property or the rehabilitation and repair of the Mortgaged Property;

(12) take such actions as are permitted in this Loan Agreement and any other Loan Documents;

(13) execute such financing statements and other documents and to do such other acts as Lender may require to perfect and preserve Lender's security interest in, and to enforce such interests in, the collateral; and

(14) carry out any remedy provided for in this Loan Agreement and any other Loan Documents, including endorsing Borrower's name to checks, drafts, instruments and other items of payment and proceeds of the collateral, executing change of address forms with the postmaster of the United States Post Office serving the address of Borrower, changing the address of Borrower to that of Lender, opening all envelopes addressed to Borrower, and applying any payments contained therein to the Indebtedness.

Borrower hereby acknowledges that the constitution and appointment of such proxy and attorney-in-fact are coupled with an interest and are irrevocable and shall not be affected by the disability or incompetence of Borrower. Borrower specifically acknowledges and agrees that this power of attorney granted to Lender may be assigned by Lender to Lender's successors or assigns as holder of the Note (and the other Loan Documents). The foregoing


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

powers conferred on Lender under this Section 14.03(c) shall not impose any duty upon Lender to exercise any such powers and shall not require Lender to incur any expense or take any action. Borrower hereby ratifies and confirms all that such attorney-in-fact may do or cause to be done by virtue of any provision of this Loan Agreement and any other Loan Documents.

Notwithstanding the foregoing provisions, Lender shall not exercise its rights as set forth in this Section 14.03(c) unless: (A) an Event of Default has occurred and is continuing, or (B) Lender determines, in its discretion, that exigent circumstances exist or that such exercise is necessary or prudent in order to protect and preserve the Mortgaged Property, or Lender's lien priority and security interest in the Mortgaged Property.

**(d) Borrower Waivers.**

If more than one Person signs this Loan Agreement as Borrower, each Borrower, with respect to any other Borrower, hereby agrees that Lender, in its discretion, may:

(1) bring suit against Borrower, or any one or more of Borrower, jointly and severally, or against any one or more of them;

(2) compromise or settle with any one or more of the persons constituting Borrower, for such consideration as Lender may deem proper;

(3) release one or more of the persons constituting Borrower, from liability; or

(4) otherwise deal with Borrower, or any one or more of them, in any manner, and no such action shall impair the rights of Lender to collect from any Borrower the full amount of the Indebtedness.

**Section 14.04 Waiver of Marshaling.**

Notwithstanding the existence of any other security interests in the Mortgaged Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Mortgaged Property shall be subjected to the remedies provided in this Loan Agreement, any other Loan Document or applicable law. Lender shall have the right to determine the order in which all or any part of the Indebtedness is satisfied from the proceeds realized upon the exercise of such remedies. Borrower and any party who now or in the future acquires a security interest in the Mortgaged Property and who has actual or constructive notice of this Loan Agreement waives any and all right to require the marshaling of assets or to require that any of the Mortgaged Property be sold in the inverse order of alienation or that any of the Mortgaged Property be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Loan Agreement or any other Loan Documents.

Lender shall account for any moneys received by Lender in respect of any foreclosure on or disposition of collateral hereunder and under the other Loan Documents provided that Lender

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

shall not have any duty as to any collateral, and Lender shall be accountable only for amounts that it actually receives as a result of the exercise of such powers. NONE OF LENDER OR ITS AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, OR REPRESENTATIVES SHALL BE RESPONSIBLE TO BORROWER (a) FOR ANY ACT OR FAILURE TO ACT UNDER ANY POWER OF ATTORNEY OR OTHERWISE, EXCEPT IN RESPECT OF DAMAGES ATTRIBUTABLE SOLELY TO THEIR OWN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT AS FINALLY DETERMINED PURSUANT TO A FINAL, NON-APPEALABLE COURT ORDER BY A COURT OF COMPETENT JURISDICTION, OR (b) FOR ANY PUNITIVE, EXEMPLARY, INDIRECT OR CONSEQUENTIAL DAMAGES.

## ARTICLE 15 - MISCELLANEOUS

**Section 15.01 Governing Law; Consent to Jurisdiction and Venue.**

**(a) Governing Law.**

The validity, enforceability, interpretation, and performance of this Loan Agreement shall be governed by State (as defined in the Security Instrument) law without giving effect to any conflict of law or choice of law rules that would result in the application of the laws of another jurisdiction.

**(b) Venue.**

In the administration or litigation of a controversy arising under or in relation to this Loan Agreement or the security for the Indebtedness, Borrower consents to the exercise of personal jurisdiction by State (as defined in the Security Instrument) court or federal court in such State. Borrower agrees that the State courts have subject matter jurisdiction over such controversies. If Lender elects to sue in State court, Borrower waives any right to remove to federal court or to contest the State court's jurisdiction. Borrower waives any objection to venue in any State court or federal court in such State, and covenants and agrees not to assert any objection to venue, whether based on inconvenience, domicile, habitual residence, or other ground.

**Section 15.02 Notice.**

**(a) Process of Serving Notice.**

Except as otherwise set forth herein or in any other Loan Document, all notices under this Loan Agreement and any other Loan Document shall be:

(1) in writing and shall be:

(A) delivered, in person;

(B) mailed, postage prepaid, either by registered or certified delivery, return receipt requested;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(C) sent by overnight courier; or

(D) sent by electronic mail with originals to follow by overnight courier;

(2) addressed to the intended recipient at Borrower's Notice Address and Lender's Notice Address, as applicable; and

(3) deemed given on the earlier to occur of:

(A) the date when the notice is received by the addressee; or

(B) if the recipient refuses or rejects delivery, the date on which the notice is so refused or rejected, as conclusively established by the records of the United States Postal Service or such express courier service.

**(b) Change of Address.**

Any party to this Loan Agreement may change the address to which notices intended for it are to be directed by means of notice given to the other parties identified on the Summary of Loan Terms in accordance with this Section 15.02.

**(c) Default Method of Notice.**

Any required notice under this Loan Agreement or any other Loan Document which does not specify how notices are to be given shall be given in accordance with this Section 15.02.

**(d) Receipt of Notices.**

Neither Borrower nor Lender shall refuse or reject delivery of any notice given in accordance with this Loan Agreement. Each party is required to acknowledge, in writing, the receipt of any notice upon request by the other party.

**Section 15.03 Successors and Assigns Bound; Sale of Mortgage Loan.**

**(a) Binding Agreement.**

This Loan Agreement shall bind, and the rights granted by this Loan Agreement shall inure to, the successors and assigns of Lender and the permitted successors and assigns of Borrower. However, a Transfer not permitted by this Loan Agreement shall be an Event of Default and shall be void ab initio.

**(b) Sale of Mortgage Loan; Change of Servicer.**

Nothing in this Loan Agreement shall limit Lender's (including its successors and assigns) right to sell or transfer the Mortgage Loan or any interest in the Mortgage Loan. The Mortgage Loan or a partial interest in the Mortgage Loan (together with this Loan Agreement and the other


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Loan Documents) may be sold one or more times without prior written notice to Borrower. A sale may result in a change of the Loan Servicer.

**Section 15.04 Counterparts.**

This Loan Agreement may be executed in any number of counterparts with the same effect as if the parties hereto had signed the same document and all such counterparts shall be construed together and shall constitute one instrument.

**Section 15.05 Joint and Several (or Solidary) Liability.**

If more than one Person signs this Loan Agreement as Borrower, the obligations of such Persons shall be joint and several (solidary instead for purposes of Louisiana law).

**Section 15.06 Relationship of Parties; No Third Party Beneficiary.**

**(a) Solely Creditor and Debtor.**

The relationship between Lender and Borrower shall be solely that of creditor and debtor, respectively, and nothing contained in this Loan Agreement shall create any other relationship between Lender and Borrower. Nothing contained in this Loan Agreement shall constitute Lender as a joint venturer, partner, or agent of Borrower, or render Lender liable for any debts, obligations, acts, omissions, representations, or contracts of Borrower.

**(b) No Third Party Beneficiaries.**

No creditor of any party to this Loan Agreement and no other Person shall be a third party beneficiary of this Loan Agreement or any other Loan Document or any account created or contemplated under this Loan Agreement or any other Loan Document. Nothing contained in this Loan Agreement shall be deemed or construed to create an obligation on the part of Lender to any third party and no third party shall have a right to enforce against Lender any right that Borrower may have under this Loan Agreement. Without limiting the foregoing:

(1) any Servicing Arrangement between Lender and any Loan Servicer shall constitute a contractual obligation of such Loan Servicer that is independent of the obligation of Borrower for the payment of the Indebtedness;

(2) Borrower shall not be a third party beneficiary of any Servicing Arrangement; and

(3) no payment by the Loan Servicer under any Servicing Arrangement will reduce the amount of the Indebtedness.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**Section 15.07 Severability; Entire Agreement; Amendments.**

The invalidity or unenforceability of any provision of this Loan Agreement or any other Loan Document shall not affect the validity or enforceability of any other provision of this Loan Agreement or of any other Loan Document, all of which shall remain in full force and effect, including the Guaranty. All of the Loan Documents contain the complete and entire agreement among the parties as to the matters covered, rights granted, and the obligations assumed in this Loan Agreement and the other Loan Documents. This Loan Agreement may not be amended or modified except by written agreement signed by the parties hereto.

**Section 15.08 Construction.**

(a) The captions and headings of the sections of this Loan Agreement and the Loan Documents are for convenience only and shall be disregarded in construing this Loan Agreement and the Loan Documents.

(b) Any reference in this Loan Agreement to an "Exhibit" or "Schedule" or a "Section" or an "Article" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an Exhibit or Schedule attached to this Loan Agreement or to a Section or Article of this Loan Agreement.

(c) Any reference in this Loan Agreement to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time.

(d) Use of the singular in this Loan Agreement includes the plural and use of the plural includes the singular.

(e) As used in this Loan Agreement, the term "including" means "including, but not limited to" or "including, without limitation," and is for example only and not a limitation.

(f) Whenever Borrower's knowledge is implicated in this Loan Agreement or the phrase "to Borrower's knowledge" or a similar phrase is used in this Loan Agreement, Borrower's knowledge or such phrase(s) shall be interpreted to mean to the best of Borrower's knowledge after reasonable and diligent inquiry and investigation.

(g) Unless otherwise provided in this Loan Agreement, if Lender's approval, designation, determination, selection, estimate, action, or decision is required, permitted, or contemplated hereunder, such approval, designation, determination, selection, estimate, action, or decision shall be made in Lender's sole and absolute discretion.

(h) All references in this Loan Agreement to a separate instrument or agreement shall include such instrument or agreement as the same may be amended or supplemented from time to time pursuant to the applicable provisions thereof.

(i) "Lender may" shall mean at Lender's discretion, but shall not be an obligation.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(j) If the Mortgage Loan proceeds are disbursed on a date that is later than the Effective Date, as described in Section 2.02(a)(1), the representations and warranties in the Loan Documents with respect to the ownership and operation of the Mortgaged Property shall be deemed to be made as of the disbursement date.

**Section 15.09 Mortgage Loan Servicing.**

All actions regarding the servicing of the Mortgage Loan, including the collection of payments, the giving and receipt of notice, inspections of the Mortgaged Property, inspections of books and records, and the granting of consents and approvals, may be taken by the Loan Servicer unless Borrower receives written notice to the contrary. If Borrower receives conflicting notices regarding the identity of the Loan Servicer or any other subject, any such written notice from Lender shall govern. The Loan Servicer may change from time to time (whether related or unrelated to a sale of the Mortgage Loan). If there is a change of the Loan Servicer, Borrower will be given written notice of the change.

**Section 15.10 Disclosure of Information.**

Lender may furnish information regarding Borrower, Key Principal, or Guarantor, or the Mortgaged Property to third parties with an existing or prospective interest in the servicing, enforcement, evaluation, performance, purchase, or securitization of the Mortgage Loan, including trustees, master servicers, special servicers, rating agencies, and organizations maintaining databases on the underwriting and performance of multifamily mortgage loans. Borrower irrevocably waives any and all rights it may have under applicable law to prohibit such disclosure, including any right of privacy.

**Section 15.11 Waiver; Conflict.**

No specific waiver of any of the terms of this Loan Agreement shall be considered as a general waiver. If any provision of this Loan Agreement is in conflict with any provision of any other Loan Document, the provision contained in this Loan Agreement shall control.

**Section 15.12 No Reliance.**

Borrower acknowledges, represents, and warrants that:

(a) it understands the nature and structure of the transactions contemplated by this Loan Agreement and the other Loan Documents;

(b) it is familiar with the provisions of all of the documents and instruments relating to such transactions;

(c) it understands the risks inherent in such transactions, including the risk of loss of all or any part of the Mortgaged Property;

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(d) it has had the opportunity to consult counsel; and

(e) it has not relied on Lender for any guidance or expertise in analyzing the financial or other consequences of the transactions contemplated by this Loan Agreement or any other Loan Document or otherwise relied on Lender in any manner in connection with interpreting, entering into, or otherwise in connection with this Loan Agreement, any other Loan Document, or any of the matters contemplated hereby or thereby.

**Section 15.13 Subrogation.**

If, and to the extent that, the proceeds of the Mortgage Loan are used to pay, satisfy, or discharge any obligation of Borrower for the payment of money that is secured by a pre-existing mortgage, deed of trust, or other lien encumbering the Mortgaged Property, such Mortgage Loan proceeds shall be deemed to have been advanced by Lender at Borrower's request, and Lender shall be subrogated automatically, and without further action on its part, to the rights, including lien priority, of the owner or holder of the obligation secured by such prior lien, whether or not such prior lien is released.

**Section 15.14 Counting of Days.**

Except where otherwise specifically provided, any reference in this Loan Agreement to a period of "days" means calendar days, not Business Days. If the date on which Borrower is required to perform an obligation under this Loan Agreement is not a Business Day, Borrower shall be required to perform such obligation by the Business Day immediately preceding such date; provided, however, in respect of any Payment Date, or if the Maturity Date is other than a Business Day, Borrower shall be obligated to make such payment by the Business Day immediately following such date.

**Section 15.15 Revival and Reinstatement of Indebtedness.**

If the payment of all or any part of the Indebtedness by Borrower, Guarantor, or any other Person, or the transfer to Lender of any collateral or other property should for any reason subsequently be declared to be void or voidable under any state or federal law relating to creditors' rights, including provisions of the Insolvency Laws relating to a Voidable Transfer, and if Lender is required to repay or restore, in whole or in part, any such Voidable Transfer, or elects to do so upon the advice of its counsel, then the amount of such Voidable Transfer or the amount of such Voidable Transfer that Lender is required or elects to repay or restore, including all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection therewith, and the Indebtedness shall be automatically revived, reinstated, and restored by such amount and shall exist as though such Voidable Transfer had never been made.

**Section 15.16 Time is of the Essence.**

Borrower agrees that, with respect to each and every obligation and covenant contained in this Loan Agreement and the other Loan Documents, time is of the essence.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**Section 15.17 Final Agreement.**

THIS LOAN AGREEMENT ALONG WITH ALL OF THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. All prior or contemporaneous agreements, understandings, representations, and statements, oral or written, are merged into this Loan Agreement and the other Loan Documents. This Loan Agreement, the other Loan Documents, and any of their provisions may not be waived, modified, amended, discharged, or terminated except by an agreement in writing signed by the party against which the enforcement of the waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in that agreement.

**Section 15.18 WAIVER OF TRIAL BY JURY.**

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER AND LENDER (a) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS LOAN AGREEMENT OR ANY OTHER LOAN DOCUMENT, OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER AND LENDER, THAT IS TRIABLE OF RIGHT BY A JURY, AND (b) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

**Section 15.19 Tax Savings Clause.**

Notwithstanding anything to the contrary herein, no modification to the Loan Documents (whether in connection with a Transfer or otherwise) shall result in an Adverse Tax Event.

**[Remainder of Page Intentionally Blank]**


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**IN WITNESS WHEREOF**, Borrower and Lender have signed and delivered this Loan Agreement under seal (where applicable) or have caused this Loan Agreement to be signed and delivered under seal (where applicable) by their duly authorized representatives. Where applicable law so provides, Borrower and Lender intend that this Loan Agreement shall be deemed to be signed and delivered as a sealed instrument.

**BORROWER:**

**MCG KNOLLS LLC**, a Missouri limited liability company

By: ____________________________(SEAL)
Name: Moshe Mermelstein
Title: Manager


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**LENDER:**

**ARBOR COMMERCIAL FUNDING I, LLC,**
a New York limited liability company

By: ______________________________(SEAL)
Name: Kenneth Dowling
Title: Senior Vice President, Capital Markets

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# SCHEDULES AND EXHIBITS

**Schedules**

| | | |
|---|---|---|
| Schedule 1 | Definitions Schedule (required) | Form 6101.FR |
| Schedule 2 | Summary of Loan Terms (required) | Form 6102.FR |
| Schedule 3 | Schedule of Interest Rate Type Provisions (required) | Form 6103.FR |
| Schedule 4 | Prepayment Premium Schedule (required) | Form 6104.01 |
| Schedule 5 | Required Replacement Schedule (required) | Form 6001.NR |
| Schedule 6 | Required Repair Schedule (required) | Form 6001.NR |
| Schedule 7 | Exceptions to Representations and Warranties Schedule (required) | Form 6001.NR |
| Schedule 8 | Ownership Interests Schedule | Form 6001.NR |

**Exhibits**

| | | |
|---|---|---|
| Exhibit A | Modifications to Loan Agreement (Legal Non-Conforming Use) | Form 6275 |


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Borrower hereby acknowledges and agrees that the Schedules and Exhibits referenced above are hereby incorporated fully into this Loan Agreement by this reference and each constitutes a substantive part of this Loan Agreement.

**MCG KNOLLS LLC**, a Missouri limited liability company

Borrower Initials
MM


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

## SCHEDULE 1
## TO MULTIFAMILY LOAN AND SECURITY AGREEMENT

### Definitions Schedule
### (Interest Rate Type – Fixed Rate)

Capitalized terms used in the Loan Agreement have the meanings given to such terms in this Definitions Schedule.

"**Accrued Interest**" means unpaid interest, if any, on the Mortgage Loan that has not been added to the unpaid principal balance of the Mortgage Loan pursuant to Section 2.02(b) (Capitalization of Accrued But Unpaid Interest) of the Loan Agreement.

"**Additional Lender Repairs**" means repairs of the type listed on the Required Repair Schedule but not otherwise identified thereon that are determined advisable by Lender to keep the Mortgaged Property in good order and repair (ordinary wear and tear excepted) and in good marketable condition or to prevent deterioration of the Mortgaged Property.

"**Additional Lender Replacements**" means replacements of the type listed on the Required Replacement Schedule but not otherwise identified thereon that are determined advisable by Lender to keep the Mortgaged Property in good order and repair (ordinary wear and tear excepted) and in good marketable condition or to prevent deterioration of the Mortgaged Property.

"**Adverse Tax Event**" means any event that will (a) adversely affect the federal income tax status of any MBS trust that directly or indirectly holds the Mortgage Loan and issues MBS as a Fixed Investment Trust or REMIC, as the case may be, (b) result in the imposition of a "prohibited transaction" tax, within the meaning of Section 860F(a)(1) of the Internal Revenue Code, on any MBS trust that directly or indirectly holds the Mortgage Loan and issues MBS, or (c) result in the imposition of a tax on any contribution after the startup date, within the meaning of Section 860G(d)(1) of the Internal Revenue Code, on any MBS trust that directly or indirectly holds the Mortgage Loan and issues MBS.

"**Amortization Period**" has the meaning set forth in the Summary of Loan Terms.

"**Amortization Type**" has the meaning set forth in the Summary of Loan Terms.

"**Bankruptcy Code**" means Title 11 of the United States Code entitled "Bankruptcy" as now and hereafter in effect, or any successor statute.

"**Bankruptcy Event**" means any one or more of the following:

(a) the commencement, filing or continuation of a voluntary case or proceeding under one or more of the Insolvency Laws by Borrower;


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(b) the acknowledgment in writing by Borrower (other than to Lender in connection with a workout) that it is unable to pay its debts generally as they mature;

(c) the making of a general assignment for the benefit of creditors by Borrower;

(d) the commencement, filing or continuation of an involuntary case or proceeding under one or more Insolvency Laws against Borrower; or

(e) the appointment of a receiver (other than a receiver appointed at the direction or request of Lender under the terms of the Loan Documents), liquidator, custodian, sequestrator, trustee or other similar officer who exercises control over Borrower or any substantial part of the assets of Borrower;

provided, however, that any proceeding or case under (d) or (e) above shall not be a Bankruptcy Event until the ninetieth day after filing (if not earlier dismissed) so long as such proceeding or case occurred without the consent, encouragement or active participation of Borrower, Guarantor, Key Principal, or any Borrower Affiliate (in which event such case or proceeding shall be a Bankruptcy Event immediately).

"**Borrower**" means, individually (and jointly and severally (solidarily instead for purposes of Louisiana law) if more than one), the entity (or entities) identified as "Borrower" in the first paragraph of the Loan Agreement.

"**Borrower Affiliate**" means, as to Borrower, Guarantor or Key Principal:

(a) any Person that owns any direct ownership interest in Borrower, Guarantor or Key Principal;

(b) any Person that indirectly owns, with the power to vote, twenty percent (20%) or more of the ownership interests in Borrower, Guarantor or Key Principal;

(c) any Person Controlled by, under common Control with, or which Controls, Borrower, Guarantor or Key Principal;

(d) any entity in which Borrower, Guarantor or Key Principal directly or indirectly owns, with the power to vote, twenty percent (20%) or more of the ownership interests in such entity; or

(e) any other individual that is related (to the third degree of consanguinity) by blood or marriage to Borrower, Guarantor or Key Principal.

"**Borrower Requested Repairs**" means repairs not listed on the Required Repair Schedule requested by Borrower to be reimbursed from the Repairs Escrow Account and determined advisable by Lender to keep the Mortgaged Property in good order and repair and in a good marketable condition or to prevent deterioration of the Mortgaged Property.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

"**Borrower Requested Replacements**" means replacements not listed on the Required Replacement Schedule requested by Borrower to be reimbursed from the Replacement Reserve Account and determined advisable by Lender to keep the Mortgaged Property in good order and repair and in a good marketable condition or to prevent deterioration of the Mortgaged Property.

"**Borrower's General Business Address**" has the meaning set forth in the Summary of Loan Terms.

"**Borrower's Notice Address**" has the meaning set forth in the Summary of Loan Terms.

"**Business Day**" means any day other than (a) a Saturday, (b) a Sunday, (c) a day on which Lender is not open for business, or (d) a day on which the Federal Reserve Bank of New York is not open for business.

"**Collateral Account**" means any account designated as such by Lender pursuant to a Collateral Agreement or as established pursuant to the Loan Agreement, including the Reserve/Escrow Account.

"**Collateral Account Funds**" means, collectively, the funds on deposit in any Collateral Account, including the Reserve/Escrow Account Funds.

"**Collateral Agreement**" means any separate agreement between Borrower and Lender and any other party (if applicable) for the establishment of any other fund, reserve or account related to the Mortgage Loan or the Mortgaged Property.

"**Completion Period**" has the meaning set forth in the Summary of Loan Terms.

"**Condemnation Action**" has the meaning set forth in the Security Instrument.

"**Control**" (including with correlative meanings, such as "Controlling," "Controlled by" and "under common Control with") means, as applied to any entity, the possession, directly or indirectly, of the power to direct or cause the direction of the management and operations of such entity, whether through the ownership of voting securities or other ownership interests, by contract or otherwise.

"**Credit Score**" means a numerical value or a categorization derived from a statistical tool or modeling system used to measure credit risk and predict the likelihood of certain credit behaviors, including default.

"**Debt Service Amounts**" means the Monthly Debt Service Payments and all other amounts payable under the Loan Agreement, the Note, the Security Instrument or any other Loan Document.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

"**Default Rate**" means an interest rate equal to the lesser of:

(a) the sum of the Interest Rate plus four (4) percentage points; or

(b) the maximum interest rate which may be collected from Borrower under applicable law.

"**Definitions Schedule**" means this Schedule 1 (Definitions Schedule) to the Loan Agreement.

"**Division**" means the filing of a certificate of division, adoption of a plan of division, amending of any organizational documents, or any other actions taken, permitted, or consented to in order to divide a Person into two or more Persons pursuant to a plan of division such as contemplated under the Delaware Limited Liability Company Act or any other similar requirement of law in any jurisdiction. The term "**Divide**" shall have a correlative meaning.

"**Economic Sanctions**" means any economic or financial sanction administered or enforced by the United States Government (including, without limitation, those administered by OFAC at http://www.treasury.gov/about/organizational-structure/offices/Pages/Office-of-Foreign-Assets-Control.aspx), the U.S. Department of Commerce, or the U.S. Department of State.

"**Effective Date**" has the meaning set forth in the Summary of Loan Terms.

"**Employee Benefit Plan**" means a plan described in Section 3(3) of ERISA, regardless of whether the plan is subject to ERISA, or a "plan" as defined in Section 4975(e)(1) of the Internal Revenue Code.

"**Enforcement Costs**" has the meaning set forth in the Security Instrument.

"**Environmental Indemnity Agreement**" means that certain Environmental Indemnity Agreement dated as of the Effective Date made by Borrower to and for the benefit of Lender, as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time.

"**Environmental Inspections**" has the meaning set forth in the Environmental Indemnity Agreement.

"**Environmental Laws**" has the meaning set forth in the Environmental Indemnity Agreement.

"**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended from time to time and the regulations promulgated thereunder.

"**ERISA Affiliate**" shall mean, with respect to Borrower, any entity that, together with Borrower, would be treated as a single employer under Section 414(b) or (c) of the Internal Revenue Code, or Section 4001(a)(14) of ERISA, or the regulations thereunder.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

"**ERISA Plan**" means any employee pension benefit plan within the meaning of Section 3(2) of ERISA (or related trust) that is subject to the requirements of Title IV of ERISA, Sections 430 or 431 of the Internal Revenue Code, or Sections 302, 303, or 304 of ERISA, which is maintained or contributed to by Borrower or its ERISA Affiliates.

"**Event of Default**" means the occurrence of any event listed in Section 14.01 (Events of Default) of the Loan Agreement.

"**Exceptions to Representations and Warranties Schedule**" means that certain Schedule 7 (Exceptions to Representations and Warranties Schedule) to the Loan Agreement.

"**First Payment Date**" has the meaning set forth in the Summary of Loan Terms.

"**First Principal and Interest Payment Date**" has the meaning set forth in the Summary of Loan Terms, if applicable.

"**Fixed Investment Trust**" means an investment trust as defined in Section 301.7701-4 of the Treasury Regulations.

"**Fixed Rate**" has the meaning set forth in the Summary of Loan Terms.

"**Fixtures**" has the meaning set forth in the Security Instrument.

"**Force Majeure**" shall mean acts of God, acts of war, civil disturbance, governmental action (including the revocation or refusal to grant licenses or permits, where such revocation or refusal is not due to the fault of Borrower), strikes, lockouts, fire, unavoidable casualties or any other causes beyond the reasonable control of Borrower (other than lack of financing), and of which Borrower shall have notified Lender in writing within ten (10) days after its occurrence.

"**Foreclosure Event**" means:

(a) foreclosure under the Security Instrument;

(b) any other exercise by Lender of rights and remedies (whether under the Security Instrument or under applicable law, including Insolvency Laws) as holder of the Mortgage Loan and/or the Security Instrument, as a result of which Lender (or its designee or nominee) or a third party purchaser becomes owner of the Mortgaged Property;

(c) delivery by Borrower to Lender (or its designee or nominee) of a deed or other conveyance of Borrower's interest in the Mortgaged Property in lieu of any of the foregoing; or

(d) in Louisiana, any dation en paiement.

"**Goods**" has the meaning set forth in the Security Instrument.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**"Governmental Authority"** means any court, board, commission, department or body of any municipal, county, state or federal governmental unit, or any subdivision of any court, board, commission, department or body of any municipal, county, state or federal governmental unit, that has or acquires jurisdiction over Borrower or the Mortgaged Property or the use, operation or improvement of the Mortgaged Property.

**"Guarantor"** means, individually and collectively, any guarantor of the Indebtedness or any other obligation of Borrower under any Loan Document.

**"Guarantor Bankruptcy Event"** means any one or more of the following:

(a) the commencement, filing or continuation of a voluntary case or proceeding under one or more of the Insolvency Laws by Guarantor;

(b) the acknowledgment in writing by Guarantor (other than to Lender in connection with a workout) that it is unable to pay its debts generally as they mature;

(c) the making of a general assignment for the benefit of creditors by Guarantor;

(d) the commencement, filing or continuation of an involuntary case or proceeding under one or more Insolvency Laws against Guarantor; or

(e) the appointment of a receiver, liquidator, custodian, sequestrator, trustee or other similar officer who exercises control over Guarantor or any substantial part of the assets of Guarantor, as applicable;

provided, however, that any proceeding or case under (d) or (e) above shall not be a Guarantor Bankruptcy Event until the ninetieth day after filing (if not earlier dismissed) so long as such proceeding or case occurred without the consent, encouragement or active participation of Borrower, Guarantor, Key Principal, or any Borrower Affiliate (in which event such case or proceeding shall be a Guarantor Bankruptcy Event immediately).

**"Guarantor's General Business Address"** has the meaning set forth in the Summary of Loan Terms.

**"Guarantor's Notice Address"** has the meaning set forth in the Summary of Loan Terms.

**"Guaranty"** means, individually and collectively, any Payment Guaranty, Non-Recourse Guaranty or other guaranty executed by Guarantor in connection with the Mortgage Loan.

**"Immediate Family Members"** means a child, stepchild, grandchild, spouse, sibling, or parent, each of whom is not a Prohibited Person.

**"Imposition Deposits"** has the meaning set forth in the Security Instrument.

**"Impositions"** has the meaning set forth in the Security Instrument.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

"**Improvements**" has the meaning set forth in the Security Instrument.

"**Indebtedness**" has the meaning set forth in the Security Instrument.

"**Initial Replacement Reserve Deposit**" has the meaning set forth in the Summary of Loan Terms.

"**Insolvency Laws**" means the Bankruptcy Code, together with any other federal or state law affecting debtor and creditor rights or relating to the bankruptcy, insolvency, reorganization, arrangement, moratorium, readjustment of debt, dissolution, liquidation or similar laws, proceedings, or equitable principles affecting the enforcement of creditors' rights, as amended from time to time.

"**Insolvent**" means:

(a) that the sum total of all of a specified Person's liabilities (whether secured or unsecured, contingent or fixed, or liquidated or unliquidated) is in excess of the value of such Person's non-exempt assets, i.e., all of the assets of such Person that are available to satisfy claims of creditors; or

(b) such Person's inability to pay its debts as they become due.

"**Intended Prepayment Date**" means the date upon which Borrower intends to make a prepayment on the Mortgage Loan, as set forth in the Prepayment Notice.

"**Interest Accrual Method**" has the meaning set forth in the Summary of Loan Terms.

"**Interest Only Term**" has the meaning set forth in the Summary of Loan Terms.

"**Interest Rate**" means the Fixed Rate.

"**Interest Rate Type**" has the meaning set forth in the Summary of Loan Terms.

"**Internal Revenue Code**" means the Internal Revenue Code of 1986, as amended.

"**Investor**" means any Person to whom Lender intends to (a) sell, transfer, deliver or assign the Mortgage Loan in the secondary mortgage market, or (b) sell an MBS backed by the Mortgage Loan.

"**Key Principal**" means, collectively:

(a) the Person that Controls Borrower that Lender determines is critical to the successful operation and management of Borrower and the Mortgaged Property, as identified as such in the Summary of Loan Terms; or


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(b) any Person who becomes a Key Principal after the date of the Loan Agreement and is identified as such in an assumption agreement, or another amendment or supplement to the Loan Agreement.

"**Key Principal's General Business Address**" has the meaning set forth in the Summary of Loan Terms.

"**Key Principal's Notice Address**" has the meaning set forth in the Summary of Loan Terms.

"**Land**" means the land described in Exhibit A to the Security Instrument.

"**Last Interest Only Payment Date**" has the meaning set forth in the Summary of Loan Terms, if applicable.

"**Late Charge**" means an amount equal to the delinquent amount then due under the Loan Documents multiplied by five percent (5%).

"**Leases**" has the meaning set forth in the Security Instrument.

"**Lender**" means the entity identified as "Lender" in the first paragraph of the Loan Agreement and its transferees, successors and assigns, or any subsequent holder of the Note.

"**Lender's General Business Address**" has the meaning set forth in the Summary of Loan Terms.

"**Lender's Notice Address**" has the meaning set forth in the Summary of Loan Terms.

"**Lender's Payment Address**" has the meaning set forth in the Summary of Loan Terms.

"**Lien**" has the meaning set forth in the Security Instrument.

"**Loan Agreement**" means the Multifamily Loan and Security Agreement dated as of the Effective Date executed by and between Borrower and Lender to which this Definitions Schedule is attached, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

"**Loan Amount**" has the meaning set forth in the Summary of Loan Terms.

"**Loan Application**" means the application for the Mortgage Loan submitted by Borrower to Lender.

"**Loan Documents**" means the Note, the Loan Agreement, the Security Instrument, the Environmental Indemnity Agreement, the Guaranty, all guaranties, all indemnity agreements, all Collateral Agreements, all O&M Plans, and any other documents now or in the future executed by Borrower, Guarantor, Key Principal, any other guarantor or any other Person in connection with the Mortgage Loan, as such documents may be amended, restated, replaced, supplemented or otherwise modified from time to time.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

"**Loan Servicer**" means the entity that from time to time is designated by Lender to collect payments and deposits and receive notices under the Note, the Loan Agreement, the Security Instrument and any other Loan Document, and otherwise to service the Mortgage Loan for the benefit of Lender. Unless Borrower receives notice to the contrary, the Loan Servicer shall be the Lender originally named on the Summary of Loan Terms.

"**Loan Term**" has the meaning set forth in the Summary of Loan Terms.

"**Loan Year**" has the meaning set forth in the Summary of Loan Terms.

"**Material Commercial Lease**" means:

(a) any Lease that, individually or in the aggregate with other Leases entered into with the same tenant, comprises five percent (5%) or more of the total gross income at the Mortgaged Property on an annualized basis; or

(b) regardless of the percentage of the total gross income at the Mortgaged Property that it comprises, any Lease relating to:

(1) solar power, thermal power generation, or co-power generation, or for the installation of solar panels or any other electrical power generation equipment, and any related power purchase agreement; or

(2) any dwelling unit at the Mortgaged Property leased to Guarantor, Key Principal, or another Borrower Affiliate.

"**Maturity Date**" has the meaning set forth in the Summary of Loan Terms.

"**Maximum Inspection Fee**" has the meaning set forth in the Summary of Loan Terms.

"**Maximum Permitted Equipment Financing**" has the meaning set forth in the Summary of Loan Terms.

"**Maximum Repair Cost**" shall be the amount(s) set forth in the Required Repair Schedule, if any.

"**Maximum Repair Disbursement Interval**" has the meaning set forth in the Summary of Loan Terms.

"**Maximum Replacement Reserve Disbursement Interval**" has the meaning set forth in the Summary of Loan Terms.

"**Maximum Restoration Reserve Disbursement Interval**" has the meaning set forth in the Summary of Loan Terms.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

"**MBS**" means an investment security that represents an undivided beneficial interest in a pool of mortgage loans or participation interests in mortgage loans held in trust pursuant to the terms of a governing trust document.

"**Mezzanine Debt**" means a loan to a direct or indirect owner of Borrower secured by a pledge of such owner's interest in an entity owning a direct or indirect interest in Borrower.

"**Minimum Repairs Disbursement Amount**" has the meaning set forth in the Summary of Loan Terms.

"**Minimum Replacement Reserve Disbursement Amount**" has the meaning set forth in the Summary of Loan Terms.

"**Minimum Restoration Reserve Disbursement Amount**" has the meaning set forth in the Summary of Loan Terms.

"**Monthly Debt Service Payment**" has the meaning set forth in the Summary of Loan Terms.

"**Monthly Replacement Reserve Deposit**" has the meaning set forth in the Summary of Loan Terms.

"**Mortgage Loan**" means the mortgage loan made by Lender to Borrower in the principal amount of the Note made pursuant to the Loan Agreement, evidenced by the Note and secured by the Loan Documents that are expressly stated to be security for the Mortgage Loan.

"**Mortgaged Property**" has the meaning set forth in the Security Instrument.

"**Multifamily Project**" has the meaning set forth in the Summary of Loan Terms.

"**Multifamily Project Address**" has the meaning set forth in the Summary of Loan Terms.

"**Net Cash Flow**" means, for any specified period, the total of (a) the net rental income for the Mortgaged Property, plus (b) other allowable income for the Mortgaged Property, if any, minus (c) operating expenses for the Mortgaged Property, minus (d) the full amount underwritten for the Replacement Reserve Account (regardless of whether deposits have been or will be waived or reduced), and as adjusted for economic vacancy and other factors by Lender for the specific asset class or loan type.

"**Non-Recourse Guaranty**" means, if applicable, that certain Guaranty of Non-Recourse Obligations of even date herewith executed by Guarantor to and for the benefit of Lender, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

"**Note**" means that certain Multifamily Note of even date herewith in the original principal amount of the stated Loan Amount made by Borrower in favor of Lender, and all schedules, riders, allonges


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

and addenda attached thereto, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

"**O&M Plan**" has the meaning set forth in the Environmental Indemnity Agreement.

"**OFAC**" means the United States Treasury Department, Office of Foreign Assets Control, and any successor thereto.

"**Ownership Interests Schedule**" means that certain Schedule 8 (Ownership Interests Schedule) to the Loan Agreement.

"**Payment Date**" means the First Payment Date and the first day of each month thereafter until the Mortgage Loan is fully paid.

"**Payment Guaranty**" means, if applicable, that certain Guaranty (Payment) of even date herewith executed by Guarantor to and for the benefit of Lender, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

"**Permitted Encumbrance**" has the meaning set forth in the Security Instrument.

"**Permitted Equipment Financing**" means equipment lease or other purchase money financing incurred in the ordinary course for acquisition of additional or replacement equipment or other personal property, or to refinance Permitted Equipment Financing, in an amount not to exceed, at any time, the Maximum Permitted Equipment Financing.

"**Permitted Mezzanine Debt**" means Mezzanine Debt incurred by a direct or indirect owner or owners of Borrower where the exercise of any of the rights and remedies by the holder or holders of the Mezzanine Debt would not in any circumstance cause (a) a change in Control in Borrower, Key Principal, or Guarantor, or (b) a Transfer of a direct or indirect Restricted Ownership Interest in Borrower, Key Principal, or Guarantor.

"**Permitted Preferred Equity**" means Preferred Equity that does not (a) require mandatory dividends, distributions, payments or returns (including at maturity or in connection with a redemption), or (b) provide the Preferred Equity owner with rights or remedies on account of a failure to receive any preferred dividends, distributions, payments or returns (or, if such rights are provided, the exercise of such rights do not violate the Loan Documents or are otherwise exercised with the prior written consent of Lender in accordance with Article 11 (Liens, Transfers and Assumptions) of the Loan Agreement and the payment of all applicable fees and expenses as set forth in Section 11.03(g) (Further Conditions to Transfers and Assumption) of the Loan Agreement).

"**Permitted Prepayment Date**" means the last Business Day of a calendar month.

"**Person**" means an individual, an estate, a trust, a corporation, a partnership, a limited liability company or any other organization or entity (whether governmental or private).


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**"Personal Property"** means the Goods, accounts, choses of action, chattel paper, documents, general intangibles (including Software), payment intangibles, instruments, investment property, letter of credit rights, supporting obligations, computer information, source codes, object codes, records and data, all telephone numbers or listings, claims (including claims for indemnity or breach of warranty), deposit accounts and other property or assets of any kind or nature related to the Land or the Improvements, including operating agreements, surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements, and all other intangible property and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land.

**"Personalty"** has the meaning set forth in the Security Instrument.

**"Preferred Equity"** means a direct or indirect equity ownership interest in, economic interests in, or rights with respect to, Borrower that provide an equity owner preferred dividend, distribution, payment, or return treatment relative to other equity owners.

**"Prepayment Lockout Period"** has the meaning set forth in the Summary of Loan Terms.

**"Prepayment Notice"** means the written notice that Borrower is required to provide to Lender in accordance with Section 2.03 (Lockout/Prepayment) of the Loan Agreement in order to make a prepayment on the Mortgage Loan, which shall include, at a minimum, the Intended Prepayment Date.

**"Prepayment Premium"** means the amount payable by Borrower in connection with a prepayment of the Mortgage Loan, as provided in Section 2.03 (Lockout/Prepayment) of the Loan Agreement and calculated in accordance with the Prepayment Premium Schedule.

**"Prepayment Premium Period End Date"** or **"Yield Maintenance Period End Date"** has the meaning set forth in the Summary of Loan Terms.

**"Prepayment Premium Period Term"** or **"Yield Maintenance Period Term"** has the meaning set forth in the Summary of Loan Terms.

**"Prepayment Premium Schedule"** means that certain Schedule 4 (Prepayment Premium Schedule) to the Loan Agreement.

**"Prohibited Person"** means:

(a) any Person with whom Lender or Fannie Mae is prohibited from doing business pursuant to any law, rule, regulation, judicial proceeding or administrative directive; or

(b) any Person identified on the United States Department of Housing and Urban Development's "Limited Denial of Participation, HUD Funding Disqualifications and Voluntary Abstentions List," or on the General Services Administration's "System for Award Management


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(SAM)" exclusion list, each of which may be amended from time to time, and any successor or replacement thereof; or

(c) any Person that is determined by Fannie Mae to pose an unacceptable credit risk due to the aggregate amount of debt of such Person owned or held by Fannie Mae; or

(d) any Person that has caused any unsatisfactory experience of a material nature with Fannie Mae or Lender, such as a default, fraud, intentional misrepresentation, litigation, arbitration or other similar act.

"**Property Jurisdiction**" has the meaning set forth in the Security Instrument.

"**Property Square Footage**" has the meaning set forth in the Summary of Loan Terms.

"**Publicly-Held Corporation**" means a corporation, the outstanding voting stock of which is registered under Sections 12(b) or 12(g) of the Securities Exchange Act of 1934, as amended.

"**Publicly-Held Trust**" means a real estate investment trust, the outstanding voting shares or beneficial interests of which are registered under Sections 12(b) or 12(g) of the Securities Exchange Act of 1934, as amended.

"**REMIC**" means a real estate mortgage investment conduit as defined in Section 860D of the Internal Revenue Code.

"**Rents**" has the meaning set forth in the Security Instrument.

"**Repair Threshold**" has the meaning set forth in the Summary of Loan Terms.

"**Repairs**" means, individually and collectively, the Required Repairs, Borrower Requested Repairs, and Additional Lender Repairs.

"**Repairs Escrow Account**" means the account established by Lender into which the Repairs Escrow Deposit is deposited to fund the Repairs.

"**Repairs Escrow Account Administration Fee**" has the meaning set forth in the Summary of Loan Terms.

"**Repairs Escrow Deposit**" has the meaning set forth in the Summary of Loan Terms.

"**Replacement Reserve Account**" means the account established by Lender into which the Replacement Reserve Deposits are deposited to fund the Replacements.

"**Replacement Reserve Account Administration Fee**" has the meaning set forth in the Summary of Loan Terms.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

"**Replacement Reserve Account Interest Disbursement Frequency**" has the meaning set forth in the Summary of Loan Terms.

"**Replacement Reserve Deposits**" means the Initial Replacement Reserve Deposit, Monthly Replacement Reserve Deposits and any other deposits to the Replacement Reserve Account required by the Loan Agreement.

"**Replacement Threshold**" has the meaning set forth in the Summary of Loan Terms.

"**Replacements**" means, individually and collectively, the Required Replacements, Borrower Requested Replacements and Additional Lender Replacements.

"**Required Repair Schedule**" means that certain Schedule 6 (Required Repair Schedule) to the Loan Agreement.

"**Required Repairs**" means those items listed on the Required Repair Schedule.

"**Required Replacement Schedule**" means that certain Schedule 5 (Required Replacement Schedule) to the Loan Agreement.

"**Required Replacements**" means those items listed on the Required Replacement Schedule.

"**Reserve/Escrow Account Funds**" means, collectively, the funds on deposit in the Reserve/Escrow Accounts.

"**Reserve/Escrow Accounts**" means, individually and collectively, the Replacement Reserve Account, the Repairs Escrow Account, and the Restoration Reserve Account.

"**Residential Lease**" means a Lease of an individual dwelling unit.

"**Restoration**" means any work and improvements required to be performed to the Mortgaged Property following a casualty or event of loss as set forth in plans and specifications approved by Lender.

"**Restoration Reserve Account**" means, if applicable, the account established by Lender into which insurance proceeds are deposited in order to fund a Restoration following a casualty or event of loss.

"**Restoration Reserve Account Administration Fee**" has the meaning set forth in the Summary of Loan Terms.

"**Restoration Threshold**" has the meaning set forth in the Summary of Loan Terms.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

"**Restricted Ownership Interest**" means, with respect to any entity, the following:

(a) if such entity is a general partnership or a joint venture, fifty percent (50%) or more of all general partnership or joint venture interests in such entity;

(b) if such entity is a limited partnership:

(1) the interest of any general partner; or

(2) fifty percent (50%) or more of all limited partnership interests in such entity;

(c) if such entity is a limited liability company or a limited liability partnership:

(1) the interest of any managing member or the contractual rights of any non-member manager; or

(2) fifty percent (50%) or more of all membership or other ownership interests in such entity;

(d) if such entity is a corporation (other than a Publicly-Held Corporation) with only one class of voting stock, fifty percent (50%) or more of voting stock in such corporation;

(e) if such entity is a corporation (other than a Publicly-Held Corporation) with more than one class of voting stock, the amount of shares of voting stock sufficient to have the power to elect the majority of directors of such corporation; or

(f) if such entity is a trust (other than a land trust or a Publicly-Held Trust), the power to Control such trust vested in the trustee of such trust or the ability to remove, appoint or substitute the trustee of such trust (unless the trustee of such trust after such removal, appointment or substitution is a trustee identified in the trust agreement approved by Lender).

"**Review Fee**" means the non-refundable fee of $3,000 payable to Lender.

"**Sanctioned Country**" means a country or territory subject to either a targeted or comprehensive country-wide sanctions program administered and enforced by OFAC, which list is updated from time to time.

"**Sanctioned Person**" means:

(a) a Person named on the list of "Specially Designated Nationals and Blocked Persons" maintained by OFAC, available at http://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx, or as otherwise published from time to time;

(b) (1) an agency of the government of a Sanctioned Country, (2) an organization controlled by a Sanctioned Country, or (3) a Person resident in a Sanctioned Country, to the extent


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

any Person described in clauses (1), (2) or (3) is the subject of a sanctions program administered by OFAC;

(c) a Person whose property and interests in property are blocked pursuant to an Executive Order or regulations administered by OFAC consistent with the guidance issued by OFAC; or

(d) any Person that meets (a) or (b) of the definition of "Prohibited Person."

"**Schedule of Interest Rate Type Provisions**" means that certain Schedule 3 (Schedule of Interest Rate Type Provisions) to the Loan Agreement.

"**Security Instrument**" means that certain multifamily mortgage, deed to secure debt or deed of trust executed and delivered by Borrower as security for the Mortgage Loan and encumbering the Mortgaged Property, including all riders or schedules attached thereto, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

"**Servicing Arrangement**" means any arrangement between Lender and the Loan Servicer for loss sharing or interim advancement of funds.

"**Short-Term Rental**" means any Lease or master Lease (including subleases, licenses, and other possessory interests, whether oral or written) of an individual dwelling unit, for which the intended occupancy of the dwelling unit is for a period or periods of less than thirty (30) days, irrespective of the stated term of the Lease, including any Lease:

(a) for corporate tenant and guest suite purposes; or

(b) with an agreement or arrangement between either:

(1) Borrower and a tenant whereby the tenant may enter into a separate agreement or arrangement with a Short-Term Rental Provider to offer Short-Term Rentals at the Mortgaged Property; or

(2) Borrower and a Short-Term Rental Provider, pursuant to which tenants may offer Short-Term Rentals at the Mortgaged Property.

"**Short-Term Rental Provider**" means any platform or provider (including any internet or online service platform or provider) that offers Short-Term Rental services and arrangements, including booking and reservation services to guests and customers.

"**Software**" has the meaning set forth in the Security Instrument.

"**Summary of Loan Terms**" means that certain Schedule 2 (Summary of Loan Terms) to the Loan Agreement.

"**Taxes**" has the meaning set forth in the Security Instrument.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

"**Title Policy**" means the mortgagee's loan policy of title insurance issued in connection with the Mortgage Loan and insuring the lien of the Security Instrument as set forth therein, as approved by Lender.

"**Total Parking Spaces**" has the meaning set forth in the Summary of Loan Terms.

"**Total Residential Units**" has the meaning set forth in the Summary of Loan Terms.

"**Transfer**" means:

(a) a sale, assignment, transfer or other disposition (whether voluntary, involuntary, or by operation of law), other than Residential Leases, Material Commercial Leases or non-Material Commercial Leases permitted by the Loan Agreement;

(b) a granting, pledging, creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary, or by operation of law);

(c) an issuance or other creation of a direct or indirect ownership interest;

(d) a withdrawal, retirement, removal or involuntary resignation of any owner or manager of a legal entity; or

(e) a merger, consolidation, dissolution, Division or liquidation of a legal entity.

"**Transfer Fee**" means a fee equal to one percent (1%) of the unpaid principal balance of the Mortgage Loan payable to Lender.

"**Treasury Regulations**" means regulations, revenue rulings and other public interpretations of the Internal Revenue Code by the Internal Revenue Service, as such regulations, rulings and interpretations may be amended or otherwise revised from time to time.

"**UCC**" has the meaning set forth in the Security Instrument.

"**UCC Collateral**" has the meaning set forth in the Security Instrument.

"**Voidable Transfer**" means any fraudulent conveyance, preference or other voidable or recoverable payment of money or transfer of property.

"**Yield Maintenance Period End Date**" or "**Prepayment Premium Period End Date**" has the meaning set forth in the Summary of Loan Terms.

"**Yield Maintenance Period Term**" or "**Prepayment Premium Period Term**" has the meaning set forth in the Summary of Loan Terms.

**[Remainder of Page Intentionally Blank]**


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**SCHEDULE 2**
**TO MULTIFAMILY LOAN AND SECURITY AGREEMENT**

**Summary of Loan Terms**
**(Interest Rate Type - Fixed Rate)**

| **I. GENERAL PARTY AND MULTIFAMILY PROJECT INFORMATION** | |
|---|---|
| **Borrower** | **MCG KNOLLS LLC**, a Missouri limited liability company |
| **Lender** | **ARBOR COMMERCIAL FUNDING I, LLC**, a New York limited liability company |
| **Key Principal** | MOSHE MERMELSTEIN<br>JOSEPH MERMELSTEIN |
| **Guarantor** | MOSHE MERMELSTEIN<br>JOSEPH MERMELSTEIN |
| **Multifamily Project** | The Knolls Townhomes |
| **ADDRESSES** | |
| **Borrower's General Business Address** | 150 James Street, Ste 209A<br>Lakewood, NJ 08701 |
| **Borrower's Notice Address** | 150 James Street, Ste 209A<br>Lakewood, NJ 08701<br>Email: Moshe@mascapgroup.com |
| **Multifamily Project Address** | 3582 Pershall Rd.<br>Ferguson, MO 63135 |
| **Multifamily Project County** | Saint Louis |
| **Key Principal's General Business Address** | Moshe Mermelstein<br>104 Elm Street<br>Lakewood, NJ 08701<br><br>Joseph Mermelstein<br>1765 53rd Street<br>Brooklyn, NY 11204 |


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

| | |
|---|---|
| **Key Principal's Notice Address** | Moshe Mermelstein<br>104 Elm Street<br>Lakewood, NJ 08701<br>Email: Moshe@mascapgroup.com<br><br>Joseph Mermelstein<br>1765 53rd Street<br>Brooklyn, NY 11204<br>Email: momermelstein@gmail.com |
| **Guarantor's General Business Address** | Moshe Mermelstein<br>104 Elm Street<br>Lakewood, NJ 08701<br><br>Joseph Mermelstein<br>1765 53rd Street<br>Brooklyn, NY 11204 |
| **Guarantor's Notice Address** | Moshe Mermelstein<br>104 Elm Street<br>Lakewood, NJ 08701<br>Email: Moshe@mascapgroup.com<br><br>Joseph Mermelstein<br>1765 53rd Street<br>Brooklyn, NY 11204<br>Email: momermelstein@gmail.com |
| **Lender's General Business Address** | 333 Earle Ovington Boulevard, Suite 900<br>Uniondale, New York 11553 |
| **Lender's Notice Address** | 500 Colvin Woods Parkway, Suite 200<br>Tonawanda, New York 14150<br>portfoliomanagement@arbor.com |
| **Lender's Payment Address** | 500 Colvin Woods Parkway, Suite 200<br>Tonawanda, New York 14150 |

| **II. MULTIFAMILY PROJECT INFORMATION** | |
|---|---|
| **Property Square Footage** | 504,360 |
| **Total Parking Spaces** | 230 |


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

| | |
|---|---|
| **Total Residential Units** | 112 |
| **Affordable Housing Property** | ☐ Yes<br>☒ No |


© 2022 Fannie Mae

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

| III. MORTGAGE LOAN INFORMATION | |
|---|---|
| **Amortization Period** | Three hundred sixty (360) months |
| **Amortization Type** | **[Select <u>only</u> one:]**<br>☐ Amortizing<br>☐ Full Term Interest Only<br>☒ Partial Interest Only |
| **Effective Date** | September 6, 2024 |
| **First Payment Date** | The first day of November, 2024 |
| **First Principal and Interest Payment Date** | The first day of November, 2027 |
| **Fixed Rate** | 5.290% |
| **Interest Accrual Method** | **[Select <u>only</u> one:]**<br>☐ 30/360 (computed on the basis of a three hundred sixty (360) day year consisting of twelve (12) thirty (30) day months)<br>or<br>☒ Actual/360 (computed on the basis of a three hundred sixty (360) day year and the actual number of calendar days during the applicable month, calculated by multiplying the unpaid principal balance of the Mortgage Loan by the Interest Rate, dividing the product by three hundred sixty (360), and multiplying the quotient obtained by the actual number of days elapsed in the applicable month) |
| **Interest Only Term** | Thirty-six (36) months |
| **Interest Rate** | The Fixed Rate |
| **Interest Rate Type** | Fixed Rate |


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

| | |
|---|---|
| **Last Interest Only Payment Date** | The first day of October, 2027 |
| **Loan Amount** | $9,314,000.00 |
| **Loan Term** | Eighty-Four (84) months |
| **Loan Year** | The period beginning on the Effective Date and ending on the last day of September, 2025, and each successive twelve (12) month period thereafter |
| **Maturity Date** | The first day of October, 2031, or any earlier date on which the Indebtedness becomes due and payable by acceleration or otherwise |
| **Maximum Permitted Equipment Financing** | Two percent (2%) of the Outstanding Loan Amount |
| **Monthly Debt Service Payment** | *For Partial Interest Only (Actual/360)*:<br>(i) $42,427.86 for the First Payment Date;<br>(ii) for each Payment Date thereafter through and including the Last Interest Only Payment Date:<br>(a) $38,321.94 if the prior month was a 28-day month;<br>(b) $39,690.58 if the prior month was a 29-day month;<br>(c) $41,059.22 if the prior month was a 30-day month; and<br>(d) $42,427.86 if the prior month was a 31-day month; and<br>(iii) $51,663.25 for the First Principal and Interest Payment Date and each Payment Date thereafter until the Mortgage Loan is fully paid |
| **Prepayment Lockout Period** | The 0 Loan Year of the term of the Mortgage Loan |


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

| IV. YIELD MAINTENANCE/PREPAYMENT PREMIUM INFORMATION | |
|---|---|
| **Yield Maintenance Period End Date**<br>***or***<br>**Prepayment Premium Period End Date** | The last day of March, 2031 |
| **Yield Maintenance Period Term**<br>***or***<br>**Prepayment Premium Period Term** | Seventy-eight (78) months |

| V. RESERVE INFORMATION | |
|---|---|
| **Completion Period** | As shown on the Required Repair Schedule |
| **Initial Replacement Reserve Deposit** | $0.00 |
| **Maximum Inspection Fee** | $1,000.00 |
| **Maximum Repair Disbursement Interval** | One (1) time per calendar month |
| **Maximum Replacement Reserve Disbursement Interval** | One (1) time per calendar quarter |
| **Maximum Restoration Reserve Disbursement Interval** | One (1) time per calendar month |
| **Minimum Repairs Disbursement Amount** | $5,000.00 |
| **Minimum Replacement Reserve Disbursement Amount** | $5,000.00 |


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

| | |
|---|---|
| **Minimum Restoration Reserve Disbursement Amount** | $5,000.00 |
| **Monthly Replacement Reserve Deposit** | $3,266.67 |
| **Repair Threshold** | $10,000.00 |
| **Repairs Escrow Account Administration Fee** | $500.00, payable one time |
| **Repairs Escrow Deposit** | $541,412.50 |
| **Replacement Reserve Account Administration Fee** | $600.00, payable annually |
| **Replacement Reserve Account Interest Disbursement Frequency** | Monthly |
| **Replacement Threshold** | $10,000.00 |
| **Restoration Reserve Account Administration Fee** | $500.00, payable one time |
| **Restoration Threshold** | $10,000.00 |

**[Remainder of Page Intentionally Blank]**


© 2022 Fannie Mae

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**SCHEDULE 3**
**TO MULTIFAMILY LOAN AND SECURITY AGREEMENT**

**Schedule of Interest Rate Type Provisions**
**(Fixed Rate)**

**1. Defined Terms.**

Capitalized terms not otherwise defined in this Schedule have the meanings given to such terms in the Definitions Schedule to the Loan Agreement.

**2. Interest Accrual.**

Except as otherwise provided in the Loan Agreement, interest shall accrue at the Interest Rate until fully paid.

**[Remainder of Page Intentionally Blank]**


© 2022 Fannie Mae

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**SCHEDULE 4**
**TO MULTIFAMILY LOAN AND SECURITY AGREEMENT**

**Prepayment Premium Schedule**
**(Standard Yield Maintenance – Fixed Rate)**

**1. Defined Terms.**

All capitalized terms used but not defined in this Prepayment Premium Schedule shall have the meanings assigned to them in the Loan Agreement.

**2. Prepayment Premium.**

Any Prepayment Premium payable under Section 2.03 (Lockout/Prepayment) of the Loan Agreement shall be computed as follows:

(a) If the prepayment is made at any time after the Effective Date and before the Yield Maintenance Period End Date, the Prepayment Premium shall be the greater of:

**(1)** one percent (1%) of the amount of principal being prepaid; or

**(2)** the product obtained by multiplying:

(i) the amount of principal being prepaid,

*by*

(ii) the difference obtained by subtracting from the Fixed Rate on the Mortgage Loan, the Yield Rate (as defined below) on the twenty-fifth (25th) Business Day preceding (i) the Intended Prepayment Date, or (ii) the date Lender accelerates the Mortgage Loan or otherwise accepts a prepayment pursuant to Section 2.03(d) (Application of Collateral) of the Loan Agreement,

*by*

(iii) the present value factor calculated using the following formula:

$$\frac{1 - (1 + r)^{-n/12}}{r}$$

[r = Yield Rate

n = the number of months remaining between (i) either of the following: (x) in the case of a voluntary prepayment, the last day of the month in which the prepayment is made, or (y) in


© 2022 Fannie Mae

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

any other case, the date on which Lender accelerates the unpaid principal balance of the Mortgage Loan and (ii) the Yield Maintenance Period End Date.

For purposes of this clause (2), the "**Yield Rate**" means the yield calculated by interpolating the yields for the immediately shorter and longer term U.S. "Treasury constant maturities" (as reported in the Federal Reserve Statistical Release H.15 Selected Interest Rates (the "**Fed Release**") under the heading "U.S. government securities") closest to the remaining term of the Yield Maintenance Period Term, as follows (rounded to three (3) decimal places):

$$\left(\frac{(a-b)}{(x-y)} \times (z-y)\right) + b$$

$a =$ the yield for the longer U.S. Treasury constant maturity

$b =$ the yield for the shorter U.S. Treasury constant maturity

$x =$ the term of the longer U.S. Treasury constant maturity

$y =$ the term of the shorter U.S. Treasury constant maturity

$z =$ "n" (as defined in the present value factor calculation above) divided by twelve (12).

For purposes of this clause (2), if the Yield Rate is calculated to be zero, the number 0.00001 shall be deemed to be the Yield Rate.

Notwithstanding any provision to the contrary, if "*z*" equals a term reported under the U.S. "Treasury constant maturities" subheading in the Fed Release, the yield for such term shall be used, and interpolation shall not be necessary. If publication of the Fed Release is discontinued by the Federal Reserve Board, Lender shall determine the Yield Rate from another source selected by Lender. Any determination of the Yield Rate by Lender will be binding absent manifest error.]

(b) If the prepayment is made on or after the Yield Maintenance Period End Date but before the last calendar day of the fourth (4th) month prior to the month in which the Maturity


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Date occurs, the Prepayment Premium shall be one percent (1%) of the amount of principal being prepaid.

(c) Notwithstanding the provisions of Section 2.03 (Lockout/Prepayment) of the Loan Agreement, no Prepayment Premium shall be payable with respect to any prepayment made on or after the last calendar day of the fourth (4th) month prior to the month in which the Maturity Date occurs.

**[Remainder of Page Intentionally Blank]**


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# SCHEDULE 5
# TO MULTIFAMILY LOAN AND SECURITY AGREEMENT

## Required Replacement Schedule

**Reserve Schedules:** The Knolls Townhomes

| Summary | |
|---|---|
| Annual $/Unit | $350 |
| Initial Reserve Deposit | |
| Annual Deposit | $39,200 |
| Inflation Factor | 4.00% |
| Escrow Int Rate | 0.50% |

| Description of Item | EUL | AGE | RUL | Unit Cost | Total # @ Property | QTY | Total % Table | Total % Loan Term |
|---|---|---|---|---|---|---|---|---|
| Asphalt Sealcoat and Restriping | 5 years | 0 years | 5 years | $0.12 | 114000 | 112,500 | 99% | 77% |
| Pool/Spa Plastering | 12 years | 6 years | 6 years | $7,000.00 | 1 | 1 | 100% | 100% |
| Pool Filtration Equipment | 5 years | 2 years | 3 years | $1,800.00 | 4 | 4 | 100% | 50% |
| Paint/Caulk - Cladding | 10 years | 8 years | 2 years | $150.00 | 112 | 107 | 95% | 71% |
| Roof Replacement - Asphalt Shingles | 20 years | 18 years | 2 years | $1.50 | 70000 | 30,000 | 43% | 33% |
| Domestic Water Heater Tank Type Gas-Fired | 15 years | 14 years | 1 years | $250.00 | 67 | 67 | 100% | 78% |
| Split System Furnaces | 25 years | 24 years | 1 years | $450.00 | 40 | 40 | 100% | 78% |
| Condenser, Remote | 15 years | 14 years | 1 years | $500.00 | 67 | 67 | 100% | 78% |
| Carpet Flooring Replacement | 9 years | 8 years | 1 years | $550.00 | 112 | 112 | 100% | 78% |
| Vinyl Flooring Replacement | 15 years | 14 years | 1 years | $300.00 | 67 | 67 | 100% | 78% |
| Refrigerators | 18 years | 17 years | 1 years | $400.00 | 56 | 56 | 100% | 78% |
| Range | 20 years | 19 years | 1 years | $350.00 | 50 | 50 | 100% | 78% |
| Dishwasher | 12 years | 11 years | 1 years | $250.00 | 84 | 84 | 100% | 78% |
| Total Uninflated | | | | | | | | |
| Inflation Factor | | | | | | | | |
| Total Inflated @ 4% | | | | | | | | |

| Description of Item | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 | Year 8 | Year 9 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| Asphalt Sealcoat and Restriping | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | $13,500 |
| Pool/Spa Plastering | 0 | 0 | 0 | 0 | 0 | 7,000 | 0 | 0 | 0 | $7,000 |
| Pool Filtration Equipment | 0 | 0 | 3,600 | 0 | 0 | 0 | 0 | 3,600 | 0 | $7,200 |
| Paint/Caulk - Cladding | 0 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | $16,000 |
| Roof Replacement - Asphalt Shingles | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | $45,000 |
| Domestic Water Heater Tank Type Gas-Fired | 1,862 | 1,861 | 1,861 | 1,861 | 1,861 | 1,861 | 1,861 | 1,861 | 1,861 | $16,750 |
| Split System Furnaces | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | $18,000 |
| Condenser, Remote | 3,724 | 3,722 | 3,722 | 3,722 | 3,722 | 3,722 | 3,722 | 3,722 | 3,722 | $33,500 |
| Carpet Flooring Replacement | 6,848 | 6,844 | 6,844 | 6,844 | 6,844 | 6,844 | 6,844 | 6,844 | 6,844 | $61,600 |
| Vinyl Flooring Replacement | 2,236 | 2,233 | 2,233 | 2,233 | 2,233 | 2,233 | 2,233 | 2,233 | 2,233 | $20,100 |
| Refrigerators | 2,496 | 2,488 | 2,488 | 2,488 | 2,488 | 2,488 | 2,488 | 2,488 | 2,488 | $22,400 |
| Range | 1,948 | 1,944 | 1,944 | 1,944 | 1,944 | 1,944 | 1,944 | 1,944 | 1,944 | $17,500 |
| Dishwasher | 2,336 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | $21,000 |
| Total Uninflated | 29,950 | 31,925 | 35,525 | 31,925 | 31,925 | 38,925 | 31,925 | 35,525 | 31,925 | $299,550 |
| Inflation Factor | 100.0% | 104.0% | 108.2% | 112.5% | 117.0% | 121.7% | 126.5% | 131.6% | 136.9% | |
| Total Inflated @ 4% | 29,950 | 33,202 | 38,424 | 35,911 | 37,348 | 47,368 | 40,395 | 46,748 | 43,692 | $353,028 |

| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 | Year 8 | Year 9 |
|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | $0 | $9,296 | $15,371 | $16,228 | $19,614 | $21,574 | $13,482 | $12,348 | $4,824 |
| Annual Deposit | $39,200 | $39,200 | $39,200 | $39,200 | $39,200 | $39,200 | $39,200 | $39,200 | $39,200 |
| Deducted Estimate | ($29,950) | ($33,202) | ($38,424) | ($35,911) | ($37,348) | ($47,368) | ($40,395) | ($46,748) | ($43,692) |
| Shortfall/Overage | $9,250 | $15,294 | $16,147 | $19,516 | $21,466 | $13,415 | $12,287 | $4,800 | $332 |
| Interest Earned | $46 | $76 | $81 | $98 | $107 | $67 | $61 | $24 | $2 |
| Ending Balance | $9,296 | $15,371 | $16,228 | $19,614 | $21,574 | $13,482 | $12,348 | $4,824 | $334 |


© 2022 Fannie Mae

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**SCHEDULE 6**
**TO MULTIFAMILY LOAN AND SECURITY AGREEMENT**

Required Repair Schedule

| Property Address | Collateral Reference Number |
|---|---|
| 3582 Pershall Road, Ferguson, MO 63135 | 1720013299 |


© 2022 Fannie Mae

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

| Repair Description | Estimated Cost | Maximum Repair Cost (Escrow Amount) | Completion Period |
|---|---|---|---|
| The grade-level landscape stairs and wood handrails appeared to be in generally good condition. However, adequate handrail systems are not provided along the concrete steps where the number of risers is three or more. Handrail systems should be installed immediately along the open sides of the concrete steps without rail systems for fall protection purposes. In order to mitigate potential safety concerns to users of the Property, this work should be performed in the immediate term. | $7,500.00 | $9,375.00 | Within two (2) months of Closing |
| Install van-accessible parking, including access aisle, signage and curb cut at leasing office. | $750.00 | $937.50 | Within three (3) months of Closing |
| Install ramp near leasing office entry | $2,500.00 | $3,125.00 | Within three (3) months of Closing |
| Two mature trees, located in the courtyard area adjacent to Buildings 1535-1545 and 1569-1583, appeared to be dead and require removal. | $2,400.00 | $3,000.00 | Within twelve (12) months of Closing |
| Significant areas of damaged asphalt pavement were noted throughout the paved drives. Damaged areas exhibited signs of pothole formation, alligator and map cracking, raveling, longitudinal cracking, and general surface fatigue. | $33,750.00 | $42,187.50 | Within twelve (12) months of Closing |
| Asphalt seal coating and striping was noted to be worn and should be reapplied. | $13,680.00 | $17,100.00 | Within twelve (12) months of Closing |
| Concrete sidewalks, walk-up building entries and patio pads appeared to be in good to fair | $3,000.00 | $3,750.00 | Within twelve (12) months of Closing |


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

| | | | |
|---|---|---|---|
| condition. Localized areas of damaged sidewalk were noted throughout the perimeter circulation as well as a few patio pads. Evidence of previous repairs was observed. In order to prevent further deterioration and to mitigate potential pedestrian trip hazards, these should be repaired immediately. | | | |
| A damaged railroad tie retaining wall was observed to have collapsed and exhibited structural failure. The retaining wall is located to the east of Building 3601-3617. Damage includes general wood rot and deterioration of railroad ties as well as structural failure. | $3,000.00 | $3,750.00 | Within twelve (12) months of Closing |
| Unit patio fencing is in generally good condition, but there are sections that are damaged (i.e., missing or broken wood fence slats) or are leaning and need to be repaired or replaced. | $750.00 | $937.50 | Within twelve (12) months of Closing |
| Localized areas of damaged wood fascia exhibiting minor wood rot and general deterioration was observed along the frontage of several carport structures, isolated areas along the carport sidewalls, and several areas of impact damage to the roofs. | $2,500.00 | $3,125.00 | Within twelve (12) months of Closing |
| A section of sheetrock had been removed in the basement of unit 1557. Per management, there is a leak in the window that they are in the process of addressing | $250.00 | $312.50 | Within twelve (12) months of Closing |
| Repair Wood Siding on units 1539 and 1584 | $1,000.00 | $1,250.00 | Within twelve (12) months of Closing |
| Repair areas of erosion near unit 3616 | $750.00 | $937.50 | Within twelve (12) months of Closing |
| Remove Debris from units 1507 | $500.00 | $625.00 | Within three (3) months of Closing |
| Tubs and resurface of tiles | $67,000.00 | $67,000.00 | Within twelve (12) months of Closing |


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

| | | | |
|---|---|---|---|
| Bathrooms Vanity | $26,800.00 | $26,800.00 | Within twelve (12) months of Closing |
| Painting | $100,500.00 | $100,500.00 | Within twelve (12) months of Closing |
| Lighting/Fixtures | $26,800.00 | $26,800.00 | Within twelve (12) months of Closing |
| Kitchen Cabinet Doors | $46,900.00 | $46,900.00 | Within twelve (12) months of Closing |
| Roof Related | $75,000.00 | $75,000.00 | Within twelve (12) months of Closing |
| HVAC Related Repairs | $30,500.00 | $30,500.00 | Within twelve (12) months of Closing |
| Plumbing Related Repairs | $20,000.00 | $20,000.00 | Within twelve (12) months of Closing |
| Signage | $7,500.00 | $7,500.00 | Within twelve (12) months of Closing |
| Retaining Walls | $15,000.00 | $15,000.00 | Within twelve (12) months of Closing |
| Wood Siding and Patio Repairs | $10,000.00 | $10,000.00 | Within twelve (12) months of Closing |
| Exterior Lighting | $25,000.00 | $25,000.00 | Within twelve (12) months of Closing |
| Totals: | | $541,412.50 | |
| | | **Repairs Escrow Deposit** | |


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# SCHEDULE 7
# TO MULTIFAMILY LOAN AND SECURITY AGREEMENT

## Exceptions to Representations and Warranties Schedule

The following is an exception to the representations set forth in Section 6.01(a)(1) of the Loan Agreement:

According to the Property Condition Assessment prepared by Nova Group, GBC on July 29, 2024, the Mortgaged Property does not comply with Title III of the Americans with Disabilities Act (ADA). The identified areas of noncompliance are as follows:

- **Install one van-accessible parking space at leasing office, including vertical signage, access aisle and curb cut..**
- **Install a ramp to leasing office entrance.**

These items are included in the Required Repairs and must be completed by Borrower within six (6) months of the Effective Date. The sum of $4,062.50 (125% of the total estimated cost of $750.00, for the van accessible parking space, and $2,500.00 for a ramp to the leasing office entrance) of the Repairs Escrow Deposit have been allocated to remedy the non-compliant conditions, as described above.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# SCHEDULE 8
# TO MULTIFAMILY LOAN AND SECURITY AGREEMENT

## Ownership Interests Schedule




* There are no remaining members with 25% or more direct or indirect interest in Borrower and no foreign members with 10% or more direct or indirect interest in Borrower. Any foreign member will own their interest through a domestic entity.


© 2022 Fannie Mae

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

| Name and Address of Member | Membership/ Unit Class | Number of Units | Capital Contribution |
|---|---|---|---|
| Joseph Mermelstein | A | 59.70 | $2,000,000 |
| Julia Bobrow 2020 Descendants Trust | A | 14.93 | $500,000 |
| Rina Bobrow | A | 2.99 | $100,000 |
| Lee Braverman | A | 2.99 | $100,000 |
| Michael Jacobsen | A | 1.49 | $50,000 |
| Joshua Bobrow | A | 1.49 | $50,000 |
| Ari Brecher | A | 4.48 | $150,000 |
| Aron Potash | A | 2.99 | $100,000 |
| Ephraim Pilchick | A | 5.97 | $200,000 |
| NB Gottlieb Family Trust | A | 1.49 | $50,000 |
| DM Gottlieb Family Trust | A | 1.49 | $50,000 |
| **CLASS A TOTALS** | | **100** | **$3,350,000** |

**[Remainder of Page Intentionally Blank]**


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

## EXHIBIT A

## MODIFICATIONS TO MULTIFAMILY LOAN AND SECURITY AGREEMENT
## (Legal Non-Conforming Status)

The foregoing Loan Agreement is hereby modified as follows:

1. Capitalized terms used and not specifically defined herein have the meanings given to such terms in the Loan Agreement.

2. Section 3.02(a) (Personal Liability Based on Lender's Loss) of the Loan Agreement is hereby amended by adding the following subsection to the end thereof:

(9) any casualty or Condemnation Action affecting the Mortgaged Property if:

(A) the Mortgaged Property is a legal non-conforming use or has legally non-conforming status under any applicable law, ordinance, rule, or regulation, including any building, zoning, or land use laws; and

(B) the affected Improvements cannot be rebuilt to their pre-casualty or pre-condemnation condition under any applicable law, ordinance, rule, or regulation, including any building, zoning, or land use laws.

**[Remainder of Page Intentionally Blank]**


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT C

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**2024091100151**

**CERTIFIED-FILED FOR RECORD**
**9/11/2024 7:09:05AM**

**Gerald Smith**
**Recorder of Deeds**
**COUNTY OF ST. LOUIS. MISSOURI**

**PAGES: 25**
**RECORDING FEE: $93.00**

**THIS DOCUMENT WAS ERECORDED**

**Gerald Smith, Recorder of Deeds**
**ST. LOUIS COUNTY MISSOURI**
**41 S Central Ave, Clayton, MO 63105**

**Type of Instrument:** DEED OF TRUST

**Grantor:** MCG KNOLLS LLC

**Grantee:** ARBOR COMMERCIAL FUNDING 1, LLC

**NOTE:** I, the undersigned Recorder of Deeds, do hereby certify that the information shown on this Certification Sheet as to the **TYPE OF INSTRUMENT, the NAMES of the GRANTOR and GRANTEE as well as the DESCRIPTION of the REAL PROPERTY affected** is furnished merely as a convenience only, and in the case of any discrepancy of such information between this Certification Sheet and the attached Document, **the ATTACHED DOCUMENT governs**. Only the DOCUMENT NUMBER, the DATE and TIME of filing for record of the recorded Document is taken from this CERTIFICATION SHEET.

## RECORDER OF DEEDS DOCUMENT CERTIFICATION

**STATE OF MISSOURI** )
SS.
**COUNTY OF ST. LOUIS** )

I, the undersigned Recorder of Deeds for said County and State, do hereby certify that the following and annexed instrument of writing, which consists of 25 pages, (this page inclusive), was filed for record in my office on the 11 day of September 2024 at 7:09 am and is truly recorded as the document number printed above.

In witness whereof I have hereunto set my hand and official seal the day, month and year aforesaid.

DWS
**Deputy Recorder**

SEAL OF THE RECORDER OF DEEDS FOR ST LOUIS COUNTY, MO

Gerald E. Smith
**Recorder of Deeds**
**St. Louis County, Missouri**

20,493,656

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

*(Space above reserved for Recorder of Deeds certification)*

**COVER SHEET**
**(MISSOURI)**

| | |
|---|---|
| ***Title of Document:*** | Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing |
| ***Date of Document:*** | September 6, 2024 |
| ***Grantor:*** | MCG Knolls LLC, a Missouri limited liability company |
| ***Grantor's Mailing Address:*** | 150 James Street, Suite 209A, Lakewood, NJ 08701 |
| ***Grantee:*** | Arbor Commercial Funding I, LLC, a New York limited liability company |
| ***Grantee's Mailing Address:*** | 500 Colvin Woods Parkway, Suite 200, Tonawanda, New York 14150 |
| ***Legal Description:*** | See Exhibit A |
| ***Reference Book and Page(s):*** | N/A |

Chicago Title
KCC240924-NP

**This cover page is attached solely for the purpose of complying with the requirements stated in Sections 59.310.2; 59.313.2 Revised Missouri Statutes.**



**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# MULTIFAMILY DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This MULTIFAMILY DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Security Instrument**") dated as of September 6, 2024, is executed by **MCG KNOLLS LLC**, limited liability company organized and existing under the laws of Missouri, as grantor ("**Borrower**"), to **LEVY CRAIG PC**, as trustee ("**Trustee**"), for the benefit of **ARBOR COMMERCIAL FUNDING I, LLC**, a limited liability company organized and existing under the laws of New York, as beneficiary, whose mailing address is 500 Colvin Woods Parkway, Suite 200, Tonawanda, New York 14150 ("**Lender**").

Borrower, in consideration of (i) the loan in the original principal amount of $9,314,000.00 (the "**Mortgage Loan**") evidenced by that certain Multifamily Note dated as of the date of this Security Instrument, executed by Borrower and made payable to the order of Lender (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Note**"), (ii) that certain Multifamily Loan and Security Agreement dated as of the date of this Security Instrument, executed by and between Borrower and Lender (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**"), and (iii) the trust created by this Security Instrument, and to secure to Lender the repayment of the Indebtedness (as defined in this Security Instrument), and all renewals, extensions and modifications thereof, and the performance of the covenants and agreements of Borrower contained in the Loan Documents (as defined in the Loan Agreement), excluding the Environmental Indemnity Agreement (as defined in this Security Instrument), irrevocably and unconditionally mortgages, grants, warrants, conveys, bargains, sells, and assigns to Trustee, in trust, for benefit of Lender, with power of sale and right of entry and possession, the Mortgaged Property (as defined in this Security Instrument), including the real property located in Saint Louis County, State of Missouri, and described in Exhibit A attached to this Security Instrument and incorporated by reference (the "**Land**"), to have and to hold such Mortgaged Property unto Trustee and Trustee's successors and assigns, forever; Borrower hereby releasing, relinquishing and waiving, to the fullest extent allowed by law, all rights and benefits, if any, under and by virtue of the homestead exemption laws of the Property Jurisdiction (as defined in this Security Instrument), if applicable.

Borrower represents and warrants that Borrower is lawfully seized of the Mortgaged Property and has the right, power and authority to mortgage, grant, warrant, convey, bargain, sell, and assign the Mortgaged Property, and that the Mortgaged Property is not encumbered by any Lien (as defined in this Security Instrument) other than Permitted Encumbrances (as defined in

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

this Security Instrument). Borrower covenants that Borrower will warrant and defend the title to the Mortgaged Property against all claims and demands other than Permitted Encumbrances.

Borrower, and by their acceptance hereof, each of Trustee and Lender covenants and agrees as follows:

**1. Defined Terms.**

Capitalized terms used and not specifically defined herein have the meanings given to such terms in the Loan Agreement. All terms used and not specifically defined herein, but which are otherwise defined by the UCC, shall have the meanings assigned to them by the UCC. The following terms, when used in this Security Instrument, shall have the following meanings:

"**Accounts**" means all money, funds, investment property, accounts, general intangibles, deposit accounts, chattel paper, documents, instruments, judgments, claims, settlements of claims, causes of action, refunds, rebates, reimbursements, reserves, deposits, subsidies, proceeds, products, Rents, and profits, now or hereafter arising, received or receivable, from or on account of the ownership, management and operation of the Mortgaged Property.

"**Condemnation Action**" means any action or proceeding, however characterized or named, relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of the Mortgaged Property, whether direct or indirect.

"**Enforcement Costs**" means all expenses and costs, including reasonable attorneys' fees and expenses, fees and out-of-pocket expenses of expert witnesses and costs of investigation, incurred by Lender as a result of any Event of Default under the Loan Agreement or in connection with efforts to collect any amount due under the Loan Documents, or to enforce the provisions of the Loan Agreement or any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy or insolvency proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding or Foreclosure Event) or judicial or non-judicial foreclosure proceeding, to the extent permitted by law.

"**Environmental Indemnity Agreement**" means that certain Environmental Indemnity Agreement dated as of the date of this Security Instrument, executed by Borrower to and for the benefit of Lender, as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time.

"**Environmental Laws**" has the meaning set forth in the Environmental Indemnity Agreement.

"**Event of Default**" has the meaning set forth in the Loan Agreement.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

"**Fixtures**" means all Goods that are so attached or affixed to the Land or the Improvements as to constitute a fixture under the laws of the Property Jurisdiction.

"**Goods**" means all goods which are used now or in the future in connection with the ownership, management, or operation of the Land or the Improvements or are located on the Land or in the Improvements, including inventory; furniture; furnishings; machinery, equipment, engines, boilers, incinerators, and installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring, and conduits used in connection with radio, television, security, fire prevention, or fire detection, or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers, and other appliances; light fixtures, awnings, storm windows, and storm doors; pictures, screens, blinds, shades, curtains, and curtain rods; mirrors, cabinets, paneling, rugs, and floor and wall coverings; fences, trees, and plants; swimming pools; exercise equipment; supplies; tools; books and records (whether in written or electronic form); websites, URLs, blogs, and social network pages; computer equipment (hardware and software); and other tangible personal property which is used now or in the future in connection with the ownership, management, or operation of the Land or the Improvements or are located on the Land or in the Improvements.

"**Imposition Deposits**" means deposits in an amount sufficient to accumulate with Lender the entire sum required to pay the Impositions when due.

"**Impositions**" means

(a) any water and sewer charges which, if not paid, may result in a lien on all or any part of the Mortgaged Property;

(b) the premiums for fire and other casualty insurance, liability insurance, rent loss insurance and such other insurance as Lender may require under the Loan Agreement;

(c) Taxes; and

(d) amounts for other charges and expenses assessed against the Mortgaged Property which Lender at any time reasonably deems necessary to protect the Mortgaged Property, to prevent the imposition of liens on the Mortgaged Property, or otherwise to protect Lender's interests, all as reasonably determined from time to time by Lender.

"**Improvements**" means the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements, facilities, and additions and other construction on the Land.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

"**Indebtedness**" means the principal of, interest on, and all other amounts due at any time under the Note, the Loan Agreement, this Security Instrument or any other Loan Document (other than the Environmental Indemnity Agreement and Guaranty), including Prepayment Premiums, late charges, interest charged at the Default Rate, and accrued interest as provided in the Loan Agreement and this Security Instrument, advances, costs and expenses to perform the obligations of Borrower or to protect the Mortgaged Property or the security of this Security Instrument, all other monetary obligations of Borrower under the Loan Documents (other than the Environmental Indemnity Agreement), including amounts due as a result of any indemnification obligations, and any Enforcement Costs.

"**Land**" means the real property described in Exhibit A.

"**Leases**" means all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property (including proprietary leases or occupancy agreements if Borrower is a cooperative housing corporation), and all modifications, extensions or renewals thereof.

"**Lien**" means any claim or charge against property for payment of a debt or an amount owed for services rendered, including any mortgage, deed of trust, deed to secure debt, security interest, tax lien, any materialman's or mechanic's lien, or any lien of a Governmental Authority, including any lien in connection with the payment of utilities, or any other encumbrance.

"**Mortgaged Property**" means all of Borrower's present and hereafter acquired right, title and interest, if any, in and to all of the following:

(a) the Land;

(b) the Improvements;

(c) the Personalty;

(d) current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefitting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated;

(e) insurance policies relating to the Mortgaged Property (and any unearned premiums) and all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Personalty, or any other part of the Mortgaged Property, whether or not Borrower obtained the insurance pursuant to Lender's requirements;

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(f) awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Personalty, or any other part of the Mortgaged Property, including any awards or settlements resulting from (1) Condemnation Actions, (2) any damage to the Mortgaged Property caused by governmental action that does not result in a Condemnation Action, or (3) the total or partial taking of the Land, the Improvements, the Personalty, or any other part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof;

(g) contracts, options and other agreements for the sale of the Land, the Improvements, the Personalty, or any other part of the Mortgaged Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations;

(h) Leases and Lease guaranties, letters of credit and any other supporting obligation for any of the Leases given in connection with any of the Leases, and all Rents;

(i) earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Mortgaged Property, and all undisbursed proceeds of the Mortgage Loan and, if Borrower is a cooperative housing corporation, maintenance charges or assessments payable by shareholders or residents;

(j) Imposition Deposits;

(k) refunds or rebates of Impositions by any municipal, state or federal authority or insurance company (other than refunds applicable to periods before the real property tax year in which this Security Instrument is dated);

(l) tenant security deposits;

(m) names under or by which any of the above Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgaged Property;

(n) Collateral Accounts and all Collateral Account Funds;

(o) products, and all cash and non-cash proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds; and

(p) all oil, gas, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and estates in, under and on the Mortgaged Property and other oil, gas, minerals and mineral interests with which any of the foregoing interests or estates are pooled or unitized.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

"**Permitted Encumbrance**" means only the easements, restrictions and other matters listed in a schedule of exceptions to coverage in the Title Policy and Taxes for the current tax year that are not yet due and payable.

"**Personalty**" means all Goods, Accounts, choses in action, chattel paper, documents, general intangibles (including Software), payment intangibles, instruments, investment property, letter of credit rights, supporting obligations, computer information, source codes, object codes, records and data, all telephone numbers or listings, claims (including claims for indemnity or breach of warranty), deposit accounts and other property or assets of any kind or nature related to the Land or the Improvements now or in the future, including operating agreements, surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements, and all other intangible property and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land.

"**Prepayment Premium**" has the meaning set forth in the Loan Agreement.

"**Property Jurisdiction**" means, as the context may apply, the State of Missouri, and the county and municipality where the Mortgaged Property is located, provided that any controversy arising under any Loan Document shall be governed by the provisions of Section 14 of this Security Instrument.

"**Rents**" means all rents (whether from residential or non-residential space), revenues and other income from the Land or the Improvements, including subsidy payments received from any sources, including payments under any "Housing Assistance Payments Contract" or other rental subsidy agreement (if any), parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Mortgaged Property, whether now due, past due, or to become due, and tenant security deposits.

"**Software**" means a computer program and any supporting information provided in connection with a transaction relating to the program. The term does not include any computer program that is included in the definition of Goods.

"**State**" or "**state**" means the State of Missouri.

"**Taxes**" means all taxes, assessments, vault rentals and other charges, if any, general, special or otherwise, including assessments for schools, public betterments and general or local improvements, which are levied, assessed or imposed by any public authority or quasi-public authority, and which, if not paid, may become a lien, on the Land or the Improvements or any taxes upon any Loan Document.

"**Title Policy**" has the meaning set forth in the Loan Agreement.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

"**UCC**" means the Uniform Commercial Code in effect in the State of Missouri, as amended from time to time.

"**UCC Collateral**" means any or all of that portion of the Mortgaged Property in which a security interest may be granted under the UCC and in which Borrower has any present or hereafter acquired right, title or interest.

**2. Security Agreement; Fixture Filing.**

(a) To secure to Lender, the repayment of the Indebtedness, and all renewals, extensions and modifications thereof, and the performance of the covenants and agreements of Borrower contained in the Loan Documents, Borrower hereby pledges, assigns, and grants to Lender a continuing security interest in the UCC Collateral. This Security Instrument constitutes a security agreement and a financing statement under the UCC. This Security Instrument also constitutes a financing statement pursuant to the terms of the UCC with respect to any part of the Mortgaged Property that is or may become a Fixture under applicable law, and will be recorded as a "fixture filing" in accordance with the UCC. Borrower hereby authorizes Lender to file financing statements, continuation statements and financing statement amendments in such form as Lender may require to perfect or continue the perfection of this security interest without the signature of Borrower. If an Event of Default has occurred and is continuing, Lender shall have the remedies of a secured party under the UCC or otherwise provided at law or in equity, in addition to all remedies provided by this Security Instrument and in any Loan Document. Lender may exercise any or all of its remedies against the UCC Collateral separately or together, and in any order, without in any way affecting the availability or validity of Lender's other remedies. For purposes of the UCC, the debtor is Borrower and the secured party is Lender. The name and address of the debtor and secured party are set forth after Borrower's signature below which are the addresses from which information on the security interest may be obtained.

(b) Borrower represents and warrants that: (1) Borrower maintains its chief executive office at the location set forth after Borrower's signature below, and Borrower will notify Lender in writing of any change in its chief executive office within five (5) days of such change; (2) Borrower is the record owner of the Mortgaged Property; (3) Borrower's state of incorporation, organization, or formation, if applicable, is as set forth on Page 1 of this Security Instrument; (4) Borrower's exact legal name is as set forth on Page 1 of this Security Instrument; (5) Borrower's organizational identification number, if applicable, is as set forth after Borrower's signature below; (6) Borrower is the owner of the UCC Collateral subject to no liens, charges or encumbrances other than the lien hereof; (7) except as expressly provided in the Loan Agreement, the UCC Collateral will not be removed from the Mortgaged Property without the consent of Lender; and (8) no financing statement covering any of the UCC Collateral or any proceeds thereof is on file in any public office except pursuant hereto.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(c) All property of every kind acquired by Borrower after the date of this Security Instrument which by the terms of this Security Instrument shall be subject to the lien and the security interest created hereby, shall immediately upon the acquisition thereof by Borrower and without further conveyance or assignment become subject to the lien and security interest created by this Security Instrument. Nevertheless, Borrower shall execute, acknowledge, deliver and record or file, as appropriate, all and every such further deeds of trust, mortgages, deeds to secure debt, security agreements, financing statements, assignments and assurances as Lender shall require for accomplishing the purposes of this Security Instrument and to comply with the rerecording requirements of the UCC.

**3. Assignment of Leases and Rents; Appointment of Receiver; Lender in Possession.**

(a) As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Leases and Rents. It is the intention of Borrower to establish present, absolute and irrevocable transfers and assignments to Lender of all Leases and Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower. Borrower and Lender intend the assignments of Leases and Rents to be effective immediately and to constitute absolute present assignments, and not assignments for additional security only. Only for purposes of giving effect to these absolute assignments of Leases and Rents, and for no other purpose, the Leases and Rents shall not be deemed to be a part of the Mortgaged Property. However, if these present, absolute and unconditional assignments of Leases and Rents are not enforceable by their terms under the laws of the Property Jurisdiction, then each of the Leases and Rents shall be included as part of the Mortgaged Property, and it is the intention of Borrower, in such circumstance, that this Security Instrument create and perfect a lien on each of the Leases and Rents in favor of Lender, which liens shall be effective as of the date of this Security Instrument.

(b) Until an Event of Default has occurred and is continuing, but subject to the limitations set forth in the Loan Documents, Borrower shall have a revocable license to exercise all rights, power and authority granted to Borrower under the Leases (including the right, power and authority to modify the terms of any Lease, extend or terminate any Lease, or enter into new Leases, subject to the limitations set forth in the Loan Documents), and to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender, and to apply all Rents to pay the Monthly Debt Service Payments and the other amounts then due and payable under the other Loan Documents, including Imposition Deposits, and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities and Impositions (to the extent not included in Imposition Deposits), tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing (and no event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default has occurred and is continuing), the Rents remaining after application pursuant to the preceding sentence may be

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

retained and distributed by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Security Instrument.

(c) If an Event of Default has occurred and is continuing, without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction, the revocable license granted to Borrower pursuant to Section 3(b) shall automatically terminate, and Lender shall immediately have all rights, powers and authority granted to Borrower under any Lease (including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease) and, without notice, Lender shall be entitled to all Rents as they become due and payable, including Rents then due and unpaid. During the continuance of an Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender, and Borrower shall, upon Borrower's receipt of any Rents from any sources, pay the total amount of such receipts to Lender. Although the foregoing rights of Lender are self-effecting, at any time during the continuance of an Event of Default, Lender may make demand for all Rents, and Lender may give, and Borrower hereby irrevocably authorizes Lender to give, notice to all tenants of the Mortgaged Property instructing them to pay all Rents to Lender. No tenant shall be obligated to inquire further as to the occurrence or continuance of an Event of Default, and no tenant shall be obligated to pay to Borrower any amounts that are actually paid to Lender in response to such a notice. Any such notice by Lender shall be delivered to each tenant personally, by mail or by delivering such demand to each rental unit.

(d) If an Event of Default has occurred and is continuing, Lender may, regardless of the adequacy of Lender's security or the solvency of Borrower, and even in the absence of waste, enter upon, take and maintain full control of the Mortgaged Property, and may exclude Borrower and its agents and employees therefrom, in order to perform all acts that Lender, in its discretion, determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents (including through use of a lockbox, at Lender's election), the making of repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing this assignment of Rents, protecting the Mortgaged Property or the security of this Security Instrument and the Mortgage Loan, or for such other purposes as Lender in its discretion may deem necessary or desirable.

(e) Notwithstanding any other right provided Lender under this Security Instrument or any other Loan Document, if an Event of Default has occurred and is continuing, and regardless of the adequacy of Lender's security or Borrower's solvency, and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

in Section 3. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte*, if permitted by applicable law. Borrower consents to shortened time consideration of a motion to appoint a receiver. Lender or the receiver, as applicable, shall be entitled to receive a reasonable fee for managing the Mortgaged Property and such fee shall become an additional part of the Indebtedness. Immediately upon appointment of a receiver or Lender's entry upon and taking possession and control of the Mortgaged Property, possession of the Mortgaged Property and all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property, and all security deposits and prepaid Rents, shall be surrendered to Lender or the receiver, as applicable. If Lender or receiver takes possession and control of the Mortgaged Property, Lender or receiver may exclude Borrower and its representatives from the Mortgaged Property.

(f) The acceptance by Lender of the assignments of the Leases and Rents pursuant to this Section 3 shall not at any time or in any event obligate Lender to take any action under any Loan Document or to expend any money or to incur any expense. Lender shall not be liable in any way for any injury or damage to person or property sustained by any Person in, on or about the Mortgaged Property. Prior to Lender's actual entry upon and taking possession and control of the Land and Improvements, Lender shall not be:

(1) obligated to perform any of the terms, covenants and conditions contained in any Lease (or otherwise have any obligation with respect to any Lease);

(2) obligated to appear in or defend any action or proceeding relating to any Lease or the Mortgaged Property; or

(3) responsible for the operation, control, care, management or repair of the Mortgaged Property or any portion of the Mortgaged Property.

The execution of this Security Instrument shall constitute conclusive evidence that all responsibility for the operation, control, care, management and repair of the Mortgaged Property is and shall be that of Borrower, prior to such actual entry and taking possession and control by Lender of the Land and Improvements.

(g) Lender shall be liable to account only to Borrower and only for Rents actually received by Lender. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Mortgaged Property by reason of any act or omission of Lender under this Section 3, and Borrower hereby releases and discharges Lender from any such liability to the fullest extent permitted by law, provided that Lender shall not be released from liability that occurs as a result of Lender's gross negligence or willful misconduct as determined by a court of competent jurisdiction pursuant to a final, non-appealable court order. If the Rents are not

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

sufficient to meet the costs of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall be added to, and become a part of, the principal balance of the Indebtedness, be immediately due and payable, and bear interest at the Default Rate from the date of disbursement until fully paid. Any entering upon and taking control of the Mortgaged Property by Lender or the receiver, and any application of Rents as provided in this Security Instrument, shall not cure or waive any Event of Default or invalidate any other right or remedy of Lender under applicable law or provided for in this Security Instrument or any Loan Document.

**4. Protection of Lender's Security.**

If Borrower fails to perform any of its obligations under this Security Instrument or any other Loan Document, or any action or proceeding is commenced that purports to affect the Mortgaged Property, Lender's security, rights or interests under this Security Instrument or any Loan Document (including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Environmental Laws, fraudulent conveyance or reorganizations or proceedings involving a debtor or decedent), Lender may, at its option, make such appearances, disburse or pay such sums and take such actions, whether before or after an Event of Default or whether directly or to any receiver for the Mortgaged Property, as Lender reasonably deems necessary to perform such obligations of Borrower and to protect the Mortgaged Property or Lender's security, rights or interests in the Mortgaged Property or the Mortgage Loan, including:

(a) paying fees and out-of-pocket expenses of attorneys, accountants, inspectors and consultants;

(b) entering upon the Mortgaged Property to make repairs or secure the Mortgaged Property;

(c) obtaining (or force-placing) the insurance required by the Loan Documents; and

(d) paying any amounts required under any of the Loan Documents that Borrower has failed to pay.

Any amounts so disbursed or paid by Lender shall be added to, and become part of, the principal balance of the Indebtedness, be immediately due and payable and bear interest at the Default Rate from the date of disbursement until fully paid. The provisions of this Section 4 shall not be deemed to obligate or require Lender to incur any expense or take any action.

**5. Default; Acceleration; Remedies.**

(a) If an Event of Default has occurred and is continuing, Lender, at its option, may declare the Indebtedness to be immediately due and payable without further demand, and may

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

either with or without entry or taking possession as herein provided or otherwise, proceed by suit or suits at law or in equity or any other appropriate proceeding or remedy (1) to enforce payment of the Mortgage Loan; (2) to foreclose this Security Instrument judicially or non-judicially by the power of sale granted herein; (3) to enforce or exercise any right under any Loan Document; and (4) to pursue any one (1) or more other remedies provided in this Security Instrument or in any other Loan Document or otherwise afforded by applicable law. Each right and remedy provided in this Security Instrument or any other Loan Document is distinct from all other rights or remedies under this Security Instrument or any other Loan Document or otherwise afforded by applicable law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order. Borrower has the right to bring an action to assert the nonexistence of an Event of Default or any other defense of Borrower to acceleration and sale.

(b) Borrower acknowledges that the power of sale granted in this Security Instrument may be exercised or directed by Lender without prior judicial hearing. In the event Lender invokes the power of sale:

(1) Lender shall send to Borrower and any other Persons required to receive such notice, written notice of Lender's election to cause the Mortgaged Property to be sold. Borrower hereby authorizes and empowers Trustee to take possession of the Mortgaged Property, or any part thereof, and hereby grants to Trustee a power of sale and authorizes and empowers Trustee to sell (or, in the case of the default of any purchaser, to resell) the Mortgaged Property or any part thereof, in compliance with applicable law, including compliance with any and all notice and timing requirements for such sale;

(2) Trustee shall have the authority to determine the terms of the sale, subject to applicable law. In connection with any such sale, the whole of the Mortgaged Property may be sold in one (1) parcel as an entirety or in separate lots or parcels at the same or different times. Lender shall have the right to become the purchaser at any such sale. Trustee shall be entitled to receive fees and expenses from such sale not to exceed the amount permitted by applicable law;

(3) within a reasonable time after the sale, Trustee shall deliver to the purchaser of the Mortgaged Property a deed or such other appropriate conveyance document conveying the Mortgaged Property so sold without any express or implied covenant or warranty. The recitals in such deed or document shall be prima facie evidence of the truth of the statements made in those recitals; and

(4) the outstanding principal amount of the Mortgage Loan and the other Indebtedness, if not previously due, shall be and become immediately due and payable without demand or notice of any kind. If the Mortgaged Property is sold for an amount less than the amount outstanding under the Indebtedness, the deficiency shall be


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

determined by the purchase price at the sale or sales. Borrower waives all rights, claims, and defenses with respect to Lender's ability to obtain a deficiency judgment.

(c) Borrower acknowledges and agrees that the proceeds of any sale shall be applied as determined by Lender unless otherwise required by applicable law.

(d) The Trustee hereby lets the Mortgaged Property to Borrower until a sale is held under the foregoing provisions therefor, or until an Event of Default has occurred and is continuing, upon the following terms and conditions: Borrower, and every and all persons claiming or possessing such premises, and any part thereof, by, through or under Borrower, shall pay rent therefor during said term, payable upon demand, and shall and will surrender peaceable possession of the Mortgaged Property, and any and every part thereof, sold under the provisions of this Security Instrument, to the purchaser thereof under such sale, without notice or demand therefor, and shall and will at once, without notice, surrender up possession of the Mortgaged Property and every part thereof in the event Lender shall take charge and enter as hereinbefore provided.

(e) In connection with the exercise of Lender's rights and remedies under this Security Instrument and any other Loan Document, there shall be allowed and included as Indebtedness: (1) all expenditures and expenses authorized by applicable law and all other expenditures and expenses which may be paid or incurred by or on behalf of Lender for reasonable legal fees, appraisal fees, outlays for documentary and expert evidence, stenographic charges and publication costs; (2) all expenses of any environmental site assessments, environmental audits, environmental remediation costs, appraisals, surveys, engineering studies, wetlands delineations, flood plain studies, and any other similar testing or investigation deemed necessary or advisable by Lender incurred in preparation for, contemplation of or in connection with the exercise of Lender's rights and remedies under the Loan Documents; and (3) costs (which may be reasonably estimated as to items to be expended in connection with the exercise of Lender's rights and remedies under the Loan Documents) of procuring all abstracts of title, title searches and examinations, title insurance policies, and similar data and assurance with respect to title as Lender may deem reasonably necessary either to prosecute any suit or to evidence the true conditions of the title to or the value of the Mortgaged Property to bidders at any sale which may be held in connection with the exercise of Lender's rights and remedies under the Loan Documents. All expenditures and expenses of the nature mentioned in this Section 5, and such other expenses and fees as may be incurred in the protection of the Mortgaged Property and rents and income therefrom and the maintenance of the lien of this Security Instrument, including the fees of any attorney employed by Lender in any litigation or proceedings affecting this Security Instrument, the Note, the other Loan Documents, or the Mortgaged Property, including bankruptcy proceedings, any Foreclosure Event, or in preparation of the commencement or defense of any proceedings or threatened suit or proceeding, or otherwise in dealing specifically therewith, shall be so much additional Indebtedness and shall be immediately due and payable by Borrower, with interest thereon at the Default Rate until paid.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(f) Any action taken by Trustee or Lender pursuant to the provisions of this Section 5 shall comply with the laws of the Property Jurisdiction. Such applicable laws shall take precedence over the provisions of this Section 5, but shall not invalidate or render unenforceable any other provision of any Loan Document that can be construed in a manner consistent with any such applicable laws. If any provision of this Security Instrument shall grant to Lender (including Lender acting as a mortgagee-in-possession), Trustee or a receiver appointed pursuant to the provisions of this Security Instrument any powers, rights or remedies prior to, upon, during the continuance of or following an Event of Default that are more limited than the powers, rights, or remedies that would otherwise be vested in such party under any applicable law in the absence of said provision, such party shall be vested with the powers, rights, and remedies granted in such applicable law to the full extent permitted by law.

**6. Waiver of Statute of Limitations and Marshaling.**

Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Security Instrument or to any action brought to enforce any Loan Document. Notwithstanding the existence of any other security interests in the Mortgaged Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Mortgaged Property shall be subjected to the remedies provided in this Security Instrument and/or any other Loan Document or by applicable law. Lender shall have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Borrower, for itself and all who may claim by, through, or under it, and any party who now or in the future acquires a security interest in the Mortgaged Property and who has actual or constructive notice of this Security Instrument waives any and all right to require the marshaling of assets or to require that any of the Mortgaged Property be sold in the inverse order of alienation or that any of the Mortgaged Property be sold in parcels (at the same time or different times) in connection with the exercise of any of the remedies provided in this Security Instrument or any other Loan Document, or afforded by applicable law.

**7. Waiver of Redemption; Rights of Tenants.**

(a) Borrower hereby covenants and agrees that it will not at any time apply for, insist upon, plead, avail itself, or in any manner claim or take any advantage of, any appraisement, stay, exemption or extension law or any so-called "Moratorium Law" now or at any time hereafter enacted or in force in order to prevent or hinder the enforcement or foreclosure of this Security Instrument. Without limiting the foregoing:

(1) Borrower for itself and all Persons who may claim by, through, or under Borrower, hereby expressly waives any so-called "Moratorium Law" and any and all rights of reinstatement and redemption, if any, under any order or decree of foreclosure of this Security Instrument, it being the intent hereof that any and all such "Moratorium Laws," and all rights of reinstatement and redemption of Borrower and of all other Persons

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

claiming by, through, or under Borrower are and shall be deemed to be hereby waived to the fullest extent permitted by applicable law;

(2) Borrower shall not invoke or utilize any such law or laws or otherwise hinder, delay or impede the execution of any right, power or remedy herein or otherwise granted or delegated to Lender but will suffer and permit the execution of every such right, power and remedy as though no such law or laws had been made or enacted; and

(3) if Borrower is a trust, Borrower represents that the provisions of this Section 7 (including the waiver of reinstatement and redemption rights) were made at the express direction of Borrower's beneficiaries and the persons having the power of direction over Borrower, and are made on behalf of the trust estate of Borrower and all beneficiaries of Borrower, as well as all other persons mentioned above.

(b) Lender shall have the right to foreclose subject to the rights of any tenant or tenants of the Mortgaged Property having an interest in the Mortgaged Property prior to that of Lender. The failure to join any such tenant or tenants of the Mortgaged Property as party defendant or defendants in any such civil action or the failure of any decree of foreclosure and sale to foreclose their rights shall not be asserted by Borrower as a defense in any civil action instituted to collect the Indebtedness, or any part thereof or any deficiency remaining unpaid after foreclosure and sale of the Mortgaged Property, any statute or rule of law at any time existing to the contrary notwithstanding.

**8. Notice.**

(a) All notices under this Security Instrument shall be:

(1) in writing, and shall be (A) delivered, in person, (B) mailed, postage prepaid, either by registered or certified delivery, return receipt requested, or (C) sent by overnight express courier;

(2) addressed to the intended recipient at its respective address set forth at the end of this Security Instrument; and

(3) deemed given on the earlier to occur of:

(A) the date when the notice is received by the addressee; or

(B) if the recipient refuses or rejects delivery, the date on which the notice is so refused or rejected, as conclusively established by the records of the United States Postal Service or such express courier service.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(b) Any party to this Security Instrument may change the address to which notices intended for it are to be directed by means of notice given to the other party in accordance with this Section 8.

(c) Any required notice under this Security Instrument which does not specify how notices are to be given shall be given in accordance with this Section 8.

**9. Mortgagee-in-Possession.**

Borrower acknowledges and agrees that the exercise by Lender of any of the rights conferred in this Security Instrument shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and Improvements.

**10. Release.**

Upon payment in full of the Indebtedness, Lender shall cause the release of this Security Instrument and Borrower shall pay Lender's costs incurred in connection with such release.

**11. Further Assurances for Trustee.**

Borrower shall execute, acknowledge, and deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements, transfers and assurances as Trustee may require from time to time in order to better assure, grant, and convey to Trustee the rights intended to be granted, now or in the future, to Trustee under this Security Instrument.

**12. Successor Trustee.**

Lender, at Lender's option, with or without cause, may from time to time remove Trustee and appoint a successor trustee by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Mortgaged Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee in this Security Instrument and by applicable law.

For purposes of this Security Instrument the term "Trustee" means the person identified as Trustee in the first paragraph of this Security Instrument and any successor trustee appointed by Lender pursuant to this Section 12 or otherwise appointed as permitted by law.

**13. Missouri State Specific Provisions.**

**(a) Oral Agreements are Unenforceable.**


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**The following notice is given to comply with Sections 432.045 and 432.047 of the Revised Statutes of Missouri: Oral or unexecuted agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt, including promises to extend or renew such debt, are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

**As used in this Section 13(a), "this writing" is deemed to include this Security Instrument and all other Loan Documents.**

**(b) Collateral Insurance Protection.**

The following notice is provided pursuant to Section 427.120 of the Revised Statutes of Missouri. As used herein, the terms "you" and "your" shall refer to Borrower; and the terms "we" and "us" shall refer to the Trustee and Lender. Unless you provide evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Indebtedness. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**(c) Loan Proceeds.**

The proceeds of the loan secured by this Security Instrument will be used for the purposes specified in Section 408.035 of the Revised Statutes of Missouri and the obligations secured hereby constitute both a business loan and a real estate loan which comes within the purview of Section 408.035 of the Revised Statutes of Missouri.

**(d) Future Advances.**

This Security Instrument is governed by the provisions of Section 443.055 of the Revised Statutes of Missouri with respect to future advances and future obligations, up to the maximum aggregate original principal amount of two hundred percent (200%) of the original principal amount of the Note excluding any interest and any amounts advanced by Lender for the protection of the lien and security interest herein granted.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

In the event any person legally entitled thereto shall at any time deliver or cause to be delivered to Lender a notice pursuant to subsections 6 or 8 of Section 443.055 of the Revised Statutes of Missouri electing to terminate the operation of this Security Instrument as security for future advances or future obligations made or incurred after the date of such notice, then upon receipt of such notice Lender shall have no further obligation under the Loan Agreement, this Security Instrument or otherwise to advance monies to or for the account of Borrower, notwithstanding anything in the Loan Agreement or this Security Instrument to the contrary. Moreover, any request by Borrower for an advance under the Loan Agreement shall constitute a certification that no such notice of termination has been given.

**(e) Lease of Mortgaged Property by Trustee.**

Until this Security Instrument is satisfied and released or until an Event of Default occurs and is continuing, Trustee hereby lets the Mortgaged Property to Borrower upon the following terms and provisions, to-wit: Borrower, its successors and assigns, shall pay rent therefor during said terms at the rate of one cent ($0.01) per month, payable monthly upon demand, and shall and will peaceably surrender possession of the Mortgaged Property, and every part thereof, to Trustee immediately upon an Event of Default, and without notice or demand therefor, and thereupon Trustee or Lender shall be entitled to the rents, revenues, income and profits derived therefrom as provided herein and shall have the right to sell the Mortgaged Property or any part thereof as herein provided.

**14. Governing Law; Consent to Jurisdiction and Venue.**

(a) The validity, enforceability, interpretation, and performance of this Security Instrument shall be governed by State law without giving effect to any conflict of law or choice of law rules that would result in the application of the laws of another jurisdiction.

(b) In the administration or litigation of a controversy arising under or in relation to this Security Instrument or the security for the Indebtedness, Borrower consents to the exercise of personal jurisdiction by State court or federal court in such State. Borrower agrees that the State courts have subject matter jurisdiction over such controversies. If Lender elects to sue in State court, Borrower waives any right to remove to federal court or to contest the State court's jurisdiction. Borrower waives any objection to venue in any State court or federal court in such State, and covenants and agrees not to assert any objection to venue, whether based on inconvenience, domicile, habitual residence, or other ground.

**15. Miscellaneous Provisions.**

(a) This Security Instrument shall bind, and the rights granted by this Security Instrument shall benefit, the successors and assigns of Lender. This Security Instrument shall bind, and the obligations granted by this Security Instrument shall inure to, any permitted successors

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

and assigns of Borrower under the Loan Agreement. If more than one (1) person or entity signs this Security Instrument as Borrower, the obligations of such persons and entities shall be joint and several. The relationship between Lender and Borrower shall be solely that of creditor and debtor, respectively, and nothing contained in this Security Instrument shall create any other relationship between Lender and Borrower. No creditor of any party to this Security Instrument and no other person shall be a third party beneficiary of this Security Instrument or any other Loan Document.

(b) The invalidity or unenforceability of any provision of this Security Instrument or any other Loan Document shall not affect the validity or enforceability of any other provision of this Security Instrument or of any other Loan Document, all of which shall remain in full force and effect. This Security Instrument contains the complete and entire agreement among the parties as to the matters covered, rights granted and the obligations assumed in this Security Instrument. This Security Instrument may not be amended or modified except by written agreement signed by the parties hereto.

(c) The following rules of construction shall apply to this Security Instrument:

(1) The captions and headings of the sections of this Security Instrument are for convenience only and shall be disregarded in construing this Security Instrument.

(2) Any reference in this Security Instrument to an "Exhibit" or "Schedule" or a "Section" or an "Article" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an exhibit or schedule attached to this Security Instrument or to a Section or Article of this Security Instrument.

(3) Any reference in this Security Instrument to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time.

(4) Use of the singular in this Security Instrument includes the plural and use of the plural includes the singular.

(5) As used in this Security Instrument, the term "including" means "including, but not limited to" or "including, without limitation," and is for example only, and not a limitation.

(6) Whenever Borrower's knowledge is implicated in this Security Instrument or the phrase "to Borrower's knowledge" or a similar phrase is used in this Security Instrument, Borrower's knowledge or such phrase(s) shall be interpreted to mean to the best of Borrower's knowledge after reasonable and diligent inquiry and investigation.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(7) Unless otherwise provided in this Security Instrument, if Lender's approval, designation, determination, selection, estimate, action or decision is required, permitted or contemplated hereunder, such approval, designation, determination, selection, estimate, action or decision shall be made in Lender's sole and absolute discretion.

(8) All references in this Security Instrument to a separate instrument or agreement shall include such instrument or agreement as the same may be amended or supplemented from time to time pursuant to the applicable provisions thereof.

(9) "Lender may" shall mean at Lender's discretion, but shall not be an obligation.

**16. Time is of the Essence.**

Borrower agrees that, with respect to each and every obligation and covenant contained in this Security Instrument and the other Loan Documents, time is of the essence.

**17. WAIVER OF TRIAL BY JURY.**

**TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER AND LENDER (BY ITS ACCEPTANCE HEREOF) (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS SECURITY INSTRUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH OF BORROWER AND LENDER, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

**ATTACHED EXHIBITS.** The following Exhibits are attached to this Security Instrument and incorporated fully herein by reference:

| | | |
|---|---|---|
| \|X\| | Exhibit A | Description of the Land (required) |
| \|_\| | Exhibit B | Modifications to Security Instrument |

**[Remainder of Page Intentionally Blank]**


© 2022 Fannie Mae

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**IN WITNESS WHEREOF**, Borrower has signed and delivered this Security Instrument under seal (where applicable) or has caused this Security Instrument to be signed and delivered by its duly authorized representative under seal (where applicable). Where the applicable laws of the Property Jurisdiction so provide, Borrower intends that this Security Instrument shall be deemed to be signed and delivered as a sealed instrument.

**BORROWER:**

**MCG KNOLLS LLC**, a Missouri limited liability company

By: ______________________________(SEAL)
Name: Moshe Mermelstein
Title: Manager

The name, chief executive office and organizational identification number of Borrower (as Debtor under any applicable Uniform Commercial Code) are:
Debtor Name/Record Owner: **MCG KNOLLS LLC**, a Missouri limited liability company

Debtor Chief Executive Office Address:
150 James Street, Ste 209A
Lakewood, NJ 08701

Debtor Organizational ID Number: LC014563781

The name and chief executive office of Lender (as Secured Party) are:
Secured Party Name: **ARBOR COMMERCIAL FUNDING I, LLC**, a New York limited liability company

Secured Party Chief Executive Office Address:
500 Colvin Woods Parkway, Suite 200
Tonawanda, New York 14150

**TRUSTEE:**

Levy Craig PC
4520 Main Street, Suite 1600
Kansas City, MO 64111
Attn: Scott Seitter, Esq.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

STATE OF NEW JERSEY )
) ss.:
COUNTY OF Ocean )

On the 31 day of July, 2024, before me, the undersigned, personally appeared **MOSHE MERMELSTEIN**, to me known to be the individual who executed the foregoing instrument and, who, being duly sworn to me did depose and say that he/she/they is the Manager of **MCG KNOLLS LLC**, a Missouri limited liability company, that he/she/they had the authority to execute same, and he/she/they acknowledged that he/she/they executed same as the act and deed of said limited partnership.

Notary Public

**Chaim B. Newhouse**
**Commission #50221057**
**Expires April 18, 2029**
**State of NJ**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT A

## DESCRIPTION OF THE LAND

Lot 24 of THE KNOLLS, a subdivision in the City of Ferguson, St. Louis County, Missouri, according to the plat thereof recorded in Plat Book 134 Pages 42 and 43 of the St. Louis County Records.


© 2022 Fannie Mae

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT D

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**2024091100152**

**CERTIFIED-FILED FOR RECORD**
**9/11/2024 7:09:06AM**

**Gerald Smith**
**Recorder of Deeds**
**COUNTY OF ST. LOUIS. MISSOURI**

**PAGES: 5**
**RECORDING FEE: $33.00**

**THIS DOCUMENT WAS ERECORDED**

**Gerald Smith, Recorder of Deeds**
**ST. LOUIS COUNTY MISSOURI**
**41 S Central Ave, Clayton, MO 63105**

**Type of Instrument:** ASSIGNMENT

**Grantor:** ARBOR COMMERCIAL FUNDING 1. LLC

**Grantee:** FANNIE MAE

**NOTE:** I, the undersigned Recorder of Deeds, do hereby certify that the information shown on this Certification Sheet as to the **TYPE OF INSTRUMENT, the NAMES of the GRANTOR and GRANTEE as well as the DESCRIPTION of the REAL PROPERTY affected** is furnished merely as a convenience only, and in the case of any discrepancy of such information between this Certification Sheet and the attached Document, **the ATTACHED DOCUMENT governs**. Only the DOCUMENT NUMBER, the DATE and TIME of filing for record of the recorded Document is taken from this CERTIFICATION SHEET.

## RECORDER OF DEEDS DOCUMENT CERTIFICATION

**STATE OF MISSOURI** )
SS.
**COUNTY OF ST. LOUIS** )

I, the undersigned Recorder of Deeds for said County and State, do hereby certify that the following and annexed instrument of writing, which consists of __5__ pages, (this page inclusive), was filed for record in my office on the __11__ day of __September__ __2024__ at __7:09 am__ and is truly recorded as the document number printed above.

In witness whereof I have hereunto set my hand and official seal the day, month and year aforesaid.

SEAL OF THE RECORDER OF DEEDS FOR ST LOUIS COUNTY, MO

**DWS**
**Deputy Recorder**

Gerald E. Smith
**Recorder of Deeds**
**St. Louis County, Missouri**

20,493,657

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

*(Space above reserved for Recorder of Deeds certification)*

**COVER SHEET**
**(MISSOURI)**

| | |
|---|---|
| ***Title of Document:*** | ASSIGNMENT OF MULTIFAMILY SECURITY INSTRUMENT, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING |
| ***Date of Document:*** | September 6, 2024 |
| ***Grantor:*** | ARBOR COMMERCIAL FUNDING I, LLC, a New York limited liability company |
| ***Grantor's Mailing Address:*** | 500 Colvin Woods Parkway, Suite 200, Tonawanda, New York 14150 |
| ***Grantee:*** | FANNIE MAE |
| ***Grantee's Mailing Address:*** | c/o Arbor Commercial Funding I, LLC, 500 Colvin Woods Parkway, Suite 200, Tonawanda, New York 14150 |
| ***Legal Description:*** | See Exhibit A |
| ***Reference Book and Page(s):*** | Mortgage recorded concurrently herewith |

**This cover page is attached solely for the purpose of complying with the requirements stated in Sections 59.310.2; 59.313.2 Revised Missouri Statutes.**

Chicago Title
KCC240924-NP

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**PREPARED BY, AND AFTER RECORDING, RETURN TO:**

Michelle E. Caulfield, Esq.
Cullen and Dykman LLP
333 Earle Ovington Blvd., 2nd Floor
Uniondale, NY 11553

## ASSIGNMENT OF MULTIFAMILY SECURITY INSTRUMENT, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

WITNESSETH THAT as of September 6, 2024**, ARBOR COMMERCIAL FUNDING I, LLC**, a New York limited liability company, whose address is 500 Colvin Woods Parkway, Suite 200, Tonawanda, New York 14150 ("**Arbor**"), as holder of the instrument hereinafter described for valuable consideration hereby endorses, assigns and delivers to **FANNIE MAE**, a corporation organized and existing under the laws of the United States, whose address is c/o Arbor Commercial Funding I, LLC, 500 Colvin Woods Parkway, Suite 200, Tonawanda, New York 14150, its successors, participants and assigns, all right, title and interest of Arbor in and to the following:

> A Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing by **MCG KNOLLS LLC**, a Missouri limited liability company, as Trustor, (the "Borrower"), Levy Craig PCas Trustee (the "Trustee"), and Arbor, as Beneficiary, dated September 6, 2024 and recorded concurrently herewith securing payment of a Multifamily Note, dated September 6, 2024, in the original principal amount of $9,314,000.00 made by the Borrower, payable to the order of Arbor, and creating a first lien on the property described in Exhibit A attached hereto and by this reference made a part hereof.

This Assignment shall be governed in all respects by the laws of the state in which the aforementioned instrument was recorded and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

[SIGNATURE PAGE FOLLOWS]

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

IN WITNESS WHEREOF, this Assignment has been duly executed as of the day and year first above written.

**ARBOR COMMERCIAL FUNDING I, LLC**, a New York limited liability company

By:______________________________
Name: Kenneth Dowling
Title: Senior Vice President, Capital Markets

STATE OF NEW YORK )
) ss.
COUNTY OF NASSAU )

On this 15th day of August, 2024, before me, the undersigned, personally appeared **KENNETH DOWLING**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

______________________________
Notary Public
My commission expires: 6/28/25

Devon Noelle Breitwieser
Type or Print Notary Name

DEVON NOELLE BREITWIESER
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01BR6419031
Qualified in NASSAU County
Commission Expires JUNE 28, 2025

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT A

## Legal Description

Lot 24 of THE KNOLLS, a subdivision in the City of Ferguson, St. Louis County, Missouri, according to the plat thereof recorded in Plat Book 134 Pages 42 and 43 of the St. Louis County Records.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT E

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**ASSIGNMENT OF COLLATERAL AGREEMENTS AND OTHER LOAN DOCUMENTS**

Pursuant to that certain Multifamily Loan and Security Agreement dated as of September 6, 2024, executed by and between **MCG KNOLLS LLC**, a Missouri limited liability company ("**Borrower**") and **ARBOR COMMERCIAL FUNDING I, LLC**, a New York limited liability company ("**Lender**") (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**"), Lender has agreed to make a loan to Borrower in the original principal amount of NINE MILLION THREE HUNDRED FOURTEEN THOUSAND AND 00/100 Dollars ($9,314,000.00) (the "**Mortgage Loan**"), as evidenced by that certain Multifamily Note dated as of the date hereof, executed by Borrower and made payable to Lender in the amount of the Mortgage Loan.

Lender hereby assigns to Fannie Mae, a corporation duly organized under the Federal National Mortgage Association Charter Act, as amended, 12 U.S.C. §1716 et seq., and existing under the laws of the United States ("**Fannie Mae**") all right, title and interest of Lender in the Loan Documents, including but not limited to the Loan Documents listed on Exhibit A hereto, executed in connection with the Mortgage Loan.

This Assignment is given in connection with, and in consideration of, Fannie Mae's purchase of the Mortgage Loan made by Lender to Borrower, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged.

Capitalized terms used and not specifically defined herein shall have the meanings given to such terms in the Loan Agreement.

**(Remainder of Page Intentionally Blank)**


**© 2023 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**IN WITNESS WHEREOF,** Lender has signed and delivered this Assignment under seal (where applicable) or has caused this Assignment to be signed and delivered under seal (where applicable) by its duly authorized representative as of the date hereof. Where applicable law so provides, Lender intends that this Assignment shall be deemed to be signed and delivered as a sealed instrument.

**LENDER:**

**ARBOR COMMERCIAL FUNDING I, LLC,**
a New York limited liability company

By: ______________________________(SEAL)
Name: Kenneth Dowling
Title: Senior Vice President, Capital Markets


**© 2023 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT A
# TO
# ASSIGNMENT OF COLLATERAL AGREEMENTS AND OTHER LOAN DOCUMENTS

1. Multifamily Loan and Security Agreement dated as of September 6, 2024, by and between Borrower and Lender.

2. Assignment of Management Agreement dated as of September 6, 2024, by and among Borrower, Lender and Multi-South Management Services, LLC, a Tennessee limited liability company.

3. Compliance Agreement for Mold Operations and Maintenance Plan by and between Borrower and Lender as of September 6, 2024.

4. Compliance Agreement for Lead-Based Paint Operations and Maintenance Plan by and between Borrower and Lender as of September 6, 2024.

5. Compliance Agreement for Asbestos Operations and Maintenance Plan by and between Borrower and Lender as of September 6, 2024.

6. Environmental Indemnity Agreement dated as of September 6, 2024, from Borrower to Lender.

7. Guaranty of Non-Recourse Obligations dated as of September 6, 2024, from Moshe Mermelstein and Joseph Mermelstein to Lender.

8. Any other documents executed in connection with the Mortgage Loan.


**© 2023 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT F

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

State of Missouri

Missouri Secretary of State

John R. Ashcroft

# UNIFORM COMMERCIAL CODE FILING ACKNOWLEDGEMENT

09/13/2024 10:27 AM

CHICAGO TITLE INSURANCE COMPANY
6700 COLLEGE BLVD. SUITE 300
OVERLAND PARK KS 66211

**File Number:** 20240913001113067 **Filing Date:** 09/13/2024 10:27 AM **Filing Type:** UCC1
**Lapse Date:** 9/13/2029 11:59:59 PM

**Indexed Debtor(s):**

MCG KNOLLS LLC, 150 JAMES STREET, STE 209A, Lakewood, NJ, 08701

**Secured Party(s) / Assignee(s):**

FANNIE MAE, C/O ARBOR COMMERCIAL FUNDING I, LLC, 500 COLVIN WOODS PARKWAY, SUITE 200, Tonawanda, NY, 14150

ARBOR COMMERCIAL FUNDING I, LLC, 500 COLVIN WOODS PARKWAY, SUITE 200, Tonawanda, NY, 14150

Please review the above information that was indexed in our database. We have indexed the above information exactly as it was presented on your enclosed filing. If there is an error please contact the UCC office at the number below. If you wish to make a change from your original document an amendment (UCC-3) with the appropriate fee would be required.

PO Box 1159, Jefferson City, MO 65102
(573)751-4628
https://www.sos.mo.gov/

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

ORI-09132024-1089 State of Missouri
No of Pages 8 Pages

UCC1

**File Number: 20240913001113067**
**Date Filed: 9/13/2024 10:27 AM**
**John R. Ashcroft**
**Secretary of State**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
Zarah Bleau (518) 788-9413

B. E-MAIL CONTACT AT SUBMITTER (optional)
zbleau@cullenllp.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Cullen and Dykman LLP
80 State Street
Suite 900
Albany, NY 12207

Chicago Title
KCC240924-NP

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| MCG Knolls LLC | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 150 James Street, Ste 209A | Lakewood | NJ | 08701 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FANNIE MAE | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o Arbor Commercial Funding I, LLC, 500 Colvin Woods Parkway, Suite 200 | Tonawanda | NY | 14150 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

Collateral description on Schedule A attached hereto and located on real property described on Exhibit A attached hereto.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Filed with: MO - Secretary of State - 68-ARB24-0046

F#1026074
A#1406455

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
MCG Knolls LLC

OR 9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR 10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☒ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME
ARBOR COMMERCIAL FUNDING I, LLC

| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 500 Colvin Woods Parkway, Suite 200 | Tonawanda | NY | 14150 | USA |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:
See attached Exhibit A.

17. MISCELLANEOUS:

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**SCHEDULE A**
**TO UCC FINANCING STATEMENT**
**(Borrower)**

DEBTOR: **MCG KNOLLS LLC, A MISSOURI LIMITED LIABILITY COMPANY**
150 JAMES STREET, STE 209A
LAKEWOOD, NJ 08701

SECURED PARTY: **FANNIE MAE C/O ARBOR COMMERCIAL FUNDING I, LLC,**
A NEW YORK LIMITED LIABILITY COMPANY
500 COLVIN WOODS PARKWAY, SUITE 200
TONAWANDA, NEW YORK 14150

This financing statement covers all of Debtor's present and future right, title and interest in and to all of the following property (the "**Collateral Property**"):

**1. Improvements.**

The buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the land described in Exhibit A attached hereto (the "**Property**"), including any future replacements, facilities, and additions and other construction on the Property (the "**Improvements**");

**2. Goods.**

All goods which are used now or in the future in connection with the ownership, management, or operation of the Property or the Improvements or are located on the Property or in the Improvements, including inventory; furniture; furnishings; machinery, equipment, engines, boilers, incinerators, and installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring, and conduits used in connection with radio, television, security, fire prevention, or fire detection, or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers, and other appliances; light fixtures, awnings, storm windows, and storm doors; pictures, screens, blinds, shades, curtains, and curtain rods; mirrors, cabinets, paneling, rugs, and floor and wall coverings; fences, trees, and plants; swimming pools; exercise equipment; supplies; tools; books and records (whether in written or electronic form); websites, URLs, blogs, and social network pages; computer equipment (hardware and software); and other tangible personal property which is used now or in the future in connection with the ownership, management, or operation of the Property or the Improvements or is located on the Property or in the Improvements (the "**Goods**");


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

3. **Fixtures.**

All Goods that are so attached or affixed to the Property or the Improvements as to constitute a fixture (the "**Fixtures**") under the laws of the state in which the Property is located (the "**Property Jurisdiction**");

4. **Personalty.**

All Goods, Accounts, choses in action, chattel paper, documents, general intangibles (including software not otherwise considered Goods), payment intangibles, instruments, investment property, letter of credit rights, supporting obligations, computer information, source codes, object codes, records and data, all telephone numbers or listings, claims (including claims for indemnity or breach of warranty), deposit accounts and other property or assets of any kind or nature related to the Property or Collateral Property now or in the future, including operating agreements, surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Property or Collateral Property, and all other intangible property and rights relating to the operation of, or used in connection with, the Property or Collateral Property, including all governmental permits relating to any activities on the Property or the Improvements (the "**Personalty**");

5. **Other Rights.**

All current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefiting the Property or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated;

6. **Insurance.**

All insurance policies relating to the Property or Collateral Property (and any unearned premiums) and all proceeds paid or to be paid by any insurer of any part of the Property or Collateral Property, whether or not Debtor obtained the insurance pursuant to Secured Party's requirements;

7. **Awards.**

All awards, payments, and other compensation made or to be made by any municipal, state or federal authority with respect to any part of the Property or Collateral Property, including any awards or settlements resulting from (a) any action or proceeding, however characterized or named, relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of the Property or Collateral Property, whether direct or indirect (a "**Condemnation Action**"), (b) any damage to the Property or Collateral Property caused by governmental action that does not result in a Condemnation Action, or (c) the total or partial taking of any part of the Property or

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Collateral Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof;

**8. Contracts.**

All contracts, options, and other agreements for the sale of any part of the Property or Collateral Property entered into by Debtor now or in the future, including cash or securities deposited to secure performance by parties of their obligations;

**9. Rents.**

All rents (whether from residential or non-residential space), revenues and other income of the Property or the Improvements, including subsidy payments received from any sources, including payments under any "Housing Assistance Payments Contract" or other rental subsidy agreement (if any), parking fees, laundry and vending machine income, and fees and charges for food, health care and other services provided at the Property or Collateral Property, whether now due, past due, or to become due, and all tenant security deposits (the "**Rents**");

**10. Leases.**

All present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Property or Collateral Property, or any portion of the Property or Collateral Property (including proprietary leases or occupancy agreements if Debtor is a cooperative housing corporation), and all modifications, extensions, or renewals thereof (the "**Leases**") and all Lease guaranties, letters of credit and any other supporting obligation for any of the Leases given in connection with any of the Leases;

**11. Other.**

All earnings, royalties, accounts receivable, issues, and profits from any part of the Property or Collateral Property, and all undisbursed proceeds of the loan secured by the Mortgage, Deed of Trust, or Deed to Secure Debt upon the Property and Improvements (the "**Security Instrument**") and, if Debtor is a cooperative housing corporation, maintenance charges or assessments payable by shareholders or residents;

**12. Imposition Deposits.**

Deposits held by the Secured Party to pay when due (a) any water and sewer charges which, if not paid, may result in a lien on all or any part of the Property or Collateral Property, (b) the premiums for fire and other casualty insurance, liability insurance, rent loss insurance, and such other insurance as Secured Party may require, (c) taxes, assessments, vault rentals, and other charges, if any, general, special, or otherwise, including assessments for schools, public betterments and general or local improvements, which are levied, assessed or imposed by any public authority or quasi-public authority, and which, if not paid, will become a lien on the


© 2022 Fannie Mae

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Property or Collateral Property or any taxes upon any of the documents evidencing or securing the loan secured by the Security Instrument, and (d) amounts for other charges and expenses which Secured Party at any time reasonably deems necessary to protect the Property or Collateral Property, to prevent the imposition of liens on the Property or Collateral Property, or otherwise to protect Secured Party's interests, all as reasonably determined from time to time by Secured Party (the "**Impositions**");

**13. Refunds or Rebates.**

All refunds or rebates of Impositions by any municipal, state or federal authority or insurance company (other than refunds applicable to periods before the real property tax year in which the Security Instrument is dated);

**14. Names.**

All names under or by which any of the Property or Collateral Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Property or Collateral Property;

**15. Collateral Accounts and Collateral Account Funds.**

Any and all funds on deposit in any account designated as a "Collateral Account" by Secured Party pursuant to any separate agreement between Debtor and Secured Party which provides for the establishment of any fund, reserve or account;

**16. Other Proceeds.**

Any and all products, and all cash and non-cash proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds;

**17. Mineral Rights.**

All oil, gas, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and estates in, under and on the Property and other oil, gas, minerals, and mineral interests with which any of the foregoing interests or estates are pooled or unitized; and

**18. Accounts.**

All money, funds, investment property, accounts, general intangibles, deposit accounts, chattel paper, documents, instruments, judgments, claims, settlements of claims, causes of action, refunds, rebates, reimbursements, reserves, deposits, subsidies, proceeds, products, Rents and profits, now or hereafter arising, received or receivable, from or on account of the ownership, management and operation of the Property and the Improvements.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

All terms used and not specifically defined herein, but which are otherwise defined by the Uniform Commercial Code in force in the Property Jurisdiction (the "UCC"), shall have the meanings assigned to them by the UCC.

**(Remainder of Page Intentionally Blank)**


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**EXHIBIT A**
**TO**
**SCHEDULE A TO UCC FINANCING STATEMENT**
**(Borrower)**

**DESCRIPTION OF THE PROPERTY**

Lot 24 of THE KNOLLS, a subdivision in the City of Ferguson, St. Louis County, Missouri, according to the plat thereof recorded in Plat Book 134 Pages 42 and 43 of the St. Louis County Records.


**© 2022 Fannie Mae**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT G

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

ARBOR

RESERVATION OF RIGHTS LETTER

NC Company #119507330

April 15, 2025

Via EMAIL: moshe@mascapgroup.com; momermelstein@gmail.com
Via Overnight Courier

MCG Knolls, LLC ("Borrower")
150 James Street
Suite 209A
Lakewood, New Jersey 08701
Attention: Moshe Mermelstein

Re: Mortgaged Property: The Knolls Townhomes
Loan Number: 924478 (the "Mortgage Loan")

Borrower Failure to Provide Notice of a Casualty Event

Dear Borrower:

Reference is hereby made to that certain $9,314,000.00 Multifamily Note dated September 6, 2024 (the "Note"; the Note and all other documents securing or executed in connection with the Mortgage Loan being collectively referred to herein as the "Loan Documents"), executed by Borrower, and made payable to the order of Arbor Commercial Funding I, LLC, a New York limited liability company (the "Servicer"). The Servicer assigned, negotiated, and transferred the Note and Mortgage Loan to Fannie Mae, the current owner and holder of the Note and Mortgage Loan. Capitalized terms not defined herein shall have the meanings ascribed to them in the Loan Documents.

In connection with the Mortgage Loan, please be advised as follows:

1. Servicer has become aware of the occurrence of a casualty event at the Mortgaged Property. Borrower failed to provide notice of the casualty or event of loss as required by the Loan Documents. Borrower failed to provide documentation related to the event of loss required by the Loan Documents within the time specified by the Loan Documents including any applicable notice and cure period. Borrower has not remitted insurance proceeds to Servicer as required by the Loan Documents, either within the time specified by the Loan Documents or following written notice thereof by Servicer.

2. The above-described failure may constitute an Event of Default and may trigger the recourse provisions of the Loan Documents.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

3. The Servicer's or Fannie Mae's acceptance of any payment on the Mortgage Loan should not be considered an approval of the matter discussed herein or a novation, modification, or renewal of the Mortgage Loan. Notwithstanding the acceptance of any payments or any other amounts at any time by the Servicer, Fannie Mae does not waive any default which may exist under the Note and Loan Documents. Furthermore, acceptance of any payment shall not act as a waiver of, nor prevent Fannie Mae from exercising any right, remedy, or power available to Fannie Mae, including, without limitation, all rights, remedies, and powers granted under the Security Instrument or any other Loan Documents and at law or in equity.

4. This written notice is being transmitted as a courtesy to you and is not intended as an admission that any written notice is otherwise due you.

5. The only agreements that continue to exist between Fannie Mae and you are those set forth in the Note and the Loan Documents, which may only be amended by agreement of the parties executed in writing.

If you have any further questions regarding this matter, please do not hesitate to call me at 716-932-1305.

Sincerely,

**ARBOR COMMERCIAL FUNDING I, LLC**

By: Michael Kish
Name: Michael Kish
Title: Assistant Vice President, Portfolio Management

cc: Fannie Mae
Arbor Commercial Funding I, LLC, Servicer
Moshe Mermelstein, Joseph Mermelstein, Key Principals

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT H

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

ARBOR
MULTIFAMILY LENDING, LLC

NC Company #119507330

# RESERVATION OF RIGHTS LETTER

September 17, 2025

Via EMAIL: david@multi-south.com; moshe@mascapgroup.com
Via Overnight Courier

MCG KNOLLS LLC ("Borrower")
Attn: Joseph Mermelstein
150 James Street, Ste. 209A
Lakewood, NJ 08701

Re: Mortgaged Property: The Knolls Townhomes
Loan Number: 924478 (the "Mortgage Loan")

Evidence of Completion of Required Repairs, Replacements, or Restoration Not Received

Dear Borrower:

Reference is hereby made to that certain $9,314,000.00 Multifamily Note dated September 6, 2024 (the "Note"; the Note and all other documents securing or executed in connection with the Mortgage Loan being collectively referred to herein as the "Loan Documents"), executed by Borrower, and made payable to the order of Arbor Commercial Funding I, LLC, a New York limited liability company (the "Servicer"). The Servicer assigned, negotiated, and transferred the Note and Mortgage Loan to Fannie Mae, the current owner and holder of the Note and Mortgage Loan. Capitalized terms not defined herein shall have the meanings ascribed to them in the Loan Documents.

In connection with the Mortgage Loan, please be advised as follows:

1. Borrower has failed to provide satisfactory evidence of the completion of all or certain required Repairs or Replacements within the time specified by the Loan Documents.
2. The above-described failure may constitute an Event of Default under the Loan Documents.
3. The Servicer's or Fannie Mae's acceptance of any payment on the Mortgage Loan should not be considered an approval of the matter discussed herein or a novation, modification, or renewal of the Mortgage Loan. Notwithstanding the acceptance of any payments or any other amounts at any time by the Servicer, Fannie Mae does not waive any default which may exist under the Note and Loan Documents Furthermore, acceptance of any payment shall not act as a waiver of, nor prevent Fannie Mae from exercising any right, remedy, or power available to Fannie Mae, including, without limitation, all rights, remedies, and powers granted under the Security Instrument or any other Loan Documents and at law or in equity.



Disclosure information: Arbor Multifamily Lending, LLC is a debt collector attempting to collect a debt, and any information obtained will be used for that purpose.

4. This written notice is being transmitted as a courtesy to you and is not intended as an admission that any written notice is otherwise due you.

5. The only agreements that continue to exist between Fannie Mae and you are those set forth in the Note and the Loan Documents, which may only be amended by agreement of the parties executed in writing.

If you have any further questions regarding this matter, please do not hesitate to call me at (716) 989-2671.

Sincerely,

**ARBOR COMMERCIAL FUNDING I, LLC**

By: Michael Kish
Name: Michael Kish
Title: AVP, Portfolio Management

cc: Fannie Mae
Arbor Commercial Funding I, LLC, Servicer
Moshe Mermelstein, Joseph Mermelstein, Key Principals

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM



Disclosure information: Arbor Multifamily Lending, LLC is a debt collector attempting to collect a debt, and any information obtained will be used for that purpose.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT I

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

ARBOR
MULTIFAMILY LENDING, LLC

NC Company #119507330

# RESERVATION OF RIGHTS LETTER

March 5, 2026
Via EMAIL: david@multi-south.com
Via Overnight Courier

MCG KNOLLS LLC ("Borrower")
Attn: Joseph Mermelstein
150 James Street, Ste 209 A
Lakewood, NJ 08701

Re: Mortgaged Property: The Knolls Townhomes
Loan Number: 924478 (the "Mortgage Loan")

Borrower Failure to Maintain the Mortgaged Property
Unauthorized Change in Property Management

Dear Borrower:

Reference is hereby made to that certain $9,314,000.00 Multifamily Note dated September 6, 2024 (the "Note"; the Note and all other documents securing or executed in connection with the Mortgage Loan being collectively referred to herein as the "Loan Documents"), executed by Borrower, and made payable to the order of Arbor Commercial Funding I, LLC, a New York limited liability company (the "Servicer"). The Servicer assigned, negotiated, and transferred the Note and Mortgage Loan to Fannie Mae, the current owner and holder of the Note and Mortgage Loan. Capitalized terms not defined herein shall have the meanings ascribed to them in the Loan Documents.

In connection with the Mortgage Loan, please be advised as follows:

1. Borrower has failed to maintain the Mortgaged Property in accordance with the Loan Documents. Borrower has failed to complete Required Repairs, Additional Lender Repairs, Replacements, Additional Lender Replacements, or Restoration as required by the Loan Documents within the time specified by the Loan Documents including any applicable notice and cure period.
2. Servicer has become aware of a change in the property management for the Mortgaged Property. The change of the property management without prior approval by Fannie Mae is not permitted by the Loan Documents.
3. The above-described failures may constitute Events of Default under the Loan Documents.



Disclosure information: Arbor Multifamily Lending, LLC is a debt collector attempting to collect a debt, and any information obtained will be used for that purpose.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

4. The Servicer's or Fannie Mae's acceptance of any payment on the Mortgage Loan should not be considered an approval of the matter discussed herein or a novation, modification, or renewal of the Mortgage Loan. Notwithstanding the acceptance of any payments or any other amounts at any time by the Servicer, Fannie Mae does not waive any default which may exist under the Note and Loan Documents Furthermore, acceptance of any payment shall not act as a waiver of, nor prevent Fannie Mae from exercising any right, remedy, or power available to Fannie Mae, including, without limitation, all rights, remedies, and powers granted under the Security Instrument or any other Loan Documents and at law or in equity.

5. This written notice is being transmitted as a courtesy to you and is not intended as an admission that any written notice is otherwise due you.

6. The only agreements that continue to exist between Fannie Mae and you are those set forth in the Note and the Loan Documents, which may only be amended by agreement of the parties executed in writing.

If you have any further questions regarding this matter, please do not hesitate to call me at (716) 473-5559.

Sincerely,

**ARBOR COMMERCIAL FUNDING I, LLC**

By: *Daniel O'Neil*
Name: Daniel O'Neil
Title: VP, Loan Surveillance

cc: Fannie Mae
Arbor Commercial Funding I, LLC, Servicer
Moshe Mermelstein, Joseph Mermelstein, Key Principals



Disclosure information: Arbor Multifamily Lending, LLC is a debt collector attempting to collect a debt, and any information obtained will be used for that purpose.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT J

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

ARBOR

PROPERTY CONDITION
ASSESSMENT DEMAND LETTER

NC Company #119507330

May 18, 2026

Via EMAIL: moshe@mascapgroup.com, momermelstein@gmail.com

Via Overnight Courier

MCG KNOLLS LLC ("Borrower")
150 James Street, Ste 209 A
Lakewood, NJ 08701
Attention: Joseph Mermelstein

Re: **NOTICE OF DEMAND (the "Notice")**
Property Name: The Knolls Townhomes
Property Address: 3582 Pershall Rd, Ferguson, MO 63135
Loan Number: 324478 (the "Loan")

Multifamily Note (the "Note") dated as of September 6, 2024 in the original principal amount of Nine Million Three Hundred Fourteen Thousand and 00/100 Dollars ($9,314,000.00), made by Borrower, payable to the order of Arbor Commercial Funding I, LLC ("Original Lender"), which Note is secured by, *inter alia*, certain real property more particularly described in the Multifamily Deed of Trust, Assignment of Rents and Security Agreement dated as of even date therewith (the "Security Instrument") and Multifamily Loan and Security Agreement dated as of even date therewith (the "Loan Agreement"), which Note, Security Instrument, and Loan Agreement, together with other loan documents (such Note, Security Instrument and Loan Agreement and other loan documents hereafter referred to as the "Loan Documents") were assigned by the Original Lender to Fannie Mae ("Fannie Mae"), and all of which cover certain real and personal property located at the address set forth above and more particularly described in the Security Instrument (the "Mortgaged Property" or the "Property"). Original Lender is now the servicer of the Loan and may be referred to herein as "Servicer."

Dear Borrower,

Notice is hereby given that Borrower has failed to maintain the Mortgaged Property in accordance with the terms of the Loan Documents, including, but not limited to, Article 6 of the Loan Agreement, which failure to maintain may constitute an Event of Default under the Loan Documents. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Loan Documents.

On April 9 and April 28, 2026, a Property Condition Assessment ("PCA") was conducted on the Mortgaged Property, whereby certain deficiencies were noted and identified. Enclosed herewith is a copy of the PCA and a schedule of needed repairs and replacements is attached hereto as Exhibit A.

The PCA contains specific information related to the current deficiencies in physical condition of the Mortgaged Property and should be reviewed by Borrower for more detail on the required repairs. All repairs and replacements identified on Exhibit A and in the PCA shall constitute Additional Lender Repairs and Additional Lender

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Replacements, as defined in the Loan Documents. Please note, however, this may not be an exhaustive list and is subject to change pursuant to additional inspections that may be performed or required by Fannie Mae or Servicer.

Demand is hereby made for Borrower to correct its failure to maintain the Mortgaged Property and immediately implement corrective action to undertake repairs and replacements of the deficiencies noted in the PCA and on Exhibit A, as well as any other repair or replacement needed at the Mortgaged Property, to the satisfaction of Fannie Mae in its sole discretion. Borrower must also perform the Additional Lender Repairs and Additional Lender Replacements within the dates listed on Exhibit A. Furthermore, Borrower must provide Fannie Mae or Servicer access, at such time and date requested by either, for inspection of the Mortgaged Property to determine the status of the required Additional Lender Repairs and Additional Lender Replacements to confirm that such repairs and replacements have been completed to Fannie Mae's satisfaction, in its sole discretion.

Pursuant to Section 13.02(a)(4) of the Loan Agreement, Fannie Mae has determined the funds in the Replacement Reserve Account or the Repairs Escrow Account are insufficient to cover the costs of the Additional Lender Repairs and Additional Lender Replacements. Demand is further made for Borrower to deposit with Servicer, for the benefit of Fannie Mae, within ten (10) days of the date of this letter an amount equal to $585,128, which deposit will be held by Servicer as additional security for the Loan. The deposit amount was calculated by crediting the current Completion Repair Reserve balance of $84,852.00 and $25,915.00 of the current Replacement Reserve balance of $62,595.00 and $162,447.00 of the current Elective CAPEX balance of $385,657.00 against the Total of Immediate Repairs Cost in the amount of $858,342.00.Failure to deposit the required amount shall constitute Borrower's failure to pay an amount due on the Loan and will be an Event of Default under the Loan Documents.

Additionally, Fannie Mae and Servicer have determined the amount of funds in the Replacement Reserve Account and Repairs Escrow Account are insufficient to cover the on-going Required Repairs and Required Replacements identified in the PCA, even after completion of the Additional Lender Repairs and Additional Lender Replacements identified on Exhibit A. To ensure the necessary funds are available, Fannie Mae hereby notifies Borrower the Monthly Replacement Reserve Deposit is being increased by $2,846.66 per month so that the total Monthly Replacement Reserve Deposit by Borrower shall be equal to $6,113.33 per month. This increased deposit amount will commence with the payment due on July 1, 2026.

Each of the above constitutes separate obligations of Borrower under the Loan Documents and Borrower's failure to perform any of the above obligations may constitute a separate Event of Default under the Loan Documents.

The Servicer's or Fannie Mae's acceptance of any payment on the Loan should not be considered a waiver of any Event of Default or a novation, modification, or renewal of the Loan. Notwithstanding the acceptance of any payments or any other amounts at any time by the Servicer, Fannie Mae does not waive any Event of Default which may exist under the Loan Documents. Furthermore, acceptance of any payment shall not act as a waiver of, or prevent Fannie Mae from, exercising any right, remedy, or power available to Fannie Mae, including, without limitation, all rights, remedies, and powers granted under the Loan Documents and/or at law or in equity, all of which are expressly reserved.

Sincerely,

Daniel O'Neil

Daniel O'Neil
Vice President, Loan Surveillance

cc: Fannie Mae

Enclosures (PCA copy)

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT A

| Repair Description | Life Safety | Critical Repair | Deferred Maintenance | Completion Date |
|---|---|---|---|---|
| Tot lot uncompressed ground cover | $ 2,500 | | | within (3) months of the date of this Demand |
| AC Condensers/exposed electrical | $ 5,600 | | | within (3) months of the date of this Demand |
| Open cable boxes | | $ 2,400 | | within (6) months of the date of this Demand |
| Landscaping refurbishment | | $ 40,000 | | within (6) months of the date of this Demand |
| Tree trimming/stump removal | | $ 15,000 | | within (6) months of the date of this Demand |
| Building address signage | | $ 5,600 | | within (6) months of the date of this Demand |
| Asphalt overlay | | $ 159,500 | | within (6) months of the date of this Demand |
| Seal coat and stripe | | $ 18,792 | | within (6) months of the date of this Demand |
| Concrete wheel stops | | $ 12,500 | | within (6) months of the date of this Demand |
| Concrete repairs | | $ 40,000 | | within (6) months of the date of this Demand |
| Carport repair | | $ 20,000 | | within (6) months of the date of this Demand |
| Retaining wall repair | | $ 7,500 | | within (6) months of the date of this Demand |
| Basement survey and repair – crack sealing/waterproofing | | $ 28,000 | | within (6) months of the date of this Demand |
| Exterior repairs / repair and paint | | $ 84,000 | | within (6) months of the date of this Demand |
| Roof repair - Unit 1581 | | $ 2,500 | | within (6) months of the date of this Demand |

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

| | | | | |
|---|---|---|---|---|
| Roof drainage | | $ 32,000 | | within (6) months of the date of this Demand |
| Patio fencing and repair | | $ 56,000 | | within (6) months of the date of this Demand |
| Basement windows/enclosures | | $ 39,200 | | within (6) months of the date of this Demand |
| Swimming pool refurbishment | | $ 50,000 | | within (6) months of the date of this Demand |
| Unit 1580 - basement | | $ 1,000 | | within (6) months of the date of this Demand |
| Displaced transformer | | $ - | | within (6) months of the date of this Demand |
| Stab-Lok panels | | $ 46,500 | | within (6) months of the date of this Demand |
| Vacant Units - light renovations | | $ 17,500 | | within (6) months of the date of this Demand |
| Vacant Units - moderate renovations | | $ 60,000 | | within (6) months of the date of this Demand |
| Down Units | | $ 30,000 | | within (6) months of the date of this Demand |
| Fire Units | | $ 80,000 | | within (6) months of the date of this Demand |
| Moisture Management Plan | | $ 750 | | within (6) months of the date of this Demand |
| Fence Repair | | | $ 1,500 | within (12) months of the date of this Demand |
| **Subtotal** | **$ 8,100** | **$ 848,742** | **$ 1,500** | |
| **Total Immediate Repairs** | | | **$ 858,342** | |
| **Less Completion Repairs Holdback Balance** | | | **$ 84,852** | |
| **Less Elective CAPEX Holdback Balance** | | | **$ 162,447** | |
| **Replacement Reserve Holdback Balance** | | | **$ 25,915** | |
| **Total** | | | **$ 585,128** | |

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT K

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

STINSON

Nicholas Zluticky
**PARTNER**
DIRECT: 816.691.3278
OFFICE: 816.842.8600
nicholas.zluticky@stinson.com

July 13, 2026

*Via Federal Express Next Business Day Delivery,*
*U.S.P.S. Certified Mail – Return Receipt Requested, U.S.P.S. First Class Mail and Email*

MCG Knolls LLC ("Borrower")
Attn: Joseph Mermelstein
150 James Street, Ste 209 A
Lakewood, NJ 08701

Moshe Mermelstein
104 Elm Street
Lakewood, NJ 08701
moshe@mascapgroup.com

Joseph Mermelstein
1765 53rd Street
Brooklyn, NY 11204

**Re: NOTICE OF ACCELERATION OF INDEBTEDNESS AND DEMAND FOR PAYMENT (the "Notice")**

Mortgaged Property: The Knolls Townhomes, 3582 Pershall Rd, Ferguson, Missouri 63135
Mortgage Loan Number: Fannie Mae Loan # 1720013299 (the "Loan")

Multifamily Note (the "Note") dated as of September 6, 2024 in the original principal amount of $9,314,000.00 made by Borrower, payable to the order of Arbor Commercial Funding I, LLC, a New York limited liability company ("Original Lender"), which Note is secured by, *inter alia*, certain real property more particularly described in the Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing of even date therewith (the "Security Instrument") and Multifamily Loan and Security Agreement of even date therewith (the "Loan Agreement"), which Note, Security Instrument and Loan Agreement, together with other loan documents (such Note, Security Instrument and Loan Agreement and other loan documents hereafter referred to as the "Loan Documents") were assigned from Original Lender to Fannie Mae ("Fannie Mae") and all of which covering certain real and personal property located at the address set forth above and more particularly described in the Security Instrument (the "Mortgaged Property"), which Mortgaged Property is commonly known as The Knolls Townhomes. Original Lender is now the servicer of the Loan and may be referred to herein as "Servicer."

Dear Sir or Madam:

The undersigned represents Fannie Mae with respect to the Loan Documents and the Mortgaged Property described above. On April 15, 2025, September 17, 2025, and March 5, 2026, Servicer sent Borrower Reservation of Rights Letters, notifying Borrower of its (i) failure to provide notice of a casualty or event of loss and remit insurance proceeds to Servicer within the time set forth in the Loan Documents; (ii) failure to provide satisfactory evidence of the completion of all or certain of the Required Repairs or Replacements within the time specified by the Loan Documents; (iii) failure to maintain the Mortgaged Property and complete the Required Repairs, Additional Lender Repairs, Additional Lender Replacements, or Restoration within the time specified in the Loan Documents; and (iv) unauthorized change in property management without prior approval by Fannie Mae. The Letters further reserved all Servicer's and Fannie Mae's rights, remedies, and powers granted under the Loan Documents and at law or in equity.

Notice is hereby given that Borrower has (i) failed to provide notice of casualty or event of loss and remit insurance proceeds to Servicer within the timelines set forth in the Loan Documents; (ii) failed to provide

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM



satisfactory evidence of the completion of all or certain of the Required Repairs or Replacements within the time specified by the Loan Documents; (iii) failed to maintain the Mortgaged Property and complete the Required Repairs, Additional Lender Repairs, Additional Lender Replacements, or Restoration within the time specified in the Loan Documents; and (iv) effected an unauthorized change in property management without prior approval by Fannie Mae. Each such failure constitutes an "Event of Default" as defined in the Loan Documents, as applicable.

On May 18, 2026, Servicer sent Borrower a Notice of Demand (the "Demand Notice"), notifying Borrower of its failure to maintain the Mortgaged Property pursuant to Section 6 of the Loan Agreement and demanding that Borrower perform, within the dates listed in the Demand Notice, the Additional Lender Repairs and Additional Lender Replacements noted in the Property Condition Assessment ("PCA") performed on April 9 and April 28, 2026 ordered by Servicer and attached to the Demand Notice, and that Borrower, within ten (10) days, deposit with Servicer, on behalf of Fannie Mae, the amount of $585,128.00 (the "Demanded Deposit") to cover the costs of the Additional Lender Repairs and Additional Lender Replacements. Notice is hereby given that Borrower has failed to perform, within ten (10) days, the Additional Lender Repairs and Additional Lender Replacements in the PCA and has failed to make the Demanded Deposit as required by the Loan Documents and the Demand Notice. Each such failure constitutes an Event of Default.

This letter consitutes a formal notice that, pursuant to the terms of the Loan Documents, Fannie Mae has accelerated the outstanding principal indebtedness evidenced by the Note as a result of the occurrence and present continuation of the above-described Events of Default. Demand is hereby made for immediate payment in full of the entire unpaid principal balance of the Note, plus (to the extent lawful) accrued and unpaid interest thereon and the costs and attorneys' fees of Fannie Mae. In order to determine the exact payoff figure currently owing to Fannie Mae pursuant to the Note, you may have your counsel contact me at the direct dial telephone number set forth above.

You are further notified that, by reason of such default and acceleration of said indebtedness, Fannie Mae may immediately institute foreclosure proceedings under the Security Instrument and may otherwise exercise any and all other rights and remedies enumerated in the Loan Documents or otherwise available at law or in equity (including, without limitation, the appointment of a receiver over the Mortgaged Property, applications of escrow deposits, reserves, or other funds held by Servicer toward payment of Borrower's obligations under the Loan Documents in the manner set forth therein).

You are further notified that this letter is also being sent to Moshe Mermelstein and Joseph Mermelstein, individually, in order to notify each of them of the Events of Default described herein, as guarantor of certain obligations of the Borrower under the Loan Documents. Under the Guaranty of Non-Recourse Obligations dated as of September 6, 2024, executed by Moshe Mermelstein and Joseph Mermelstein in favor of Original Lender (the "Guaranty"), to the extent Borrower has triggered recourse, demand is hereby made of Moshe Mermelstein and Joseph Mermelstein for full payment of all amounts due under the Guaranty.

Please be advised that the demand made hereby is being given pursuant to the terms and provisions of the Loan Documents. By making this demand, Fannie Mae does not waive any of the rights and remedies available to Fannie Mae under the Loan Documents or otherwise. No failure to exercise such rights or remedies shall operate as a waiver of any rights which Fannie Mae may have pursuant to the terms of the Loan Documents or otherwise. Further, reference by Fannie Mae or Servicer to any event of default or default shall in no way constitute, or be construed to be, a waiver of any other event of default or default which may now exist or hereafter arise under the Loan Documents.

The Servicer's or Fannie Mae's acceptance of any payment under the Loan Documents will not be considered a waiver of any default or a novation, modification, or renewal of the Note. Notwithstanding the acceptance of any payments or any other amounts at any time by the Servicer, Fannie Mae does not waive any default which may exist under the Loan Documents. Furthermore, acceptance of any payment shall not act as a waiver of, or prevent Fannie Mac from exercising any right, remedy, or power available to Fannie Mae, including, without limitation, all rights, remedies, and powers granted under the Loan Documents and at law or in equity, all of which are expressly reserved.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM



UNDER THE SECURITY INSTRUMENT EXECUTED BY BORROWER, BORROWER'S LICENSE TO COLLECT RENTS HAS TERMINATED, AND FANNIE MAE, AS HOLDER OF THE SECURITY INSTRUMENT, IS NOW ENTITLTED TO ALL RENTS AS THEY BECOME DUE AND PAYABLE, INCLUDING RENTS CURRENTLY DUE AND UNPAID. UNTIL FURTHER NOTICE, ANY RENTS BORROWER RECEIVED AFTER THE OCCURRENCE OF THE EVENT OF DEFAULT SHALL BE RECEIVED AND HELD BY BORROWER IN TRUST FOR THE BENEFIT OF FANNIE MAE. UNTIL FURTHER NOTICE, ALL SUCH RENTS SHALL BE APPLIED ONLY TO BONA FIDE CURRENT OPERATING EXPENSES TO THIRD PARTIES IN CONNECTION WITH THE OPERATION OF THE MORTGAGED PROPERTY WITH EXCESS PAID TO FANNIE MAE, TO BE APPLIED IN ACCORDANCE WITH THE LOAN DOCUMENTS.

Sincerely,

**Stinson LLP**

Nicholas Zluticky
NZ:

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT L

26SL-ML00124

26SL-CC04659

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM
Electronically Filed - ST LOUIS COUNTY - June 26, 2026 - 09:54 AM

EXHIBIT 5

MECHANICS LIEN STATEMENT

NOW, this 9th day of April, 2026, comes Puff's Property Management, Inc., d/b/a Asphalt Paving & Concrete, a corporation, and, with a view to avail itself of the benefits of the Missouri Statutes relating to Mechanics Liens, Chapter 429 RSMo, files the account set forth below and as attached hereto which is made a part hereof, for materials and labor supplied by Puff's Property Management, Inc., d/b/a Asphalt Paving & Concrete, at the insistence and request of Encore Property Management for the benefit of the MCG Knolls, LLC/Knolls Townhomes, as owner, for materials and labor furnished and/or supplied to, Knolls Townhomes, upon the property located at 3582 Pershall Rd., St. Louis, Missouri 63135, legally described as follows:

Lot 24 of THE KNOLLS, A SUBDIVISION IN THE City of Ferguson, St. Louis County, Missouri, according to the plat thereof recorded in Plat Book 134 Pages 42 and 43 of the St. Louis County records.

Puff's Property Management, Inc., d/b/a Asphalt Paving & Concrete further states that the *documents attached hereto as Exhibit A and made a part hereof are the required statutory notice* and a just and true Statement of Account, showing materials and labor furnished and/or supplied for, to and upon the above-described real estate and premises, showing a balance due as of the date of filing of this Mechanics Lien Statement of Fifty One Thousand, Three Hundred Seventy Two Dollars and Twenty-Six Cents ($51,372.26), and this statement and said Exhibits are being filed herewith in order that they may constitute a lien upon the above-described dwelling, premises, and the above-described real estate.

Puff's Property Management, Inc., d/b/a Asphalt Paving & Concrete further states that the last date on which materials and labor were furnished to and/or incorporated into said premises was October 10, 2025. The aforesaid items were furnished and/or supplied under one arrangement and constitute one continuous and running account and were provided in reliance upon the right to a Mechanics Lien as stated herein.

Puff's Property Management, Inc., d/b/a Asphalt Paving & Concrete further states that at the time the above-referenced transaction was made, MCG Knolls, LLC, is and was the owner of the above-referenced property.

Daryl L. Schaffer, Attorney and Authorized Agent for Puff's Property Management, Inc., d/b/a Asphalt Paving & Concrete, being duly sworn upon his oath, states that the foregoing is a just and true account of the amounts due Puff's Property Management, Inc., d/b/a Asphalt Paving & Concrete for materials and labor actually furnished and/or supplied by Puff's Property Management, Inc., d/b/a Asphalt Paving & Concrete, to, upon and for the real estate referred to above at the insistence and request of Encore Property Management for the benefit of the MCG Knolls, LLC/Knolls Townhomes, and that all just credits have been given; that the foregoing description is a true description of the property upon, to and for which said materials and labor were furnished and to which this lien is intended to apply, or so near as to identify the same; that said demand accrued within six (6) months prior to the filing of this lien, that MCG Knolls, LLC at the time of the furnishing of said materials and labor, was the owner of the described real

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM
Electronically Filed - ST LOUIS COUNTY - June 26, 2026 - 09:54 AM

estate and improvements thereon, and further, that Puff's Property Management, Inc., d/b/a Asphalt Paving & Concrete has provided the notice required by Section 429.100 RSMo to the owners of said real estate more than ten (10) days before the filing of this statement and that said real estate is intended to be charged with this Mechanics Lien as provided by law.

Puff's Property Management, Inc.,
d/b/a Asphalt Paving & Concrete

Date: 4/9/2026 By: [signature]
Daryl L. Schaffer #32537
Attorney and Authorized Agent
3967 Lockport Dr.
Bridgeton, MO 63044

STATE OF MISSOURI )
) SS
COUNTY OF ST. LOUIS )

Daryl L. Schaffer, being of lawful age and being first duly sworn upon his oath, states that he is the Attorney and Authorized Agent for Puff's Property Management, Inc., d/b/a Asphalt Paving & Concrete and that the facts contained in the aforesaid document are true and correct to the best of his knowledge, information and belief.

[signature]
Daryl L. Schaffer
Attorney and Authorized Agent
of Puff's Property Management, Inc.,
d/b/a Asphalt Paving & Concrete

Subscribed and sworn to before me this 9 day of April, 2026.

[signature]
Notary Public

My Commission Expires: Aug 5, 2029

CLAIRE M. PARTSCH
Notary Public - Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires: Aug. 5, 2029
Commission # 20369354

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM
Electronically Filed - ST LOUIS COUNTY - June 26, 2026 - 09:54 AM

**26SL-ML00124**

**Asphalt Paving & Concrete, Inc.**
308 Mikel Avenue
Maryland Heights MO 63043
Phone (314)209-9800 Fax (314)209-7688

| Date | INVOICE # |
|---|---|
| 10/10/2025 | 307197 |

| E-mail |
|---|
| asphalt@apci-stl.com |

| BILL TO |
|---|
| The Knolls Townhomes<br>C/O Encore Property Management<br>3582 Pershall Rd.<br>St. Louis, MO 63135 |

| PROJECT | TERMS |
|---|---|
| 3582 Pershall Rd., 63135 | Time Services Are Rendered |

| Date Completed | DESCRIPTION | AMOUNT |
|---|---|---|
| | Job: The Knolls Townhomes 3582 Pershall Rd., 63135 | |
| 10/10/2025 | Remove and replace porch at 3622 Pershall Road, sealing and striping of lots | 20,000.00 |
| 11/10/2025 | 2 % interest monthly on all past due invoices | 400.00 |
| 12/10/2025 | 2 % interest monthly on all past due invoices | 408.00 |
| 1/10/2026 | 2 % interest monthly on all past due invoices | 416.16 |
| 2/10/2026 | 2 % interest monthly on all past due invoices | 424.49 |
| 3/10/2026 | 2 % interest monthly on all past due invoices | 432.98 |

INCLUDE INVOICE # ON PAYMENTS. TERMS: PAYMENT IS DUE AT TIME SERVICES ARE RENDERED. SERVICE CHARGE OF 2% MONTHLY ON ALL PAST DUE ACCOUNTS.

| | |
|---|---|
| **Total** | $22,081.63 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $22,081.63 |

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM
Electronically Filed - ST LOUIS COUNTY - June 26, 2026 - 09:54 AM

# Asphalt Paving & Concrete, Inc.

308 Mikel Avenue
Maryland Heights MO 63043
Phone (314)209-9800 Fax (314)209-7688

| Date | INVOICE # |
|---|---|
| 9/8/2025 | 307000 |

| E-mail |
|---|
| asphalt@apci-stl.com |

| BILL TO |
|---|
| The Knolls Townhomes<br>C/O Encore Property Management<br>3582 Pershall Rd.<br>St. Louis, MO 63135 |

| PROJECT | TERMS |
|---|---|
| 3622 Pershall Rd., 63135 | Time Services Are Rendered |

| Date Completed | DESCRIPTION | AMOUNT |
|---|---|---|
| | Job: The Knolls Townhomes 3622 Pershall Rd., 63135 | |
| 9/2/2025 | Misc. concrete repairs | 8,540.00 |
| | Misc. asphalt repairs | 28,520.00 |
| 12/12/2025 | 2 % interest monthly on all past due invoices | 541.20 |
| 1/12/2026 | 2 % interest monthly on all past due invoices | 552.03 |
| 2/12/2026 | 2 % interest monthly on all past due invoices | 563.07 |
| 3/12/2026 | 2 % interest monthly on all past due invoices | 574.33 |

INCLUDE INVOICE # ON PAYMENTS. TERMS: PAYMENT IS DUE AT TIME SERVICES ARE RENDERED. SERVICE CHARGE OF 2% MONTHLY ON ALL PAST DUE ACCOUNTS.

| | |
|---|---|
| **Total** | $39,290.63 |
| **Payments/Credits** | -$10,000.00 |
| **Balance Due** | $29,290.63 |

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM
Electronically Filed - ST LOUIS COUNTY - June 26, 2026 - 09:54 AM

26SL-ML00124

NOTICE OF MECHANICS LIEN

TO: Registered Agent, DBO Services, Inc. 222 E. Dunkin St., Ste. 102, Jefferson City, Missouri 65101-3168 for MCG Knolls, LLC.

MCG Knolls, LLC is hereby given notice that Puff's Property Management, Inc., d/b/a Asphalt Paving & Concrete, its affiliates, sub-contractors and leased drivers, the undersigned, hold a claim against the land, buildings and improvements for concrete, asphalt and miscellaneous repairs, sealing and striping of lots for the property at 3582 Pershall Rd., St. Louis, Missouri 63135, legally described as follows:

Lot 24 of THE KNOLLS, A SUBDIVISION IN THE City of Ferguson, St. Louis County, Missouri, according to the plat thereof recorded in Plat Book 134 Pages 42 and 43 of the St. Louis County records.

Which claims are for work and labor done, and materials furnished on and to the above-described land, buildings and improvements by the undersigned, under contract, agreement or account with the Encore Property Management for the benefit of the Knolls Townhomes for the making of improvements to said land and buildings, and that said claim amounts to Fifty One Thousand, Three Hundred Seventy Two Dollars and Twenty-Six Cents ($51,372.26). Puff's Property Management, Inc., d/b/a Asphalt Paving & Concrete attaches hereto, incorporates by reference herein and makes a part hereof invoice numbers: 307197 and 307000 supporting its claim, and that said amount is due to Puff's Property Management, Inc., d/b/a Asphalt Paving & Concrete from Encore Property Management for the benefit of the Knolls Townhomes and accrued within six months prior to the giving of this Notice. You should further take notice that unless the above amount is paid within ten (10) days from the date of service of this Notice, the undersigned will file its lien against said land, buildings and improvements and proceed thereon according to law.

By: Daryl L. Schaffer

Daryl L. Schaffer #32530
Attorney for Puff's Property Management, Inc.,
d/b/a Asphalt Paving & Concrete
3967 Lockport
Bridgeton, MO 63044
(314) 581-0465
Darylschaffer@sbcglobal.net

# EXHIBIT M

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

STINSON

Nicholas Zluticky
**PARTNER**
DIRECT: 816.691.3278
OFFICE: 816.842.8600
nicholas.zluticky@stinson.com

August 13, 2026

*Via Federal Express Next Business Day Delivery,*
*U.S.P.S. Certified Mail – Return Receipt Requested, U.S.P.S. First Class Mail and Email*

MCG Knolls LLC ("Borrower")
Attn: Joseph Mermelstein
150 James Street, Ste 209 A
Lakewood, NJ 08701

Moshe Mermelstein
104 Elm Street
Lakewood, NJ 08701
moshe@mascapgroup.com

Joseph Mermelstein
1765 53rd Street
Brooklyn, NY 11204
momermelstein@gmail.com

**Re: NOTICE OF ADDITIONAL EVENT OF DEFAULT, EXISTING ACCELERATION OF INDEBTEDNESS, AND DEMAND FOR PAYMENT (the "Notice of Additional Event of Default")**

Mortgaged Property: The Knolls Townhomes, 3582 Pershall Rd, Ferguson, Missouri 63135
Mortgage Loan Number: Fannie Mae Loan # 1720013299 (the "Loan")

Multifamily Note (the "Note") dated as of September 6, 2024 in the original principal amount of $9,314,000.00 made by Borrower, payable to the order of Arbor Commercial Funding I, LLC, a New York limited liability company ("Original Lender"), which Note is secured by, *inter alia*, certain real property more particularly described in the Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing of even date therewith (the "Security Instrument") and Multifamily Loan and Security Agreement of even date therewith (the "Loan Agreement"), which Note, Security Instrument and Loan Agreement, together with other loan documents (such Note, Security Instrument and Loan Agreement and other loan documents hereafter referred to as the "Loan Documents") were assigned from Original Lender to Fannie Mae ("Fannie Mae") and all of which cover certain real and personal property located at the address set forth above and more particularly described in the Security Instrument (the "Mortgaged Property"), which Mortgaged Property is commonly known as The Knolls Townhomes. Original Lender is now the servicer of the Loan and may be referred to herein as "Servicer."

Dear Sir or Madam:

The undersigned represents Fannie Mae with respect to the Loan Documents and the Mortgaged Property described above. On July 13, 2026, counsel for Fannie Mae sent Borrower a Notice of Acceleration of Indebtedness and Demand for Payment, notifying Borrower that its (i) failure to provide notice of a casualty or event of loss and remit insurance proceeds to Servicer within the time set forth in the Loan Documents; (ii) failure to provide satisfactory evidence of the completion of all or certain of the Required Repairs or Replacements within the time specified by the Loan Documents; (iii) failure to maintain the Mortgaged Property and complete the Required Repairs, Additional Lender Repairs, Additional Lender Replacements, or Restoration within the time specified in the Loan Documents; and (iv) unauthorized change in property management without prior approval by Fannie Mae constitute separate "Events of Default" as defined in the Loan Documents, as applicable; accelerating all amounts due and owing under the Loan Documents; and

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM



demanding immediate payment of such amounts (the "Acceleration Notice"). As of the date of this Notice of Additional Event of Default, Borrower has failed to complete the requests in the Acceleration Notice.

As set forth in the Acceleration Notice, due to the defaults under the Loan Documents including, but not limited to, the Events of Default described in the Acceleration Notice, the Loan was accelerated by Fannie Mae and all amounts owing under the Loan Documents became immediately due and owing. The Loan remains accelerated and nothing contained herein shall constitute any waiver, modification, release, reinstatement, or de-acceleration of the Loan. Borrower must remit payment immediately of all amounts due and owing under the Loan Documents.

In addition to the Events of Default described in the Acceleration Notice, Fannie Mae has learned that several liens have been filed against the Mortgaged Property. On or around April 9, 2026, a mechanic's lien in the amount of $51,372.26 (the "Mechanic's Lien") was filed by Puff's Property Management, Inc. d/b/a Asphalt Paving & Concrete against the Mortgaged Property. On June 26, 2026, a lawsuit was filed against Borrower in the Circuit Court of St. Louis County, Missouri, Case No. 26SL-CC04659 (the "Lawsuit") to enforce the Mechanic's Lien.

Pursuant to Section 11.02(a) of the Loan Agreement, Borrower is obligated to not permit the grant, creation, or existence of any lien or encumbrance on the Mortgaged Property and is required to remove, release, or bond off any lien within sixty (60) days after the earlier of the date Borrower has actual notice or constructive notice of the existence of such lien. Under the Loan Agreement, a granting, pledging, creating, or attachment of a lien constitutes a Transfer, and occurrence of any Transfer not permitted by the Loan Documents constitutes an automatic Event of Default pursuant to Section 14.01(a)(6) of the Loan Agreement.

Notice is hereby given that Borrower has failed to comply with its obligation to not permit the grant, creation, or existence of any lien or encumbrance on the Mortgaged Property pursuant to Section 11.02 of the Loan Agreement and failed to remove, release, or bond off the Mechanic's Lien within sixty (60) days after the earlier of the date Borrower had actual notice or constructive notice of the existence of the Mechanic's Lien as required by the Loan Documents. Such failure to remove, release, or bond off the Mechanic's Lien against the Mortgaged Property within sixty (60) days after notice constitutes a Transfer (the "Unauthorized Transfer") and an automatic "Event of Default" as defined in the Loan Documents, as applicable.

Pursuant to Section 3.02(b)(2) of the Loan Agreement, the Unauthorized Transfer and resulting default result in Borrower's personal liability for all amounts due and owing pursuant to the Loan Documents. Under Section 3 of the Guaranty of Non-Recourse Obligations dated September 6, 2024, executed by Moshe Mermelstein and Joseph Mermelstein in favor of Original Lender (the "Guaranty"), to the extent Borrower has triggered recourse, demand is hereby made of Mr. Moshe Mermelstein and Mr. Joseph Mermelstein for full payment of all amounts due under the Guaranty.

As you were notified in the Acceleration Notice, Fannie Mae has accelerated the outstanding principal indebtedness evidenced by the Note as a result of the occurrence and present continuation of such Event(s) of Default. A renewed and additional demand is hereby made for immediate payment in full of the entire unpaid principal balance of the Note, plus (to the extent lawful) accrued and unpaid interest thereon and the costs and attorneys' fees of Fannie Mae. As you were notified previously, to determine the exact payoff figure currently owing to Fannie Mae pursuant to the Note, Loan Agreement, and Guaranty, you may have your counsel contact me at the direct dial telephone number set forth above.

Please be advised that the Notice of Additional Event of Default is being given pursuant to the terms and provisions of the Loan Documents. By making this demand, Fannie Mae does not waive any of the rights and remedies available to Fannie Mae under the Loan Documents or otherwise. No failure to exercise such rights or remedies shall operate as a waiver of any rights which Fannie Mae may have pursuant to the terms of the Loan Documents or otherwise. Further, reference by Fannie Mae or Servicer to any event of default or default shall in no way constitute, or be construed to be, a waiver of any other event of default or default which may now exist or hereafter arise under the Loan Documents. This new Notice of Additional Event of Default does not extend or alter in any way any prior noticed timelines or obligations.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM



The Servicer's or Fannie Mae's acceptance of any payment under the Loan Documents will not be considered a waiver of any default or a novation, modification, or renewal of the Note. Notwithstanding the acceptance of any payments or any other amounts at any time by the Servicer, Fannie Mae does not waive any default which may exist under the Loan Documents. Furthermore, acceptance of any payment shall not act as a waiver of, or prevent Fannie Mae from exercising any right, remedy, or power available to Fannie Mae, including, without limitation, all rights, remedies, and powers granted under the Loan Documents and at law or in equity, all of which are expressly reserved.

UNDER THE SECURITY INSTRUMENT EXECUTED BY BORROWER, BORROWER'S LICENSE TO COLLECT RENTS HAS TERMINATED, AND FANNIE MAE, AS HOLDER OF THE SECURITY INSTRUMENT, IS NOW ENTITLED TO ALL RENTS AS THEY BECOME DUE AND PAYABLE, INCLUDING RENTS CURRENTLY DUE AND UNPAID. UNTIL FURTHER NOTICE, ANY RENTS BORROWER RECEIVED AFTER THE OCCURRENCE OF THE EVENT OF DEFAULT SHALL BE RECEIVED AND HELD BY BORROWER IN TRUST FOR THE BENEFIT OF FANNIE MAE. UNTIL FURTHER NOTICE, ALL SUCH RENTS SHALL BE APPLIED ONLY TO BONA FIDE CURRENT OPERATING EXPENSES TO THIRD PARTIES IN CONNECTION WITH THE OPERATION OF THE MORTGAGED PROPERTY WITH EXCESS PAID TO FANNIE MAE, TO BE APPLIED IN ACCORDANCE WITH THE LOAN DOCUMENTS.

Please be advised that any discussions that may have occurred or may occur in the future between representatives of the Borrower and Fannie Mae regarding the Mortgaged Property or the Loan constitute nothing more than the continuing good faith attempts of Fannie Mae to work out the existing problems in a manner reasonably acceptable to all parties. The Borrower may not rely upon any such discussions in any manner or fashion. Unless and until a binding, written agreement has been fully executed by and between all parties, Fannie Mae's rights and remedies are and will continue to be fully enforceable under the terms of the Loan Documents.

Notwithstanding any previous action or inaction by or on behalf of Fannie Mae or Servicer to the contrary, if any, you are hereby notified that Fannie Mae will hereafter require strict compliance with the terms and conditions of the Note and other Loan Documents, and Fannie Mae does not in any manner waive any rights or remedies available against Borrower pursuant to the Note or other Loan Documents or applicable law, including without limitation the rights described in this letter.

Your immediate attention to this matter is recommended.

Sincerely,

**Stinson LLP**

*/s/ Nick Zluticky*

Nicholas Zluticky

NZ:

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

| | | |
|---|---|---|
| **FANNIE MAE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **MCG KNOLLS LLC, a Missouri limited liability company,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**EMERGENCY MOTION FOR APPOINTMENT OF RECEIVER OF MCG KNOLLS LLC WITH SUPPORTING SUGGESTIONS**

Plaintiff Fannie Mae ("Fannie Mae") respectfully requests this Court grant Fannie Mae's emergency motion pursuant to Mo. Rev. Stat. § 515.510 (the "Motion") and enter an order appointing a receiver for MCG Knolls LLC (the "Borrower"). The immediate appointment of a receiver is critical to (i) protect and preserve the property that is the subject of this motion; (ii) afford Fannie Mae the contractual remedies to which it is entitled; (iii) give the receiver the opportunity to make the necessary repairs to the Knolls Townhomes (the "Apartments"); and (iv) maximize the value of assets for Fannie Mae. The Motion seeks immediate appointment of a general receiver over Borrower and its business operations pursuant to the terms of the proposed receivership order (the "Receivership Order"), which is attached hereto as **Exhibit 1**. Borrower has contractually agreed to the appointment of a receiver under the loan documents executed by Borrower in favor of Fannie Mae as set forth more fully herein.

**JURISDICTION**

1. Fannie Mae filed the Verified Petition (the "Petition")[1] against Borrower concurrently herewith.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Petition.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

2. This Court has jurisdiction to hear and determine this Motion pursuant to relevant law including, without limitation, section 515.510 of the Missouri Commercial Receivership Act (the "MCRA").

3. Pursuant to Mo. R. Civ. P. 54.13, Borrower may be served with process by serving its registered agent as follows: DBO Services, Inc., 222 E. Dunklin St., Suite 102, Jefferson City, MO 65101.

## BACKGROUND

4. Congress chartered Fannie Mae to facilitate the nationwide secondary residential mortgage market. *See* 12 U.S.C. § 1451. The Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654 (codified as 12 U.S.C. § 4511 *et seq.*), established the Federal Housing Finance Agency ("FHFA" or "Conservator") as Fannie Mae's primary regulator.

5. On September 6, 2008, pursuant to HERA, the Director of FHFA placed Fannie Mae into conservatorship, where it remains to this day. *See* 12 U.S.C. § 4617(a). As Conservator, FHFA succeeded to all Fannie Mae's rights, titles, powers, privileges, and assets. 12 U.S.C. § 4617(b)(2)(A)(i). FHFA, as Conservator, is statutorily empowered to preserve and conserve Fannie Mae's assets and property, to operate Fannie Mae, to perform all Fannie Mae's functions in Fannie Mae's name, and to collect all obligations and money due to Fannie Mae. 12 U.S.C. § 4617(b)(2)(B)(i)-(iv). Congress also mandated that "no court may take any action to restrain or affect the exercise of [FHFA's] powers or functions ... as a conservator." 12 U.S.C. § 4617(f). Because a receiver derives its authority from the Court, Section 4617(f) also precludes the receiver from restraining or affecting Conservator's exercise of its statutory powers and functions.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

6. FHFA has represented to Fannie Mae that FHFA supports the appointment of a receiver on the terms set forth on the proposed Order accompanying Fannie Mae's Motion. However, FHFA reserved its rights as to any other or different terms for the appointment of a receiver that has not been approved explicitly by FHFA in advance.

7. HERA provides that "[n]o property of [Conservator] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [Conservator], nor shall any involuntary lien attach to the property of [Conservator]. *See* 12 U.S.C. § 4617(j)(3). Therefore, federal law prohibits any action by a third-party that affects Fannie Mae's interest in the loan agreement, note or deed of trust owned by Fannie Mae or under which Fannie Mae is beneficiary.

8. As set forth in the Petition, and pursuant to the Loan Documents, Fannie Mae maintains a lien on certain real and personal property of Borrower, including a valid, perfected security interest in, and lien upon, all the Collateral.

9. The Collateral includes real property located at 3582 Pershall Road, Ferguson, Missouri 63135 (the "Real Estate") and personal property (the "Personal Property") more fully described in the Deed of Trust, a copy of which is attached as **Exhibit C** to the Petition.

10. Under the Deed of Trust, upon the occurrence of an event of default, Fannie Mae has the right to apply for the appointment of a receiver.

11. On April 15, 2025, Original Lender, as servicer, sent Borrower a notice of Borrower Failure to Provide Notice of a Casualty Event (the "Casualty Event ROR"), notifying Borrower that the failure to provide notice of the casualty or event of loss, failure to provide documentation related to the event of loss, and failure to remit insurance proceeds to Servicer may constitute an event of default under the Loan Documents and reserving all Fannie Mae's and Original Lender's rights.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

12. On September 17, 2025, Original Lender, as servicer, sent Borrower a notice of Evidence of Completion of Required Repairs, Replacements, or Restoration Not Received (the "Required Repairs ROR"), notifying Borrower that it had failed to provide satisfactory evidence of the completion of all or certain Required Repairs or Replacements (the "Required Repairs") within the time specified after the closing of the Loan, that this failure may constitute an event of default under the Loan Documents, and reserving all Fannie Mae's and Original Lender's rights regarding the Required Repairs.

13. On March 5, 2026, Original Lender, as servicer, sent Borrower a notice of Borrower Failure to Maintain the Mortgaged Property and Unauthorized Change in Property Management (the "Maintenance and Management ROR"), notifying Borrower that its failure to maintain the Mortgaged Property; failure to complete Required Repairs, Additional Lender Repairs, Replacements, Additional Lender Replacements, or Restoration; and failure to obtain Fannie Mae's consent prior to effectuating a change in the property management company may constitute events of default under the Loan Documents and reserving all Fannie Mae's and Original Lender's rights.

14. On May 18, 2026, Original Lender, as servicer, sent Borrower a Notice of Demand (the "PCA Demand"), notifying Borrower of its failure to maintain the Mortgaged Property pursuant to Section 6 of the Loan Agreement and demanding that Borrower perform, within the dates listed in the PCA Demand, the Additional Lender Repairs and Additional Lender Replacements (collectively, the "Additional Repairs") listed in the PCA Demand and provide evidence of completion to Fannie Mae and Original Lender. The PCA Demand also required that Borrower, within ten (10) days, deposit with Original Lender, on behalf of Fannie Mae, the amount of $585,128.00 to cover the costs of the Additional Reports (the "Deposit").

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

15. On July 13, 2026, counsel for Fannie Mae sent Borrower a Notice of Acceleration of Indebtedness and Demand for Payment (the "Demand"), notifying Borrower that the Defaults constituted Events of Default under the Loan Documents; that Borrower was in default under the Loan Documents; and that the indebtedness under the Note was accelerated and all amounts were immediately due and owing and demanded payment.

16. On or about August 13, 2026, following the occurrence and continuation of the Mechanic's Lien Default and the expiration of the Cure Period, counsel for Fannie Mae sent to Borrower a Notice of Additional Event of Default, Existing Acceleration of Indebtedness, and Demand for Payment (the "Mechanic's Lien Default Notice"), notifying Borrower that, inter alia, the creation of the Mechanic's Lien against the Mortgaged Property and Borrower's failure to remove, release, or bond off the Mechanic's Lien within the Cure Period constitutes an Event of Default as defined in the Loan Documents and the indebtedness under the Note remains accelerated and all amounts are immediately due and owing.

17. The Casualty Default, Required Repairs Default, Maintenance and Property Management Default, Repairs and Deposit Default, and Mechanic's Lien Default are collectively referred to as the "Defaults".

18. As of the date of this Motion, Borrower has failed to remedy the Defaults.

19. As of July 31, 2026, Borrower was indebted to Fannie Mae in the following amounts, plus all accruing interest, late charges, fees, costs, and attorneys' fees: $9,314,000.00 in principal, $61,055.86 in accrued interest, $391,631.44 in prepayment premium, $28,369.37 in insurance advance, plus $10,350.00 in expenses, less credits of $681,748.19, totaling $9,123,658.48, plus accruing interest thereafter (collectively, the "Indebtedness").

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

20. In the Deed of Trust, Borrower contractually agreed, upon an event of default, to the appointment of a receiver. An event of default exists under the Loan Documents for Borrower's failure to provide notice of the casualty or event of loss and turnover the insurance proceeds; failure to make the Required Repairs; failure to maintain the Mortgaged Property; failure to obtain Fannie Mae's consent prior to effectuating a change in management of the Mortgaged Property; failure to make the Additional Repairs; failure to pay amounts required under the Loan Documents; and failure to bond off, release, or otherwise remedy the Mechanic's Lien. These failures have interfered with Fannie Mae's interest in the Mortgaged Property and created hazardous conditions at the Apartments that are threatening to the health and safety of residents and guests. If the Required Repairs and Additional Repairs are not performed, the Apartment's value will be substantially reduced, and the Apartments will be significantly less marketable to a potential purchaser.

## REQUESTED RELIEF

21. By this Motion, Fannie Mae seeks an Order from this Court appointing Tarantino Properties, Inc. (the "Proposed Receiver") as receiver pursuant to the terms and conditions set forth in the proposed Receivership Order and under applicable law.

22. Pursuant to the MCRA, the Court has the power to appoint a receiver in several instances, including:

> (2) In an action in which the person seeking appointment of a receiver has a lien on or interest in property or its revenue-producing potential, and . . . (a) The appointment of a receiver with respect to the property or its revenue-producing potential is necessary to keep and preserve the property or its revenue-producing potential or to protect any business or business interest concerning the property or its revenue-producing potential[.]
>
> ***

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

> (12) Pursuant to the terms of a valid and enforceable contract or contract provision providing for the appointment of a receiver, other than pursuant to a contract or contract provision providing for the appointment of a receiver with respect to the primary residence of a debtor who is a natural person.

Mo. Rev. Stat. § 515.510.

23. Grounds exist under MCRA for the appointment of a receiver, including the following:

a. In the Deed of Trust, Borrower contractually agreed, upon an event of default, to the appointment of a receiver ex parte and to shortened time consideration of a motion to appoint a receiver. Deed of Trust at § 3(e). Missouri law permits the appointment of a receiver as a matter of right where the parties have contractually agreed to the appointment of a receiver. *MIF Realty v. Pickett*, 963 S.W.2d 308, 311 (Mo. Ct. App. 1997).

b. Fannie Mae has a valid, perfected security interest in the Collateral, and the appointment of a receiver is necessary to protect and preserve the Collateral from the mismanagement of the Borrower and prevent any future mismanagement, prevention of which is necessary to preserve or protect the Collateral and its revenue-producing potential.

c. A receiver would maximize the value of the creditors of the Borrower and give the Apartments its only chance of receiving the necessary Required Repairs, thereby giving the Apartments its only chance to retain its revenue-producing potential.

24. More specifically, Missouri law provides that a receiver should be appointed "when the court is satisfied that the appointment will promote the interests of one or both parties, that it will prevent manifest wrong, imminently impending, and that the injury resulting will not be greater than the injury sought to be averted." *Lynch v. Lynch*, 277 S.W.2d 692, 694 (Mo. App. 1955) (emphasis omitted).

25. Here, manifest wrong has already occurred and remains ongoing – the Apartments are in a state of disrepair and pose a safety concern to all residents and guests. This manifest wrong will only get worse, as the longer the Required Repairs and Additional Repairs remain unimproved, the more dangerous the Apartments become.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

26. The safety concerns at the Apartments drastically decrease the value of the Collateral, as it causes tenants to reconsider their living situations and decreases the marketability to potential purchasers of the Collateral.

27. Indeed, absent a Receiver, the Required Repairs and Additional Repairs will never be completed. Without completion of the Required Repairs and Additional Repairs, the Collateral falls further into a state of disrepair, posing serious safety concerns, decreasing the value and marketability of the Collateral and potentially displacing tenants on short notice.

28. The injury sought to be averted here – the disrepair of the Apartments, which pose a health and safety risk to all residents and guests – far outweighs any injury resulting from the appointment of a receiver. Accordingly, appointment of a Receiver is proper under Missouri law.

29. Fannie Mae proposes that the Proposed Receiver be appointed as receiver to manage Borrower and all or substantially all its assets, including the Collateral. The qualifications of the Proposed Receiver are set forth in the Proposed Receiver's affidavit, which is attached hereto as **Exhibit 2** ("Affidavit of Receiver") and is incorporated herein by reference.

30. In addition to the authority and powers of a general receiver pursuant to the Act, and as set forth in the Receivership Order, Fannie Mae requests this Court grant the Receiver the authority and power to:

a. Establish and adopt bidding and auction sale procedures for the sale of Receivership Property, as the Receiver deems advisable or necessary, subject to Fannie Mae's prior written agreement and consent, without further order of this Court;

b. Borrow and incur secured debt in the ordinary course of preserving and liquidating Receivership Property, with liens attaching to sale proceeds of Receivership Property on a super-priority basis, without further order of this Court, provided (i) such secured debt may only be advanced by Fannie Mae, in Fannie Mae's sole discretion, and such amounts incurred may, among other things, consist of over advances by Fannie Mae under the Loan Documents; and (ii) to the extent such secured debt is incurred, the Receiver shall provide an account on a monthly basis of amounts incurred; and

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

c. Employ professionals as the Receiver deems advisable or necessary, including accountants, attorneys, investment bankers, and similar professionals ("Professionals"). Provided, however, employment of any Professionals is subject to Fannie Mae's prior written agreement and consent and all terms and conditions set forth in the Receivership Order.

31. The Proposed Receiver has not been found guilty of a felony or other crime involving moral turpitude and is not controlled by a person who has been convicted of a felony or other crime involving moral turpitude.

32. The Proposed Receiver is not a party to the action, a parent, grandparent, grandchild, sibling, director, officer, agent, attorney, employee, secured or unsecured creditor or lienor of, or holder of any equity interest in, or controls or is controlled by Borrower, or is the agent, affiliate, or attorney of any of the forgoing.

33. The Proposed Receiver does not have an interest materially adverse to the interests of persons to be affected by the proposed receivership generally.

34. The Proposed Receiver is not a sheriff of any county.

35. The Proposed Receiver has executed the oath stating that it shall well, truthfully, and faithfully, discharge its duties as receiver and obey all orders of the Court. The oath is attached hereto as **Exhibit 3**.

36. Fannie Mae filed the proposed Receivership Order contemporaneously with this Motion. As set forth in the Receivership Order, the Proposed Receiver proposes to charge an hourly fee to be set by the Court upon agreement by Fannie Mae and the Receiver, subject to Notice and a Hearing, plus reasonable out-of-pocket expenses.

37. For purposes of the MCRA, the requested receivership would be considered a general receivership.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

38. Fannie Mae also requests this Court approve the Proposed Receiver's bond in the amount of $120,000.00, which is equal to approximately one month of rents for the Receivership Property..

**NOTICE**

39. Generally, MCRA § 515.510.3 requires seven (7) days' notice of the motion for appointment of a receiver to a debtor and to all other parties to the action and to all other parties in interest as the Court may require. Pursuant to MCRA, the Court may shorten this period of notice upon good cause shown.

40. Given that Borrower, in the Deed of Trust, expressly consented to the appointment of a receiver *ex parte* and to shortened time consideration of a motion to appoint a receiver, Fannie Mae is contractually entitled under Missouri law to the emergency appointment of a receiver. Deed of Trust, Section 3(e).

41. Furthermore, good cause exists to eliminate the notice period and immediately enter into the Receivership Order because of the need to (i) remedy the health and safety concerns and to maintain and preserve the Collateral in light of the Borrower's failure to perform the Required Repairs and Additional Repairs; (ii) facilitate sale transactions; and (iii) maximize the value of assets to be sold.

42. Without the emergency appointment of a receiver, the Required Repairs and Additional Repairs will likely never be performed, posing health and safety hazards to residents and guests, causing the Apartments to fall into a further state of disrepair, thereby substantially reducing the Collateral's value and making it significantly less marketable to any potential purchaser.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

43. Also, Parties in Interest have the ability to petition the Court to modify the Receivership Order for good cause shown. Fannie Mae intends to serve notice of the hearing on this Motion, if any, and the Receivership Order on all required parties and will file the necessary proof of service with the Court.

Respectfully Submitted,

STINSON LLP

By: */s/ Nicholas Zluticky*
Nicholas J. Zluticky MO # 61203
Zachary H. Hemenway MO #59670
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Telephone: (816) 691-3278
Facsimile: (816) 691-3495
nicholas.zluticky@stinson.com
zachary.hemenway@stinson.com

ATTORNEYS FOR PLAINTIFF

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was sent, this 19th day of August, via fed-ex overnight to the following:

MCG Knolls LLC
150 James Street, Ste 209A
Lakewood, NJ 08701

MCG Knolls LLC
c/o DBO Services Inc., Registered Agent
222 E. Dunklin St., Ste 102
Jefferson City, MO 65101

Moshe Mermelstein
104 Elm Street
Lakewood, NJ 08701

Joseph Mermelstein
1765 53rd Street
Brooklyn, NY 11204

*/s/ Nicholas Zluticky*
ATTORNEY FOR PLAINTIFF

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT 1

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

| | | |
|---|---|---|
| **FANNIE MAE,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.** |
| **MCG KNOLLS LLC, a Missouri limited liability company,** | ) | |
| **Defendant.** | ) | |

**ORDER FOR APPOINTMENT OF RECEIVER**

On August 19, 2026 (the "Petition Date"), Plaintiff Fannie Mae ("Fannie Mae") filed an Emergency Motion for Appointment of Receiver against defendant MCG Knolls LLC (the "Borrower"), with Supporting Suggestions (the "Motion"), pursuant to Mo. Rev. Stat. § 515.510. After reviewing the Motion, Verified Petition, supporting exhibits, provisions of the Missouri Commercial Receivership Act (the "Act"), and for good cause shown, the Court finds that it has jurisdiction over the parties, the subject matter, and the Receivership Property (as defined herein); the legal prerequisites for the appointment of a receiver have been met; and that equity will be served by the appointment of a receiver. The Court further finds that Tarantino Properties, Inc. is qualified to serve as a receiver and has signed the necessary Oath. The Receiver's bond is approved and determined to be One Hundred Twenty Thousand and No/100 Dollars ($120,000.00) This Order is effective immediately upon entry.

Therefore, it is hereby ORDERED that Tarantino Properties, Inc.. be, and hereby is, appointed to be the general receiver ("Receiver") of Borrower, pursuant to Mo. Rev. Stat. § 515.510 and Mo. Sup. Ct. R. 68.02, to serve with bond. Said Receiver shall take such action as in the best interests of Fannie Mae and other creditors and parties in interest with respect to the

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Receivership Property (defined below). In addition, and with respect to taking over the affairs of Borrower with respect to the Receivership Property:

**A. Definitions, Receivership Property, and Bond.**

1. Definitions. Capitalized terms used in this Order and not otherwise defined herein shall have the meanings given to them in the Motion. Additionally, for purposes of this Order:

a. The term "Claim" means a right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

b. The term "Creditor" means a person that has a claim against the Borrower that arose at the time of or before the Petition Date.

c. The term "Income" means, collectively, all cash, cash on hand, checks, drafts, cash equivalents, credit card receipts, demand deposit accounts, bank accounts, cash management or other financial accounts, bank or other deposits, and all other cash collateral (all whether now existing or later arising) to the extent related to the Real Property or business operations of the Borrower; current and past-due earnings, revenues, rents, issues and profits, accounts, and accounts receivable (all whether unpaid, accrued, due, or to become due) related to the Real Property or business operations of the Borrower; all claims to rent, issues, profits, income, cash collateral, and all other gross income derived with respect to the Real Property or business operations of the Borrower regardless of whether earned before or after entry of this Order.

d. The term "Notice and a Hearing" means such notice as is appropriate and an opportunity for hearing if one is requested. Absent request for hearing by an appropriate person or Party In Interest, the term notice and a hearing does not indicate a requirement for an actual hearing unless the Court so orders.

e. The term "Party" means a person who is a party to this action, becomes a party to this action, or shall be joined or shall be allowed to intervene in the action pursuant to the rules of the Missouri Supreme Court including, without limitation, any person needed for just adjudication of the action.

f. The term "Party in Interest" means the Borrower, any Party, the Receiver, any person with an ownership interest in or lien against Receivership Property or property sought to become Receivership Property, any person that, with respect

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

to particular matters presented in the receivership, has an interest that will be affected, and any Creditor of the Borrower.

g. The term "Real Property" means the real property identified on **Exhibit A** to this Order.

h. The term "Receivership" means the estate created pursuant to the Act and this Order, including all Receivership Property and the interests, rights, powers, and duties of the Receiver and all Parties In Interest relating to Receivership Property.

i. The term "Receivership Action" means the current action commenced by filing the Verified Petition.

j. The term "Receivership Property" means and includes any right, title, and interest of Borrower, whether legal or equitable, tangible or intangible, in real and personal property, wherever located, regardless of the manner by which such rights were or are acquired including, without limitation:

   i. All assets, facilities, and offices of the borrower together with all records, correspondence, and books of account;

   ii. The Real Property;

   iii. All tangible and intangible property used or usable in connection with the operations of the borrower including, without limitation, equipment, furniture, insurance premium refunds, insurance proceeds, condemnation awards, utility deposits and deposits of every other kind related thereto, causes of action, drawings, plans, specifications, escrow agreements, and all cash on hand, bank accounts, credit card receipts, bank deposits, security deposits and other cash collateral;

   iv. All Income;

   v. Any refund or reimbursement of taxes, whether for taxes paid by the Receiver or the Borrower, and whether pertaining to any tax period before or after the entry of this Order, and the right to institute or continue any contest, protest, or appeal of any ad valorem tax or assessment, real estate tax, personal property tax, or other tax or assessment pertaining to the Receivership Property;

   vi. All fixtures, trade fixtures, and tenant improvements of every kind or nature located in or upon or attached to, or used or intended to be used in connection with the operation of the Borrower and any buildings, structures or improvements (to the full extent of the Borrower's interest in such);

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

vii. All permits, licenses, other contracts, and other intangible property pertaining to the borrower;

viii. All intellectual property of the borrower including, without limitation, all patents, trade names and trademarks owned or used by the borrower and any trade secrets;

ix. All books, records, accounts, and documents that in any way related to the borrower, the Real Property or Income;

x. All other property, estate, right, title and interest as described in loan documents by and among the Borrower and Fannie Mae; and

xi. For the avoidance of doubt, and without limiting any of the foregoing, Receivership Property includes any right, title, and interest of the borrower, whether legal or equitable, tangible, or intangible, in personal property located in St. Louis County, Missouri.

k. Rules of Construction. In this Order:

i. "Includes" and "including" are not limiting;

ii. "may not" is prohibitive, and not permissive;

iii. "or" is not exclusive; and

iv. The singular includes the plural.

2. Surety Bond. Promptly after entry of this Order, the Receiver shall execute a bond with one or more sureties approved by the Court in the amount of One Hundred Twenty Thousand and No/100 Dollars ($120,000.00) conditioned on the Receiver faithfully discharging his duties in accordance with this Court's orders and state law (the "Receiver Bond"). This bond runs in favor of all persons having an interest in this Receivership Action or Receivership Property and in favor of State agencies.

3. Receiver Bond: The cost of the Receiver Bond and any renewals or extensions thereof shall not be an expense of the Receivership Estate paid from estate funds.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

4. Control of Receivership Property. Effective as of the Petition Date, the Receiver is hereby authorized to immediately enter upon, receive, recover, and take complete, entire, and exclusive possession and control of the Receivership Property until further Order of the court.

5. Turnover of Receivership Property. Upon demand by the Receiver, any person, including the Borrower, shall turn over Receivership Property that is within the possession or control of that person unless otherwise provided for in this Order or ordered by the Court for good cause shown. The Receiver by motion may seek to compel turnover of Receivership Property pursuant to this Order against any person over which the Court first establishes jurisdiction, unless there exists a *bona fide* dispute with respect to the existence or nature of the Receiver's possessory interest in the Receivership Property, in which case turnover shall be sought by means of a legal action. In the absence of a *bona fide* dispute with respect to the Receiver's right to possession of the Receivership Property, the failure to relinquish possession and control to the Receiver shall be punishable as contempt of the Court. Should the Court, after Notice and Hearing, order the turnover of property to the Receiver (the "Turnover Order"), the party against which such order is made shall have the right to deliver a bond executed by such party, as principal together with one or more sufficient sureties, providing that the principal and each such surety shall each be bound to the Receiver in double the amount of the value of the property to be turned over, should the property not be turned over to the Receiver when such order becomes final. Absent such bond, the property ordered to be turned over to the Receiver shall be turned over to the Receiver within ten (10) days after entry of the Turnover Order.

**B. General Powers and Duties**

6. Preservation of Fannie Mae's and Conservator's Rights. Notwithstanding any other term of this Order, Fannie Mae and FHFA, as Conservator of Fannie Mae, retain and may exercise

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

without further Court approval any and all of their rights under the Loan Documents and HERA. The Receiver's powers as set forth in this Order do not in any way diminish Fannie Mae's rights under the Loan Documents or FHFA's rights, powers, and functions as Fannie Mae's Conservator and successor under HERA.

7. Powers and Duties of Receiver. The Receiver shall be vested with all the powers and responsibilities of a receiver as provided in this Order, subject to the rights, titles, powers, privileges, and functions of FHFA under HERA. FHFA retains all its federal powers and functions including the right to assert such powers and protections to preclude the Receiver and the receivership from restraining or affecting the Conservator powers or functions as to Fannie Mae's interests at issue herein.

8. Additional Powers of Receiver: Subject to Fannie Mae and FHFA's rights and powers under this Order and HERA, the Receiver is hereby vested with any and all authority necessary or appropriate to carry out the intent and purpose of this Order, and to operate and maintain the Property and the Receivership Estate.

9. Receiver's Powers. Subject to Paragraphs 5 and 6, the Receiver shall have the usual powers vested, conferred, enjoyed, and exercised by receivers according to the practice of this Court, the Act, and other statutes of this State including, without limitation, the following:

a. To operate the business of the Borrower and manage the Receivership Property;

b. To incur or pay expenses incidental to the Receiver's preservation and use of Receivership Property, and otherwise in the performance of the Receiver's duties, including the power to pay obligations incurred prior to the Receiver's appointment if and to the extent that payment is determined by the Receiver to be prudent in order to preserve the value of the Receivership Property and the funds used for this purpose are not subject to any lien or right of setoff in favor of a creditor who has not consented to the payment and whose interest is not otherwise adequately protected;

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

c. To pay installments of principal and interest due on existing encumbrances on the Real Property, fixtures, machinery and equipment constituting part of the fixed assets of the Receivership Property;

d. To do all the things which the Borrower may do in the exercise of ordinary business judgment or in the ordinary course of the operation and use of the Receivership Property including, without limitation, the purchase and sale of goods or services in the ordinary course of such business and the incurring and payment of expenses of the business or property in the ordinary course;

e. The Receiver shall be vested with, and is authorized and empowered to exercise, all the powers of Borrower, its officers, directors, shareholders, and general partners or persons who exercise similar powers and perform similar duties, including without limitation the sole authority and power to file a voluntary petition under Title 11 of the United States Code;

f. To assert any rights, claims, or choses in action of the Borrower, if and to the extent that the rights, claims or choses in action are themselves property within the scope of the appointment or relate to any Receivership Property, to maintain in the Receiver's name or in the name of the borrower any action to enforce any right, claim, or chose in action, and to intervene in actions in which the Borrower is a party for the purpose of exercising the powers under this subsection;

g. To borrow and incur secured debt in the ordinary course of preserving and liquidating Receivership Property, with liens attaching to sale proceeds of Receivership Property on a super-priority basis, without further order of this Court, provided (i) such secured debt may only be advanced by Fannie Mae, in Fannie Mae's sole discretion, and such amounts incurred may, among other things, consist of over advances by Fannie Mae under the Loan Documents; and (ii) to the extent such secured debt is incurred, the Receiver shall provide an account on a monthly basis of amounts incurred;

h. To intervene in any action in which a Claim is asserted against the Borrower and that impacts the Receivership Property, for the purpose of prosecuting or defending the claim and requesting the transfer of venue of the action to this Court. The Court, however, shall not transfer actions in which a State agency is a party and as to which a statute expressly vests jurisdiction or venue elsewhere;

i. To assert rights, claims or choses in action of the Receiver arising out of transactions in which the Receiver is a participant;

j. To seek and obtain advice or instruction from the Court with respect to any course of action with respect to which the Receiver is uncertain in the exercise of the Receiver's powers or the discharge of the Receiver's duties;

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

k. To obtain appraisals and environmental reports with respect to Receivership Property;

l. To compel by subpoena any person to submit to an examination under oath, in the manner of a deposition in accordance with Rule 57.03 of the Missouri Rules of Civil Procedure, with respect to Receivership Property or any other matter that may affect the administration of the Receiverships;

m. To use, sell, or lease Receivership Property other than in the ordinary course of business pursuant to provisions of this Order or subsequent orders of this Court and to execute in the Borrower's stead such documents, conveyances, and borrower consents as may be required in connection therewith;

n. To assume, reject, or assign executory contracts and unexpired leases pursuant to the provisions of this Order or subsequent orders of this Court;

o. Subject to the prior written agreement and consent of Fannie Mae, establish and adopt bidding and auction sale procedures for the sale or Receivership Property, as the Receiver deems advisable or necessary, without further order of this Court; and

p. Subject to the prior written agreement and consent of Fannie Mae, designate and pay critical vendors, without further order of this Court.

10. Limitation of Receiver's Powers. The Receiver shall not:

a. Enter any transactions that are not in the ordinary course of the Borrower's business or otherwise authorized in this Order without Court approval and the prior written agreement and consent of Fannie Mae; and

b. Pay any Claims that arose prior to the Petition Date without Court approval and the prior written agreement and consent of Fannie Mae.

11. Receiver's Duties. The Receiver shall have the following duties;

a. The duty to notify all Federal and State taxing and applicable regulatory agencies of the Receiver's appointment in accordance with any applicable laws imposing this duty, including but not limited to 26 U.S.C. § 6036;

b. The duty to comply with State law;

c. The duty to record as soon as practicable within the land records in any county in which such real property may be situated a notice of *lis pendens* as provided in section Mo. Rev. Stat. 527.260, together with a certified copy of this Order, together with a legal description of the Real Property;

d. The Receiver shall retain custody of all such records and documents pending the final determination of this proceeding, or until further order of the Court;

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

e. The Receiver shall immediately enter into discussions with Fannie Mae concerning the use of cash collateral and/or funding for this Receivership Action and other actions taken in this case, pursuant to a budget as set forth herein; and

f. Other duties as may be required specifically by statute, court rule, this Order, the Act, or by the Court.

12. Insurance.

a. All existing insurance relating to the operation and management of the Receivership Property including, without limitation, fire, extended coverage, property damage, general and professional liability, and workers' compensation shall remain in effect, and Borrower and third parties with notice of this Order shall cooperate with the Receiver and any third parties engaged by the Receiver in the performance of the Receiver's duties set forth herein in their efforts regarding such insurance including making sure that Fannie Mae is named as an insured or additional insured. The Receiver shall be named as additional insured on all such policies. Any renewals shall be the responsibility of the Receiver.

b. Separate from Insurance on Property, the Receiver shall, at its sole cost and expense, obtain and carry in full force and effect for Receiver and its employees (collectively "Receiver") insurance coverages for (1) professional liability/errors and omissions and (2) fidelity/crime. Such professional liability/errors and omissions coverage will have a minimum per claim coverage amount of $5 million and fidelity/crime coverage will have a minimum per claim coverage amount equal to the greater of $1 million per claim or four months of revenue using the agreed budget for the property (collectively these coverages are referred to as "Receiver's Business Insurance"). To the extent the Receiver engages agents, attorneys, or contractors to provide services, those entities must also have appropriate coverages for the services to be performed as determined by the Receiver. Fannie Mae and FHFA shall be named as additional insureds on the Receiver's Business Insurance. Each insurance carrier providing Receiver's Business Insurance, whether admitted or non-admitted, must comply with a minimum (1) A. M. Best Financial Strength Rating of A- and (2) A.M. Best Financial Size Category of VII or better. The maximum deductible or self-insured retention or any combination thereof for each coverage shall be no more than $25,000. The premiums for insurance policies and deductibles for all Receiver Business Insurance shall not be expenses of the Receivership estate. The Receiver will, upon appointment, provide certificates to Fannie Mae evidencing insurance coverages, and thereafter, upon Fannie Mae's request. The Receiver will promptly notify Fannie Mae of any material change in insurance coverages.

**C. Borrower's Duties and Prohibitions**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

13. Borrower's Duties. The Borrower shall:

a. Within fourteen (14) days of the appointment of the Receiver, make available for inspection by the Receiver during normal business hours all information and data required to be filed with the Court pursuant to the Act and this Order, in the form and manner the same are maintained in the ordinary course of the Borrower's business;

b. Assist and cooperate fully with the Receiver in the administration of the Receivership and the discharge of the Receiver's duties and comply with all orders of this Court;

c. Supply to the Receiver information necessary to enable the Receiver to complete any schedules or reports that the Receiver may be required to file with the Court, including, but not limited to, borrower's organizational documents and all licenses or certifications issued to borrower by any local, state or federal authority, and otherwise assist the Receiver in the completion of such schedules;

d. Deliver into the Receiver's possession all Receivership Property in the borrower's possession, custody, or control including, without limitation, all accounts, books, papers, records, and other documents, monies, property, books of account, keys, assets, records, documents, rent rolls, bank accounts, access codes, passwords, security deposits, petty cash fund, current aged account receivable/delinquency report, notices of any local, state and federal health, building, or any violations, a list of all litigation by or against the Borrower, list of utilities and utility accounts, equipment, furniture, vehicles and supplies, all existing service contracts, pending bids for contractor work, all insurance policies for the Receivership Property, surveys, site plans, specifications, floor plans, drawings, measurements and the like, all documents, books and records, computer files and computer equipment, software, management files and passwords needed to access all software and computer files including, but not limited to, email accounts maintained at the on-site management office(s) (and all off-site financial records) including all records relating to the income, operation, and management of the Receivership Property, all such other records pertaining to the management of the Receivership Property as may be reasonably required by the Receiver and other personal property in its possession, custody, or control pertaining to the Receivership Property; and

e. Submit to examination by the Receiver, Fannie Mae, or by any other person upon order the Court, under oath, concerning the acts, conduct, property, liabilities, and financial condition of the Borrower or any matter relating to the Receiver's administration of the Receivership.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

The Borrower's officers, directors, managers, members, partners, or other individuals exercising or having the power to exercise control over the affairs of the Borrower are subject to the requirements of this section of the Order.

14. No Authority to Act. Borrower and its agents, servants, employees, representatives, attorneys, officers, directors, managers, members, partners, or other individuals exercising or having the power to exercise control over the affairs of the Borrower are hereby enjoined from exercising any and all the powers of Borrower, its officers, directors, shareholders, and general partners or persons who exercise similar powers and perform similar duties, including without limitation the authority and power to file a voluntary petition under Title 11 of the United States Code. Effective as of the date of this Order, any current officer, director, manager, member, partner, or other individuals exercising or having the power to exercise control over the affairs of the Borrower are hereby removed from such positions at the Borrower and, from and after the date of this Order, and subject to further order of the Court, the Receiver shall be deemed the sole person with authority to take any corporate actions on behalf of the Borrower. For the avoidance of doubt, no person or entity other than the Receiver shall have the authority and power to file a voluntary petition for the Borrower under Title 11 of the United States Code;

15. Prohibitions. Borrower and its agents, servants, employees, representatives, attorneys, officers, directors, managers, members, partners, or other individuals exercising or having the power to exercise control over the affairs of the Borrower are hereby enjoined from:

a. Collecting or attempting to collect Income and are hereby further directed to deliver to the Receiver all Income that has or may come into its possession; and

b. Interfering in any manner whatsoever with the Receiver in the performance of his responsibilities and duties under this Order.

**D. Budget and Reporting.**

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

16. Budget. Upon request of Fannie Mae or further order of the Court, the Receiver shall prepare a budget with respect to the payment of the various administrative expenses of the Receivership (the "Budget"). The Receiver shall provide the Court and Fannie Mae a proposed Budget within fourteen (14) days from the date of request or entry of such further order, upon which Fannie Mae's prior written agreement and consent shall be required. Budgets thereafter shall be prepared pursuant to further request of either Fannie Mae or order of the Court and are subject to Fannie Mae's prior written agreement and consent. The Receiver shall operate within the terms of the Budget with revenues from the Receivership Property as may be, but shall not be required, supplemented by additional funds provided by Fannie Mae in its sole and absolute discretion.

17. Reports and Schedules. Upon further order of the Court, the Receiver shall file such additional schedules, reports of assets, liabilities, or inventories that are necessary and proper. Whenever a list or schedule required pursuant to this Order is not prepared and filed by the Borrower, the Receiver shall prepare and file such list or schedule within a time fixed by the Court. The Court may approve reimbursement of the reasonable cost in complying with such order as an administrative expense.

**E. Utilities.**

18. A public utility, as defined in Mo. Rev. Stat. § 386.020, providing service to the Receivership Property, many not alter, refuse, or discontinue service to the Receivership Property without first giving the Receiver fifteen (15) days' notice, or such other notice as may be required by the rules of the public service commission for a customer of that class, of any default or intention to alter, refuse, or discontinue service to the Receivership Property. Nothing in this Order prohibits the Court, upon motion by the Receiver, to prohibit the alteration or cessation of utility

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

service if the Receiver can furnish adequate assurance of payment in the form of deposit or other security for service to be provided after entry of this Order.

**F. Claims, Defenses, and Judicial Immunity.**

19. Assertion of Claims. The Receiver shall use reasonable efforts to collect the legally enforceable accounts receivable, rents, causes of action, and other obligations owing to the Borrower (the "Obligations"), shall bring, or intervene in, an action or actions, if necessary, to collect the Obligations, and shall use reasonable efforts to settle and compromise any of the Obligations whenever the Receiver shall deem it advisable to do so, on such terms and conditions as appear to the Receiver to be justifiable, all of which shall be subject to the prior written agreement and consent of Fannie Mae. All such actions shall be brought in this Court, unless otherwise so directed or required by law. The Receiver shall not be entitled to settle and/or compromise any causes of action or other claims the Borrower has or may have against Fannie Mae or the Receiver without Court approval and notice to the borrower. All such actions shall be brought in this Court, unless otherwise so directed.

20. Litigation. The Receiver is authorized to initiate, defend, negotiate, settle, or otherwise dispose of any claim or litigation that concerns the Property or the Receivership Estate subject to Fannie Mae's approval to the extent such settlement shall affect Fannie Mae's security interests in the Property and all related Fannie Mae interests thereto.

21. Judicial Immunity. The Receiver, his agents, assistants, Professionals (as defined below, representatives, and each of their respective staffs shall enjoy judicial immunity for acts and omissions arising out of and performed in connection with the Receiver's official duties on behalf of the Court and with the scope of the Receiver's appointment except for claims due to their gross negligence, gross or willful misconduct, malicious acts, or the failure to comply with this

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Court's orders. The Receiver, his agents, assistants, Professionals (as defined below, representatives, and each of their respective staffs shall have no personal liability in connection with any liabilities, obligations, liens, or amounts owed to any of the Borrower's Creditors or to the Borrower because of their duties as Receiver or representative of the Receiver.

22. Liability of Receiver. Any liability incurred by, or recourse against, the Receiver other than for gross negligence, willful misconduct, malfeasance, bad faith, reckless disregard of duties, or actions in violation of orders of this Court, will be limited in order of priority first to applicable insurance coverages inuring to the Property and to the Receiver (including its employees, agents, attorneys, other professional, or contractors), second to the Receiver Bond, and third to the Income generated by the Property and received by Receiver in the course of the Receivership. Any claims or actions asserting liability against the Receiver, or the Receiver's agents, employees, attorneys, other professionals, and contractors shall be brought by motion in this action. For the avoidance of doubt, the Receiver, and the agents, employees, attorneys, and contractors of Receiver shall have personal liability for gross negligence, willful misconduct, malfeasance, bad faith, reckless disregard of duties, and actions in violation of this Court's orders.

**G. Compensation and Employment of Management Personnel and Professionals.**

23. Receiver's Compensation. The Receiver's compensation shall be set by the Court upon agreement by Fannie Mae and the Receiver, subject to Notice and a Hearing. In addition to the hourly rate, the Receiver shall be entitled to the reimbursement of reasonable out-of-pocket expenses, subject to Fannie Mae's prior written agreement and consent. The Receiver's compensation shall be subject to the Court's review and approval. The Receiver shall file with the Court and serve on the parties periodic requests for payment of such reasonable compensation.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

24. Management Personnel. By this Order, the Receiver is authorized and empowered, without further leave of the Court, to employ any assistants, agents, managers, or other persons and entities, including but not limited to employees, officers, directors, and owners of Borrower, deemed necessary and proper to assist the Receiver in diligently executing the duties imposed by this Order including, but not limited to, managing, insuring, maintaining, preserving, and protecting the Receivership Property that is in the possession or under the care and control of the Receiver (collectively, the "Management Personnel"), upon such terms and conditions as the Receiver deems just and beneficial to the performance of his duties; provided, however, that any management agreement and the compensation to be paid thereunder shall as also be subject to the prior agreement and consent of Fannie Mae. The Receiver shall pay the Management Personnel such compensation for their services as the Receiver deems to be proper, subject to Fannie Mae's prior written agreement and consent. Any such payments, however, which are not in the ordinary course of the Receiver's business, shall also be subject to Court approval.

25. Professionals. The Receiver is authorized and empowered to employ accountants, attorneys, investment bankers, brokers, and similar professionals (collectively, the "Professionals") as the Receiver may from time to time deem appropriate and on such terms as the Receiver deems appropriate, subject to Fannie Mae's prior written agreement and consent. The Receiver's and Professionals' compensation shall be subject to the Court's review and approval. The Professionals shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation.

26. Source of Compensation. The Receiver, Management Personnel, and Professionals shall maintain detailed time records reflecting the compensation to be paid. The fees and expenses for the Receiver, Management Personnel, and Professionals shall be paid from secured debt

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

borrowed from Fannie Mae. Notwithstanding anything to the contrary contained herein, the fees and expenses paid pursuant to this Order shall be outlined in the Receiver's monthly operating report to the Court.

27. Receiver Certificates and Receiver Liens. The Receiver must obtain Fannie Mae and FHFA approvals prior to seeking court approval to assert any Receiver's certificates or liens. Any and all Receiver's certificates or Receiver's liens shall be subordinate to any interests of Fannie Mae under the applicable Loan Documents.

**H. Abandonment, Sale, Executory Contracts/Unexpired Leases and Surcharge**

28. Abandonment of Receivership Property. The Receiver or any party to the Receivership Action, upon order to the Court following Notice and hearing and upon the terms and conditions the Court considers just and proper, may abandon any Receivership Property that is burdensome to the Receiver. However, the Receiver may not abandon Receivership Property that is a hazard or potential hazard to the public in contravention of a State statute or rule that is reasonably designed to protect the public health or safety from identified hazards. Property that is abandoned no longer constitutes Receivership Property.

29. Bidding and Sale Auction Procedures. Subject to Fannie Mae's prior written agreement and consent, the Receiver is authorized and empowered to establish and adopt bidding and auction sale procedures for the sale of the Receivership Property, as the Receiver deems advisable or necessary, without further order of this Court.

30. Sale of Receivership Property. The Receiver may market and sell all or any portion of the Receivership Property upon the prior written agreement and consent of Fannie Mae; provided however, that any such sale or contract(s) for sale shall be subject to Court approval and notice to those parties with an interest in such property. Subject to the aforementioned conditions,

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

the Receiver shall have the authority with respect to the sale of Receivership Property to do and perform all and every act desirable, proper, or necessary with respect to the Receivership Property including, without limitation, the authority to execute and deliver deeds of conveyance and all other documents necessary or desirable to transfer the Receivership Property, all on behalf of and in the name of the Borrower.

31. Executory Contracts and Unexpired Leases. The Receiver may assume, reject, or assign any executory contract or unexpired lease of the Borrower upon further order of this Court following Notice and a Hearing, which shall include notice to any party to the executory contract or unexpired lease to be assumed, rejected, or assigned. The Court may condition assumption, rejection, or assignment of any executory contract or unexpired lease on the terms and conditions the Court believes are just and proper under the particular circumstances of the action and to the extent allowed by applicable law. The Receiver's performance of an executory contract or unexpired lease prior to this Court's authorization of its assumption or rejection shall not constitute an assumption of the executory contract or unexpired lease, or an agreement by the Receiver to assume it, nor otherwise preclude the Receiver thereafter from seeking this Court's authority to reject it. The Receiver may not assign an executory contract or unexpired lease without assuming it, absent the consent of the other parties to the contract or lease.

32. Surcharge. Any secured creditor that is duly perfected under applicable law shall receive the proceeds from the disposition of Receivership Property that secures its Claim. However, the Receiver may recover from Receivership Property secured by a lien or the proceeds thereof the reasonably necessary expenses of preserving, protecting, or disposing of the Receivership Property to the extent of any benefit to a duly perfected secured creditor. Duly

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

perfected secured Claims shall be paid from the proceeds in accordance with their respective priorities under otherwise applicable law.

**I. Binding Nature of Orders and Notice**

33. Binding Nature. Creditors and Parties in Interest who are given notice as provided in this Order and Creditors or persons otherwise appearing and participating in the Receivership shall be bound by the actions of the Receiver and the orders of this Court relating to the Receivership, whether or not the person is a Party.

34. General Notice of Receivership Action. Within fourteen (14) days after entry of this Order, the Receiver shall give notice of the appointment to all Parties in Interest, including the Secretary of State for the State of Missouri, and State and Federal taxing authorities. Such notice shall be made by first class mail and proof of service thereof shall be filed by the Court. the content of such notice shall include: (a) the caption reflecting this action; (b) the date this action was filed; (c) the date the Receiver was appointed; (d) the name, address, and contact information of the Receiver; (e) the general description of the Receivership Property; (f) Borrower's name and address, and, if known, the name and address of the Borrower's attorney; (g) the Court's address at which pleadings, motions, or other papers may be filed; and (h) a copy of this Order.

35. Stay Pursuant to the Act. The automatic stay provided by the Act shall be in full force and effect from the Petition Date. In addition, good causes exists to extend the automatic stay in the Act an additional sixty (60) days, for a stay of a total of one hundred twenty (120) days from the Petition Date (the "Stay Period"). For good cause shown, the Stay Period may be extended pursuant to the Act. Notwithstanding the foregoing, the automatic stay by the Act shall not apply to any foreclosure on the Receivership Property by or at the direction of Fannie Mae and, to the extent that the automatic stay applies, the Court hereby grants Fannie Mae relief from the automatic

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

stay for the limited purpose of conducting a foreclosure on the Receivership Property. For the avoidance of doubt, this Order shall stay all pending litigation against the Borrower or the Receivership Property, including, without limitation, any mechanic's lien actions that either have been brought or could have been brought against the Borrower or the Receivership Property.

36. Borrower Cooperation. Borrower shall cooperate with all reasonable requests for information from the Receiver for purposes of assisting the Receiver in providing notice required by this Order. The failure of the borrower to cooperate with any reasonable request for information may be punished as a contempt of court.

37. Notice Procedures.

a. Creditors and Parties in Interest have a right to Notice and a Hearing as provided in this Order whether or not the person is a Party to the Receivership Action.

b. Any Party in Interest may appear in the Receivership in the manner prescribed by court rule and shall file with the Court a written notice ("Request for Notice") including the name and mailing address of the Party in Interest, and the name and address of the Party in Interest's attorney, if any, with the clerk, and by serving a copy of the notice upon the Receiver and the Receiver's attorney of record, if any. The Receiver shall maintain a master mailing list of all parties and of all Parties in Interest that file and serve a notice of appearance in accordance with this subsection and such Parties in Interest's attorneys, if any. The Receiver shall make a copy of the current master mailing list available to any Party in Interest upon written request.

c. Separately, the Receiver shall maintain a service list (the "Service List") consisting solely of those parties that file a Request for Notice, Fannie Mae, Debtor, and the twenty largest unsecured Creditors known to the Receiver. Unless otherwise provided herein, all motions, notices, and orders shall only be served on the Service List, plus any additional Parties directly affected by the pleading.

d. Any request for relief against a State agency shall be mailed to or otherwise served on the agency and on the office of the attorney general.

e. The Receiver shall give not less than seven (7) days' written notice of any examination, authorized herein or by the Act, by the Receiver of the Borrower to all persons required to be identified on the master mailing list.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

f. Unless modified by the Court for good cause shown, all persons required to be identified on the Service List are entitled to not less than twenty-one (21) days' written notice of the hearing of any motion or other proceeding involving any proposed:

i. Allowance or disallowance of any Claim or Claims;

ii. Abandonment, disposition, or distribution of Receivership Property, other than an emergency disposition of property subject to eroding value or a disposition of Receivership Property in the ordinary course of business;

iii. Compromise or settlement of a controversy that might materially affect the distribution to Creditors from the Receivership;

iv. Motion for termination of the Receivership or removal or discharge of the Receiver. Notice of the motion shall also be sent to the department of revenue and other applicable regulatory agencies;

v. Any opposition to any motion to authorize any of the actions under subdivisions (i) to (iv) of this subjection shall be filed and served upon all persons required to be identified on the Service List within fourteen (14) days after the service of such motion.

g. Whenever notice is not specifically required to be given under this Order or otherwise by court rule or applicable law, the Court may consider motions and grant or deny relief without notice or hearing, unless a Party or Party in Interest would be prejudiced or harmed by the relief requested.

**J. Term, Termination, and Final Accounting**

38. Termination. This Receivership shall continue until further Order of the Court.

39. Removal of the Receiver. The Receiver can be removed either (a) automatically thirty (30) days after the filing of a written demand for removal signed by Fannie Mae's counsel and filed with the Court; or (b) in the Court's equitable discretion upon a motion for cause. The Receiver may resign upon thirty (30) days' written notice or sooner upon a motion for cause. If the Receiver is removed or resigns, a successor receiver can be appointed by further order of the Court and the prior written agreement and consent of Fannie Mae.

40. Turnover of Receivership Property Upon Termination. Immediately upon termination of the Receivership, the Receiver shall turn over to Fannie Mae or its designees

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

(including any property manager), all of the Receivership Property in which Fannie Mae asserts a security interest or lien unless otherwise ordered by the Court, all such other Receivership Property shall be turned over as further directed by the Court.

41. Discharge of Receiver and Bond; Final Accounting. Neither the termination of the Receivership nor the Receiver's removal or resignation will discharge the Receiver or the Receiver's bond. The Receiver shall submit a final accounting (with copies to counsel for Fannie Mae and upon the Borrower or its attorney of record) for approval by the Court within thirty (30) days after the termination of the Receivership or the Receiver's removal or the Receiver's resignation. Only after the Court approves the Receiver's final accounting may the Receiver be discharged and the Receiver's bond be cancelled.

**K. Modification of this Order.**

42. Modification of Order. The Court shall modify this Order as it deems appropriate, including as to the proper amount of the Bond required of the Receiver. The Receiver, during the pendency of this action, shall have the right to apply to this Court for further instructions or directions. Further, this Order is without prejudice to (a) Fannie Mae, the Receiver, Borrower, or any other Party in Interest, during the pendency of this action, seeking modification of this Order including, without limitation, the shortening or expanding any of the time frames specified herein or the expansion, modification, or limitation of the Receiver's powers, authorities and duties as set forth in this Order or by applicable law; or (b) any party opposing such modification. To the extent that a party seeks to modify this Order, such party must provide reasonable notice to Fannie Mae,

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Borrower, and the Receiver. The party seeking modification shall have the burden of proof with respect to the same.

43. Missouri Commercial Receivership Act. For purposes of the Act, this Receivership is considered a general receivership but may be modified to a limited receivership upon proper motion to the Court for cause shown and with the prior written agreement and consent of Fannie Mae or the Receiver. To the extent the Receiver withholds such consent, it will be grounds for the immediate removal of the Receiver and appointment of a successor receiver willing to serve as a general receiver.

**IT IS SO ORDERED.**

Dated: ____________________________

/s/____________________________
Judge of the Circuit Court

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

SUBMITTED BY:

STINSON LLP

By: */s/ Nicholas J. Zluticky*
Nicholas J. Zluticky MO # 61203
Zachary H. Hemenway MO #59670
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Telephone: (816) 691-3278
Facsimile: (816) 691-3495
nicholas.zluticky@stinson.com
zachary.hemenway@stinson.com

ATTORNEYS FOR PLAINTIFF

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**EXHIBIT A**

**LEGAL DESCRIPTION OF REAL PROPERTY**

Lot 24 of THE KNOLLS, a subdivision in the City of Ferguson, St. Louis County, Missouri, according to the plat thereof recorded in Plat Book 134 Pages 42 and 43 of the St. Louis County Records.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT 2

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

| | | |
|---|---|---|
| **FANNIE MAE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **MCG KNOLLS LLC, a Missouri limited liability company,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**AFFIDAVIT OF RECEIVER**

STATE OF ___Texas____________ )
)
COUNTY OF ___Harris__________)

Sal Thomas, being duly sworn under oath, states as follows:

1. I am the Executive Vice President of Tarantino Properties, Inc. ("Tarantino").

2. Tarantino specializes in property management, receivership, and asset management.

3. Tarantino staff has provided services to distressed apartment complexes since it was founded in 1980. Those services include **collecting rents, maintaining and repairing the property, managing existing leases and entering into new leases, ensuring that contractors and service providers are paid, and otherwise taking all those actions necessary to preserve the property's value.**

4. Tarantino has in the past stepped in to manage distressed apartment complexes upon little or no notice similar to what is being asked in this matter.

5. Tarantino has the staff to start immediately upon appointment as the Receiver to provide management services to the Knolls Townhomes.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

6. Tarantino is not controlled by a person who has been convicted of a felony or other crime involving moral turpitude.

7. Tarantino is not a party to the action, a parent, grandparent, grandchild, sibling, director, officer, agent, attorney, employee, secured or unsecured creditor or lienor of, or holder of any equity interest in, or controls or is controlled by Borrower, or is the agent, affiliate, or attorney of any of the foregoing.

8. Tarantino does not have an interest materially adverse to the interests of persons to be affected by the proposed receivership generally.

9. Tarantino is not controlled by a sheriff of any county.

FURTHER AFFIANT SAYETH NOT

________________________________

SUBSCRIBED AND SWORN to before me, this ____14th____ day of August, 2026.

My Appointment Expires:

________________________________
NOTARY PUBLIC

NOTARY PUBLIC STATE OF TEXAS
GLORIA ELIZABETH MACIAS
Notary ID #11512357
My Commission Expires
March 27, 2027



CORE/0772514.0084/247369433.1

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

# EXHIBIT 3

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

| | | |
|---|---|---|
| **FANNIE MAE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **MCG KNOLLS LLC, a Missouri limited liability company,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**OATH OF RECEIVER**

STATE OF ___Texas__________________)
)
COUNTY OF ____Harris____________ )

Tarantino Properties, Inc., being the duly sworn receiver appointed in this action, upon oath says that it will faithfully discharge the duties as receiver in the above-entitled action and obey the orders of this Court.

By: ______Sal Thomas__________
Title:._xecutive Vice President____

SUBSCRIBED AND SWORN to before me, this ___14th____ day of August, 2026.

My Appointment Expires:

NOTARY PUBLIC

GLORIA ELIZABETH MACIAS
Notary ID #11512357
My Commission Expires
March 27, 2027

NOTARY PUBLIC STATE OF TEXAS

CORE/0772514.0084/247370096.1

26SL-CC05767

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

For File Stamp Only

Fannie Mae,
Plaintiff/Petitioner

August 19, 2026
Date

Case Number

vs.

Division

MCG Knolls LLC
Defendant/Respondent

# REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now Plaintiff Fannie Mae (Requesting Party), pursuant to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

Rufus Harmon, P.O. Box 1794, Jefferson City, MO 65102, 573-635-6690
Name of Process Server — Address — Telephone

Name of Process Server — Address or in the Alternative — Telephone

Name of Process Server — Address or in the Alternative — Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVE:
MCG Knolls LLC c/o DBO Services, Inc.
Name
222 E. Dunklin St., Suite 102
Address
Jefferson City, MO 65101
City/State/Zip

SERVE:
Name
Address
City/State/Zip

SERVE:
Name
Address
City/State/Zip

SERVE:
Name
Address
City/State/Zip

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk

By /S/ Adam Dockery
Deputy Clerk

08/20/2026
Date

/s/ Nicholas J. Zluticky
Signature of Attorney/Plaintiff/Petitioner
61203
Bar No.
1201 Walnut St., Suite 2900, Kansas City MO 64106
Address
(816) 691-3278 — (816) 691-3495
Phone No. — Fax No.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Local Rule 28. SPECIAL PROCESS SERVERS

(1) Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2) The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A) Appointments may list more than one server as alternates.

(B) The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C) Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D) No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E) Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://stlcountycourts.com/forms/associate-civil/request-process-server/

(F) This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system. Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

26SL-CC05767

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

For File Stamp Only

Fannie Mae,
Plaintiff/Petitioner

August 19, 2026
Date

Case Number

vs.

Division

MCG Knolls LLC
Defendant/Respondent

# REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now Plaintiff Fannie Mae (Requesting Party), pursuant to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

Rufus Harmon, P.O. Box 1794, Jefferson City, MO 65102, 573-635-6690
Name of Process Server — Address — Telephone

Name of Process Server — Address or in the Alternative — Telephone

Name of Process Server — Address or in the Alternative — Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVE:
MCG Knolls LLC c/o DBO Services, Inc.
Name
222 E. Dunklin St., Suite 102
Address
Jefferson City, MO 65101
City/State/Zip

SERVE:
Name
Address
City/State/Zip

SERVE:
Name
Address
City/State/Zip

SERVE:
Name
Address
City/State/Zip

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk

By ______________________
Deputy Clerk

______________________
Date

/s/ Nicholas J. Zluticky
Signature of Attorney/Plaintiff/Petitioner
61203
Bar No.
1201 Walnut St., Suite 2900, Kansas City MO 64106
Address
(816) 691-3278 — (816) 691-3495
Phone No. — Fax No.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Local Rule 28. SPECIAL PROCESS SERVERS

(1) Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2) The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A) Appointments may list more than one server as alternates.

(B) The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C) Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D) No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E) Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://stlcountycourts.com/forms/associate-civil/request-process-server/

(F) This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system. Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

26SL-CC05767

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

For File Stamp Only

Fannie Mae,
Plaintiff/Petitioner

August 19, 2026
Date

Case Number

Division

vs.

MCG Knolls LLC
Defendant/Respondent

# REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now Plaintiff Fannie Mae (Requesting Party), pursuant to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

Rufus Harmon, P.O. Box 1794, Jefferson City, MO 65102, 573-635-6690
Name of Process Server — Address — Telephone

Name of Process Server — Address or in the Alternative — Telephone

Name of Process Server — Address or in the Alternative — Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVE:
MCG Knolls LLC c/o DBO Services, Inc.
Name
222 E. Dunklin St., Suite 102
Address
Jefferson City, MO 65101
City/State/Zip

SERVE:
Name
Address
City/State/Zip

SERVE:
Name
Address
City/State/Zip

SERVE:
Name
Address
City/State/Zip

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk

By /S/ Adam Dockery
Deputy Clerk

08/20/2026
Date

/s/ Nicholas J. Zluticky
Signature of Attorney/Plaintiff/Petitioner
61203
Bar No.
1201 Walnut St., Suite 2900, Kansas City MO 64106
Address
(816) 691-3278 — Phone No.
(816) 691-3495 — Fax No.

Electronically Filed - St Louis County - August 19, 2026 - 04:55 PM

Local Rule 28. SPECIAL PROCESS SERVERS

(1) Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2) The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A) Appointments may list more than one server as alternates.

(B) The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C) Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D) No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E) Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://stlcountycourts.com/forms/associate-civil/request-process-server/

(F) This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system. Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>ELLEN HANNIGAN RIBAUDO | **Case Number: 26SL-CC05767** | |
| Plaintiff/Petitioner:<br>FANNIE MAE<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>NICHOLAS JAY ZLUTICKY<br>STINSON LLP<br>1201 WALNUT STREET<br>SUITE 2900<br>KANSAS CITY, MO 64106 | |
| Defendant/Respondent:<br>MCG KNOLLS LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Promissory Note | | |

**The State of Missouri to:** **MCG KNOLLS LLC**
**Alias:**
**DBO SERVICES, INC.**
**222 E. DUNKLIN ST., SUITE 102**
**JEFFERSON CITY, MO 65101**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

20-AUG-2026
Date

/S/ Adam Dockery
Clerk

**Further Information:**
AD


Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ________________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

____________________________________ (name) ______________________________ (title).

☐ other: ______________________________________________________________.

Served at ____________________________________________________________ (address)
in ______________________________ (County/City of St. Louis), MO, on __________________ (date)
at _____________ (time).

______________________________ ______________________________
Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ___________________________ (date).

*(Seal)*

My commission expires: _________________ ___________________________
Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the “neutral,” who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator’s decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**Selecting an Alternative Dispute Resolution Procedure and a Neutral**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

Electronically Filed - ST LOUIS COUNTY - August 28, 2026 - 12:17 PM

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>ELLEN HANNIGAN RIBAUDO | **Case Number: 26SL-CC05767** | |
| Plaintiff/Petitioner:<br>FANNIE MAE<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>NICHOLAS JAY ZLUTICKY<br>STINSON LLP<br>1201 WALNUT STREET<br>SUITE 2900<br>KANSAS CITY, MO 64106 | |
| Defendant/Respondent:<br>MCG KNOLLS LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Promissory Note | | |

**The State of Missouri to:** **MCG KNOLLS LLC**
**Alias:**
**DBO SERVICES, INC.**
**222 E. DUNKLIN ST., SUITE 102**
**JEFFERSON CITY, MO 65101**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

20-AUG-2026 — Date

/S/ Adam Dockery — Clerk

**Further Information:**
AD


Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Electronically Filed - ST LOUIS COUNTY - August 28, 2026 - 12:17 PM

**Case Number: 26SL-CC05767**

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________, a person at least 18 years of age residing therein.

☒ (for service on a corporation) delivering a copy of the summons and petition to:

Shelin Smith (name) Authorized Agent (title).

☐ other: ______________________.

Served at 222 E. Dunklin St. Suite 102 Jefferson City MO (address)

in Cole (County/City of St. Louis), MO, on 8-25-26 (date)

at 12:15 p.m. (time).

Rufus R. Harmon
Printed Name of Officer or Server

Rufus R. Harmon
Signature of Officer or Server

NICKIE WHEELER
Notary Public - Notary Seal
STATE OF MISSOURI
Moniteau County
My Commission Expires: Feb. 14, 2027
Commission # 19001908

*(Seal)*

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on 8/28/26 (date).

My commission expires: 2/14/27
Date

Nickie Wheeler
Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - ST LOUIS COUNTY - September 02, 2026 - 04:32 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

| | | |
|---|---|---|
| **FANNIE MAE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MCG KNOLLS LLC, a Missouri limited liability company,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 26SL-CC05767** |

**NOTICE OF HEARING**

PLEASE TAKE NOTICE that a hearing regarding Plaintiff Fannie Mae's Emergency Motion for Appointment of Receiver shall occur before the Honorable Ellen H. Ribaudo at the St. Louis County Circuit Court, Div. 18, Floor 4, Room 483, 105 South Central Avenue, Clayton, MO 63105, on the 30th day of September, 2026, at 9:00 a.m. or as soon thereafter as same may be heard.

Respectfully submitted,

STINSON LLP

By: */s/ Nicholas Zluticky*__
Nicholas J. Zluticky MO # 61203
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Telephone: (816) 691-3278
Facsimile: (816) 691-3495
nicholas.zluticky@stinson.com

ATTORNEY FOR PLAINTIFF

Electronically Filed - ST LOUIS COUNTY - September 02, 2026 - 04:32 PM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was sent, this 2nd day of September, 2026, via First Class mail, postage prepaid, to the following:

MCG Knolls LLC
Attn: Joseph Mermelstein
150 James Street, Ste 209 A
Lakewood, NJ 08701

MCG Knolls LLC
c/o DBO Services, Inc.
222 E. Dunklin St., Ste 102
Jefferson City, MO 65101

*/s/ Nicholas Zluticky*
ATTORNEY FOR PLAINTIFF